Andrew Dean (NY Bar)
Monique C. Winkler (Cal. Bar No. 212031)
John K. Han (Cal. Bar No. 208086)
  hanjo@sec.gov
Heather E. Marlow (Cal. Bar No. 215261)
  marlowh@sec.gov
Amanda L. Straub (NY Bar)
  strauba@sec.gov

44 Montgomery Street, Suite 2800
San Francisco, California 94104
Telephone:  (415) 705-2500
Facsimile:  (415) 705-2501
Attorneys for Plaintiff
SECURITIES AND EXCHANGE
COMMISSION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Securities and Exchange Commission, | Case No.: |
| Plaintiff, | |
| v. | **Declaration of Heather E. Marlow in Support of SEC's Motion for TRO** |
| Jonathan Larmore; ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; Cole Capital Funds, LLC. | |
| Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC. | |
| Relief Defendants. | |

**DECLARATION OF HEATHER E. MARLOW**

I, Heather E. Marlow, do hereby declare under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the following is true and correct, that I am over 18 years of age, and that I am competent to testify to the matters stated herein:

1. I am employed as an attorney in the Division of Enforcement in the San Francisco Regional Office of the United States Securities and Exchange Commission ("Commission").

2. Among other things, the federal securities laws authorize the Commission to conduct investigations to determine whether the federal securities laws have been violated and to bring civil actions before the United States District Courts to enforce and secure compliance with those laws.

3. As part of my job duties, I am responsible for investigating potential violations of the federal securities laws. I am not a party to this action.

4. In conducting factual investigations, my job responsibilities generally include issuing subpoenas, taking testimony, and conducting other investigative activities, as well as drafting internal legal analyses and preparing cases for litigation.

5. I was assigned to investigate a matter captioned <u>In the Matter of ArciTerra Group, LLC (SF-04532)</u>. As a result of that investigation, among other things, the Commission has authorized this action seeking the relief specified in the Complaint and Plaintiff SEC's *Ex Parte* Motion for Temporary Restraining Order and Related Equitable Relief; Memorandum of Points and Authorities ("Motion") to which this Declaration is an exhibit. If called as a witness, I could and would testify as follows.

I.   **Investigative Steps**

6. As part of my investigation, I collected, researched and analyzed information relating to, among other things, potential violations of the antifraud provisions of the Investment Advisors Act of 1940 and the Securities Exchange Act of 1934 by, among others, Jonathan M. Larmore ("Larmore"), ArciTerra Companies,

LLC ("ArciTerra"), ArciTerra Note Advisors II ("Fund II Advisors"), ArciTerra Note Advisors III ("Fund III Advisors"), ArciTerra Strategic Retail Advisor, LLC ("ASR Advisor"), (collectively, "ArciTerra Defendants") and Cole Capital Funds, LLC ("Cole Capital") (collectively with ArciTerra Defendants, the "Defendants").

7. Among other things, this investigative work included a review of documents provided by Defendants, banks, property management firms, tax firms, investors, and other third parties.

8. During the investigation and prior to the filing of this action, the Commission's staff conducted witness interviews and obtained sworn testimony from various persons, including Kathleen Bouet, Daniel DeCarlo, and Michelle Larmore.

## II. **Testimony Transcripts**

9. Attached hereto as Exhibit 1 are excerpts from the sworn investigative testimony of Kathleen Bouet, taken on September 28, 2023. Kathleen Bouet Investigative Testimony Transcript ("Bouet Tr."), at 16:13-17; 35:10-36:9; 54:11-13; 57:12-22; 71:5-10; 118:5-120:7; 123:2-12; 128:6-129:25; 128:22-130:12; 130:1-17; 131:12-132:1; 139:14-140:13; 144:5-13; 144:5-147:7; 145:9-147:15; 170:12-171:10; 171:2-10; 172:10-19; 206:1-207:14.

10. Attached hereto as Exhibit 2 are excerpts from the sworn investigative testimony of Daniel DeCarlo, taken on September 15, 2023. Daniel DeCarlo Investigative Testimony Transcript ("DeCarlo Tr.") at 18:7-14; 77:15-78:14.

11. Attached hereto as Exhibit 3 are excerpts from the sworn investigative testimony of Michelle Larmore, taken on November 1, 2023. Michelle Larmore Investigative Testimony Transcript ("Michelle Tr.") at 100:4-21; 128:1-7; 129:5-130:7.

## III. **ArciTerra Background**

12. Attached as Exhibit 4 is a screenshot dated November 26, 2023 of the Arizona Corporation Commission webpage showing entity information and a formation date of March, 30, 2005 for ArciTerra Group, LLC.

13. Attached as Exhibit 5 is a screenshot dated November 26, 2023 of the Arizona Corporation Commission webpage showing entity information and a formation date of October 1, 2007 for ArciTerra Companies, LLC ("ArciTerra").

14. Attached as Exhibit 27 is a screenshot dated November 20, 2023 of ArciTerra's LinkedIn page stating that ArciTerra "created 19 investment offerings, raised approximately $187 million in capital and owns approximately 83 properties in 26 states."

15. Attached as Exhibit 6 is a screenshot dated November 26, 2023 of the Arizona Corporation Commission webpage showing entity information and a formation date of August 5, 2010 for ArciTerra Strategic Retail Advisor, LLC ("ASR Advisor").

16. Attached as Exhibit 18 is a non-exhaustive list of Defendants and their currently known affiliates.

**IV.    Fund II and Fund III Background**

17. Attached as Exhibit 23 is an excerpt of the Fund II Private Offering Memorandum ("POM") produced by ArciTerra describing that (a) in 2006, Fund II was formed as a limited liability company to acquire and operate commercial real estate; (b) Fund II was funded through a combined $12.5 million offering and a $7.5 million offering of 8.25% secured notes; (c) Fund II identifies ArciTerra Note Fund II Advisors, LLC ("Fund II Advisors") as its advisor; and (d) Fund II Advisors is managed by ArciTerra. Exhibit 23 at pg. 1 of Summary of Offering.

18. I reviewed a list of note holders produced by ArciTerra for Fund II. There are approximately 466 note holders in Fund II.

19. Attached as Exhibit 24 is an excerpt of the Fund III Private Offering Memorandum ("POM") produced by ArciTerra describing that (a) in 2008, Fund III was formed as a limited liability company to acquire and operate commercial real estate; (b) Fund III was funded through a combined $15 million offering and $10 million offering of 9.25% secured notes; (c) Fund III identifies ArciTerra Note Fund

III Advisors, LLC ("Fund III Advisors") as its advisor; and (d) Fund III Advisors is managed by ArciTerra. Exhibit 24 at pg. 1 of Summary of Offering.

20. I reviewed a list of note holders produced by ArciTerra for Fund III. There are approximately 579 note holders in Fund III.

## V. Investigative Interview Statements:[1]

*Jonathan Larmore*

21. On April 27, 2023, I participated in a voluntary investigative interview with Jonathan Larmore, with his counsel present, over videoconference. I heard him make the following statements:

    (a) Larmore is the founder and Chief Operating Officer of ArciTerra and his middle name is Moynahan.

    (b) Larmore made the ultimate decisions regarding the use of money raised from the Fund II and Fund III offerings, including the acquisition and selling of real properties, investments in securities, and use of tenant proceeds.

    (c) In March 2023, Larmore fired nearly all of ArciTerra's employees, closed its headquarters in Phoenix, Arizona, and moved the business operations to Florida.

---

[1] Even to the extent statements made by witnesses in interviews with Commission staff are hearsay, the Court can still consider them at this stage of the litigation. *See, e.g., Houdini Inc. v. Goody Baskets LLC*, 166 F. App'x 946, 947 (9th Cir. 2006) ("[T]he district court did not abuse its discretion in considering hearsay and biased evidence . . . because the rules of evidence do not strictly apply to preliminary injunction proceedings."); *Flint Distrib. Co. v. Harvey*, 724 F. 2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial."); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 721 n.21 (C.D. Cal. 2020) ("The Court . . . may consider inadmissible evidence, including hearsay evidence, in determining whether to issue a temporary restraining order or preliminary injunction.").

*Kevin Gulbranson*

22. On May 18, 2023 and October 25, 2023, I participated in voluntary investigative interviews of ArciTerra's former Controller, Kevin Gulbranson ("Gulbranson"), with his counsel present, over videoconference. I asked him questions and heard him make the following statements:

(a) Gulbranson joined ArciTerra in July of 2010 to perform accounting services. In July of 2011 Gulbranson became ArciTerra's Controller and remained in that position until October of 2021, when he took on a lesser role in ArciTerra's accounting group. Currently Gulbranson works for ArciTerra on an as needed basis.

(b) Larmore made the ultimate decisions regarding the use of money raised from the Fund II and Fund III offerings, including the acquisition and selling of real properties, investments in securities, and use of tenant proceeds.

(c) ASR Advisor's bank account served as a pass-through entity to transfer cash among the ArciTerra entities, including cash from the Fund II and Fund III holding accounts and to pay for Larmore's and his family's personal expenses as needed and to transfer money to Larmore. Larmore placed no restrictions on which entities cash could be moved from to meet a cash need, even if the cash originated from investor funded entities, including Fund II and Fund III or other investment vehicles with outside investors, to pay Larmore's and his family's personal expenses and meet Larmore's cash needs. Larmore gave the accounting staff directions regarding the transfers of funds. If Larmore directed ArciTerra staff to pay his personal expenses, ASR Advisor would

do a loan to either Larmore's or JMMAL's account. Gulbranson does not recall Larmore ever paying back a loan.

*Blaine Rice*

23. On October 25, 2023, I participated in a voluntary investigative interview of ArciTerra's former Chief Operating Officer, Blaine Rice ("Rice"), with his counsel present, over videoconference. I asked him questions and heard him make the following statements:

(a) ArciTerra Group, LLC, formed in 2005, is the successor to ArciTerra Companies, LLC, formed in 2007. ArciTerra has managed over a hundred related entities.

(b) Larmore made the ultimate decisions regarding the use of money raised from the Fund II and Fund III offerings, including the acquisition and selling of real properties, investments in securities (such as limited partnership units in ArciTerra National REIT, LP, which Larmore and ArciTerra manage, and preferred stock in a third-party venture held through ArciTerra NS Investment Co.), and use of tenant proceeds.

(c) In or around April 2023, Larmore fired almost all ArciTerra employees, including Rice, closed its headquarters in Phoenix, Arizona, and moved ArciTerra's business operations to its property in Fisherman's Village, Punta Gorda, Florida.

**VI.  Documents Related to Cash Transfers**

24. Attached as Exhibit 7 is a document produced by Kathleen Bouet during the Commission's investigation that preceded the filing of this case, which is a series of emails dated May 3, 2023 and May 4, 2023.

25. Attached as Exhibit 26 is a document produced by Kathleen Bouet during the Commission's investigation that preceded the filing of the case, which is a series of emails dated January 9, 2023 and January 10, 2023.

26. Attached as Exhibit 25 is a document produced by Kathleen Bouet during the Commission's investigation that preceded the filing of the case, which is a series of emails dated January 9, 2023 and January 10, 2023.

**VII. Documents Related to Current State of ArciTerra**

27. Attached as Exhibit 8 is a document about which Dan DeCarlo testified during the SEC's investigation that preceded the filing of this case, which is an email dated April 17, 2023 (and marked as Exhibit 10 to the investigative testimony of Dan DeCarlo).

28. Attached as Exhibit 9 is an ArciTerra Resolution dated September 1, 2023 (and marked as Exhibit 27 to the investigative testimony of Michelle Larmore). Exhibit 9 at pg. 1.

29. Attached as Exhibit 10 is a Rule 69 Agreement dated August 28, 2023 from Larmore's divorce proceeding (and marked as Exhibit 26 to the investigative testimony of Michelle Larmore). Exhibit 10 at paragraph 3.

30. Attached as Exhibit 22 is a spreadsheet produced by Arciterra listing the properties currently owned by investor-related entities and those properties previously owned by investor-related entities that have been sold.

**VIII. Documents Related to November 3, 2023 Manipulation of WeWork Securities**

31. Attached as Exhibit 11 is a screenshot dated November 26, 2023 of the Arizona Corporation Commission webpage showing entity information and a formation date of October 6, 2023 for Cole Capital Funds, LLC ("Cole Capital").

32. Attached as Exhibit 12 is a screenshot dated November 8, 2023 of an Iris Investigate webpage showing colecpaitalfunds.com was created and registered with GoDaddy.com LLC on October 6, 2023.

33. Attached as Exhibit 13 is a screenshot dated November 8, 2023 of Cole Capital's website.

34. Attached as Exhibit 14 is a screenshot dated November 26, 2023 of Fidelity.com describing the definition of a call option taken from the Fidelity website at https://www.fidelity.com/learning-center/investment-products/options/call-options-basics.

35. According to the bluesheeting data and the Large Options Position Report ("LOPR") submitted electronically to the Commission by clearing brokers: (1) on or about November 1 and November 2, 2023, Larmore purchased a total of at least 72,846 call option contracts of the common stock of the publicly-traded company WeWork, the common stock of which is sold under the ticker symbol "WE" on the NASDAQ National Market; (2) approximately 71,000 of the call options were set to expire on November 3, 2023 at 4:00 p.m. (Eastern Time, "ET"), and the remainder set to expire on November 10, 2023 at 4:00 p.m. ET; (3) Larmore paid between $.03 and $.15 per contract to purchase these call options; (4) the strike prices for these call options ranged between $2 and $5; (5) if exercised, 72,846 call options, would have allowed Larmore to acquire 7,484,600 shares of WeWork common stock; and (6) Larmore purchased 343,641 shares of WeWork stock on November 2, 2023.

36. Attached as Exhibit 28 is a copy of an email from Larmore's email address at colecapitalfunds.com to the Commission's Shareholder Proposals mailbox dated November 3, 2023 at 9:11 a.m. ET with a Schedule TO attached that included the text of a letter that Larmore indicated was sent to WeWork's CEO and its Board of Directors that morning, stating, in part:

> We believe that it is in the best interest of WeWork to support our acquisition of 51% of all the outstanding shares owned by minority shareholders at a price of $9.00 per share and provide Cole with proper representation on the company board.
> We have received feedback from City National Bank and JP Morgan regarding the financing for this acquisition and expect to select a

>lender and have a financing commitment prior to execution of a definitive agreement.
>
>We have consulted with God, legal, financial and other advisors to assist us with this transaction. We stand ready to proceed timely.
>
>In addition, we have evaluated WeWork's current locations and have evaluated several new locations which we believe will add to an expanded WeWork community.

Exhibit 28 at pg. 8.

37. Attached as Exhibit 15 is a MarketWire publication, date and time stamped on November 3, 2023 at 5:12 p.m. ET, of the press release issued by Cole Capital titled "A Proposal by Cole Capital Funds Seeks to Acquire 51% of all minority ownership shares of WeWork, Inc. for $9.00 per share in Cash." The press release states that Cole Capital had sent a letter to the WeWork Board of Directors and quoted the full text of the letter excerpted above in Exhibit 28.

38. Attached as Exhibit 16 is a report provided by FINRA describing the afterhours prices of WeWork (WE) on November 3, 2023 reflecting that within a minutes of Cole Capital's press release the stock rose from $.85 to $1.45 and continued to rise, reaching its high of $2.14 at 6:31 p.m. ET. and began to trend downward to close at $1.18 at the end of afterhours trading.

39. Attached as Exhibit 17 is Businesswire.com publication, date and time stamped on November 3, 2023 at 6:12 p.m. ET indicating that it was killing the Cole Capital press release issued earlier in the day.

40. On November 15, 2023, I spoke with a customer service representative at EIN Presswire.com, a press release distribution service who told me that Larmore submitted the Cole Capital press release well before the close of regular NASDAQ trading hours at 4 p.m. ET p.m. on November 3, 2023, but the distribution service rejected the release at least once for formatting errors or other issues.

41. The bluesheeting data does not indicate that Larmore exercised his call options before they expired at 4:00 pm ET on November 3, 2023 or 4:00 pm ET on November 10, 2023, respectively.

**IX.  Miscellaneous**

42. On November 24, 2023, Scott Jenkins, Esq. emailed the Commission staff and stated that TMI Trust Company is the Indenture Trustee for Note Fund II, LLC. In addition, Messrs. Keith Bierman, CPA and Jenkins have advised the Commission staff that TMI Trust Company will consent to the stay of its action and the appointment of Messrs. Bierman and Jenkins in the Commission case.

43. Attached as Exhibit 19 is the brief biography for Keith Bierman, CPA.

44. Attached as Exhibit 20 is the brief biography for Scott Jenkins, Esq.

45. Attached as Exhibit 21 is a document produced by ArciTerra listing all pending lawsuits against ArciTerra and/or its affiliated persons and entities.

46. The SEC has moved for a Temporary Restraining Order and other ancillary relief ("TRO Motion") *ex parte* and without notice to adverse parties. As detailed in the Complaint and the TRO Motion, immediate and irreparable injury, loss, or damage will result if Defendants and Michelle Larmore, Marcia Larmore, CSL Investments, LLC, Spike Holdings, LLC, MML Investments, LLC and JMMAL Investments, LLC (collectively, the "Relief Defendants") are notified before the Court hears the SEC's TRO Motion, including that the Defendants will likely continue to liquidate and dissipate assets and funds that should be returned to investors. Among other things, Defendant Larmore has taken over $17 million from the ArciTerra-related entities for his personal expenses and accounts and has not repaid these debts; Defendant ASR Advisor owes approximately $35 million to investor-related entities and has not repaid these debts; Larmore and Defendant ArciTerra are actively attempting to sell all the assets of the ArciTerra-related companies without any person acting as a fiduciary to protect the interests of the Funds; Defendant Larmore and his wife are currently attempting to divide assets in their divorce proceedings, which include their interests

in ArciTerra-related assets; and, as recently as November 2023, Defendants Larmore and Cole Capital attempted to manipulate the price of WeWork, Inc. securities for their own profit. If Defendants and Relief Defendants are given advance notice of the SEC's TRO motion, it will only further spur them to dissipate and misuse investor funds, potentially placing them beyond the reach of the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was signed in San Francisco, California on November 28, 2023.

_____
HEATHER E. MARLOW