Dan W. Goldfine (AZ Bar # 018788)
Cameron C. Stanley (AZ Bar #036605)
DICKINSON WRIGHT PLLC
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
dgoldfine@dickinson-wright.com
cstanley@dickinson-wright.com
(602) 285-5000 Phone
(844) 670-6099 Facsimile

Seth B. Waxman (DC Bar #456156)
(*Pro Hac Vice* Admission Pending)
DICKINSON WRIGHT PLLC
1825 Eye Street N.W. Suite 900
Washington, DC 20006
swaxman@dickinson-wright.com
(202) 466-5956 Phone
(844) 670-6009 Facsimile

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>Jonathan Larmore; ArciTerra Company, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; Cole Capital Funds, LLC,<br><br>Defendants, and<br><br>Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC,<br><br>Relief Defendants. | Case No.: 2:23-cv-02470-DLR<br><br>**DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFF SEC'S *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND RELATED EQUITABLE RELIEF** |

1

**Defendants' Partial Opposition to Plaintiff SEC's *Ex Parte*
Motion for Temporary Restraining Order and Related Equitable Relief**

Defendants Jonathan Larmore ("J. Larmore"), Marcia Larmore ("M. Larmore"), and each of the individual Defendant entities identified in the case caption of the complaint filed by the Securities and Exchange Commission ("SEC") (collectively hereinafter referred to as the "Defendants"), by and through counsel Dickinson Wright, PLLC, hereby partially oppose the SEC's motion for a temporary restraining order and related equitable relief.

Specifically, the Defendants state:

1. Receivership:  The Defendants agree that a Receiver should be appointed in this matter.  However, the Defendants object to the appointment of Kenneth Bierman (MCA Financial Group) and W. Scott Jenkins (Dorsey & Whitney) as Receiver and Receiver's counsel, respectively, based on a series of significant personal and professional conflicts of interest, and related equitable considerations, which are discussed in Section I below;

2. Asset Freeze:  The Defendants agree that a temporary asset freeze is appropriate in this case.  However, the Defendants submit that five entities that are not relevant to the instant litigation should be excluded from the asset freeze, as discussed in Section II below;

3. Expedited Discovery:  The Defendants do not oppose discovery. However, the Defendants recommend reaching agreement on a reasonable schedule, especially given that undersigned counsel was first retained in this matter on December 11, 2023; and

4. Accounting:  The Defendants agree that a full forensic accounting should be conducted.  However, the Defendants do not have access to ArciTerra's documents and databases, making it difficult, if not impossible, to conduct a proper and thorough accounting.[1]

---

[1] To the extent the Defendants do not oppose the SEC's demands in their TRO application, the Defendants' consent is limited to the TRO application, and should not be construed as consent for purposes of a preliminary injunction or the case as a whole.  To the contrary, the Defendants expressly reserve all of their rights to contest all of the SEC's requests at the preliminary injunction stage and throughout the remainder of this case.

2

The Defendants also do not oppose the SEC's remaining requests; namely: (1) barring prospective violations of the Investment Advisors Act of 1940 and Securities Exchange Act of 1934; (2) staying pending litigation and the filing of new proceedings; and (3) the prohibition on document destruction.

In the past 24 hours, the undersigned had productive discussions with counsel for the SEC, and hopes to reach agreement with the SEC on one, or more, of these issues prior to the TRO hearing currently scheduled for December 13, 2023. However, as of this filing, the parties have not reached any stipulations. In addition, in order to facilitate the Receivership and related requests, and to demonstrate good faith, the Defendants authorized the undersigned to accept service of process on the Defendants behalf, obviating the need for the SEC to personally serve the Defendants. The undersigned also informed the SEC that the Defendants do not object to the core application the SEC submitted to the Court; there are simply a few fundamental issues relating to fairness and independence that are important to address, as detailed below.

**Background**

On December 11, 2023, at approximately 8:00 p.m. (EST), the Defendants engaged Dickinson Wright to represent them in this matter. Undersigned counsel has worked diligently during the past 24 hours to get-up-to-speed, prepare and file the instant pleading, discuss this matter with SEC counsel, and take additional steps on the Defendants' behalf. Notwithstanding those efforts, undersigned counsel's knowledge about this case and ability to defend against the SEC's action is limited by the time constraints imposed by this expedited TRO action.

Nonetheless, broadly speaking, the Defendants assert that once the true and correct facts regarding this case are known by the SEC and Court, the Defendants will be exonerated and a TRO and/or a Preliminary Injunction will not be necessary. In the meantime, the Defendants agree wholeheartedly that a competent and independent Receiver (that is not rife with conflicts) should be appointed in this matter, so the truth can

be discovered. The Defendants also desire a proper and thorough accounting to get to the truth. That is why the Defendants do not object to core of the SEC's requests.

**I.      Receivership**

Like the SEC, the Defendants seek the appointment of an independent, competent Receiver. However, Messrs. Bierman and Jenkins are rife with personal and professional conflicts of interest that should preclude them from participating in this action. First, Mr. Jenkins' law firm (Dorsey & Whitney) has acted as counsel for ArciTerra entities from at least 2021 to 2023, during which time Dorsey & Whitney learned extensive privilege and confidential information. This conflict of interest also taints Mr. Bierman and his company, MCA Financial Group, given Mr. Bierman's and Mr. Jenkins' joint appointment as Receiver and counsel for Receiver, respectively, in the ArciTerra matter that is currently pending in Maricopa County Superior Court.

For example, with regard to Dorsey & Whitney's representation of ArciTerra companies, Dorsey & Whitney represented ArciTerra affiliate "AT ML Leasehold HI, LLC" in: <u>AT ML Leasehold HI, LLC v. RCSH Operations, Inc. (d/b/a Ruth's Chris Stakehouse)</u>, 21-CV-236 (LEK) (D. Hawaii filed on May 5, 2021), which related to the failure of Ruth's Chris Steakhouse to pay lease payments to AT ML Leasehold HI, LLC. A copy of the Westlaw docket sheet listing Dorsey & Whitney as plaintiff's counsel in that matter is attached hereto as Exhibit A; <u>see also</u> SEC's TRO Exhibit A (listing the Receivership Entities) at 6 (naming "AT ML Leasehold HI, LLC" as one of the entities subject to the SEC's proposed asset freeze). Dorsey & Whitney's invoice for services relating to the Hawaii litigation is addressed to ArciTerra Companies, LLC, which is one of the key companies that is the focus of the SEC's investigation, and shows that Dorsey & Whitney provided more than $37,000.00 in services to ArciTerra Companies, LLC from October 2022 to April 2023. A copy of Dorsey & Whitney's invoice is attached hereto as Exhibit B.

1    It is also important note that in Dorsey & Whitney's invoice (Exhibit B), the "Client-Matter No." is listed as "514871-00009," indicating that the Hawaii litigation constituted the "ninth" matter that Dorsey & Whitney worked on for ArciTerra Companies, LLC. Further evidence of Dorsey & Whitney's work for ArciTerra in the Hawaii matter is found in an email that Isaac Gabriel sent to Blaine Rice, stating that ArciTerra owed Dorsey & Whitney $237,098.91 for legal services relating to the Ruth's Chris dispute. A copy of the email is attached hereto as Exhibit D.

    Even more importantly, Defendant J. Larmore fired Dorsey & Whitney as ArciTerra's counsel in 2023, as a result of Dorsey & Whitney's patently obvious personal and professional conflicts of interest, which are discussed below. See Defendant J. Larmore's Declaration attached hereto as Exhibit C at ¶ 6. Thus, not only does Dorsey & Whitney (and MCA Financial Group) have clear conflicts of interest in this case, but Dorsey & Whitney also has an obvious bias against Defendant J. Larmore because he fired Dorsey & Whitney this year.

    Defendant J. Larmore's need to fire Dorsey & Whitney stemmed from a series of very personal and troubling actions by Dorsey & Whitney attorney Isaac Gabriel, who was identified as the lead Dorsey & Whitney attorney in the Hawaii litigation, see Exhibit A at 1.[2] Mr. Gabriel is a close, personal friend of ArciTerra's Chief Operating Officer ("COO") Blaine Rice, who was terminated from his ArciTerra position during the first half of 2023.

---

[2]    Dorsey & Whitney's publicly available website shows that its Phoenix, Arizona office - where both Mr. Gabriel and Mr. Jenkins work - has 10 partners in that office.

https://www.dorsey.com/people#search/-/-/all/all/all/fe2bd9ce-f7bf-4f7c-9f71-f7ee2dd3af8c/all/-/p1/2914.39990234375

Mr. Jenkins is also identified on the website as the Phoenix office's chairperson. These facts demonstrate that Mr. Gabriel and Mr. Jenkins are not resident in a large office with scores of partners, who may or may not interact or know each other well. Rather, they work in a relatively small office of 10 partners, and Mr. Jenkins holds a position of authority over Mr. Gabriel. Before joining Dorsey & Whitney, Mr. Jenkins and Mr. Gabriel also worked together at Quarles & Brady LLP for a significant period of time.

5

See Exhibit B (addressing Dorsey & Whitney's invoice to "Blaine Rice"). Indeed, the close, personal relationship between Messrs. Gabriel and Rice is the reason why ArciTerra retained Dorsey & Whitney as its counsel. See Exhibit C (J. Larmore's Declaration) at ¶ 4.

In 2022, Messrs. Gabriel and Rice went on a personal ski trip with Defendant J. Larmore's wife during a time period when Defendant J. Larmore's marriage was breaking down, ultimately resulting in divorce proceedings being initiated in March 2023. Id. at ¶ 7. Moreover, upon information and belief, Mr. Rice has made sexual advances toward Defendant J. Larmore's wife, contributing to the breakdown of his marriage. Id. at ¶ 8. Mr. Rice also stole, or caused to be stolen, significant amounts of money from the ArciTerra entities. Id. at ¶ 9. As this litigation will ultimately show, Mr. Rice was primarily responsible for the wrongdoing described in the SEC's complaint, not Defendant J. Larmore. Id. at ¶ 10.

Dorsey & Whitney attorney Gabriel's close, personal relationship with Mr. Rice is inextricably intertwined with ArciTerra, and the extremely intimate and personal misconduct that took place relating to Defendant's J. Larmore's wife requires Dorsey & Whitney's exclusion in this matter (and by extension MCA Financial Group). As the SEC's own pleadings show, Mr. Rice plays an integral evidentiary role in the facts that have been presented to this Court.

MCA Financial Group (Mr. Biermann) and Dorsey & Whitney (represented by W. Scott Jenkins) should also be excluded from consideration for the instant Receivership based on their appointment over ArciTerra entities in the Maricopa County Superior Court matter. The Receivership order the SEC seeks in the instant case is duplicative of much of the receivership order that has been in place for months in the Maricopa County Superior Court matter. If Messrs. Bierman and Jenkins were doing their job in the state court proceeding, which has been underway for months, there would be no need for another Receivership order. The ArciTerra entities would be frozen and a proper accounting would

have been performed. Instead, it appears that Messrs. Bierman and Jenkins have failed to perform the duties that were assigned to them in the state court proceeding. Having failed in the state court receivership, there is no reason to continue their work in the instant matter.

The bottom line is that there are many well-qualified, competent, independent professionals who could serve as Receiver in this matter. There is no need to "bake into the cake" a group of individuals who are rife with both personal and professional conflicts of interest, especially at the outset of a Receivership. The Defendants want a Receiver appointed, and want a fair, thorough, and independent forensic accounting to be conducted. There is simply no way for that to happen if MCA Financial Group and/or Dorsey & Whitney are appointed in this matter.

In discussions with the SEC, the undersigned presented the following three truly independent and highly qualified experts, who would make excellent candidates for Receiver in this matter:

- Juan Migone (StoneTurn Group LLP): Former Assistant Chief Accountant in the SEC's Division of Enforcement. https://stoneturn.com/who-we-are/our-people/juan-migone/;

- Howard Scheck (StoneTurn Group LLP): Former Chief Accountant in the SEC's Division of Enforcement.https://stoneturn.com/who-we-are/our-people/howard-scheck/; and

- Susan Markel (Alix Partners LLP): Former Chief Accountant in the SEC's Division of Enforcement. https://www.alixpartners.com/our-professionals/smarkel/.

Whether the Receiver is one of these extremely qualified and truly independent professionals, or another professional that the parties mutually agree upon, the Defendants are willing to diligently work in the coming days to identify a proper Receiver for the Court's consideration. While this effort may take a few days, prudence dictates taking the time to get this important piece of the puzzle right at the outset of this matter.

1    The alternative is that the undersigned will be duty bound to thoroughly investigate
2 the full nature and extent of the patently apparent, and potentially undisclosed, personal
3 and professional conflicts of interest that exist for MCA Financial Group and Dorsey &
4 Whitney. Those efforts will likely result in repeated motions to have the Receivers
5 removed, as well as whatever other rights and remedies need to be asserted on the
6 Defendants' behalf. Stated differently, the parties can jointly agree to an acceptable
7 Receiver at the outset, or this litigation can be mired in repeated, albeit entirely necessary
8 and proper, examinations and motions relating to the Receiver's disqualification.

9    To that end, if MCA Financial Group and/or Dorsey & Whitney are appointed in
10 this case, the Defendants will seek a hearing to question them on their independence,
11 personal and professional relationships and conflicts, state receivership work, and all other
12 relevant areas of inquiry. Burdening this case with these types of issues at the outset
13 unnecessarily distracts from the core goals of both parties; namely, a fair and independent
14 search for the truth.

**II.  Asset Freeze**

In the TRO application, the SEC includes 7 pages of entities that the SEC asserts should be subject to the Receivership Order. The Defendants have no objection to the temporary asset freeze for those entities, excluding the following:

- Morrison Island, LLC: This company's sole function was to hold title to Defendant J. Larmore's parents' lake home located in Indiana, which was purchased in 1995. Morrison Island, LLC conducted no other business;

- North East Wawassee, LLC: This company's sole function was to hold title Defendant J. Larmore's lake home located in Indiana, which was purchased in 2005. North East Wawassee, LLC conducted no other business;

- Labalme Trail, LLC: This company's sole function was to hold title to J. Lamore's parents' primary residence located in Indiana, which was purchased in 1979. Labalme Trail, LLC conducted no other business;

- <u>Lutheran Eye Care, LLC</u>: The company's sole function was to hold title to J. Lamore's father's office condominium where he held conducted his ophthalmology practice, which was purchased in the 1990s. Lutheran Eye Care, LLC conducted no other business; and

- <u>HV Gardens, LLC</u>: The company's sole function was to told title to J. Lamore's grandmother's lake house located in Indiana, which was conveyed to J. Lamore's father upon his grandmother's death. HV Gardens, LLC conducted no other business.

Each one of these entities held title to personal real estate long before any of the fraud or wrongdoing that the SEC alleged took place, and these entities did not conduct any other business. As such, the Defendants respectfully request that these five entities be excluded from the asset freeze.

**Conclusion**

For the foregoing reasons, the Defendants respectfully request that the Court temporarily partially grant the relief sought by the SEC with the exclusions and caveats described herein.

Dated: December 12, 2023.   DICKINSON WRIGHT PLLC

By: */s/ Dan W. Goldfine*
DICKINSON WRIGHT, PLLC
1850 North Central Avenue, Suite 1400
Phoenix, AZ 85004
dgoldfine@dickinson-wright.com

Seth B. Waxman (DC Bar #456156)
(*Pro Hac Vice* Application Pending)
DICKINSON WRIGHT PLLC
1825 Eye Street N.W. Suite 900
Washington, DC 20006
swaxman@dickinson-wright.com

*Attorney for Defendants Jonathan Larmore, Marcia Larmore, ArciTerra Company, LLC, ArciTerra Note Advisors II, LLC, ArciTerra Note Advisors III, LLC, ArciTerra Strategic*

9

*Retail Advisors, LLC, Cole Capital Funds, LLC, CSL Investments, LLC, MML Investments, LLC, Spike Holdings, LLC, and JMMAL Investments, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF systems, which will provide electronic mail notice to all counsel of record.

*/s/ Dan W. Goldfine*
Dan W. Goldfine