DAMIAN WILLIAMS
United States Attorney
Southern District of New York
ALEX ROSSMILLER (NY Bar)
  Alexander.Rossmiller@usdoj.gov
JUSTIN V. RODRIGUEZ (NY Bar)
  Justin.Rodriguez@usdoj.gov
Assistant United States Attorneys
Southern District of New York

26 Federal Plaza, 38th Floor
New York, New York 10278
Telephone: (212) 637-2200
Attorneys for Intervenor
UNITED STATES ATTORNEY'S OFFICE,
  SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Securities and Exchange Commission, | 23-CV-02470-DLR |
| Plaintiff, | MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION TO INTERVENE AND FOR A STAY OF DISCOVERY |
| v. | |
| Jonathan Larmore; ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; Cole Capital Funds, LLC, | |
| Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC, | |
| Relief Defendants. | |

//

//

//

**PRELIMINARY STATEMENT**

The United States of America, by and through the United States Attorney for the Southern District of New York (the "Government"), respectfully submits this memorandum of law in support of its application (i) to intervene in the above-captioned case, pursuant to Rule 24 of the Federal Rules of Civil Procedure, and (ii) for a partial stay of these proceedings, including a stay of discovery in this case until the conclusion of the parallel criminal case, *United States v. Jonathan Larmore*, 24 Cr. 140 (PAE), in the Southern District of New York (the "Criminal Case"). The Securities and Exchange Commission ("SEC") expects to separately inform the Court of its position on the Government's request for a stay. Jonathan Larmore (the "defendant"), who previously controlled the entities that are named in this action as co-defendants, has, through counsel, declined to provide the Government with the defendant's position on the request for a stay.

Federal courts frequently stay civil discovery proceedings where they have the potential to impact a parallel criminal prosecution. Here, the parallel Criminal Case arises from a substantially overlapping set of facts and circumstances as those that underlie this action, meaning that common issues of fact and law exist. As a result, a stay is especially appropriate because any exchange of discovery would be asymmetrical and would allow the defendant to circumvent the criminal discovery rules and improperly tailor his defenses in the Criminal Case. The stay sought by the Government also would conserve this Court's time and resources, because the outcome of the Criminal Case is likely to have a significant impact on what issues are ultimately in dispute in this case. As further described below, in similar situations, courts often enter a stay of parallel civil actions when there is a related criminal prosecution with overlapping defendants and facts, even where a defendant objects (which is not clear here).

A district court has discretion to stay a civil action in favor of parallel criminal proceedings in the interest of justice. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995). A stay is appropriate here on multiple grounds. In particular, the public interest favors staying discovery to prevent Larmore from impermissibly using civil discovery to his benefit in the criminal case; and the parties and the Court should not be burdened further by civil discovery matters during the pendency of the criminal case. Other factors set forth in the Ninth Circuit's decision in *Keating* also weigh heavily in favor of a stay.

In light of the overlapping set of facts underlying the parallel Criminal Case, the lack of prejudice to both the plaintiff and the defendant, the convenience of the Court and considerations of judicial economy, and the interests of third parties and the public, as well as the complications civil discovery would cause in that Criminal Case, and the lack of objection to the stay by the SEC, the Government respectfully requests that the Court grant its motion to intervene and to stay discovery proceedings in this matter.[1]

## FACTUAL BACKGROUND

This case (the "SEC Case") and the parallel Criminal Case arise out of overlapping underlying events. The facts set forth below are described in greater detail in the indictment that was returned in the Criminal Case (the "Indictment"), which was unsealed on March 14, 2024, and in the SEC's complaint in this civil action. In summary, from in or about October 2023 through in or about November 2023, the defendant perpetrated a scheme to use a false and fraudulent tender offer to manipulate the stock price of WeWork, Inc. ("WeWork"), a co-working space company headquartered in New York, New York, and publicly traded on the New York Stock Exchange ("NYSE").

A. **The SEC's Complaint**

On November 28, 2023, the SEC filed a civil complaint against Larmore and certain of his related entities. (SEC Case Dkt. 1.) The complaint alleges, in part, that after committing malfeasance in connection with his association with ArciTerra, a manager of a complex of entities involved with commercial real estate investment and development, Larmore engaged in a scheme involving stock manipulation.[2] (*Id.* ¶¶ 1-6.) Specifically, the complaint alleges that in November 2023, Larmore, using the purported entity Cole Capital Funds, LLC ("Cole Capital), an entity he had created just a month earlier, engaged in transactions aimed at manipulating the price of the securities of WeWork. (*Id.* ¶ 6.) The complaint alleges that on November 3, 2023, Larmore sought to have disseminated through a wire

---

[1] The Government notes that such a stay would not halt or otherwise interfere with pre-discovery motion practice or applications or processes not implicating the discovery process.

[2] The complaint also alleges that in connection with Larmore's association with ArciTerra, he misappropriated millions of dollars by diverting them from private funds to which Larmore owed fiduciary duties as an investments advisor to an entity he controlled with his mother, using that entity as a multi-million-dollar slush fund. (*Id.* ¶¶ 2-4.)

2

service a press release riddled with false and misleading statements announcing a purportedly imminent Cole Capital tender offer for WeWork shares, a transaction Larmore did not have the actual intent or ability to execute. (*Id.*)

The complaint further alleges that in the days leading up to these actions, Larmore had purchased a large quantity of out-of-the-money WeWork call options that could have made Larmore hundreds of thousands to millions of dollars if the price of WeWork stock had increased significantly before they expired. (*Id.* ¶ 7.) However, the complaint states that Larmore mistimed how long it would take to have the press release published, and it did not go public until 5:12 p.m. eastern time, by which time his options already had expired just over an hour earlier. (*Id.*) Shortly after the press release was published, WeWork's stock increased by nearly 150% in after-hours trading, as a result of Larmore's manipulative conduct—but by then Larmore's options had expired worthless. (*Id.* ¶¶ 6-7.)

### B. The Criminal Indictment

On March 14, 2024, an Indictment returned by a grand jury sitting in the Southern District of New York was unsealed, charging Larmore with fraud in connection with a tender offer and with securities fraud. (*See* Criminal Case Dkt. 2.)[3] The facts underlying the Criminal Case, and the allegations in the Indictment, are essentially identical to the allegations by the SEC in the SEC Case regarding Larmore's stock manipulation, as described above. In brief, the Indictment alleges that Larmore engaged in his criminal tender offer scheme in three steps. First, in October 2023, he created Cole Capital, a purported real estate investment firm that was, in fact, a vehicle for his fraudulent scheme. (Criminal Case Dkt. 2 ¶ 2.) Second, on or about November 1, 2023, and November 2, 2023, Larmore spent more than $775,000 buying tens of thousands of cheap, short-dated, out-of-the-money WeWork call options—the vast majority of which were set to expire on November 3, 2023, at 4:00 p.m. eastern time—as well as hundreds

---

[3] The Government understands that Larmore's counsel have argued that in order to supposedly improperly affect this Court and the SEC Case, "the Defense believes the SEC contacted SDNY, which resulted in the Indictment being issued before a hearing could be held on the Defendant's Emergency Motion." (SEC Case Dkt. 112 at 4.) This claim is frivolous and wrong, and it lacks any good faith basis. Among other relevant facts, the Government notes that it scheduled time to present evidence to the relevant grand jury well before the Emergency Motion was filed. And as defense counsel well knows, not least from having received extensive discovery in the Criminal Case, there was nothing "miraculous" or "sudden" (*id.*) about the indictment of the defendant, and the indictment speaks for itself.

3

of thousands of shares of WeWork common stock, from certain of his brokerages that did not permit him to purchase options during that time. (*Id.*) Third, on November 3, 2023, Larmore caused a false and misleading press release to be published announcing that Cole Capital proposed to acquire 51% of all outstanding shares owned by minority shareholders of WeWork, which at the time was on the verge of bankruptcy, at a more-than-700% premium, in an all-cash offer worth more than $77 million. (*Id.*)

In fact, neither Larmore nor Cole Capital had the intent or ability to execute the announced tender offer; instead, Larmore intended for news of the tender offer to fraudulently inflate WeWork's share price and, thereby, vastly increase the value of Larmore's newly acquired WeWork call options and shares. (*Id.* ¶ 3.) However, although the publication of the press release containing the fake tender offer at approximately 5:12 p.m. eastern time on November 3, 2023, was followed by WeWork's share price increasing more than 150% in after-hours trading, that publication time was just over an hour after the vast majority of Larmore's WeWork call options had expired, worthless, at 4:00 p.m. eastern time. (*Id.* ¶¶ 4-5.)

### C. Procedural Posture

As described above, the SEC filed its complaint on November 28, 2023. A grand jury sitting in the Southern District of New York returned the Indictment against the defendant in the Criminal Case on March 12, 2024, charging the defendant with tender offer fraud (Count One) and securities fraud (Count Two). On March 14, 2024, the defendant was arrested, and the Indictment was unsealed. The Criminal Case has been assigned to United States District Judge Paul A. Engelmayer. The parties appeared before Judge Engelmayer on March 19, 2024, for an initial pretrial conference, and at that conference Judge Engelmayer set a trial date of October 15, 2024 in the Criminal Case. (*See* Criminal Case Dkt. 12.) Also on March 19, 2024, Judge Engelmayer entered a protective order for discovery in the Criminal Case, with the consent of the defendant, and the Government has already produced a significant volume of discovery materials to the defendant in the Criminal Case. (*See* Criminal Case Dkt. 11.) The next status conference is scheduled for May 15, 2024. (*See* Criminal Case Dkt. 12.)

### **ARGUMENT**

The Government's requests to intervene and for a stay of discovery in this civil action should be granted. If civil discovery were to proceed at this time, there would be a risk of significant interference

with the Criminal Case. The requested stay would not prejudice any of the parties to this civil action; would prevent the circumvention of important limitations on criminal discovery; would preserve judicial economy because many of the issues presented by the civil action will be resolved in the Criminal Case; and would serve the interests of both third parties and the public.

### I. The Government Should be Granted Permission to Intervene

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, anyone may intervene as of right in an action when the applicant "claims an interest relating to the property or transaction that is the subject of the action" and the applicant "is so situated that 'disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests. . . .'" Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." Rule 24 "traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). The Government respectfully submits that its application satisfies both provisions, given the effect this civil proceeding would have on the Criminal Case and the identity of claims and facts between the parallel actions.

Intervention also is warranted because the Government's interests in upholding the public interest in enforcement of the criminal laws cannot be protected adequately by the existing parties in this civil litigation, none of whom represent the Government's interests with respect to the investigation and enforcement of federal criminal statutes. *See Bureerong v. Uvawas*, 167 F.R.D. 83 (C.D. Cal. 1996) ("[T]he Government's prosecutorial and investigative interest is not adequately protected by any of the civil parties . . . . Clearly neither the plaintiff nor the defendants have this identical interest.").

Accordingly, the Court should permit the United States to intervene for the limited purpose of seeking a stay of proceedings.

### II. The Court Should Stay Discovery in the SEC Case

A district court has discretion to stay civil proceedings when it is in the "interests of justice." *Keating*, 45 F.3d at 324. For the application and evaluation of that standard, the Ninth Circuit generally considers "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspects of the proceedings may impose on defendants; (3) the convenience of the court in the management of its

cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; . . . (5) the interest of the public in the pending civil and criminal litigation; and (6) the defendant's Fifth Amendment rights." *SEC v. Nicholas*, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008) (quoting *Keating*, 45 F.3d at 324-25). Each of the factors considered in the Ninth Circuit supports—or does not counsel against—staying discovery here.

1. The Requested Stay Would Not Prejudice Plaintiff

The requested stay would not unduly delay the expeditious resolution of the SEC's claims. The requested stay is for a limited duration—until the conclusion of the criminal case. At that time, the stay would be lifted and the parties would have an opportunity to engage in full discovery. *See, e.g., Baker v. SeaWorld Entertainment, Inc.*, No. 14 Civ. 2129, 2018 WL 1726534, at *3 (S.D. Cal. Apr. 10, 2018) (granting stay of discovery in securities class action where the government sought stay limited to a defined period of time). Indeed, here, not only is the requested stay for a defined, limited duration, but the trial in the Criminal Case also has been set for fewer than seven months from now, in October 2024. (*See* Criminal Case Dkt. 12.)

A judgment in the criminal case also may streamline the issues for resolution in the SEC Case, and at a minimum likely will limit the issues before this Court in the SEC Case. *See Bureerong*, 167 F.R.D. at 87 ("[C]ommon factual questions may be conclusively determined in the criminal action [that] would pare down the issues to be determined in the civil case, and serve the interests of justice of judicial economy by narrowing the focus of the action to the benefit of the litigants."). Accordingly, this factor weighs in favor of finding that the plaintiff will likely not be prejudiced by the proposed stay.

2. The Requested Stay Would Neither Prejudice Nor Burden the Defendant

*Keating* also directs courts to consider "the burden which any particular aspect of the proceedings may impose on defendants." 45 F.3d at 325. Here, the defendant has, through counsel, declined to advise the Government regarding his position on the Government's request for a stay of discovery.[4]

---

[4] Specifically, on or about March 18, 2024, and again on or about March 22, 2024, the Government advised counsel to the defendant in the Criminal Case, who also represents the defendant in the SEC Case, that the Government anticipated seeking a stay of the SEC Case and sought the defendant's position. Counsel declined to provide a position, including in a written response to the Government on or about March 22, 2024.

6

1    If the defendant consents to a stay, that would weigh strongly in favor of finding that the stay
2  neither prejudices nor burdens the defendants.  Even were the defendant to object to a stay of discovery,
3  however, the Court nevertheless should grant the Government's request for a stay because the defendant
4  would not be prejudiced or burdened by a stay of discovery for a limited duration.  The defendant would
5  not lose any opportunity for discovery in the SEC Case, because "'so far as preparation for trial in the
6  civil action is concerned, appropriate opportunities for discovery can be allowed when the stay is lifted.'"
7  *SEC v. Downe*, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *13 (S.D.N.Y. Jan. 26, 1993) (*quoting SEC
8  v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988)).  And even to the extent the criminal case does not streamline
9  the need for discovery or resolution of issues in the SEC Case, the defendant will be entitled to take
10 whatever discovery the civil rules permit after resolution of the criminal case.

11   A temporary stay also would not deprive the defendant of the ability to vindicate his name or to
12 vigorously defend himself against the allegations in both the SEC Case and the Criminal Case; he will be
13 able to do so with respect to the SEC Case through motion practice even while a stay of discovery is in
14 place and to continue to do so when the stay is lifted—and any such generalized concern would be a
15 minor consideration in any event.  Additionally, because of the pending criminal charges against
16 defendant Larmore, failure to stay the SEC Case would impose a burden on the defendant wherein he
17 would be forced to choose between invoking his Fifth Amendment privilege and defending himself
18 through his own testimony in the SEC Case while the Criminal Case is pending.  Far from prejudicing
19 the defendant, therefore, the requested stay would in fact benefit the defendant.

20       3.   The Convenience of the Court and Efficient Use of Judicial Resources Favor a Stay

21   The third *Keating* factor is "the convenience of the court in the management of its cases, and the
22 efficient use of judicial resources."  45 F.3d at 325.  Here, considerations of judicial economy weigh in
23 favor of granting a stay of discovery in this case.  Courts have a strong interest in the efficient resolution
24 of both the criminal and civil cases.  Issues common to both cases can be resolved in the criminal
25 proceeding, thereby simplifying the civil action—and here, as described above, key issues in the SEC
26 Case are essentially identical to issues in the criminal case.  *See Nicholas*, 569 F. Supp. 2d at 1070 (noting
27 that where there is a "high degree of overlap and interrelatedness of the [criminal and civil] cases, dual
28 litigation does not serve the interests of efficiency or judicial economy").

7

In addition, as described above, the process of the Criminal Case and the criminal trial likely will streamline the issues and discovery disputes in the civil case, and could result in the resolution of, or narrowing of the issues of, the SEC Case. If the defendant is convicted in the criminal case, the judgment will preclude re-litigation of certain issues; if he is acquitted, that result could meaningfully affect the process and disposition of the SEC Case.

As a general matter, "considerations of judicial economy weigh most strongly in favor of staying a civil proceeding or aspects of the civil proceeding when a parallel criminal proceeding is pending at the same time and involves overlapping issues." *SEC v. Christian Stanley, Inc.*, No. 11 Civ. 7147, 2012 WL 13009158, at *5 (C.D. Ca. Sept. 6, 2012). That is because "a stay may increase efficient use of judicial resources through the application of collateral estoppel." *Id.*; *see also Nicholas*, 569 F. Supp. 2d at 1071 ("collateral estoppel in the criminal case may expedite the resolution of the civil case"); *Bureerong*, 167 F.R.D. at 87 ("some common factual questions may be conclusively determined in the criminal action," which "would pare down the issues to be determined in the civil case, and serve the interests of judicial economy by narrowing the focus of the action to the benefit of the litigants"). If the criminal case "were to result in a criminal conviction, collateral estoppel may resolve common issues between the proceedings, thereby streamlining the civil proceeding." *Christian Stanley*, 2012 WL 13009158, at *5.

Accordingly, because the outcome of the Criminal Case could directly affect the conduct, scope, and result of the SEC Case, this factor favors the Government's application.

4. <u>The Interests of Persons Not Parties to the SEC Case Weigh in Favor of a Stay</u>

The Court also should consider "the interests of persons not parties to the civil litigation." *Keating*, 45 F.3d at 325. Here, the interests of witnesses and third parties weigh strongly in favor of a stay. The discovery process in the SEC Case may well involve voluminous discovery requests to witnesses and entities, subjecting them to expansive discovery demands that may be obviated or narrowed by the outcome of the parallel Criminal Case. Witnesses in the parallel Criminal Case could also be subject to interviews and/or deposition testimony in the SEC Case, all with the prospect that they must prepare further to testify in the criminal trial in October 2024. Such preparation entails no small expenditure of time and resources by witnesses and litigants and would distract from the parties' ability to prepare for the criminal trial and would be an excessive and unnecessary burden upon third parties.

1    Third parties would also be prejudiced by Larmore's potential use of the civil discovery rules to improperly obtain discovery in connection with the criminal case. Costs and burdens upon third parties in connection with the Civil Case may very well be eliminated, reduced, and/or streamlined as a result of the processes and outcome of the Criminal Case—and it is only a relatively short time, until trial in October 2024, until the realization of such benefits to third parties.

5. <u>The Interests of the Public Weigh in Favor of the Requested Stay</u>

The fifth *Keating* factor is "the interest of the public in the pending civil and criminal litigation." 45 F.3d at 325. This factor, too, weighs heavily in favor of a stay.

As a general matter, the Ninth Circuit gives "substantial weight" to the "public interest in law enforcement" when balancing against the public interest in prompt resolution of civil claims. *Bureerong*, 167 F.R.D. at 87 (quotation omitted).

Indeed, as the court in *Nicholas* observed:

> The criminal case is of primary importance to the public, the Defendants, and the Court. . . . The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers. That interest is best served by resolving the criminal case in the most expeditious manner possible. The criminal case is also of greater relative importance to the named Defendants.

569 F. Supp. 2d at 1072 (citation omitted). This same is as true—if not more so—here. The Criminal Case is proceeding expeditiously, with significant discovery already provided to the defendant just days following his indictment and arrest, and with a trial scheduled for only just more than six months from now. The public interest in best served by a prompt and unimpeded resolution of the Criminal Case.

Moreover, as the court in *Nicholas* also observed, the Government and the public have an interest in ensuring that the "integrity and truth-seeking function of the criminal [discovery] process" is not subverted. *See id*. Thus, it is critical to the Government's and the public's interests that civil discovery is not used to circumvent the well-founded restrictions that pertain to criminal discovery—restrictions that, *inter alia*, preserve the truth-seeking functions of the criminal process by restraining the ability of criminal defendants to tailor testimony, suborn perjury, manufacture evidence or intimidate witnesses.

9

*Id.* at 1070 (the criminal rules were "purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witnesses from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment"); *see also, e.g.*, *United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness' statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial").

It is therefore necessary to stay discovery in this proceeding in order to prevent the civil discovery rules from being subverted into a device for improperly obtaining discovery in the criminal proceeding. Indeed, the rationale underlying a stay is even stronger in case where the defendants have been indicted, given that, as noted above, a defendant in a charged criminal case will likely invoke his Fifth Amendment rights in the civil case and not participate in the very civil discovery process he seeks to use affirmatively. *See, e.g.*, *Nicholas*, 569 F. Supp. 2d at 1070 (noting when granting full stay that "[t]he specter of parties and witnesses invoking their Fifth Amendment rights would render discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the defendants"). A denial of the Government's requested stay would result in asymmetrical discovery in this case, pursuant to which the defendant would be able to obtain statements from relevant witnesses through depositions and use other discovery mechanisms such as requests for admission and interrogatories to obtain information from the SEC, while the SEC would be unable to use any of these discovery mechanisms to obtain information from the defendants because of their likely assertion of Fifth Amendment rights. Such asymmetry is both unfair and a circumvention of the criminal discovery rules that govern when criminal defendants are entitled to obtain prior statements of the Government's trial witnesses. *See* 18 U.S.C. § 3500(b) (prior statements of Government witnesses must be made available after the witnesses have testified on direct examination).

In order to avoid circumvention of the criminal discovery restrictions, including the provisions that are designed to prevent defendants from tailoring their testimony and obtaining asymmetrical discovery, and because the defendants will not in any way be prejudiced in preparing and defending themselves, this factor weighs in favor of the Government's application.

6. <u>Larmore's Fifth Amendment Rights</u>

Finally, *Keating* directs the consideration of the extent to which the defendant's Fifth Amendment rights are implicated. *See* 45 F.3d at 325-26. It is unknown whether Larmore will ultimately elect to invoke the Fifth Amendment when he sits for deposition testimony in the SEC Case. However, as described above, the requested stay would also eliminate a potential burden on the defendant—namely, having to choose between invoking his Fifth Amendment privileges in the SEC Case, which could be used against him in the SEC Case, and answering the complaint, responding to discovery, and testifying (whether via deposition or otherwise) in the SEC case, which statements and testimony could be used against him in the Criminal Case. *See, e.g.*, *Nicholas*, 569 F. Supp. 2d at 1073 ("the Court has a substantial interest in protecting [a civil defendant's] right to a fair trial in the criminal case"). Accordingly, this final factor also weighs in favor of a stay.

*          *          *

In sum, and as set forth above, the Government has requested a stay of discovery proceedings in this action; the SEC does not object to the stay; there is considerable overlap between the parallel proceedings; charges have been filed in the Criminal Case, pretrial proceedings are underway, and a prompt trial date already has been scheduled; there is no prejudice to the parties from the requested stay; judicial economy is ensured by the requested stay; there is a strong public interest in expeditiously resolving the criminal case, and in preventing the civil discovery rules from being used to improperly obtain discovery in the criminal case; and considerations of the defendant's Fifth Amendment rights similarly support the issuance of the requested stay. Accordingly, the balance of the *Keating* factors overwhelmingly favors a stay of discovery. A proposed order is attached as Exhibit A for the Court's consideration.

**CONCLUSION**

For the reasons set forth above, the Government respectfully requests that its application to intervene and for a stay of discovery in this proceeding be granted. The Government is prepared to submit

//

//

//

11

updates to the Court on the status of the Criminal Case on an annual or semiannual basis, or on any schedule the Court directs, in order for the Court to assess whether the requested stay remains appropriate.

Date: March 31, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney
Southern District of New York

_____
ALEX ROSSMILLER
JUSTIN V. RODRIGUEZ
Assistant U.S. Attorneys
Southern District of New York
26 Federal Plaza, 38th Floor
New York, NY 10278
Telephone: (212) 637-2200

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2024, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF systems, which will provide electronic mail notice to all counsel of record.

ALEX ROSSMILLER
Assistant U.S. Attorney