ARCHER  &  GREINER,  P.C.
1211 Avenue  of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish[1]
Harrison H.D. Breakstone[2]
Email:  akadish@archerlaw.com
            hbreakstone@archerlaw.com

*Counsel for Allen D. Applbaum as Receiver*

## IN  THE  UNITED  STATES  DISTRICT  COURT

## FOR THE  DISTRICT  OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission, | Case No. CV-23-02470-PHX-DLR |
| Plaintiff, | **NOTICE  OF FILING  OF ARCITERRA  RECEIVER'S SECOND  STATUS  REPORT** |
| v. | |
| Jonathan  Larmore, et al., | |
| Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL  Investments,  LLC, | |
| Relief Defendants. | |

---

[1]  Admitted  *pro hac vice.*
[2]  Admitted  *pro hac vice.*

Allen D. Applbaum, as receiver for ArciTerra Companies, LLC, and related entities, by and through his counsel, Archer & Greiner, P.C., hereby files this *Notice of Filing of ArciTerra Receiver's Second Status Report,* as follows:

1.      Filed herewith, pursuant to paragraph 41 of the *Order Appointing Receiver, Freezing Assets, and Imposing Litigation Injunction* [ECF No. 154], is the *ArciTerra Receiver's Second Status Report.*

Dated:  August 20, 2024

ARCHER & GREINER, P.C.

By: _____
        Allen G. Kadish[1]
        Harrison H.D. Breakstone[2]
        1211 Avenue of the Americas
        New York, New York 10036
        Tel: (212) 682-4940
        Email: akadish@archerlaw.com
                     hbreakstone@archerlaw.com

*Counsel for Allen D. Applbaum as Receiver*

229260534 v1

2



# ArciTerra Receiver's Second Status Report

**Case No. 2:23-cv-02470-PHX-DLR**

**United States District Court for the District of Arizona**

August 20, 2024



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

## RECEIVER'S SECOND STATUS REPORT

Allen D. Applbaum, in his capacity as Receiver (the "Receiver") of the ArciTerra Companies, LLC; ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisors, LLC; and Cole Capital Funds, LLC, in United States Securities and Exchange Commission v. Jonathan Larmore, et al, Defendants, and Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC, Relief Defendants (together the "Defendants"), pursuant to the to the *Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction* [ECF No. 77], *Temporary Restraining Order* [ECF No. 78] and the *Order Appointing Receiver and Freezing Assets and Imposing Litigation Injunction* [ECF No. 154] (collectively the "Receivership Order") respectfully files his Second Status Report, covering the period from May 1, 2024 through July 31, 2024. The Receiver previously filed a First Status Report on June 7, 2024 (the "First Status Report").

The purpose of the Second Status Report is to provide the Court with a report and accounting of Receivership Assets, as well as:

- A summary of the operations of the Receiver.
- The amount of cash on hand, the amount of administrative expenses, and the amount of unencumbered funds in the Receivership estate.
- A schedule of the Receiver's receipts and disbursements.
- A description of known Receivership Assets.
- A description of liquidated and unliquidated claims against, and held by, the Receivership Estate and approximate valuations of claims.
- The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.
- A recommendation on whether to modify the list of Receivership Entities.
- Additional facts pertinent to the Receiver's efforts to operate the ArciTerra Entities, and the efforts to make investors and creditors whole.

**This Second Status Report represents information for the period specified and as of the date submitted. This Second Status Report draws no actionable conclusions beyond those, if any, as may expressly be stated herein. No direct relief is sought before the Court against anyone at this time. The Receiver intends to continue his activities and reserves all rights to amend or supplement the information set forth herein and to assert the rights of the Receivership as against any party, as may be appropriate.**

**StoneTurn**

United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

# Table of Contents

I.   Background ..................................................................................................................... 5

   A.   Procedural Background ................................................................................................ 5

   B.   Executive Summary ..................................................................................................... 6

II.  Actions Taken by the Receiver During the Reporting Period........................................... 8

   A.   Notice of Receivership .................................................................................................. 8

   B.   Website/Ongoing Communications ............................................................................... 8

   C.   Litigation and Third-Party Claims ................................................................................ 9

   D.   Receivership Operations .............................................................................................. 9

      i.    Bank Accounts and Cash Balances .......................................................................... 9

      ii.   Cash Management .................................................................................................. 14

      iii.  Vendor Management ............................................................................................... 15

      iv.   Retention of Tax Accounting Firm ......................................................................... 16

      v.    Commercial and Residential Property Operations ................................................. 16

      vi.   Property Management ............................................................................................. 17

   E.   Record Preservation and Review ............................................................................... 19

      i.    Physical Documents ............................................................................................... 19

      ii.   Document Review Process ...................................................................................... 19

   F.   Investor Funds Analyses ............................................................................................ 20

      i.    Commingling of Investor Funds and Intercompany Loans ..................................... 21

      ii.   Preliminary Observations from the Investor Funds Analyses ................................. 26

      iii.  Additional Observations ......................................................................................... 26

III. Financial Status ............................................................................................................. 30

   A.   Cash on Hand – Receivership Assets ......................................................................... 30

   B.   Schedule of Receiver Estate Fund Receipts and Disbursements ................................ 31

   C.   Amount and Nature of Accrued Administrative Expenses .......................................... 32

IV.  Receivership Entities..................................................................................................... 32

V.   Receivership Assets ...................................................................................................... 33

   A.   Commercial & Residential Entities ............................................................................. 33

      i.    Commercial Properties ........................................................................................... 33

      ii.   Residential Properties ............................................................................................ 42

**StoneTurn**

United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

B.   Other Assets ................................................................................................... 48

VI.  Claims ................................................................................................................. 50

A.   Investor Claims ............................................................................................... 50

B.   Vendor Claims ................................................................................................ 50

C.   Potential Liabilities to Creditors and Claims Against Parties .......................... 50

i.    American Express ....................................................................................... 50

ii.   Claim to Airplane Proceeds ........................................................................ 51

iii.  Litigation Claims of the Receivership ......................................................... 52

VII. Future Actions and Recommendations ........................................................... 52



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

# I. Background

## A. Procedural Background

1. On December 21, 2023, Allen D. Applbaum was appointed Receiver in United States Securities and Exchange Commission v. Jonathan Larmore, et al. (No. 2:23-cv-02470-PHX-DLR) for the receivership estate of the Receivership Entities (the ArciTerra Funds, the Receivership Defendants, and the known and unknown Affiliates of the Receivership Defendants as defined in ECF No. 154) (the "Receivership Estate"), including the Receivership Assets. The Receivership Order authorizes the Receiver to:[1]

   a. Preserve the status quo to enable the Receiver to perform the duties specified hereunder.

   b. Ascertain the financial condition of the Receivership Entities and Receivership Assets (as defined in the Receivership Order).

   c. Oversee and manage, consistent with the relevant governing documents and applicable law, the Receivership Entities and Receivership Assets.

   d. Prevent the encumbrance or disposal of the Receivership Assets contrary to the Receiver's mandate.

   e. Preserve the books, records, and documents of the Receivership Entities and Receivership Assets.

   f. Manage litigation by and against the Receivership, the Receivership Entities and the Receivership Assets.

   g. Propose for Court approval a fair and equitable distribution of the remaining Receivership Assets.

   h. Be available to respond to investor inquiries.

2. The Receiver, Allen D. Applbaum, is a Partner with StoneTurn Group, LLP ("StoneTurn"), and has more than 30 years of experience in litigation, investigations, business intelligence, corporate governance, receiverships, monitoring, and compliance. In connection with his management of high-profile investigations, Mr. Applbaum draws on his public and private sector experience to integrate investigative skills with technology and financial expertise to provide clients with seamless approaches to critical problems. Mr. Applbaum is a leading expert in independent monitorships and receiverships, providing oversight to the government, regulators, law enforcement and the judiciary. StoneTurn employs over 150 professionals who the Receiver can call upon for appropriate work.

3. The Receivership Order authorizes the Receiver to retain personnel and legal counsel, including personnel and professionals of StoneTurn and Archer & Greiner, P.C. ("Archer" or "Counsel"), to assist

---

[1] Receivership Order at pages 2-3.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

in carrying out his duties and responsibilities ("Receivership Team").[2] StoneTurn's team includes investigative, forensic accounting, real estate, forensic technology, data analytics, and corporate controller professionals. Archer's team includes restructuring, tax, corporate, litigation, and real estate professionals. Since the appointment, at the direction of the Receiver, the Receivership Team has engaged in numerous tasks to fulfill its duties and responsibilities as authorized and directed by the Court.

## B.  Executive Summary

4.  Following his appointment, the Receiver took immediate steps to assert control over the ArciTerra and Receivership Entities' books, records, and accounts, and to oversee their accounting and cash management processes. As described in the First Status Report, at the time of his appointment, the Receiver inherited a crumbling and neglected Receivership Estate, as Mr. Larmore largely abandoned ArciTerra in approximately April 2023, if not earlier. Mr. Larmore shut down ArciTerra's office in Arizona and fired most of the employees, leaving the bulk of the management of ArciTerra to two remote consultants (Blaine Rice and Dan DeCarlo), one non-employee part-time bookkeeper, and one non-employee part-time office staff person at Fishermen's Village in Punta Gorda, Florida.[3] Mr. Larmore officially resigned from his position as Manager of ArciTerra on September 1, 2023, and Messrs. Rice and DeCarlo left or stopped providing services to ArciTerra in October 2023 and December 2023, respectively.

5.  Since his appointment, the Receiver took the necessary steps to secure and preserve the Receivership Entities' information systems containing e-mails, electronic files, investor management, accounting systems, digital images of certain computers used by former ArciTerra employees, and incoming postal mail. The Receiver has taken action to preserve relevant, newly obtained ArciTerra records, including the digitization of records from offsite repositories.

6.  In addition, the Receiver, with the assistance of the Receivership Team, including a professional serving as the Receiver's Chief Financial Officer, asserted control over dozens of bank accounts and ensured that the appropriate signatories were installed, and others removed, as appropriate, and opened new bank accounts to facilitate financial oversight over the Receivership Entities.

7.  The Receiver developed an operating model, processes, and procedures to manage the operations and assets of the Receivership Estate, which include 257 ArciTerra-related entities and 40 commercial

---

[2] Receivership Order at ¶44.
[3] Deposition of Kathleen Bouet by the Securities and Exchange Commission on September 28, 2023, at page 101, lines 22 – 23.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

properties. The Receivership Team implemented financial and operational controls, as well as day-to-day business processes to support financial, risk management, and ongoing business operations.

8.  As of July 31, 2024, the Receiver continued to actively manage 40 commercial properties, including: collecting delinquent and previously ignored rents, as well as current rents from approximately 169 tenants across 15 states; attending to tenants' concerns and those of city, county and local governmental authorities; monitoring insurance coverage obtained on properties where coverage had lapsed prior to the commencement of the Receivership; and engaging with lenders and tax authorities to address delinquencies and achieve forbearances or pauses, and developing strategies for the maintenance or disposition of the properties. The Receiver is also evaluating 14 residential properties to determine the appropriate next steps.

9.  As a result of the Receiver taking control of the real estate portfolio, the Receiver designated the first three properties for disposition. The Receiver retained brokers, assembled due diligence materials, engaged with lenders, and sought and obtained Court approval for disposition of the assets. The Receiver successfully marketed and sold three significant properties satisfying over $24 million in delinquent secured debt and resulting in over $13 million in net proceeds to the Receivership Estate.

10. The Receiver and Receivership Team are, and have been, identifying and locating assets, liabilities, creditors, and investors in the Receivership Assets to work toward protecting the value of such assets to ultimately satisfy claims against and obligations of the Receivership Entities, where appropriate and in due course, and according to a plan to be presented to the Court at a later date.

11. The Receiver assumed more than 100 active litigation proceedings across the United States. These lawsuits include claims against ArciTerra, Mr. Larmore and Receivership Entities, and seek monetary awards, foreclosure, and other damages, highlighting the fact that there are competing interests for the limited Receivership Estate. These matters generally are stayed, consistent with the Receivership Order.

12. Since the filing of the First Status Report on June 7th, the Receivership Team has conducted interviews of additional former ArciTerra employees, contractors and consultants, independently, impartially, and consistent with the Receiver's objectives to understand and manage the Receivership Estate. The Receiver has also identified other relevant parties to interview.

13. The Receiver's ongoing work includes: analyzing the complex ownership structures related to various investment programs; analyzing related flow of funds between the many ArciTerra Entities (that could be identified to date) and assessing against the offering documents shared with brokers and potential investors; reviewing various fee calculations, payments, and allocation; searching for evidence to support transactions recorded in the books of the hundreds of ArciTerra Entities; analyzing the distribution of investor funds and "waterfall" calculations contemplated in investment offering



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

documents and operating agreements; identifying and analyzing intercompany transactions, investor communications, accounting records, bank statements, loan agreements, and forbearance agreements; and independently verifying the ownership and clear title to Receivership Assets and Receivership Entities through public record review and analysis. This analysis is complicated as most of the cash transactions involving the ownership structures flowed through and were commingled within ArciTerra Strategic Retail Advisors, LLC ("ASRA") which was not part of the investor fund structures. Since 2011, more than 20,000 cash and intercompany transactions have been recorded in ASRA's financial statements involving approximately 170 counterparty entities and relating to more than $2.5 billion in cash movements. The Receiver found instances where:

a.  The proceeds from certain loan refinancing transactions were disbursed to entities unrelated to the investment structures and not for the benefit of investors.

b.  No information was found to support whether, at the time when ArciTerra created "intercompany loans," the lending entity received equivalent value from the borrowing entity, or that the transactions were conducted at arm's length. It is also unclear whether such loans had economic substance.

c.  ASRA "intercompany loans" were refinanced through "roundtrip transactions" at the end of each quarter whereby the cash left the entity and came back to the same bank accounts the next day, if not the same day, increased by interest accrued for the previous quarter. The result was to increase the loan balance by the amount of accrued interest.

## II. Actions Taken by the Receiver During the Reporting Period

### A.  Notice of Receivership

14.  The Receiver, in compliance with 28 U.S.C. § 754, submitted for filing notices of the Receivership in approximately 88 federal districts in the country.

15.  The Receiver issued notice of the Receivership to relevant parties including known pending litigation parties.

16.  The Receiver also issued a press release on January 10, 2024, informing the public of his appointment as Receiver of the Receivership Entities.

### B.  Website/Ongoing Communications

17.  The Receiver continues to update the ArciTerraReceivership.com website with key court documents, news and updates, reports from the Receiver, answers to frequently asked questions, and other pertinent information including, in due course, the ability for investors, creditors and other stakeholders



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

to submit claims. The Receiver also monitors and responds to inquiries and questions submitted through the dedicated telephone number (212-430-3488) and email address (receiver@arciterrareceivership.com).

## C.   Litigation and Third-Party Claims

18.   The Receiver identified over 100 civil court cases pending against Receivership Entities, in which plaintiffs seek relief, including monetary damages. As set forth above, these cases highlight the risk that there are several interests competing for proceeds from the Receivership Entities. These litigations generally are stayed consistent with the Receivership Order. These matters, to date, generally fall under three categories: (i) personal injury claims, (ii) non-payment claims, and (iii) other actions. The Receivership Team continues to monitor these matters and new matters as they arise, to determine how the actions impact the Receiver's mission.

## D.   Receivership Operations

19.   In this section, the Receiver reports on the execution of cash, vendor, and property management functions to support the operations of the Receivership.

### i.   Bank Accounts and Cash Balances

20.   The Receiver actively manages commercial properties and operating businesses. As of July 31, 2024, there were 40 commercial properties (the sale of three closed on August 9, 2024) and two operating businesses. Of the 40 active, commercial properties in the Receivership Estate, 12 are single, or stand-alone, assets and 28 properties are cross-collateralized[4] and syndicated with Commercial Mortgage-Backed Securities ("CMBS") within multi-property portfolios. Below is a list of the 40 commercial properties. See **Exhibit 1** for a detailed list of all commercial and residential properties.

| Receivership Commercial Properties | | | |
|---|---|---|---|
| No. | Asset Group | ArciTerra Entity | Address |
| 1 | Single Property | Glenrosa 32, LLC | 3200 E. Glenrosa Avenue, Phoenix, AZ 85018 |
| 2 | Single Property | ATA Palencia St. Augustine FL, LLC | 7440 US Highway 1 North, St. Augustine, FL 32095 |
| 3 | Single Property | ATA Mercado St. Augustine FL, LLC | 155, 159, 163, 167 Palencia Village Drive, St. Augustine, FL 32095 |

---

[4] Cross collateralization is a financing strategy where a borrower uses more than one asset as collateral for a single loan. This can also involve using an asset that is normally used as collateral for one loan to secure multiple loans at once.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

| No. | Asset Group | ArciTerra Entity | Address |
|---|---|---|---|
| | | **Receivership Commercial Properties** | |
| 4 | REIT 3650[5] | AT Auburn Plaza IN II, LLC<br>AT Auburn Plaza Member, LLC | 506 North Grandstaff Drive,<br>Auburn, IN 46706 |
| 5 | REIT 3650 | ATA Lanier Fayetteville GA II, LLC<br>ATA Lanier Fayetteville Member | 320 W. Lanier Avenue,<br>Fayetteville, GA 30214 |
| 6 | REIT 3650 | AT HL Burlington IA II, LLC<br>AT HL Burlington Member, LLC | 3351 Agency Street,<br>Burlington, IA 52601 |
| 7 | REIT 3650 | AT Ville Platte LA II, LLC<br>AT Ville Platte Member, LLC | 915 E. LaSalle Street,<br>Ville Platte, LA 70586 |
| 8 | REIT 3650 | AT Altus Cumberland GA II, LLC<br>AT ALTUS Cumberland Member, LLC | 2997 Cumberland Circle,<br>Atlanta, GA 30339 |
| 9 | REIT 3650 | AT Sweden NY II, LLC<br>AT Sweden Member, LLC | 1651 Nathaniel Poole Trail,<br>Brockport, NY 14420 |
| 10 | REIT 3650 | AT Eastman GA II, LLC<br>AT Eastman Member, LLC | 970 Indian Drive,<br>Eastman, GA 31023 |
| 11 | REIT 3650 | AT New Lenox IL-Inline II, LLC<br>AT New Lenox-IL Member, LLC | 2021 East Laraway Road,<br>New Lenox, IL 60451 |
| 12 | REIT 3650 | AT Longview TX II, LLC<br>AT Longview Member, LLC | 711 Estes Drive,<br>Longview, TX 75602 |
| 13 | REIT 3650 | AT Seven Hills Aurora CO II, LLC<br>AT Seven Hills Aurora Member, LLC | 18511 E. Hampden Avenue,<br>Aurora, CO 80013 |
| 14 | REIT 3650 | AT Mayodan NC II, LLC<br>AT Mayodan Member, LLC | 131 Commerce Drive,<br>Mayodan, NC 27027 |
| 15 | REIT 3650 | AT PT Danville IL II, LLC<br>AT PT Danville Member, LLC | 22 West Newell Road,<br>Danville, IL 31082 |
| 16 | Rialto[6] | 5339 Elvis Presley Boulevard<br>Memphis TN, LLC | 5339 Elvis Presley Boulevard,<br>Memphis, TN, 38116 |
| 17 | Rialto | 700 North Grand Avenue Mt. Pleasant<br>IA, LLC | 700 North Grand Avenue,<br>Mt. Pleasant, IA 52641 |
| 18 | Rialto | 8001 Vaughn Road Montgomery AL,<br>LLC | 8001 Vaughn Road,<br>Montgomery, AL 36116 |
| 19 | Rialto | 601 Trenton Road McAllen TX, LLC | 601 Trenton Road,<br>McAllen, TX 78504 |
| 20 | Rialto | 60 Colonial Promenade Parkway<br>Alabaster AL, LLC | 60 Colonial Promenade Parkway,<br>Alabaster, AL 35007 |
| 21 | Rialto | 81 Jameson Lane Greenville AL, LLC | 81 Jameson Lane,<br>Greenville, AL 36037 |

---

[5] 3650 REIT Loan Servicing, LLC ("REIT 3650") is the special loan servicer for the lender, Wells Fargo Bank, National Association, as Trustee, on behalf of the registered Holders of CSAIL 2020-C19 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-C19. REIT 3650 properties include secondary "Member" entity owners, tied to a mezzanine loan on the portfolio made by Quadrant Mezz Fund, LP.
[6] Rialto Capital Advisors, LLC ("Rialto") is the special loan servicer for the lender, Deutsche Bank Trust Company as Trustee, for the registered Holders of WFRBS Commercial Mortgage Trust 2014-LC14, Commercial Mortgage Pass-Through Certificates, Series 2014-LC14.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

| No. | Asset Group | ArciTerra Entity | Address |
|---|---|---|---|
| | | | |

| No. | Asset Group | ArciTerra Entity | Address |
|---|---|---|---|
| 22 | Rialto | 752 South Andy Griffith Parkway Mt. Airy NC, LLC | 752 S. Andy Griffith Parkway, Mt. Airy, NC 27030 |
| 23 | Rialto | 1921 Gallatin Pike Nashville TN, LLC | 1921 Gallatin Pike North, Madison, TN 37115 |
| 24 | Rialto | 5450 US Highway 80 East Pearl MS, LLC | 5450 US Highway 80 East, Pearl, MS 39208 |
| 25 | Rialto | 412 Cross Oaks Mall Plainwell MI, LLC | 412 Cross Oaks Mall, Plainwell, MI 49080 |
| 26 | Rialto | 2513 E. North Street Kendallville IN, LLC | 2513-2521 E North Street, Kendallville, IN 46755 |
| 27 | Rialto[7] | ATA Hiram Square GA, LLC | 5157 Jimmy Lee Smith Parkway, Hiram, GA 30141 |
| 28 | KS State Bank | ArciTerra FD Greeleyville SC, LLC | 10000 US Highway 521, Greeleyville, SC 29056 |
| 29 | KS State Bank | ArciTerra VN Clarksville TN, LLC | 2135 Lowes Drive, Clarksville, TN 37040 |
| 30 | KS State Bank | ArciTerra VN Dickson TN, LLC | 100 Lowes Road, Dickson, TN 37055 |
| 31 | KS State Bank | ArciTerra WG Milwaukee WI, LLC | 8488 Brown Deer Road, Milwaukee, WI 53223 |
| 32 | KS State Bank | ArciTerra FD Bowman SC, LLC | 6711 Charleston Highway, Bowman, SC 29018 |
| 33 | Single Property | Walcent Elk/IN, LLC | 2719 Emerson Drive, Elkhart, IN 46514 |
| 34 | Single Property | 900 West Marion Avenue FL, LLC | 900 W. Marion Avenue, Punta Gorda, FL |
| 35 | Single Property | ArciTerra BP Olathe KS, LLC | 12051 S Renner Boulevard, Olathe, KS 66061 |
| 36 | Single Property | AT Olathe Outlot 5, LLC* | 15085 W 119th Street, Olathe KS 66602 |
| 37 | Single Property | AT New Lenox IL-Outlots, LLC* | E. Laraway Road, New Lenox, IL 60451 |
| 38 | Single Property | 1000 WEST MARION PG FL LLC* | 1000 W. Marion Avenue, Punta Gorda, FL 33950 |
| 39 | 925 W. Marion/ 960 W. Olympia | 925 W. Marion/960 W. Olympia FL, LLC* | 925 W. Marion Avenue, Punta Gorda, FL 33950 |
| 40 | 925 W. Marion/ 960 W. Olympia | 925 W. Marion/960 W. Olympia FL, LLC* | 960 W. Olympia Avenue, Punta Gorda, FL 33950 |

*Indicates a non-revenue producing entity*

[7] The Hiram Square property is not cross-collateralized with other Rialto properties listed.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

21. The Receivership Order provides that the Receiver is to "have exclusive control of, and be made the sole authorized signatory for, all accounts at any bank, brokerage firm or financial institution that has possession or control of any Receivership Assets" (Receivership Order IV 6. F.).

### a. Operating Businesses

22. The two operating businesses consists of Village Brewhouse, a restaurant and bar, and Simply Sweet, a retail candy store, and have separate management overseeing each business's day-to-day operations. Each business leases its premises from a third party. The Receiver provides each business with operational and financial oversight, including cash management. Village Brewhouse and Simply Sweet's bank accounts are designated for use by the respective entity's operations.

23. The Receiver is in communication with the Fisherman's Village lender's counsel regarding leases for Simply Sweet and Village Brewhouse which also includes an outdoor area known as Sunset Beach. Prior to the appointment of the Receiver, the Fisherman's Village lender reclaimed the property through the appointment of a preexisting state law receiver.

### b. Commercial Properties

24. Glenrosa 32, LLC ("Glenrosa") is an assisted living facility managed by a third-party operator, MorningStar Senior Living ("MorningStar"). Under its operating agreement, MorningStar is responsible for, among other activities, Glenrosa's cash management function. Under the operating agreement, the Receiver does not have the ability to access the operating funds of Glenrosa as they are restricted to the operation of the Glenrosa facility. The sale of the Glenrosa property and business was approved by the Court on July 10, 2024, and the Receiver closed on the sale on August 9, 2024.

25. The REIT 3650 properties are subject to a cash management agreement in connection with their lender agreement. Tenants send rent payments to a lockbox account controlled by the lender. Funds in the lockbox are regularly transferred into a cash management account, also controlled by the lender. While the Receiver does not receive the rent payments directly, it is still required to operate and manage the properties, including the payment of all operating expenses. To make payments to vendors of the REIT 3650 properties, the Receiver must submit to the lender an expense distribution request that identifies vendor invoices requiring payment. Once the lender provides the requested funds to the Receiver, the Receiver makes the vendor payments and provides confirmation of payment to the lender. As a result of this cash management process, the Receiver does not have excess funds available to the Receivership.

26. The Rialto properties were subject to a cash management agreement like REIT 3650 until February 2024, when the Receiver was able to negotiate with the lender of the Rialto REIT to allow the Receiver



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

to receive the rent payments directly from the properties' tenants. The funds received from tenant rent payments, however, are still restricted for use. Specifically, the Receiver must use the funds collected to pay operating expenses of the properties and loan interest and escrow charges to the lender. As the terms of the payment of interest and escrow charges are not finalized with the lender, the Receiver restricted the use of operating funds to the payment of operating expenses.

27. The KS State Bank portfolio consists of five properties, three of which are vacant. The remaining two are single-tenant properties. These tenants remit their rent directly to the lender, KS State Bank, and are responsible for paying all their respective operating expenses. As a result, there is no cash flow or cash balances for the Receivership Estate associated with these properties.

28. The remaining commercial properties in this group as of the close of the reporting period include Mercado Walk, Palencia Plaza, Bass Pro Shop, Walcent Elk, and 900 West Marion. The sales of Mercado Walk and Palencia Plaza were approved by the Court on July 10, 2024, and the Receiver closed on both sales on August 9, 2024.

29. The Receiver categorized the Receivership Assets into groups ("Asset Groups") for management and operating purposes. For instance, the Receiver grouped Receivership Assets that are members of the same real estate investment trust ("REIT") into a single Asset Group. The Asset Groups, and the revenue producing Receivership Assets that comprise each group, are as follows:

| Commercial Property Entities | | |
|---|---|---|
| **REIT 3650** | **RIALTO** | **KS State Bank Portfolio** |
| • AT Altus Cumberland GA II, LLC<br>• AT Auburn Plaza IN II, LLC<br>• AT Eastman GA II, LLC<br>• AT HL Burlington IA II, LLC<br>• AT Longview TX II, LLC<br>• AT Mayodan NC II, LLC<br>• AT New Lenox IL-Inline II, LLC<br>• AT PT Danville IL II, LLC<br>• AT Seven Hills Aurora CO II<br>• AT Sweden NY II, LLC<br>• AT Ville Platte LA II, LLC<br>• ATA Lanier Fayetteville GA II, LLC | • 1921 Gallatin Pike Nashville TN, LLC<br>• 2513 E North Street Kendallville IN, LLC<br>• 412 Cross Oaks Mall Plainwell MI, LLC<br>• 5339 Elvis Presley Blvd Memphis TN, LLC<br>• 5450 US Highway 80 East Pearl MS, LLC<br>• 60 Col. Promenade Pkwy Alabaster AL, LLC<br>• 601 Trenton Road McAllen TX, LLC<br>• 700 North Grand Ave. Mt Pleasant IA, LLC<br>• 752 S. Andy Griffith Pkwy Mt Airy NC, LLC<br>• 81 Jameson Lane Greenville AL, LLC<br>• 8001 Vaughn Road Montgomery AL, LLC<br>• ATA Hiram Square GA, LLC | • ArciTerra FD Bowman SC, LLC<br>• ArciTerra FD Greeleyville SC, LLC<br>• ArciTerra VN Clarksville TN, LLC<br>• ArciTerra VN Dickson TN, LLC<br>• ArciTerra WG Milwaukee WI, LLC |
| **Bass Pro Shop** | **Mercado/Palencia** | **StanCorp** |
| • ArciTerra BP Olathe KS, LLC | • ATA Mercado St. Augustine FL, LLC<br>• ATA Palencia St. Augustine FL, LLC | • Walcent Elk/IN, LLC<br>• 900 West Marion FL, LLC |
| Operating Business Entities | | |
| **Village Brewhouse** | **Simply Sweet** | **Glenrosa** |
| • VBH PG, LLC | • Fudge Is US PG, LLC | • Glenrosa 32 LLC |



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### ii.   Cash Management

30.   The Receiver's cash management activities are tailored to each Asset Group. Because certain Asset Groups are subject to lender cash management agreements, the receipt and disbursement of cash is based on agreements entered between the lenders and the Receiver. Below is a summary of the various cash management strategies implemented by the Receiver:

   a.   *REIT 3650.* Under a debt cash management agreement with the lenders of the REIT, the tenants remit rent payments to a lockbox account at PNC Bank controlled by the servicer of the REIT 3650 debt. As such, the Receiver does not receive funds from rent payments. As the Receiver is responsible for managing the vendor payables for this Asset Group, the Receiver must submit disbursement requests to the lender detailing the invoices requiring payment. The lender reviews and approves disbursement requests and remits funds to the Receiver to cover the disbursement requests. After receiving the funds from the lender, the Receiver pays the vendor invoices and records these transactions in the appropriate entity's general ledger. For each invoice payment, the Receiver provides the invoice and other supporting documentation (e.g., payment confirmations) to the lender. As a result of this arrangement, there is no excess cash flow to the Receiver from the operations of these commercial properties.

   b.   *Rialto REIT.* The Rialto REIT had a debt cash management agreement similar to REIT 3650 until February 2024. In February 2024, the Receiver began directing tenants to remit rent payments to the bank accounts established by the Receiver for each entity. Additionally, the Receiver is currently negotiating a forbearance agreement with the loan servicer and lender, whereby the rents received would be used to pay the lender interest on the outstanding debt and amounts necessary to cover escrow charges, such as property taxes, of the properties. Therefore, rental payments received are used to pay debt interest, property taxes, ongoing operating expenses, and outstanding accounts payable to the extent cash is available. As a result, there is minimal excess cash flow from the Rialto REIT properties.

   c.   *Non-REIT Commercial Property Entities.* For the non-REIT commercial property entities, the tenants remit rent payments to the Receiver who uses the rent receipts to pay day-to-day operating and necessary capital expenses. The Receiver established cash operating accounts for each entity and accounts for rental receipts and operating expenses at the individual entity level.

   d.   *Operating Business Entities.* Each of the three operating business entities – Glenrosa, Village Brewhouse, and Simply Sweet – have their own operating bank accounts that are used for the collection of business receipts (e.g., revenue) and payment of operating expenses. The



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

manager of Glenrosa, MorningStar, is responsible for all business processes (e.g., cash management, vendor management, accounting). The Receiver has access to and monitors the Glenrosa operating accounts and reviews monthly financial and operating reports from MorningStar. Village Brewhouse and Simply Sweet have individual operating bank accounts that the Receiver manages and monitors. Village Brewhouse and Simply Sweet pay many ordinary course vendors through automatic payments from the operating accounts, which the Receiver monitors. The Receiver approves and disburses non-recurring expenses (e.g., significant repairs and maintenance) and weekly payroll. The Receiver conducts weekly meetings with the general manager of each business and reviews the financial and operating reports on a regular basis.

31.    The Receiver opened bank accounts with Western Alliance Bank ("Western Alliance") to streamline and improve the cash management process. Western Alliance has significant experience working with receivership, bankruptcy, and other similar matters involving fiduciaries, provides its banking services at no cost to the Receiver. The Receiver is currently in the process of closing the remaining "legacy" ArciTerra accounts and transferring the remaining funds to the Receivership's Western Alliance accounts.

### iii.    Vendor Management

32.    The Receiver has implemented processes for identifying, reviewing, approving, and paying vendor invoices. The Receiver created an accounts payable ledger for each Asset Group to track vendor invoice details and payment information. For the REIT3650 and Rialto Asset Groups, non-utility invoices (e.g., landscaping, repairs and maintenance, property inspections, etc.) are initially received and approved by the respective Asset Group's property manager. The property managers send the approved invoices to AvidXchange, an accounts payable workflow platform, via email, where it is entered into the Receiver's accounts payable workflow process. Vendor invoices relating to properties without a third-party property manager and most utility invoices are sent to a dedicated "Receiver Accounting" email where they are reviewed prior to entry into the AvidXchange. Once an invoice is received by AvidXchange, the Receiver reviews the invoice for accuracy and completeness.  Invoices not properly prepared by the vendor are rejected and sent back to them for re-issuance. For example, the Receiver has rejected invoices that have been billed to the incorrect entity or lacked sufficient descriptions of work performed.  The Receiver reviews and approves all invoices for payment upon which the invoice is then recorded in the appropriate entity's accounting records.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### iv.    Retention of Tax Accounting Firm

#### a.    *Federal and State Income Tax Filings for ArciTerra Entities*

33.    As reported in the First Status Report, many ArciTerra entities did not file the required 2022 federal and state tax returns prior to the Receiver's appointment. The Receiver learned from discussions with ArciTerra's prior tax accountants, CliftonLarsonAllen ("CLA"), that ArciTerra did not provide CLA with the necessary documentation for the 2022 return and also did not pay CLA's outstanding fees, and as a result CLA did not complete or file ArciTerra's 2022 tax returns. The Receiver understands, however, that CLA prepared and sent the necessary 2022 Form K-1s to ArciTerra investors. See **Exhibit 2** for a list of the ArciTerra entities with outstanding 2022 federal and state tax returns provided to the Receiver by CLA.

34.    The IRS and various state agencies will likely assess significant penalties and interest fees against the ArciTerra entities for the unfiled 2022 federal and state tax returns. Furthermore, the lack of accurate and complete 2023 books and records require the Receiver to "reconstruct" the appropriate accounting records to prepare and file the 2023 tax returns.

35.    The Receiver researched, solicited and has received and reviewed proposals from CLA and two other national accounting firms to prepare and file the necessary federal and state tax returns for the years 2022 and 2023. The Receiver is finalizing the selection of one of the firms for retention. Once finalized, the Receiver's counsel will prepare an application to the Court to retain the tax firm.

#### b.    *2023 Corporate and State Business Registration Filings*

36.    ArciTerra did not make certain annual corporate business registration filings and the associated registration fee payments in 2023. The Receiver is continuing to identify the entities and states requiring registration filings for 2023 and will work with the respective state agencies to file and pay past-due registration fees.

### v.    Commercial and Residential Property Operations[8]

37.    The Receiver's work continues in accordance with the duties defined in the Receivership Order. The Receiver is managing the Receivership Assets and stabilizing cash flows from income-generating assets, including streamlining the rent collection process, paying real estate taxes and property vendors, negotiating forbearances, and analyzing properties and assets for disposition or further action.

---

[8] See **Exhibit 1** for a detailed list of all commercial and residential properties.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### a.   Commercial Property Operations

38.   The Receiver remains in contact with key commercial property stakeholders, including other receivers, to assist with the coordination of assets that were surrendered prior to the commencement of the Receivership. The Receiver is determining a disposition process for cross-collateralized properties in other receivers' control along with the Receivership's assets for the benefit of the Receivership and is engaged with lenders and lenders' counsel associated with the commercial properties to negotiate certain pauses or forbearances as appropriate and coordinate asset disposition strategy for each property.

39.   The decision to move forward with the disposition or sale of Receivership Assets is made by the Receiver, and if appropriate, upon consultation with the lender and lender's counsel, and subject to approval by the Court. The sale of any material Receivership Asset, including the engagement of any brokers for the sale of that asset, remains subject to Court approval. Since filing its First Status Report, the Receivership has auctioned, sold, and closed three properties including Mercado Walk and Palencia Plaza, in St. Augustine, FL, and Glenrosa in Phoenix, AZ. The Court approved the sales on July 10, 2024.  The net proceeds to the Receivership Estate on the sale of the three properties after debt payoffs, property taxes, commissions, and other prorations and adjustments totaled $13,592.000.70.[9]

### b.   Residential Property Operations

40.   As with the commercial properties, the Receiver's work with residential properties continues in accordance with the duties defined in the Receivership Order. The Receiver remains in contact with key residential property stakeholders such as mortgage lenders and their respective counsel to track the outstanding mortgage balances. No outstanding mortgage balances have been paid off since the Receiver's First Status Report. The process for disposition or sale of residential assets mirrors that described above for commercial assets.

## vi.   Property Management

### a.   Commercial Property Management

41.   Since issuing the Receiver's First Status Report, the Receiver's property management teams have continued to oversee the operations and maintenance services of the ArciTerra real estate portfolio per the requirements of the Receivership Order. The Receiver installed SVN Elevate ("SVN") and Cushman & Wakefield ("Cushman") as property managers and stabilized the commercial property portfolio; the

---

[9] See **Exhibit 3** for a detailed breakdown of the proceeds by sold property.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

Receiver put in place required service vendors, including fire safety, porter service, landscape maintenance, waste management, HVAC servicing to provide necessary property services and comply with municipal requirements. The Receiver enabled property management teams to address maintenance issues proactively rather than reactively. Dedicated property managers conducting recurring in-person visits and reporting to the Receiver have improved communication between the Receiver and tenants, increased trust in the Receiver's operations, and further strengthened relationships with tenants.

42.    Other key commercial property management activities undertaken since the Receiver's First Status Report include:

   a.  **Receivership Team Site Visits.** At the direction of the Receiver, the Receivership Team has conducted site visits to 31 commercial properties to survey property maintenance and engage with tenants regarding any concerns. There are currently nine commercial properties that the Receivership Team will visit in the coming weeks.

   b.  **Comprehensive Inspections and Maintenance.** Ongoing monthly evaluations and inspections by dedicated property managers are essential for maintaining the integrity and value of the properties.  The Receiver continues collaborating with SVN and Cushman to collect and review monthly site inspection reports for each property. Monthly calls are held to analyze property reporting data, focusing on vacancies, lost rents, maintenance concerns, poor property appearance, tenant issues, and future capital expenditures, which inform Receivership budget projections. The Receiver further continues its work with SVN and Cushman – as well as tenants, contractors, and vendors – to address necessary repairs due to past neglect. Examples include roof repairs, replacement or overhaul of HVAC systems and component equipment, parking lot repairs, exterior building repainting, hurricane shutter replacements, siding repairs, restoration of interior units damaged by plumbing water leaks, and signage repairs.

   c.  **Property Rehabilitation and Code Compliance Improvements.** Upon appointment, the Receiver discovered various code violations on several properties, and the Receiver retained contractors to perform work to correct abatement and code issues. A few examples of code violations that the Receiver cured include graffiti removal, parking lot improvements, exterior lighting repairs, resolution of signage issues, expired fire safety requirements, ADA noncompliance, and general maintenance previously neglected prior to the Receiver's appointment.

   d.  **Insurance Reviews.** Regularly performing insurance reviews for each property, and for the vendors servicing the properties, to ensure correct coverage amounts, insurer quality, and required additional insureds.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

e.   **Leasing Activity.** On August 2, 2024, the Receiver filed a Motion to Engage and Compensate Lease Brokers [ECF. No. 198] for several commercial properties. SVN and Cushman, as the retained property managers, will oversee leasing activities for select properties within their purview.

## E.  Record Preservation and Review

43.   Since issuing the Receiver's First Status Report in June 2024, the Receiver has been managing the physical documents including logistics and scanning for review purposes.

### i.   Physical Documents

44.   As referred to in the First Status Report, the Receiver located approximately 150 boxes of documents in the hangar for Mr. Larmore's former private airplane in Scottsdale. The Receiver inventoried the boxes, reviewed, indexed the box contents, and shipped boxes relevant to the Receiver's work to an e-discovery vendor. As a result, more than 39,000 documents were imaged and added to the document review platform. The Receiver is in the process of ensuring that such boxes will be sent to an Iron Mountain facility in the next month for storage.

45.   The Receiver sent members of his team to an Iron Mountain facility in Phoenix to inventory the contents of more than 400 boxes of ArciTerra documents.[10] During the May 2024 visit, the Receivership Team replicated the review process described above and as a result shipped 12 boxes of documents containing more than 5,000 documents which were imaged and added to the review platform and are available to review and assist with the analyses conducted by the Receivership Team and respond to documents inquiries from various parties.

### ii.   Document Review Process

46.   The Receiver continues to review documents based on specific search criteria to identify information relevant to the ongoing work of the Receivership Team. The Receiver is using the information from key documents to support and enhance the Receiver's understanding of the state of ArciTerra at the time of the Receiver's appointment and to assist the Receiver with managing the ArciTerra businesses.

---

[10] As stated in the First Status Report, prior to the Receiver's appointment, ArciTerra failed to pay over one year's worth of invoices to Iron Mountain (dating as far back as December 2022), which delayed the Receiver's access until May 2024 when the Receiver satisfied the outstanding debt to Iron Mountain.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

## F.  Investor Funds Analyses

47.  As reported in the First Status Report, Section II.2. of the Receivership Order places responsibility on the Receiver to, among other things, ascertain the financial condition of the Receivership Entities and Receivership Assets, and to propose for the Court a fair and equitable distribution of the remaining Receivership Assets. To meet this mandate, the Receiver's work includes gaining an understanding of the structures, identifying investors, lenders, and other creditors, evaluating fees, and assessing the overall flow of funds to third parties and between Receivership Entities and investment vehicles with third-party investors. In addition, these analyses may allow the Receiver to identify other potential sources of recovery for investors and creditors.

48.  The Receivership Assets include 11 private investment vehicles through which capital was raised from third-party investors (referred to throughout this Report as "Investor Funds"), generally through brokers, including:

- ArciTerra National REIT, Inc.
- ArciTerra Note Fund II, LLC
- ArciTerra Note Fund III, LLC
- ArciTerra REIT, Inc.
- ASI Belleville Crossing IL, LLC
- ASR Briargate & Linden IL, LLC

- ASR Centerville & Colony GA, LLC
- ASR Plainfield Village IN, LLC
- ASR Trinity Place TN, LLC
- ASR Wheatland IL, LLC
- ArciTerra Whitefish Opportunity Fund, LLC

49.  ArciTerra solicited funding for each of these Investor Funds through Private Offering Memorandums ("POMs") which provided prospective investors and brokers with the terms, disclosures, and other details regarding the investments.

50.  In addition to the analysis of the POMs, the Receivership Team reviewed and is reviewing contemporaneous documents, such as the operating agreements of investment structures; subscription agreements (i.e., investor purchase agreements); contemporaneous investor updates and communications; loan and forbearance agreements (when applicable); intercompany loan trackers; bank statements; general ledgers of investment and affiliated entities; and other financial records.

51.  For each of these Investor Funds, the Receiver has been and is in the process of analyzing:

   a.  The ownership structure and hypothetical waterfall calculations provided for in the POMs.
   b.  The specific investment strategy and/or planned acquisitions.
   c.  The calculation and payment of fees to managers and other parties.
   d.  The timing and amount of funds raised.
   e.  How ArciTerra deployed and invested investor money.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

    f.   Potential distributions, interest or dividends paid or owed.

    g.   Outstanding loans and/or other debt.

    h.   Outstanding loans payable and/or receivable.

    i.   Current investor capital balances and amount due to investors.

    j.   Identification of guarantees provided and source of guarantees.

52.    As of the date of this Second Status Report, the Receiver continues its review of the above-listed Investor Funds. Aspects of the Receiver's analysis are still in process. The Receiver continues to investigate the flow of investor money to and from the Investor Funds to assess what was received from and is owed to investors in the respective investment vehicles of the Receivership Entities and creditors. In addition, as he conducts these analyses, the Receiver is similarly in the process of considering whether potential causes of action could be brought against various parties, or claims to assets could be made from which the Receivership may realize additional recoveries for the benefit of creditors, investors and other stakeholders.

### i.   Commingling of Investor Funds and Intercompany Loans

53.    In the First Status Report, the Receiver discussed and illustrated ArciTerra's common practice of paying expenses based on their urgency, with cash from the bank account of an entity with sufficient funds at the time the payment was needed, without regard to which entity incurred the debt or whether the cash came from an account from operating entities or from one of the Investor Funds. The Receiver also discussed his observations regarding how the transfer of available cash from one entity to another was facilitated through "intercompany loans" between the entities borrowing and lending the cash from and through ASRA as counterparty.

54.    As explained by former ArciTerra Controller, Kathleen Bouet, in her September 28, 2023 deposition with the SEC, "*we'd have to review all of the bank accounts and see which properties had a surplus and then make the loan or the distribution, depending on how the ownership was, and pull the funds from those accounts to pay and cover...expenses.*"[11]

55.    ArciTerra commingled money from operating entities owned by certain investors in Investor Funds with money from ArciTerra entities or affiliates unrelated to the Investor Funds. ASRA is owned by JMMAL Investments LLC ("JMMAL"), MML Investments LLC ("MML"), and Spike Holdings LLC ("Spike"), which are all owned by Wawasee Family Investments LP ("Wawasee"). Marcia Larmore and Jonathan Larmore are the general partners of Wawasee. The POMs for the Investor Funds contain an organizational chart

---

[11] Deposition of Kathleen Bouet by the Securities and Exchange Commission dated September 28, 2023, at p. 145.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

that lays out the ownership, capital, and cash flow structures for each of the Investor Funds. The organizational charts in the POMs neither show any ownership by ASRA of any of the entities, nor include ASRA in the capital or cash flow structures disclosed within the Investor Fund offering documents.

56.  **Figure 1** below lays out, in a graphic, the various layers of ownership of the four largest Investor Funds (Note Fund II, Note Fund III, National REIT, and ArciTerra REIT) as of 2024 and demonstrates visually how intertwined the ownership of these entities is, and significantly that ASRA, through which the majority of the cash flowed, is not part of these funds' structure. The large number of intertwined entities involved in the four Investor Funds makes viewing the chart challenging and therefore a larger version of this chart is provided at **Exhibit 4**.

**Figure 1 – Simplified Chart of Select Investor Fund Structures, 2024**





United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

57.   **Figures 2** to **5** below similarly lay out, in visual form, the individual ownership structures for each of these four Investor Funds. Larger versions of these charts are attached as **Exhibit 5** to **Exhibit 8**.

Figure 2 – Note Fund II Ownership, 2024          Figure 3 – Note Fund III Ownership, 2024





United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

Figure 4 – National REIT Ownership, 2024



Figure 5 – ArciTerra REIT Ownership, 2024





United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

58.   The Receiver has not identified information to support whether, at the time when ArciTerra created the loans, the lending entity received equivalent value from the borrowing entity, or that the transactions were conducted at arm's length. It is also unclear whether such loans had economic substance. For instance, although ArciTerra recorded the loan balances when ArciTerra made a loan, it is not apparent that it gave consideration to whether the borrowing entity had the ability to repay the loan without receiving funds from other ArciTerra companies. In fact, the Receiver has found no evidence to date of that being the case. Furthermore, according to ArciTerra's former Controller, supporting documentation for the loans became sporadic or nonexistent in or around 2015, and did not contemplate any maturity date.

59.   This commingling process was documented in contemporaneous ArciTerra intercompany loan tracking spreadsheets reviewed by the Receiver. The resulting consequence of this commingling is reflected in ASRA's June 30, 2023 trial balance, as follows:

    a.   ASRA has outstanding intercompany loans due to or due from, over 42 entities and individuals.

    b.   There are 19 entities and individuals which owe ASRA over $52.6 million, and 23 entities and individuals to which ASRA owes over $108 million, including approximately $35 million to Glenrosa and ATG REIT RSC, which are entities within the Note Fund II, Note Fund III, and National REIT Investor Funds.

60.   The Receiver still has not identified any documented policy that would have explained how decisions were made to prioritize satisfying debts of certain entities or vendors, or other third parties, over making distribution to certain investors or how any such decisions would benefit investors.

61.   As reported in the First Status Report, the Receivership Team reviewed ArciTerra bank accounts and financial records for the years 2019 to 2022. The flow of money into and out of ASRA at the end of each quarter included ArciTerra's "refinancing" of the intercompany loans. The Receiver's review of this activity confirmed that the increases in loan balances were caused essentially by (1) an increase in the loan balances drawn to/from ASRA, and (2) the accrual of interest on the loan balances extended to or from ASRA. These "roundtrip cash transactions" were designed to record interest and add the interest to the loan balance.

62.   This analysis, combined with the determination of income and profit distribution or liquidation "waterfalls" from the various investment structures, will allow the Receiver to propose a distribution plan in due course, which is likely to take into consideration the impact of the commingling of funds. The commingling of so many entities' funds will likely affect the determination of how the Receivership Estate will seek to satisfy future claims, though the Receiver is not yet in a position to develop a proposal to address creditors or investors.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

63.   The Receiver's efforts to determine the amounts owed and available to distribute to investors are complicated by ArciTerra's practice of cash commingling. This practice has caused the Receiver to analyze many transactions to determine which entities, Investor Funds, and creditors the cash and/or assets belong. The volume of cash transactions in and out of ASRA since its inception is massive – ASRA's financial records show over 20,000 cash and intercompany transactions involving ASRA since 2011 across approximately 170 different entities and more than $2.5 billion in cash transactions. Accordingly, the Receiver is analyzing transactions based on, *inter alia*, their size and timing, to maximize the Receiver's ability to untangle the ASRA commingling.

64.   The Receiver is similarly in the process of considering whether this commingling, among other things, could give rise to potential causes of action or claims from which the Receivership may realize additional recoveries and which may also determine future distribution processes.

### ii.   Preliminary Observations from the Investor Funds Analyses

#### a.   *Fees Charged to the Investor Funds*

65.   As part of the Investor Fund analysis, the Receiver is in the process of identifying the basis for calculating the various fees contemplated in the POMs to the manager entities and other parties, or other contemporaneous evidence of the calculation of such fees. In those instances where the Receiver cannot locate evidence or information supporting the fee payments, the Receiver is reconstructing or reverse-engineering the basis for the fee calculation and/or fee payment.

66.   The Receiver is continuing to perform analyses of the general ledgers to assess and calculate what the entities have paid in management fees since their inception and how this compares to the allowable manager fees per the POMs. Although the Receiver's analysis is still ongoing, it appears that few management fees were recorded as expenses in the various investment fund entities, but rather as loans or investments. Additionally, if fees were recorded as loans or investments and not income or expenses, there may be income tax ramifications to be addressed.

### iii.   Additional Observations

#### a.   *Glenrosa*

67.   In connection with the sale of Glenrosa, the Receiver analyzed Glenrosa's historical cash flows and has prepared a draft distribution waterfall. A distribution waterfall analysis, or waterfall, can be defined as the method in which gains and proceeds are to be allocated and distributed between and among limited partners / investors, and general partners, and resulting from the realization of various events affecting an entity or fund (such as sale of assets, liquidation events, etc.). Such analyses are informed by the



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

terms of governing documents such as POMs, the operating agreements of entities in the chain of ownership structure, the satisfaction of various obligation (to creditors for example), the review of the financial statements of the entities and related historical financial transactions.

68.   At present, the capital ownership structure of Glenrosa is represented in **Figure 6** as follows:



Figure 6 – Glenrosa 32, LLC Capital Ownership Structure

69.   The Receiver's review of Glenrosa's historical cash flows included tracing and gaining an understanding of the flow of funds resulting from two separate refinancings of Glenrosa in 2017 and 2019. As part of the two refinancings, Glenrosa received over $10 million in cash proceeds. In both instances, however, ArciTerra ultimately transferred the majority of the cash proceeds from the refinancings (over $9 million of the approximately $10 million of proceeds) out of Glenrosa and into the ASRA commingling cycle, and from ASRA transferred out cash to hundreds of other entities unrelated to the Glenrosa investment and recorded such transfers as intercompany loans or capital distributions.

70.   In January 2017, Glenrosa received approximately $7.1 million in cash from a refinancing of which $3.5 million was returned from Glenrosa to National REIT as reimbursement of the principal plus interest of a $3 million cash guarantee National REIT provided in 2013.

71.   The Receiver identified an Excel worksheet dated January 31, 2017 in the ArciTerra SharePoint repository that reflects the intended cashflow associated with the pay down of the guarantee loan to National REIT. The spreadsheet suggests a specific plan to distribute the proceeds from the refinancing



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

funds to ASRA and others. None of these proceeds, according to this document, were to be used to pay investors. See **Figure 7** below.[12]

**Figure 7: Suggested Cashflow Associated with the Pay Down of the Loan to National REIT**

| | | | Cash Mapping: |
|---|---|---|---|
| CoBiz Wire | 3,029,508.17 | | |
| Thorofare | 4,126,937.46 | | |
| | 7,156,445.63 | | |
| **Less:** | | | **Cash Mapping:** |
| Nat'l REIT LP Principal | 3,000,000.00 | | |
| Nat'l REIT Interest | 542,191.78 | 3,542,191.78 | Glenrosa 32 $3.5MM P&I > Nat'l REIT LP $2MM Loan > Nat'l REIT ADV $2MM Loan > ASR Advisors |
| Michelle Larmore Loan Payment | 150,000.00 | | |
| Michelle Larmore Interest | 9,665.75 | 159,665.75 | ASR Advisors $160K Loan > JML Bus Consult $159.6K P & I > Michelle Larmore |
| Wawasee Fam Inv Principal | 66,974.00 | | |
| Wawasee Fam Inv Interest | 3,461.52 | 70,435.52 | ASR Advisors $70.4K P&I > Wawasee Fam |
| Fishville RE Taxes | 69,500.00 | | |
| Fishville Escrow | 50,100.00 | | |
| Fishville Cap EX | 128,000.00 | | |
| Fishville Payoff | 770,800.00 | 1,018,400.00 | ASR Advisors $1.02MM P > KLS Warsaw Inv In $1.02MM > Fish MGMT Ops $1.018MM > Fish Resort |
| CML Investments Principal | 190,000.00 | | |
| CML Investments Interest | 11,930.96 | 201,930.96 | ASR Advisors $201K P&I > CML Investments |
| Michelle Larmore Guarantee deposit | 100,000.00 | 100,000.00 | Glenrosa 32 $100K G.D. > Michelle Larmore |
| **Balance:** | 2,063,821.62 | | |

72.    The bank statements confirm that, following the transfer of approximately $3.5 million to National REIT, $3 million was transferred to ASRA and then out of ASRA to various entities unrelated to Glenrosa, including approximately:

   a.    $1,020,000 to ATA Fishville Resort.

   b.    $1,000,000 to AT Castleton IN.

   c.    $200,000 to CML Investments.

   d.    $150,000 to Michelle Larmore.

73.    An additional $3.4 million was also sent to ASRA from the Glenrosa refinancing proceeds. ASRA transferred out at least $2.9 million to nearly 30 different entities unrelated to Glenrosa in the days following receipt of the $3.4 million, including approximately:

   a.    $747,000 to Spike Holdings.

   b.    $677,000 to Seven Hills.

   c.    $249,000 to ArciTerra Companies.

74.    Consequently, of the $7.1 million of refinancing proceeds received by Glenrosa in January 2017, less than $3,200 remained in Glenrosa, and very little, if any, was returned to investors. In fact, in its

---

[12] 1.31.17 Payoff.xls.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

communications to noteholders of both Note Fund II and Note Fund III, dated June 30, 2017, ArciTerra informed noteholders that the January 2017 refinancing proceeds were used to "pay off the maturing construction loan and repay monies advanced by affiliates to complete the project," and that the proceeds were insufficient to warrant a capital distribution.

75. During June 2019, Glenrosa applied for an increase of an existing loan dating back to July 2018 and received $3.6 million in cash in June 2019 from Johnson Bank. Upon receipt of the $3.6 million, $3.55 million was immediately transferred to ASRA. From ASRA, the $3.55 million was transferred to approximately 40 different entities unrelated to Glenrosa, including approximately:

    a.  $651,000 to ArciTerra KLS Warsaw IN.

    b.  $553,000 to ArciTerra Companies.

    c.  $336,000 to Spike Holdings.

    d.  $175,000 to JML Business Consulting.

    e.  $165,000 to ASR Briargate & Linden.

    f.  $132,000 to ASR Seven Hills.

76. Again, the Receiver has not found that proceeds were distributed to investors. In addition, the Receiver, at this time, has not found contemporaneous evidence providing the reason for the transfers described above.

77. The Receiver continues to evaluate whether certain claims should be considered against various parties regarding the transfers ASRA made over time.

### b.   Mercado & Palencia

78. The Receiver has completed a preliminary distribution waterfall analysis informed by the review and evaluation of governing documents including POMs, operating agreements, flow of funds, and historical financial statements to identify and inform potential distribution methods and processes, in due course, to investors, creditors and other stakeholders. In addition, the Receiver is in the process of analyzing historical cash transactions between Palencia and Mercado and other parties to evaluate whether certain potential claims could be made against certain parties to recover assets, and to determine potential liabilities associated with both the Mercado and Palencia properties, as well as ASR Mercado Palencia FL.

### c.   ArciTerra Companies' American Express Bill Payments

79. ArciTerra maintained a master Business Platinum American Express ("AMEX") account with as many as 20 subaccounts, including accounts for Mr. Larmore, Michelle Larmore, Bridget Larmore, and other individuals. From January 2020 until at least July 2023, the AMEX bill was paid in full each month from



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

funds from the ArciTerra Companies account at KS Bank. During this period a total of approximately $7.2 million was paid to AMEX from the ArciTerra Companies account.

80.   The Receiver observed that ArciTerra established approximately $2.5 million of intercompany loans between Investor Fund entities and ASRA to obtain funds to pay the monthly ArciTerra AMEX billing statement.

81.   Generally, each month, immediately prior to the payment to AMEX from the ArciTerra Companies account, money was transferred from ASRA to ArciTerra Companies to fund the AMEX payment in whole, or in part. In many instances, ASRA "borrowed" the money it sent to ArciTerra Companies from an Investor Fund entity through an intercompany loan, as explained in paragraph 53 above.

82.   Between January 2020 and January 2023, the Receiver identified at least $2,498,800 of funds "loaned" by ATG REIT RSC and Glenrosa to ASRA used to pay ArciTerra's monthly AMEX bill. The Receiver reviewed the AMEX charges associated with the payments made with investor fund cash and did not identify charges specifically related to either ATG REIT RSC or its investment entities, or Glenrosa. The Receiver's review of the related AMEX statements for the periods in which Investor Funds were used to make payments did identify over $1.2 million of charges by Mr. Larmore and over $190,000 of charges by Michelle Larmore. The Receiver has not determined, at this time, how much of the charges were business related or personal charges.

83.   The Receiver is in the process of further evaluating the use of investor funds to pay the ArciTerra AMEX bills and whether the Receiver could bring claims against individuals or entities that received the benefit from the use of the investor funds.

## III.   Financial Status

84.   Below is a report of the cash balances of the Receivership Assets; the receipts, disbursements, and balance of the Receivership Estate's Fund; and administrative expenses of the Receivership.

### A.   Cash on Hand – Receivership Assets

85.   Below is a summary of the cash balances for the Receivership Assets as of July 31, 2024.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

|  | Restricted | Dedicated | Other |
|---|---|---|---|
| **Operating Businesses** |  |  |  |
| Village Brewhouse |  | $939,600 |  |
| Simply Sweet |  | $245,400 |  |
| **Commercial Properties** |  |  |  |
| Glenrosa | $577,800 |  |  |
| REIT 3650 | $737,700 |  |  |
| Rialto | $439,900 |  |  |
| KS State Bank Portfolio[13] |  |  | $0 |
| Single Properties |  |  | $635,100 |

86. See **Exhibit 9** for a summary of net change in cash balances by Asset Group for the period December 21, 2023, through July 31, 2024.

## B. Schedule of Receiver Estate Fund Receipts and Disbursements

87. The cash balance of the Receivership Fund as of July 31, 2024 was $115,124. The following is a schedule of the Receivership Fund's Receipts and Disbursements from May 1, 2024 through July 31, 2024:

---

[13] As discussed above, there are no cash flows associated with these properties as any rent payments are sent to the lender directly by the tenant and the tenants are responsible for paying all operating costs.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

| Receivership Fund Receipts & Disbursements<br>May 1, 2024 through July 31, 2024 | | | | |
|---|---|---|---|---|
| **Beginning Balance, May 1, 2024** | | | **$** | **36,408.16** |
| | | | | |
| *Receipts* | | | | |
| REIT 3650 carve-out for Receivership Fees & Expenses | $ | 33,333.00 | | |
| Sale of storage container by 900 W Marion Ave FL, LLC | $ | 500.00 | | |
| Proceeds from Abandonment Agreement and Transfer of Vessel M/Y Bbella owned by AT LC 87, LLC | $ | 60,000.00 | | |
| Total Receipts | | | $ | 93,833.00 |
| | | | | |
| *Disbursements* | | | | |
| Document/record storage and movement costs | $ | (12,993.49) | | |
| Software licensing fee | $ | (713.45) | | |
| Development cost for Investor and Creditor portal on Receivership's Website | $ | (1,410.00) | | |
| Total Disbursements | | | $ | (15,116.94) |
| | | | | |
| **Ending Balance, July 31, 2024 (unencumbered funds)** | | | **$** | **115,124.22** |

## C.  Amount and Nature of Accrued Administrative Expenses

88.   On May 15, 2024, the Receiver filed the First Application of Receiver for Allowance and Payment of Professional Fees and Reimbursement of Expenses for the Period December 21, 2024 through March 31, 2024 [ECF No. 165]. The Receiver filed the Notice of Request for Determination on the Papers Re: First Application of Receiver for Allowance and Payment of Professional Fees and Reimbursement of Expenses for the Period December 21, 2023 through March 31, 2024 [ECF NO. 201] with the Court on August 13, 2024.  We refer to the application for the requests therein.

## IV. Receivership Entities

89.   The Receiver continues to independently research and assess corporate entities associated with the Defendants, and as applicable, Relief Defendants, and their relevance to the Receivership Estate. In addition, the Receiver's efforts to identify corporate entities associated with and under the control of the Defendants that were not initially identified as Receivership Entities (Exhibits A and B to ECF No. 77) is ongoing. To date, the Receivership Team has identified approximately 100 previously undisclosed corporate entities affiliated with ArciTerra and/or Mr. Larmore, a small subset of which the Receiver is evaluating for addition to the Receivership Estate.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

90. The Receivership Team will continue to identify and assess previously unknown ArciTerra corporate entities and their holdings through public records and other research for their potential addition to the Receivership Estate.

# V. Receivership Assets

91. The Receiver is managing, preserving, and disposing of assets. Moreover, the Receiver continues to research Receivership Entities and the previously undisclosed entities to identify real property and other assets potentially of value to the Receivership Estate.

## A. Commercial & Residential Entities

### i. Commercial Properties

92. Below is the detail on the properties for which the Court has (1) approved the sale of the real properties, free and clear of all liens, claims, encumbrances and interest; and (2) granted related relief:

#### a. Palencia Plaza & Mercado Walk, St. Augustine, FL

| ArciTerra Entity | Address |
|---|---|
| ATA Palencia St. Augustine FL, LLC | 7440 US Highway 1 North, St. Augustine, FL 32095 |
| ATA Mercado St. Augustine FL, LLC | 155, 159, 163, 167 Palencia Village Drive, St. Augustine, FL 32095 |

93. ATA Palencia St. Augustine FL, LLC and ATA Mercado St. Augustine FL, LLC are Receivership entities that owned Palencia Plaza ("Palencia") and Mercado Walk ("Mercado"), respectively. Palencia and Mercado are multi-tenant commercial properties in St. Augustine, Florida. Palencia consists of one building with approximately 12,800 square feet of retail space. Mercado consists of two main buildings and an out lot with a total of 22,695 square feet of retail, restaurant, and medical space.[14]

94. On April 26, 2024, the Receiver filed its Motion for Sale of Palencia and Mercado [ECF No. 147] seeking approval of the retention of Marcus & Millichap and the proposed procedures for the sale of the properties through a public online auction process. The Court approved the bidding procedures and scheduled the auctions [ECF No. 172], which concluded on June 25, 2024.

---

[14] The Receiver discovered that, prior to appointment of the Receiver, ATA Mercado and ATA Palencia entered into Purchase and Sale Agreements in December 2023 to sell the Properties to an entity known as Good Harbor, LLC (the "Good Harbor PSAs"). Pursuant to the Good Harbor PSAs, Good Harbor proposed to purchase the Mercado Property for $3,480,000 and the Palencia Property for $2,450,000. The Good Harbor PSAs were contingent on, inter alia, additional due diligence and inspection by Good Harbor, and did not close prior to entry of the Receivership Order.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

95.   The initial reserve price for Palencia was set at $1,500,000. The property's online auction page garnered over 10,300 views, with 312 confidentiality agreements signed and 74 individuals ultimately approved to bid. 15 unique bidders placed 43 total bids during the auction. The final executed sale price of Palencia was $4,175,000, a 178.33% increase over the reserve price.

96.   The initial reserve price for Mercado was set at $3,500,000. The property's online auction page garnered 11,400 views, with 310 confidentiality agreements signed and 54 individuals ultimately approved to bid. 13 unique bidders placed 34 total bids during the auction. The final executed sale price of Mercado was $6,500,000, an 85.71% increase over the reserve price. Together, the Palencia and Mercado auctions yielded nearly three times what ArciTerra attempted to sell the properties for prior to the appointment of the Receiver.

97.   On July 10, 2024, the Court approved the motion to sell the Mercado and Palencia properties [ECF No. 191]. The Court determined that the offers received were the highest and best and that the sale was in the best interest of the Receivership Estate and its creditors. Both sales closed on August 9, 2024.

98.   Approximately $999,290 of the proceeds were paid to the lender, Assurity Life Insurance Company ("Assurity") to satisfy Palencia's outstanding loan balance. An additional $87,946 was allocated to cover Palencia's 2022 and 2023 unpaid property taxes. The Receivership Estate's proceeds on the sale of Palencia after payoffs, property taxes, commissions, and other prorations and adjustments totaled $2,888,016.28.

99.   Approximately $1,800,380 of the proceeds were paid to the lender, Assurity, to satisfy Mercado's outstanding loan balance. An additional $151,707 was allocated to cover Mercado's 2022 and 2023 unpaid property taxes. The Receivership Estate's proceeds on the sale of Mercado after payoffs, property taxes, commissions, and other prorations and adjustments totaled $4,207,257.55.

   *b.   Glenrosa 32, LLC, Phoenix, AZ*

| ArciTerra Entity | Address |
|---|---|
| Glenrosa 32, LLC | 3200 E. Glenrosa Avenue, Phoenix, AZ 85018 |

100.   Glenrosa 32, LLC ("Glenrosa") is a Receivership Entity that owned and operated "MorningStar at Arcadia," an assisted living and memory care facility operated and managed by MorningStar Senior Living ("MorningStar"), an operator of senior living facilities, in Phoenix, Arizona.

101.   On April 19, 2024, the Receiver filed its Motion for Sale of Glenrosa [ECF No. 134], seeking approval of the retention of Marcus & Millichap and the proposed procedures for the sale of the property and the business, including the approval of the sale to the Stalking Horse Bidder or such other bidder that



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

submits a higher and better offer at a public auction. The Court approved the Motion for Sale of Glenrosa and scheduled an auction [ECF No. 171], to be held on June 27, 2024, via Zoom.

102.  No additional bids were received during the public auction, and the sale was granted to the Stalking Horse Bidder at $28,250,000. On July 10, 2024, the Court approved the Motion for Sale [ECF No. 190], confirming that the Stalking Horse Bidder's offer received was the highest and best and that the sale was in the best interest of the Receivership Estate and its creditors. The sale closed on August 9, 2024.

103.  $21,381,010.34 of the proceeds were paid to the lender, Arizona Bank & Trust, to satisfy Glenrosa's outstanding loan balance.[15] The Receivership Estate's proceeds on the sale of Glenrosa after payoffs, property taxes, commissions, and other prorations and adjustments totaled $6,496,726.87.

104.  Below is detail on one property for which the Receiver has filed a motion with the Court to (1) approve the engagement of Marcus & Millichap Real Estate Investment Services as broker for the sale of the property; (2) approve the auction and bidding procedures for the sale of the property; and (3) grant related relief:

### c.  ATA Hiram Square GA, LLC, Hiram, GA

| ArciTerra Entity | Address |
|---|---|
| ATA Hiram Square GA, LLC | 5157 Jimmy Lee Smith Parkway, Hiram, GA 30141 |

105.  **Overview.** ATA Hiram Square GA, LLC ("Hiram Square") is a Receivership Entity that owns and operates a multi-tenant commercial property in Hiram, Georgia offering 27,930 square feet of retail space. Hiram Square is Rialto asset. The Rialto Asset Group contains 12 total cross-collateralized properties across 8 states totaling nearly 200,000 square feet of commercial space. Hiram Square is a Rialto asset, but it is not cross-collateralized with other Rialto properties under Receivership.

106.  **Lender Communications.** The Receiver continues to be in regular contact with the lender regarding stabilization, disposition, and loan servicing. The Receiver forwarded the filed Motion for Sale of the property to the lender and requested the final payoff amount.

107.  **Property Management.** SVN continues to manage the property. On August 2, 2024, the Receiver filed a Motion to Engage and Compensate Lease Brokers, which included Hiram Square.

108.  **Asset Disposition or Further Action.** On August 14, 2024, the Receiver filed its Motion for Sale of the Hiram Square property [ECF No. 202] seeking approval of the retention of Marcus & Millichap and the

---

[15] Arizona Bank & Trust provided two loans: an initial $20,000,000 loan on July 27, 2018, and an additional $3,600,000 loan on June 24, 2019, bringing the total to $23,600,000. Both loans were secured by the same Deed of Trust and Assignment of Leases and Rents.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

proposed procedures for the sale of the property through a public online auction process. If approved by the Court, the auction is scheduled for October 28-30, 2024.

109. Below is detail on one property for which the Receiver has filed a motion with the Court to (1) appoint and approve appraisers for the Receiver's proposed private sale of the property; (2) approve the private sale of the property free and clear of all liens, claims, encumbrances and interests; and (3) grant related relief:

*d.   1000 West Marion PG FL LLC, Punta Gorda, FL*

| ArciTerra Entity | Address |
|---|---|
| 1000 WEST MARION PG FL LLC | 1000 W. Marion Avenue,<br>Punta Gorda, FL 33950 |

110. **Overview.** 1000 WEST MARION PG FL, LLC ("1000 W. Marion") is a Receivership Entity that owns a parcel of vacant land in Punta Gorda, Florida. The parcel of vacant land was previously utilized as overflow parking for the Fishermen's Village property and by Fishermen's Village employees.

111. **Lender Communications.** The Receiver continues to be in regular contact with the private mortgage lender regarding stabilization, disposition, and loan servicing.

112. **Property Management.** The Receiver continues to manage the property.

113. **Asset Disposition.** On August 2, 2024, the Receiver filed its Motion for Private Sale of 1000 W. Marion [ECF No. 197], seeking the appointment and approval of appraisers[16] for the private sale of the property and approval of the private sale itself. The Receiver expects the sale to close on or before September 1, 2024.

114. Below are material updates to the commercial properties that the Receiver is managing and determining the appropriate disposition or further action:

---

[16] In accordance with the Court's requirements, three independent appraisals were obtained.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

*e.   REIT 3650 Asset Group, Nationwide*

| ArciTerra Entity | Address |
|---|---|
| AT Auburn Plaza IN II, LLC<br>AT Auburn Plaza Member, LLC | 506 North Grandstaff Drive,<br>Auburn, IN 46706 |
| ATA Lanier Fayetteville GA II, LLC<br>ATA Lanier Fayetteville Member | 320 W. Lanier Avenue,<br>Fayetteville, GA 30214 |
| AT HL Burlington IA II, LLC<br>AT HL Burlington Member, LLC | 3351 Agency Street,<br>Burlington, IA 52601 |
| AT Ville Platte LA II, LLC<br>AT Ville Platte Member, LLC | 915 E. LaSalle Street,<br>Ville Platte, LA 70586 |
| AT Altus Cumberland GA II, LLC<br>AT ALTUS Cumberland Member, LLC | 2997 Cumberland Circle,<br>Atlanta, GA 30339 |
| AT Sweden NY II, LLC<br>AT Sweden Member, LLC | 1651 Nathaniel Poole Trail,<br>Brockport, NY 14420 |
| AT Eastman GA II, LLC<br>AT Eastman Member, LLC | 970 Indian Drive,<br>Eastman, GA 31023 |
| AT New Lenox IL-Inline II, LLC<br>AT New Lenox-IL Member, LLC | 2021 East Laraway Road,<br>New Lenox, IL 60451 |
| AT Longview TX II, LLC<br>AT Longview Member, LLC | 711 Estes Drive,<br>Longview, TX 75602 |
| AT Seven Hills Aurora CO II, LLC<br>AT Seven Hills Aurora Member, LLC | 18511 E. Hampden Avenue,<br>Aurora, CO 80013 |
| AT Mayodan NC II, LLC<br>AT Mayodan Member, LLC | 131 Commerce Drive,<br>Mayodan, NC 27027 |
| AT PT Danville IL II, LLC<br>AT PT Danville Member, LLC | 22 West Newell Road,<br>Danville, IL 31082 |

115.   **Overview**. The REIT 3650 Asset Group contains 14 total cross-collateralized properties across 9 states totaling over 500,000 square feet of commercial space. Two properties excluded from the Receivership are also part of the REIT 3650 Asset Group.[17]

116.   **Lender Communications**. The Receiver continues to be in regular contact with the lender regarding stabilization, disposition, and loan servicing.

117.   **Property Management**. Cushman continues to manage the properties. On August 2, 2024, the Receiver filed a Motion to Engage and Compensate Lease Brokers, which included the AT Seven Hills Aurora CO II, LLC property.

---

[17] Two properties are being managed by the Receiver in *Circle City Outdoors et al. v. Arciterra Companies, LLC et al.,* pending in Hamilton County, Indiana, Superior Court as Cause No. 29D02-2305-PL-004542 (the "Indiana Receiver"). The Receiver remains in regular communication with the Indiana Receiver regarding the REIT 3650 Asset Group.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

118. **Asset Disposition or Further Action**. The Receiver is evaluating options to determine the most appropriate disposition strategy for the cross-collateralized assets, ensuring it benefits the Receivership Estate.

*f.   Rialto Asset Group, Nationwide*

| ArciTerra Entity | Address |
|---|---|
| 5339 Elvis Presley Boulevard Memphis TN, LLC | 5339 Elvis Presley Boulevard, Memphis, TN, 38116 |
| 700 North Grand Avenue Mt. Pleasant IA, LLC | 700 North Grand Avenue, Mt. Pleasant, IA 52641 |
| 8001 Vaughn Road Montgomery AL, LLC | 8001 Vaughn Road, Montgomery, AL 36116 |
| 601 Trenton Road McAllen TX, LLC | 601 Trenton Road, McAllen, TX 78504 |
| 60 Colonial Promenade Parkway Alabaster AL, LLC | 60 Colonial Promenade Parkway, Alabaster, AL 35007 |
| 81 Jameson Lane Greenville AL, LLC | 81 Jameson Lane, Greenville, AL 36037 |
| 752 South Andy Griffith Parkway Mt. Airy NC, LLC | 752 S. Andy Griffith Parkway, Mt. Airy, NC 27030 |
| 1921 Gallatin Pike Nashville TN, LLC | 1921 Gallatin Pike North, Madison, TN 37115 |
| 5450 US Highway 80 East Pearl MS, LLC | 5450 US Highway 80 East, Pearl, MS 39208 |
| 412 Cross Oaks Mall Plainwell MI, LLC | 412 Cross Oaks Mall, Plainwell, MI 49080 |
| 2513 E. North Street Kendallville IN, LLC | 2513-2521 E North Street, Kendallville, IN 46755 |

119. **Overview**. The Rialto Asset Group contains 12 total cross-collateralized properties across 8 states totaling nearly 200,000 square feet of commercial space. One property is excluded from the Receivership but is also part of the Rialto Asset Group.[18]

120. **Lender Communications**. The Receiver continues to be in regular contact with the lender regarding stabilization, disposition, and loan servicing.

121. **Property Management**. SVN continues to manage the properties. On August 2, 2024, the Receiver filed a Motion to Engage and Compensate Lease Brokers, which included the following seven properties from the Rialto Asset Group: (1) 5339 Elvis Presley Boulevard Memphis TN, LLC; (2) 8001 Vaughn Road

---

[18] One property is being managed by the Indiana Receiver. The Receiver remains in regular communication with the Indiana Receiver regarding the Rialto Asset Group.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

Montgomery AL, LLC; (3) 60 Colonial Promenade Parkway Alabaster AL, LLC; (4) 81 Jameson Lane Greenville AL, LLC; (5) 412 Cross Oaks Mall Plainwell MI, LLC; (6) 2513 E. North Street Kendallville IN, LLC; and (7) 1921 Gallatin Pike Nashville TN, LLC.

122. **Asset Disposition or Further Action.** In an effort to coordinate the sale of all 12 properties within the portfolio, the Receiver has engaged with the Indiana Receiver and the lender to develop a disposition process that aligns with the interests of all parties involved. This undertaking has required consultations with brokers regarding the logistics of a potential auction process, discussions on the feasibility of simultaneous property closings, and agreement with the Indiana Receiver to ensure a unified approach toward satisfying the outstanding loan balance. As these discussions progress, the Receiver remains confident that a mutually agreeable and successful disposition process will be achieved.

*g. KS State Bank Asset Group, Nationwide*

| ArciTerra Entity | Address |
|---|---|
| ArciTerra FD Greeleyville SC, LLC | 10000 US Highway 521, Greeleyville, SC 29056 |
| ArciTerra VN Clarksville TN, LLC | 2135 Lowes Drive, Clarksville, TN 37040 |
| ArciTerra VN Dickson TN, LLC | 100 Lowes Road, Dickson, TN 37055 |
| ArciTerra WG Milwaukee WI, LLC | 8488 Brown Deer Road, Milwaukee, WI 53223 |
| ArciTerra FD Bowman SC, LLC[19] | 6711 Charleston Highway, Bowman, SC 29018 |

123. **Overview.** The KS State Bank Asset Group contains five cross-collateralized properties across three states totaling over 42,000 square feet of commercial space.

124. **Lender Communication.** Negotiation attempts toward a forbearance agreement with the lender, KS State Bank f/k/a Kansas State Bank of Manhattan ("KS State Bank"), continue. KS State Bank remains

---

[19] ArciTerra FD Bowman SC, LLC, is a Receivership Entity that previously owned and operated a single-tenant commercial property offering 8,011 square feet of retail space in Bowman, South Carolina. The property is currently vacant and was surrendered to a tax sale prior to the Receiver's appointment. After careful consideration and analysis, the Receiver decided not to assert any claim to unwind the tax sale of the Bowman property. Any attempt to reclaim this property would incur costs that exceed the amount of funds available to the applicable Receivership Entity. The property holds very little value, and it is highly likely that it would ultimately revert to KS State Bank. The properties in this portfolio are cross-collateralized and the Receivership Team's analysis indicates that the portfolio is underwater. Additionally, KS State Bank has a pending challenge to the sale. Lastly, there is a surplus amount from the tax sale that is being held by the taxing authority pending the resolution of the claims between the buyer and KS State Bank.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

responsible for collecting the rents paid by tenants at occupied properties to fund operating expenses, insurance, taxes, and property management fees.

125. **Property Management.** SVN continues to manage the properties. On August 2, 2024, the Receiver filed a Motion to Engage and Compensate Lease Brokers, which included the following two properties from the KS State Bank Asset Group: (1) ArciTerra VN Clarksville TN, LLC; (2) ArciTerra VN Dickson TN, LLC.

126. **Asset Disposition or Further Action.** The Receiver has obtained a Broker's Opinion of Value ("BOV") for each property to assess the portfolio's value and is now determining the appropriate course of action for disposition.

### h.   Walcent Elk/IN, LLC, Elkhart, IN

| ArciTerra Entity | Address |
|---|---|
| Walcent Elk/IN, LLC | 2719 Emerson Drive, Elkhart, IN 46514 |

127. **Overview.** Walcent Elk/IN, LLC ("Walcent") is a Receivership Entity that owns and operates Northfield Plaza, a multi-tenant commercial property offering 18,550 square feet of retail space in Elkhart, Indiana.

128. **Lender Communications.** The Receiver has been in communication with the lender and has reached an agreement on the disposition strategy, subject to Court approval.

129. **Property Management.** The Receiver continues to manage the property.

130. **Asset Disposition or Further Action.** The Receiver has engaged a broker to dispose of the property, subject to Court approval.

### i.   900 West Marion Avenue FL LLC, Punta Gorda, FL

| ArciTerra Entity | Address |
|---|---|
| 900 West Marion Avenue FL, LLC | 900 W. Marion Avenue, Punta Gorda, FL |

131. **Overview.** 900 West Marion Avenue FL, LLC ("900 W. Marion") is a Receivership Entity that owns and operates a multi-tenant commercial property offering 20,316 square feet of office/museum space in Punta Gorda, Florida. The Military Heritage Museum is the property's sole tenant.

132. **Lender Communications.** The Receiver has been in communication with the lender and has reached an agreement on the disposition strategy, subject to Court approval.

133. **Property Management.** The Receiver continues to manage the property.

134. **Asset Disposition or Further Action.** The Receiver has engaged a broker to dispose of the property, subject to Court approval.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### j. *ArciTerra BP Olathe KS, LLC, Olathe, KS*

| ArciTerra Entity | Address |
|---|---|
| ArciTerra BP Olathe KS, LLC | 12051 S Renner Boulevard, Olathe, KS 66061 |

135. **Overview.** ArciTerra BP Olathe KS, LLC is a Receivership Entity that owns Bass Pro Shops ("Bass Pro"), the sole tenant at a stand-alone, single-tenant property located in Olathe, Kansas.

136. **Lender Communications.** The mortgage was satisfied in full prior to the Receiver's appointment, however, there are approximately $2.2 million in unpaid property taxes from 2018, 2019, 2020, 2021, 2022, and 2023 that remain outstanding.

137. **Property Management.** The Receiver continues to manage the property.

138. **Asset Disposition or Further Action.** The Receiver has obtained an appraisal to assess the property's value and is determining the appropriate course of action.

### k. *AT Olathe Outlot 5, LLC, Olathe, KS*

| ArciTerra Entity | Address |
|---|---|
| AT Olathe Outlot 5, LLC | 15085 W 119th Street, Olathe, KS 66602 |

139. **Overview.** AT Olathe Outlot 5, LLC ("AT Olathe Outlot 5") is a Receivership Entity that owns a 9,975-square-foot single-tenant retail building in Olathe, Kansas. This property previously went through a tenant improvement for a restaurant when the loan was originated but the prospective tenant never occupied the space.

140. **Lender Communications.** The Receiver continues to be in regular contact with the lender regarding stabilization, disposition, and loan servicing.

141. **Property Management.** The Receiver continues to manage the property.

142. **Asset Disposition or Further Action.** The Receiver is likely to propose a motion to abandon, subject to Court approval.

### l. *AT New Lenox IL-Outlots, LLC, New Lenox, IL*

| ArciTerra Entity | Address |
|---|---|
| AT New Lenox IL-Outlots, LLC | E. Laraway Road, New Lenox, IL 60451 |

143. **Overview.** AT New Lenox IL-Outlots, LLC is a Receivership Entity that owns two parcels of vacant land along East Laraway Road in New Lenox, Illinois. The ArciTerra Properties, LLC entity first acquired the property on August 9, 2013, which was then transferred via an Assignment of Purchase Agreement to



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

AT New Lenox IL-Outlots, LLC, executed on September 18, 2013. These two parcels reside adjacent to the New Lenox property in the REIT 3650 portfolio.

144. **Lender Communications.** There is no current mortgage on the property.

145. **Property Management.** The Receiver continues to manage the property.

146. **Asset Disposition or Further Action.** The Receiver paid approximately $86,000 for the tax sale redemption of both parcels after discovering that their valuations exceeded the 2020-2022 tax sale redemption amounts. In consultation with a broker, the Receiver estimates sale proceeds will exceed all encumbrances and past tax liens. The Receiver has engaged a broker to dispose of the property, subject to Court approval.

### m.  925 W. Marion/960 W. Olympia FL, LCC, Punta Gorda, FL

| ArciTerra Entity | Address |
|---|---|
| 925 W. Marion/960 W. Olympia FL, LLC | 925 W. Marion Avenue, Punta Gorda, FL 33950 |
| 925 W. Marion/960 W. Olympia FL, LLC | 960 W. Olympia Avenue, Punta Gorda, FL 33950 |

147. **Overview.** 925 W. Marion/960 W. Olympia FL, LLC is a Receivership Entity that owns a residential house and an adjacent parcel of vacant land in Punta Gorda, Florida. The house resides at 925 W. Marion Avenue, Punta Gorda and the vacant parcel of land resides at 960 W. Olympia, Punta Gorda.

148. **Lender Communications.** The Receiver continues to be in regular contact with the lender regarding stabilization, disposition, and loan servicing.

149. **Property Management.** The Receiver continues to manage the properties.

150. **Asset Disposition or Further Action.** The Receiver has engaged a broker to dispose of the property, subject to Court approval.

## ii.  Residential Properties

151. Below are material updates to the residential properties that the Receiver is evaluating and determining the appropriate disposition or further action:

### a.  751 W. Retta Esplanade FL, LLC, Punta Gorda, FL

| Owner | Address |
|---|---|
| 751 W. Retta Esplanade FL, LLC | 751 W. Retta Esplanade, Punta Gorda, FL 33950 |



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

152. **Overview**. 751 W. Retta Esplanade FL, LLC, a Receivership Entity, is the recorded owner of 751 W. Retta Esplanade ("751 W. Retta") in Punta Gorda, Florida. The residential home is 4,280 square feet, consisting of five bedrooms and three baths. The home was built in 1993 and sits on 0.45 acres.

153. **Lender Communications.** Upon contacting the mortgage lender, Regions Bank, the Receiver was informed that a foreclosure action had been initiated on January 24, 2024. The Receiver promptly coordinated with Counsel to issue a stay letter, halting the foreclosure process. On February 26, 2024, and March 18, 2024, Counsel and members of the Receivership Team met with Regions Bank to discuss 751 W. Retta's financials and future steps. On August 2, 2024, Regions Mortgage, Inc. filed motions to intervene in the SEC action to seek an amendment of the Receivership Order and Stay to protect its security interests, requesting that the Court add Regions and 751 W. Retta Esplanade FL, LLC to the list of Excluded Entities and Excluded Properties, allowing Regions to foreclose on its collateral and remit excess funds to the Receiver. On August 15, 2024, Regions Bank filed a request to extend time to respond [ECF No. 203] so that Regions Bank, the SEC, Defendant Larmore, and Receiver's Counsel may prepare a stipulation.

154. **Property Maintenance**. Upon appointment, the Receiver was notified by the city of Punta Gorda of code violations on the property.

155. **Asset Disposition or Further Action**. The Receiver is actively engaging with the lender for disposition of the property, pending Court approval.

   b.  *11751 North Black Point Road, Syracuse, IN*

| Owner | Address |
|---|---|
| Jonathan Larmore | 11751 North Black Point Road, Syracuse, IN 46567 |

156. **Overview**. Black Point Rd, LLC, a Receivership Entity, originally held the title for 11751 North Black Point Road, in Syracuse, Indiana ("Black Point Road"). The property is located on Lake Wawasee in Syracuse, Indiana, and is 7,154 square feet with seven bedrooms. The residential property was purchased in September 2018. In 2020, Jonathan Larmore transferred the property to himself, according to the Kosciusko County Auditor. Jonathan Larmore refinanced the property in 2020 with Wintrust Mortgage ("Wintrust"). The Receiver is aware of a notice of encumbrance filed by Mr. Larmore that the property is leased to Leisuretown Rentals, LLC.

157. **Lender Communications**. Jonathan Larmore refinanced the property in 2020 with Wintrust. Wintrust has contacted the Receiver to initiate foreclosure proceedings. The Receiver is analyzing legal rights and potential equity.

158. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

159. **Asset Disposition or Further Action.** At the direction of the Receiver, the Receivership Team is in the process of evaluating and assessing the ownership of Black Point Road and the rights of the Receivership. The Receiver is actively working toward determining the next steps in assessing the validity of the Leisuretown Rentals, LLC lease.

### c.   567 Mountain Village Blvd., Units 114-6 and 115-1, Telluride, CO

| Owner | Address |
|---|---|
| FK Telluride LLC | 567 Mountain Village Blvd, Unit 114-6 Telluride, CO, 81435 |
| FK Telluride LLC | 567 Mountain Village Blvd, Unit 115-1, Telluride, CO, 81435 |

160. **Overview.** FK Telluride LLC, a Receivership entity, is the recorded owner of a 5% fractional interest in Units 114-6 and 115-1 at 567 Mountain Village Boulevard in Telluride, Colorado. Each unit spans 1,677 square feet, featuring three bedrooms and three bathrooms.

161. **Lender Communications.** There is no active mortgage on either timeshare unit.

162. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

163. **Asset Disposition or Further Action.** The Receivership Team is consulting with a broker to evaluate the timeshare interest in each unit.

### d.   1001 West Marion Avenue, Unit 21, Punta Gorda, FL

| Owner | Address |
|---|---|
| Spike Holdings LLC | 1001 West Marion Avenue, Unit 21, Punta Gorda, FL 33950 |

164. **Overview.** Spike Holdings LLC is the recorded owner of the 1001 West Marion Avenue, Unit 21 condominium in Punta Gorda, Florida. This single-family residence is 998 square feet with two bedrooms and two baths. The condominium is situated across the street from Fishermen's Village.

165. **Lender Communications.** There is no active mortgage on the unit.

166. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

167. **Asset Disposition or Further Action.** The Receivership Team is actively engaging with a broker to evaluate the sale of the property, pending Court approval.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### e.   880 West Marion Avenue & 150 Shreve Street, Punta Gorda, FL

| Owner | Address |
|---|---|
| Spike Holdings LLC | 880 West Marion Avenue, Punta Gorda, FL 33950 |
| Spike Holdings LLC | 150 Shreve Street, Punta Gorda, FL 33950 |

168.   **Overview.** Spike Holdings LLC is the recorded owner of both the 880 West Marion Avenue ("880 West Marion") and 150 Shreve Street ("150 Shreve") properties in Punta Gorda, Florida. 880 West Marion is a residential home spanning 1,041 square feet with two bedrooms and two baths. The property sits on 0.31 acres of land. 150 Shreve is a vacant plot of land, situated adjacent to 880 West Marion.

169.   **Lender Communications.** The Receiver continues to be in regular contact with the mortgage holders.

170.   **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

171.   **Asset Disposition or Further Action.** At the direction of the Receiver, the Receivership Team has engaged with the respective mortgage holders for these two properties. The Receiver will determine the next steps for disposition.

### f.   8150 East Highland View Drive, Syracuse, IN

| Owner | Address |
|---|---|
| HV Gardens LLC | 8150 East Highland View Drive, Syracuse, IN 46547 |

172.   **Overview.** HV Gardens, LLC, subject to the Asset Freeze, is the recorded owner of 8150 East Highland View Drive in Syracuse, Indiana ("8150 East Highland"). The residence, spanning 1,350 square feet, comprises three bedrooms and one and a half baths. The property is situated on a 0.3-acre lot.

173.   **Lender Communications:** The property does not have an active mortgage.

174.   **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

175.   **Asset Disposition or Further Action.** Jonathan Larmore's Counsel submitted a request to the Receiver's Counsel for "properties owned by Marcia Larmore that were purchased in the 1960s and 1990s that should be removed from the Receivership." The 8150 East Highland property was included in this request.  At the direction of the Receiver, the Receivership Team is conducting research including public records and open sources to verify ownership. Property taxes for 2022 and 2023 have not been paid. As the Receiver considers Mr. Larmore's request, it is also consulting a broker to evaluate the property.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### g.   10507 North Grand Boulevard, Syracuse, IN

| Owner | Address |
|---|---|
| Morrison Island LLC | 10507 North Grand Boulevard, Syracuse, IN, 46567 |

176.  **Overview**. Morrison Island LLC, subject to the Asset Freeze, is the recorded owner of 10507 North Grand Boulevard in Syracuse, Indiana ("North Grand"). The residence, spanning 3,296 square feet, comprises three bedrooms and one and a half baths. The property is situated on 0.22 acres of land.

177.  **Lender Communications**. The property does not have an active mortgage.

178.  **Property Maintenance**. The Receiver has not been notified of any property conditions requiring attention.

179.  **Asset Disposition or Further Action**. Jonathan Larmore's Counsel submitted a request to the Receiver's Counsel for "properties owned by Marcia Larmore that were purchased in the 1960s and 1990s that should be removed from the Receivership." The North Grand property was included in this request. At the direction of the Receiver, the Receivership Team is conducting research including public records and open sources to verify ownership. Property taxes for 2022 and 2023 have not been paid. As the Receiver considers Mr. Larmore's request, it is also consulting a broker to evaluate the property.

### h.   11227 NE Wawasee Drive South, Syracuse, IN

| Owner | Address |
|---|---|
| Northeast Wawasee LLC | 11227 NE Wawasee Drive South Syracuse, IN 46557 |

180.  **Overview**. Northeast Wawasee LLC is the recorded owner of 11227 NE Wawasee Drive South ("11227 NE Wawasee") in Syracuse, Indiana, situated on 1.36 acres of land.

181.  **Lender Communications**. The property does not have an active mortgage.

182.  **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

183.  **Asset Disposition or Further Action.** The Receiver stipulated that it had investigated the facts and circumstances relating to 11227 NE Wawasee and determined that the property is appropriately excluded from the Receivership. The stipulation was approved as the SEC submitted it had no objection to a modification to the Asset Freeze to allow the property to be sold, provided that the portion of Jonathan Larmore's proceeds are placed in escrow and remain subject to the Asset Freeze. The Court approved the Stipulation [ECF No. 159].



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

### i. 5324 E. Mariposa Street & 4450 N. 54th Street, Phoenix, AZ

| Owner | Address |
|---|---|
| JMMAL Mariposa LLC | 5324 E. Mariposa Street<br>Phoenix, AZ 85018 |
| 4450 N. 54th Street LLC | 4450 N. 54th Street<br>Phoenix, AZ 85018 |

184. **Overview.** 5324 E. Mariposa Street ("Mariposa") and 4450 N. 54th Street ("N. 54th Street") are adjacent properties located in Phoenix, Arizona, occupying less than 2.5 acres of land. JMMAL Mariposa LLC is the recorded owner of Mariposa. Jonathan M. Larmore and Michelle Larmore are the managers of JMMAL Mariposa LLC. JB Mariposa LLC is the sole member of JMMAL Mariposa LLC. Jonathan M. Larmore is the manager of JB Mariposa LLC and his children, Jonathan R. Larmore and Bridget E. Larmore are the members of this entity. JB Mariposa LLC is not a Receivership Entity. 4450 N. 54th Street LLC is the recorded owner of N. 54th Street. Jonathan Larmore is the Registered Agent and sole member and manager of 4450 N. 54th Street LLC.

185. **Lender Communications.** City National Bank holds the current mortgage on both properties. On July 3, 2024, City National Bank filed a Motion to Intervene [ECF. No. 184], requesting that the Mariposa and N. 54th Street properties be excluded from the Receivership Estate, allowing the bank to foreclose and recover outstanding loan amounts. On July 30, 2024, the Court entered an order approving the Stipulation for Order Modifying Asset Freeze as to (1) 5324 E. Mariposa St., Phoenix, Arizona and (2) 4450 N. 54th Street, Phoenix, Arizona, and Providing Related Relief, dated July 26, 2024 [ECF. No. 195].

186. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

187. **Asset Disposition or Further Action.** The Receiver stipulated that Mariposa and 54th Street are not Receivership Assets, and the Receiver had no objection to a modification of the Asset Freeze to allow the properties to be sold, subject to the reservation of all rights of all parties. The SEC stipulated that it had no objection to the modification of the Asset Freeze to allow the properties to be sold, provided that the portion of Jonathan Larmore's proceeds remain subject to the Asset Freeze pending further order of the Court. As of August 18, 2024, the Mariposa Property is listed for sale for $4.5M and the 54th Street Property is listed for sale for $2.5M. The Court approved the Stipulation [ECF No. 196].

### j. 3127 LaBalme Trail, Fort Wayne, IN

| Owner | Address |
|---|---|
| Marcia Larmore | 3127 LaBalme Trail<br>Fort Wayne, IN 46804 |



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

188. **Overview.** 3127 LaBalme Trail in Fort Wayne, Indiana ("3127 LaBalme Trail") is a residential home built in 1968. It encompasses 4,810 square feet, including a 1,972 square foot basement, and comprises seven bedrooms and four bathrooms.

189. **Lender Communications.** The property does not have an active mortgage.

190. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

191. **Asset Disposition or Further Action.** Jonathan Larmore's counsel submitted a request to the Receiver's Counsel for "properties owned by Marcia Larmore that were purchased in the 1960s and 1990s that should be removed from the Receivership." The 3127 LaBalme Trail property was included in this request. At the direction of the Receiver, the Receivership Team conducted research including public records and open sources to verify ownership. The Receiver determined that 3127 LaBalme Trail is not owned by a Receivership Entity. According to county assessor records, the property is owned by Marcia Larmore.

*k.   7900 W. Jefferson Boulevard, #305, Fort Wayne, IN 46804*

| Owner | Address |
|---|---|
| Marcia Larmore | 7900 W. Jefferson Boulevard, #305 Fort Wayne, IN 46804 |

192. **Overview.** 7900 W. Jefferson Boulevard, #305, in Fort Wayne, Indiana ("7900 W. Jefferson") is a commercial space within a medical condominium complex, currently occupied by Lutheran Health medical offices.

193. **Lender Communications.** The Suite does not have an active mortgage.

194. **Property Maintenance.** The Receiver has not been notified of any property conditions requiring attention.

195. **Asset Disposition or Further Action.** Jonathan Larmore's counsel submitted a request to the Receiver's Counsel for "properties owned by Marcia Larmore that were purchased in the 1960s and 1990s that should be removed from the Receivership." The 7900 W. Jefferson property was included in this request.  At the direction of the Receiver, the Receivership Team conducted research in public records and open sources to verify ownership. The Receiver determined that 7900 W. Jefferson is not owned by a Receivership Entity. According to county assessor records, the property is owned by Marcia Larmore.

## B.  Other Assets

196. The Receiver is currently managing the disposition of three watercrafts: one in pre-Receivership arrest and dry dock in the Eastern District of Virginia ("Watercraft #1"), one significantly damaged,



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

notwithstanding insurance claims that did not result in repair and restoration, and in dry storage in Indiana ("Watercraft #2"), and one in Punta Gorda, Florida ("Watercraft #3"). The Receiver is engaging with the secured lenders on the first two vessels to see whether an advantageous disposition may be obtained despite material encumbrances, defaults, and arrears.

197. Watercraft #1 is an 87-foot Cheoy Lee powerboat purchased by Mr. Larmore on December 9, 2022 for $2.15 million and is owned in the name of AT LC 87, LLC. The seller, James F. Wilson Living Revocable Trust, financed $1.0 million of the purchase price. Mr. Larmore caused monthly payments to be made to the seller up until, and including, the June 2023 payment. The seller filed suit on September 7, 2023 in the United States District Court for the Eastern District of Virginia (Norfolk Division) seeking to foreclose on the mortgage. The seller and a third-party entered into an Assignment of First Preferred Ship's Mortgage on September 27, 2023 that transferred the mortgage from the James F. Wilson Living Revocable Trust to ST Liberty LLC.

198. The Receiver filed a motion to approve an abandonment agreement with respect to Watercraft #1 [ECF No. 176]. On June 27, 2024, the Court entered an order approving the abandonment agreement [ECF No. 181] and the sale shortly thereafter.

199. Watercraft #2 is a Nautique Paragon 23 purchased by Mr. Larmore on July 17, 2020 for $264,760, with $200,000 financed by a loan from Lake City Bank. The loan agreement called for payments of $1,635 per month beginning July 17, 2020. Mr. Larmore made some payments to Lake City Bank before payments ceased. As of May 31, 2024, Mr. Larmore owes Lake City Bank approximately $178,000 on the Watercraft #2 loan.

200. Upon his appointment, the Receiver observed that Watercraft #2 was severely damaged (though the Receiver is not aware of when the damage occurred) and had been transported to Indy Marine & Auto Body Inc. for a repair estimate and repair. The damage, and the fact that Watercraft #2 was used in saltwater, a purpose for which it was not intended, reduced the value of Watercraft #2 significantly. The Receiver negotiated an abandonment agreement with Lake City Bank and executed the agreement on August 8, 2024.

201. Watercraft #3 is a 28-foot Bull Dog A&M Tiki Boat purchased new by Mr. Larmore on July 31, 2023 for $105,120. Mr. Larmore paid for Watercraft #3 on May 3, 2023 with money from a Spike Holdings bank account at KS State Bank that Spike Holdings received the prior day from a Glenrosa bank account at KS State Bank.

202. The Receiver is currently preparing Watercraft #3 for sale.

203. The Receivership Team continues to identify other assets included in the ArciTerra Estate and to physically locate other known assets to bring them into the Receivership Estate.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

# VI. Claims

204. The Receiver is developing a process to identify claims. As the Receivership progresses, the Receiver will implement a mechanism to validate claims, determine their eligibility and compensate eligible claimants subject to Court approval of the filing and distribution process. In addition, the Receiver is working to identify potential claims to assets currently outside of the Receivership Estate, or against third-parties.

## A. Investor Claims

205. As reported in the First Status Report, in order to confirm the identity and verify the amount of claims from investors, the Receivership Team implemented a three-pronged approach. It will allow the Receiver to capture the scope of investor claims and communicate with claimants, verify claimants' identities and collect the appropriate information:

   a. **Identification and Analysis of Internal ArciTerra Information**. The first step is largely completed.

   b. **External Confirmation Through Third Parties**. The Receivership Team is working with Counsel to follow up on previous outreach when third parties were unresponsive to inquiries. The Receivership Team also had calls with certain broker dealers to confirm investor details.

   c. **Gather Information Directly from Investors – Proofs of Claim.** The Receivership Team is in the process of developing a web application for claimants to use via the Receiver's website where claimants can upload documentation and verify details of their claims.

## B. Vendor Claims

206. The Receiver is investigating and in the process of:

   a. Identifying liabilities from the books and records of the Receivership Entities.

   b. Developing a web-based solution (similar to the solution the Receiver is developing for investors as discussed in paragraph 205 above) to intake claims related to vendors and other stakeholders.

   c. Evaluating potential additional liabilities.

## C. Potential Liabilities to Creditors and Claims Against Parties

### i. American Express

207. The Receivership Team is in the process of analyzing AMEX statements located as of the date of this report. As part of this analysis, the Receivership Team reviewed statements for the Business Platinum



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

AMEX card for ArciTerra Companies and determined that there is an unpaid outstanding pre-receivership balance on the Business Platinum card of $293,466.

208. The charges that comprise the $293,466 balance include:

   a. $100,000 deposit to a yacht broker.

   b. Over $67,000 in legal fees.

   c. Over $17,000 in hotel and resort charges.

   d. Approximately $14,500 of charges to private air travel companies.

   e. Approximately $7,000 to an internet reputation defender company.

   f. A payment or donation of $6,000 to a Bible app.

209. To the extent expenses are not business related, the Receiver may seek to recover funds from the relevant parties as it relates to charges that should not be paid by ArciTerra.

### ii.    Claim to Airplane Proceeds

210. JML BC G4, LLC, a Receivership Entity, is the tenant of a leased space in an airplane hangar in Scottsdale, AZ that housed an airplane used by Mr. Larmore and owned by JML BC G400, LLC, (not a Receivership Entity). JML BC G400, LLC is itself owned by JML Business Consulting LLC of which Jonathan Larmore is the sole Manager and Member. ArciTerra Companies, LLC, a Receivership Entity, is the guarantor under the lease agreement.

211. The Receiver reviewed the financial statements of JML BC G400, LLC, as of December 2023 and determined the main liabilities of the entity to be an outstanding mortgage loan for $6,049,000 on the plane and a liability of approximately $1,051,000 payable to AMEX. Upon investigation, the Receiver determined that the latter liability is in fact a liability to ArciTerra Companies, LLC, which has been paying the AMEX invoices on behalf of JML BC G400, LLC for various AMEX charges.[20] Instead of recording a liability to ArciTerra Companies, LLC, the amount owed to AMEX should reflect a debt of $1,051,000 to ArciTerra Companies, LLC.[21]

212. The airplane was sold on August 18, 2023 for a total of $10,200,000, of which $6,209,353 went to pay off the loan on the plane, a $250,000 payment to Michelle Larmore, and the remaining proceeds was split equally between Mr. and Mrs. Larmore in the amount of $1,237,113 each. Mr. Larmore's share of the sale proceeds was wired to ArciTerra Companies, LLC via a KS State Bank account ending

[20] The process of analyzing the AMEX statements and payment history is ongoing. However, the Receiver has reviewed bank statement transactions for ArciTerra Companies, LLC to confirm JML BC G400, LLC has not reimbursed ArciTerra Companies, LLC for payment of the AMEX charges.
[21] Of note, the financial statements of JML BC 400, LLC were not closed and were not adjusted to reflect the sale of the plane that occurred on August 18, 2023.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

6893 on August 18, 2023, and was subsequently transferred to JMMAL Investments, LLC, an entity controlled by Mr. Larmore and members of his family through Wawasee Family Partnership.

213. In late November 2023, Mr. Larmore was ordered to return the plane proceeds he received of $1,237,113 to the Indiana Receiver, as the Indiana Receiver maintained control over ArciTerra Companies, LLC at that time.

214. A notice was issued on November 20, 2023 confirming that the Indiana Receiver received the funds from Marcia Larmore. The Indiana Receiver currently holds the funds that belong to ArciTerra Companies, LLC.[22] ArciTerra Companies, LLC has claims to the plane proceeds.

### iii.    Litigation Claims of the Receivership

215. The Receiver will bring actions and legal proceedings against various parties on behalf of the Receivership Estate in the future as allowed and contemplated for in the Receivership Order at paragraph 24, if warranted. The Receiver assesses the cost/benefit of asserting claims as investigations and litigation are costly endeavors and the Receiver does not intend to expend Receivership assets unless there is a supportable claim and a high likelihood of recovering funds.

## VII.   Future Actions and Recommendations

216. The Receiver's work continues in accordance with the duties laid out in the Receivership Order. The Receiver is managing the Receivership Assets and stabilizing cash flows from income-generating assets, paying real estate taxes and property vendors, and analyzing properties and assets for disposition or further action. The Receiver will continue to manage the real estate of the Receivership and will continue to entertain viable acquisition offers for all or part of the Receivership Assets.

217. The Receiver continues to identify potential additional entities or assets in which the Defendants or the Relief Defendants have an interest which are not currently part of the listed Receivership Entities or Receivership Assets and where assets may have been commingled with investor funds. At the appropriate time, the Receiver will seek court approval to modify the list of Receivership Entities.

218. The Receiver will continue to work to confirm the population of investors in Note Fund II, Note Fund III and other Investor Funds, as well as the total amount received from and paid to the investors, and the current capital balances and amounts due to the investors.

---

[22] Mr. Larmore claimed that ArciTerra Companies, LLC did not have any ownership or interest in the Private Plane or the net sales proceeds. See, Affidavit of Jonathan Larmore dated October 24, 2023 filed in Case No. 29D02-2305-PL-004542.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

219. The Receiver will retain an accounting firm to prepare and file the necessary federal and state tax returns for 2022, 2023, and 2024.

220. The Receiver continues his analysis of the Receivership Entities, including:

   a. Continuing to trace and analyze Investor Funds and balances through books and records, including bank accounts to (1) determine the degree to which investor funds were commingled and used, (2) establish how much may be owed to investors, and (3) identify any funds related to improper transactions that the Receiver may potentially recover to address investor and creditor claims.

   b. Reviewing bank statements and credit card statements, as well as email communications, as the Receiver looks to determine whether investor money was used to fund assets and/or expenses, improperly.

   c. Compiling and reviewing historical bank records and other financial records to understand the overall operations of the Receivership Entities and determine the flow of funds between and amongst the entities, Mr. Larmore, and former employees and consultants of the ArciTerra entities.

   d. Conducting, as appropriate, interviews of former ArciTerra employees, consultants, and other relevant parties.

   e. Determining the ultimate disposition of funds, if any, diverted from creditors and investors to other parties.

221. The Receiver intends to continue to seek Court approval of his actions going forward as necessary and appropriate under governing law and the Receivership Order.

222. Based on the Receiver's work as described above, the Receiver recommends that the Receivership continue consistent with the Receivership Order. The reasons for continuing the Receivership include:

   a. **ArciTerra Operations.** The Receiver is actively managing ArciTerra and related entities and properties, as detailed above. The nature of the Receivership Entities requires the ongoing management of the properties and corporate entities to prevent them from regressing.

   b. **Analysis to Determine Investor Obligations.** The Receivership Team continues its ongoing analyses associated with unwinding the commingling of investors' funds. The commingling of so many entities' funds may affect the determination of how the Receivership Estate will satisfy future claims. The Receiver is not yet in a position to approach a proposal to address creditors or investors at this time as the analyses discussed in this report are in process.



United States Securities and Exchange Commission v. Jonathan Larmore, et al.
Case No. 2:23-cv-02470-PHX-DLR
United States District Court for the District of Arizona

  c. **Asset Disposition.** The Receiver, in accordance with Paragraph 6(N) of the Receivership Order, will continue to prepare real property and other assets, as appropriate and approved by the Court, for sale or further action.

223. The Receiver continues to research the extensive labyrinth of ArciTerra entities, properties, and other potential assets. While it has reached no determination at this time about the appropriateness of adding corporate entities or other assets to the Receivership, the Receiver reserves the right to do so, should the facts and circumstances dictate their inclusion.

224. The Receiver reserves all rights to amend or supplement the information set forth herein and assert the rights of the Receivership as against any party, as appropriate.

Respectfully submitted,

August 20, 2024

          Allen D. Applbaum
          Receiver of ArciTerra Companies, LLC and Related Entities

EXHIBIT 1

| No. | Portfolio/Single Property | Portfolio Name or Asset Group | Owner (ArciTerra Entity) | Center Name | Address | Property Manager |
|---|---|---|---|---|---|---|
| | | | **Commercial Properties** | | | |
| 1 | Single Property | Glenrosa32 | Glenrosa 32, LLC | MorningStar | 3200 E Glenrosa Phoenix, AZ 85018 | MorningStar |
| 2 | Single Property | Mercado/Palencia | ATA Palencia St. Augustine FL, LLC | Palencia | 7440 US Highway 1 North, St. Augustine, FL 32095 | SEC Receiver Team |
| 3 | Single Property | Mercado/Palencia | ATA Mercado St. Augustine FL, LLC | Mercado | 155, 159, 163, 167 Palencia Village Dr., St. Augustine, FL  3209 | SEC Receiver Team |
| 4 | Portfolio | REIT 3650 | AT Auburn Plaza IN II, LLC<br>AT Auburn Plaza Member, LLC | Auburn Plaza | 506 North Grandstaff Drive, Auburn, IN 46706 | Cushman & Wakefield |
| 5 | Portfolio | REIT 3650 | ATA Lanier Fayetteville GA II, LLC<br>ATA Lanier Fayetteville Member | Main Street Building | 320 W. Lanier Ave., Fayetteville, GA 30214 | Cushman & Wakefield |
| 6 | Portfolio | REIT 3650 | AT HL Burlington IA II, LLC<br>AT HL Burlington Member, LLC | Burlington Plaza West | 3351 Agency St., Burlington, IA 52601 | Cushman & Wakefield |
| 7 | Portfolio | REIT 3650 | AT Ville Platte LA II, LLC<br>AT Ville Platte Member, LLC | Ville Platte | 915 E. LaSalle St., Ville Platte, LA 70586 | Cushman & Wakefield |
| 8 | Portfolio | REIT 3650 | AT Altus Cumberland GA II, LLC<br>AT ALTUS Cumberland Member, LLC | Cumberland Place | 2997 Cumberland Cir., Atlanta, GA 30339 | Cushman & Wakefield |
| 9 | Portfolio | REIT 3650 | AT Sweden NY II, LLC<br>AT Sweden Member, LLC | Sweden | 1651 Nathaniel Poole Trl., Brockport, NY 14420 | Cushman & Wakefield |
| 10 | Portfolio | REIT 3650 | AT Eastman GA II, LLC<br>AT Eastman Member, LLC | Eastman Shopping Center | 970 Indian Dr., Eastman, GA 31023 | Cushman & Wakefield |
| 11 | Portfolio | REIT 3650 | AT New Lenox IL-Inline II, LLC<br>AT New Lenox-IL Member, LLC | New Lenox | 2021 East Laraway Rd., New Lenox, IL 60451 | Cushman & Wakefield |
| 12 | Portfolio | REIT 3650 | AT Longview TX II, LLC<br>AT Longview Member, LLC | Longview | 711 Estes Dr., Longview, TX 75602 | Cushman & Wakefield |
| 13 | Portfolio | REIT 3650 | T Seven Hills Aurora CO II, LLCAT Seven Hills Aurora Member, LLC | Seven Hills Plaza | 18511 E. Hampden Ave., Aurora, CO 80013 | Cushman & Wakefield |
| 14 | Portfolio | REIT 3650 | AT Mayodan NC II, LLCAT Mayodan Member, LLC | Mayodan | 131 Commerce Dr., Mayodan, NC 27027 | Cushman & Wakefield |
| 15 | Portfolio | REIT 3650 | AT PT Danville IL II, LLCAT PT Danville Member, LLC | Pine Tree Plaza | 22 West Newell Rd., Danville, IL 31082 | Cushman & Wakefield |
| 16 | Portfolio | Rialto | 5339 ELVIS PRESLEY BOULEVARD MEMPHIS TN, LLC | Belvedere Commons | 5339 Elvis Presley Boulevard, Memphis, TN, 38116 | SVN Elevate |
| 17 | Portfolio | Rialto | 700 North Grand Avenue Mt. Pleasant IA, LLC | Orscheln's Center | 700 North Grand Ave., Mt. Pleasant, IA 52641 | SVN Elevate |
| 18 | Portfolio | Rialto | 8001 Vaughn Road Montgomery AL, LLC | Festival Plaza | 8001 Vaughn Road, Montgomery, AL 36116 | SVN Elevate |
| 19 | Portfolio | Rialto | 601 Trenton Road McAllen TX, LLC | McAllen Plaza | 601 Trenton Road, McAllen, TX 78504 | SVN Elevate |
| 20 | Portfolio | Rialto | 60 Colonial Promenade Parkway Alabaster AL, LLC | Shoppes at Alabaster | 60 Colonial Promenade Parkway Alabaster, AL 35007 | SVN Elevate |
| 21 | Portfolio | Rialto | 81 Jameson Lane Greenville AL, LLC | Greenville Plaza | 81 Jameson Lane, Greenville, AL 36037 | SVN Elevate |
| 22 | Portfolio | Rialto | 752 South Andy Griffith Parkway Mt. Airy NC, LLC | Wachovia Shops Plaza | 752 S. Andy Griffith Parkway, Mt. Airy, NC 27030 | SVN Elevate |
| 23 | Portfolio | Rialto | 1921 Gallatin Pike Nashville TN, LLC | Men's America | 1921 Gallatin Pike North, Madison, TN 37115 | SVN Elevate |
| 24 | Portfolio | Rialto | 5450 US Highway 80 East Pearl MS, LLC | Office Depot Plaza | 5450 US Highway 80 East, Pearl, MS 39208 | SVN Elevate |
| 25 | Portfolio | Rialto | 412 Cross Oaks Mall Plainwell MI, LLC | Plainwell Plaza | 412 Cross Oaks Mall, Plainwell, MI 49080 | SVN Elevate |
| 26 | Portfolio | Rialto | 2513 E. North Street Kendallville IN, LLC | Kendallville Plaza | 2513-2521 E North St., Kendallville, IN 46755 | SVN Elevate |
| 27 | Single Property | Rialto | ATA Hiram Square GA, LLC | Hiram Square | 5157 Jimmy Lee Smith Parkway, Hiram, GA 30141 | SVN Elevate |
| 28 | Portfolio | National REIT/KS State Bank | ArciTerra FD Greeleyville SC, LLC | Available - Greeleyville (former Family Dollar) | 10000 US Highway 521, Greeleyville, SC 29056 | SVN Elevate |
| 29 | Portfolio | National REIT/KS State Bank | ArciTerra VN Clarksville TN, LLC | Angry Crab - Clarksville | 2135 Lowes Dr., Clarksville, TN 37040 | SVN Elevate |
| 30 | Portfolio | National REIT/KS State Bank | ArciTerra VN Dickson TN, LLC | Lowe's Outparcel - Dickson | 100 Lowes Road, Dickson, TN 37055 | SVN Elevate |
| 31 | Portfolio | National REIT/KS State Bank | ArciTerra WG Milwaukee WI, LLC | Available - Milwaukee | 8488 Brown Deer Road, Milwaukee, WI 53223 | SVN Elevate |
| 32 | Portfolio | National REIT/KS State Bank | ArciTerra FD Bowman SC, LLC | Available - Bowman (former Family Dollar) | 6711 Charleston Highway, Bowman, SC 29018 | Receiver |
| 33 | Single Property | StanCorp/REIT 1 | Walcent Elk/IN, LLC | Northfield Plaza | 2719 Emerson Dr., Elkhart, IN 46514 | Receiver |
| 34 | Single Property | StanCorp/Fishermen's Village | 900 West Marion Avenue FL, LLC | 900 W. Marion | 900 W. Marion Ave, Punta Gorda, FL | Receiver |
| 35 | Single Property | Bass Pro | ArciTerra BP Olathe KS, LLC | Bass Pro - Olathe | 12051 S Renner Blvd., Olathe, KS 66061 | Receiver |
| 36 | Single Property | Olathe Outlot 5 | AT Olathe Outlot 5, LLC | Olathe Outlot 5 (Granite City Grill) | 15085 W 119th St., Olathe KS 66602 | Receiver |
| 37 | Single Property | New Lenox Outparcel | AT New Lenox IL-Outlots, LLC | New Lenox Outparcel | E. Laraway Rd., New Lenox, IL  60451 | Receiver |
| 38 | Single Property | 1000 W Marion | 1000 WEST MARION PG FL LLC | 1000 W Marion | 1000 W. Marion Avenue, Punta Gorda, FL 33950 | Receiver |
| 39 | Single Property | 925 W Marion/960 W Olympia | 925 W. Marion/960 W. Olympia FL, LCC | 925 W. Marion | 925 W. Marion Ave., Punta Gorda, FL 33950 | Receiver |
| 40 | Single Property | 926 W Marion/960 W Olympia | 925 W. Marion/960 W. Olympia FL, LCC | 960 W. Olympia | 960 W. Olympia Ave., Punta Gorda, FL 33950 | Receiver |

| No. | Owner | Address | Property Type |
|-----|-------|---------|---------------|
| *Residential Properties* | | | |
| 1 | 751 W Retta Esplanade FL, LLC | 751 W Retta Esplanade, Punta Gorda, FL 33950 | Residential |
| 2 | Spike Holdings LLC | 1001 West Marion Avenue, Unit 21, Punta Gorda, FL 33950 | Residential; Condominium Unit |
| 3 | Spike Holdings LLC | 880 West Marion Avenue, Punta Gorda, FL 33950 | Residential |
| 4 | Spike Holdings LLC | 150 Shreve Street, Punta Gorda, FL 33950 | Vacant Land |
| 5 | Jonathan Larmore | 11751 Black Point Road, Syracuse, IN 46567 | Residential |
| 6 | HV Gardens LLC | 8150 East Highland View Drive, Syracuse, IN 46547 | Residential |
| 7 | Morrison Island LLC | 10507 N. Grand Boulevard, Syracuse, IN 46567 | Residential |
| 8 | Northeast Wawasee LLC | 11227 NE Wawasee Drive South, Syracuse, IN 46567 | Residential |
| 9 | FK Telluride LLC | 567 Mountain Village Blvd, Unit 114-6 Telluride, CO 81435 | Residential; Timeshare Unit |
| 10 | FK Telluride LLC | 567 Mountain Village Blvd, Unit 115-1, Telluride, CO 81435 | Residential; Timeshare Unit |
| 11 | JMMAL Mariposa LLC | 5324 E. Mariposa Street, Phoenix, AZ 85018 | Residential |
| 12 | 4450 N 54th LLC | 4450 N. 54th Street, Phoenix, AZ 85018 | Residential |
| 13 | Marcia Larmore | 3127 LaBalme Trail, Fort Wayne, IN 46804 | Residential |
| 14 | Marcia Larmore | 7900 W. Jefferson Boulevard, Suite #305, Fort Wayne, IN 46804 | Commercial Space |

# EXHIBIT 2

**ArciTerra Entities with Outstanding 2022 Federal and State Tax Returns Provided to the Receiver by CLA**

| CLIENT NAME | |
|---|---|
| Arciterra Strategic Retail Plaza OK LLC | Form 1065 |
| Arciterra Strategic Retail Briargate & Linden LLC | Form 1065 |
| Arciterra Strategic Retail Wheatland | Form 1065 |
| Arciterra REIT Advisors, LLC | Form 1065 |
| Arciterra Group, LLC | Form 1065 |
| Arciterra Real Estate Investment Trust Inc | REIT |
| 2006 operating | Form 1065 |
| Arciterra Walcent Portfolio LP | Form 1065 |
| Arciterra Note Advisors, LLC | Form 1065 |
| Arciterra Note Advisors II, LLC | Form 1065 |
| Arciterra 32nd Street Advisors, LLC | Form 1065 |
| CSL Investments, LLC | Form 1065 |
| Walcent Shelby MI, LLC | Form 1065 |
| Arciterra Strategic Income Advisors, LLC | Form 1065 |
| Arciterra Strategic Income Belleville Crossing Inc | REIT |
| Arciterra Strategic Retail Echelon IN (III), LLC | Form 1065 |
| Arciterra Strategic Retail Park Lee (V), LLC | Form 1065 |
| Arciterra Strategic Retail Advisors, LLC | Form 1065 |
| AT Altus Echelon IN, LLC | Form 1065 |
| Arciterra Note Advisors III, LLC | Form 1065 |
| Arciterra National REIT Advisors, LLC | Form 1065 |
| Arciterra National REIT, INC | REIT |
| Arciterra National REIT, LP | Form 1065 |
| Glenrosa 32, LLC | Form 1065 |
| ATR 32 LLC | Form 1065 |
| ASR Centerville & Colony GA LLC | Form 1065 |
| Arciterra REIT RSC, LP | Form 1065 |
| Wawasee Family Limited Partnership | Form 1065 |
| AT Longview LLC | Form 1065 |
| ASR Mauna Launi | Form 1065 |
| ASR REIT LP | Form 1065 |
| ArciTerra Strategic Retail REIT, INC | Form 1120 |

**ArciTerra Entities with Outstanding 2022 Federal and State Tax Returns Provided to the Receiver by CLA**

| CLIENT NAME- SMLLC | SMLLC OWNER |
|---|---|
| Burlington (SMLLC) | ASR Advisor, LLC |
| New Lenox (SMLLC) | ASR Advisor, LLC |
| AT Telcom 32 LLC | ASR Advisor, LLC |
| Arciterra Strategic Retail Fayetteville GA, LLC (SMLLC) | ASR Advisor, LLC |
| AT JPM Lindenhurst (SMLLC) | ASR Advisor, LLC |
| AT MF Las Vegas (SMLLC) | ASR Advisor, LLC |
| AT Eastman GA, LLC (SMLLC) | ASR Advisor, LLC |
| AT Sandersville GA, LLC (SMLLC) | ASR Advisor, LLC |
| AT Boutte LA LLC | ASR Advisor, LLC |
| AT Castleton IN LLC | ASR Advisor, LLC |
| AT PT Danville IL LLC | ASR Advisor, LLC |
| AT Jefferson Center FW IN LLC | ASR Advisor, LLC |
| AT New West Clifton Co, LLC | ASR Advisor, LLC |
| ASR Seven Hills CO, LLC | ASR Advisor, LLC |
| AT Midway Elyria OH LLC | ASR Advisor, LLC |
| AT Wildwood Plaza MO LLC | ASR Advisor, LLC |
| AT Lubbock TX LLC | ASR Advisor, LLC |
| AT Cedartown GA LLC | ASRA 2*** |
| AT Ville Platte LA LLC | ASRA 2 |
| AT Pueblo West CO LLC | ASRA 2 |
| AT Mayodan NC LLC | ASRA 2 |
| AT Sweden NY LLC | ASRA 2 |
| AT Bloomington | ASRA 2 |
| Spike LLC | J Larmore |
| ASRA2 LLC | Spike LLC |
| 900 Marion Ave | ASRA 2 |
| AT Suffolk | ASRA 2 |
| AT Castleton | ASRA 2 |
| JB RE Investments | J Larmore |
| JML | J Larmore |
| Brewhouse I LLC | J Larmore |
| Arciterra Strategic Retail Forum KY LLC | J Larmore |
| JJF Mattress LLC (SMLLC) | J Larmore |

# EXHIBIT 3

| Real Property Sales | | | |
|---|---|---|---|
| Center Name | Gross Sale Proceeds | Senior Debt Payoff | Closing Costs* | Net Proceeds to Receivership Estate** |
| Glenrosa | $28,250,000.00 | $21,381,010.34 | $1,224,383.40 | $6,496,726.87 |
| Mercado | $6,500,000.00 | $1,817,375.72 | $605,359.72 | $4,207,257.55 |
| Palencia | $4,175,000.00 | $999,289.26 | $356,394.29 | $2,888,016.28 |
| Total: | $38,925,000.00 | $24,197,675.32 | $2,186,137.41 | $13,592,000.70 |

*Closing costs represent prorations and adjustments, broker commissions, escrow and title charges, taxes, and liens, as applicable.

**Net Proceeds to the Receivership Estate include available cash at closing and, where applicable, rebates from the auction platform.

EXHIBIT 4



Simplified Chart of Selected Investor Fund Structures - 2024 -
Marcia M. Larmore
Jonathan Larmore
Eric Falbe
Wawasee Family Investments Limited Partnership
MML Investments, LLC
JMMAL Investments, LLC
ArciTerra Strategic Retail Advisor, LLC
William A. Rack Jr.
WMR Investments, LLC
ArciTerra National REIT Advisors, LLC
Moynahan Investments LLC
CSL Investments, LLC
Crestone Investments, LLC
ArciTerra KLS Jensen Beach FL, LLC
ArciTerra Companies, LLC
ArciTerra Walcent Portfolio I, LLC
RHSL Phoenix, LLC
Walcent Elk/IN, LLC
ArciTerra CV Lafayette LA, LLC
1000 West Marion PG FL, LLC
900 West Marion Avenue FL, LLC
Walcent NEWC/IN, LLC
ArciTerra National REIT, Inc.
ArciTerra Note Advisors II, LLC
ArciTerra Whitefish Advisors, LLC
ArciTerra Note Advisors III, LLC
ArciTerra Whitefish Opportunity Fund, LLC
ArciTerra 32nd Street Advisors LLC
ATR 32 LLC
Glenrosa 32, LLC
ATA Mercado St. Augustine FL, LLC
ATA Palencia St. Augustine FL, LLC
LEGEND
Receivership Entity
Entities included in Exhibit A to the Receivership Order
Non-Receivership Entity
Entities associated with the Defendants or Relief Defendants but not part of the Receivership Estate
Excluded Entity
Entities excluded in Exhibit C to the Receivership Order
Non-ArciTerra Partner Entity
Walcent Arkadelphia AK, LLC
Walcent Lawton OK, LLC
Walcent Morrilton AK, LLC
Walcent Waynesboro MS, LLC
2006 Operating Partnership, L.P (f/k/a ArciTerra REIT, LP)
ArciTerra Real Estate Investment Trust, Inc. (a/k/a ArciTerra REIT, Inc)
ArciTerra Note Fund II, LLC
ArciTerra Note Advisors, LLC
ArciTerra Note Fund I, LLC
ArciTerra AA Papillion NE, LLC
ArciTerra MOV GAL Park City KS, LLC
ArciTerra HD Hendersonville TN, LLC
ArciTerra Montecito 1, LLC
ArciTerra AA Manistee MI, LLC
ArciTerra Note Fund III, LLC
ArciTerra Note Fund I Investment Company, LLC
1921 Gallatin Pike Nashville TN, LLC
2513 E North Street Kendallville IN, LLC
412 Cross Oaks Mall Plainwell MI, LLC
5339 Elvis Presley Boulevard Memphis TN, LLC
5450 US Highway 80 East Pearl MS, LLC
ArciTerra Michigan Road Indianapolis IN, LLC
60 Colonial Promenade Parkway Alabaster AL, LLC
601 Trenton Road McAllen TX, LLC
700 North Grand Avenue Mt. Pleasant IA, LLC
752 South Andy Griffith Parkway Mt Airy NC, LLC
8001 Vaughn Road Montgomery AL, LLC
81 Jameson Lane Greenville AL, LLC
ArciTerra REIT I Member, LLC
ArciTerra Note Fund II Investment Company, LLC
ArciTerra National REIT, LP
ArciTerra Note Fund III Investment Company, LLC
ATG REIT RSC, LP*
ArciTerra WG Kilmarnock VA, LLC
ArciTerra AA Lincoln NE, LLC
ArciTerra OR Battle Creek MI, LLC
Arciterra Westgate Indianapolis IN, LLC
AT Union Chicago IL, LLC
AT Concord, LLC
ArciTerra NS Investment Company, LLC
AT Bosworth Chicago IL, LLC
ArciTerra AZ Temple GA, LLC
AT Concord Unit 7, LLC
AT Concord Unit 5, LLC
ArciTerra Vermont Indianapolis IN, LLC
ArciTerra Noble West Noblesville IN, LLC
ArciTerra VZ Rome GA, LLC
ArciTerra S-W Burton MI, LLC
ArciTerra DG Wister OK, LLC
ArciTerra AZ Willis TX, LLC
ArciTerra FD Paxville SC, LLC
ArciTerra FD Ehrhardt SC, LLC
ArciTerra VN Dickson TN, LLC
ArciTerra FD Greeleyville SC, LLC
ArciTerra DG North Bend OH, LLC
ArciTerra DG Ravenna KY, LLC
ArciTerra S-W Kalamazoo MI, LLC
ArciTerra WG Milwaukee, WI, LLC
ArciTerra Bell York SC, LLC
ArciTerra VN Columbia TN, LLC
ArciTerra AA Theodore AL, LLC
ArciTerra BP Olathe KS, LLC
ArciTerra VN Clarksville TN, LLC
ArciTerra FD Turbeville SC, LLC
ArciTerra DG Shepherdsville KY, LLC
ArciTerra DG Greenville KY, LLC
ArciTerra S-W Lorain OH, LLC
ArciTerra GC Johnson City NY, LLC
ArciTerra AA West Liberty KY, LLC
ArciTerra AA Pearl MS, LLC
ArciTerra AA Barbourville KY, LLC
ArciTerra WM Douglasville GA, LLC
ArciTerra FD Bowman SC, LLC
ArciTerra DG Junction City KY, LLC
ArciTerra DG South Charleston OH, LLC
ArciTerra DG Cambellsville KY, LLC
* ATG REIT RSC, LP was formed in Delaware, but registered in Kansas as "ArciTerra Reit RSC, LP."

EXHIBIT 5

# Note Fund II
# - 2024 -



## LEGEND

Receivership Entity       Non-Receivership Entity       Excluded Entity

EXHIBIT 6



# Note Fund III
## - 2024 -



EXHIBIT 7

# ArciTerra National REIT, LP
# - 2024 -

## LEGEND

Receivership Entity

Non-Receivership Entity

Excluded Entity



EXHIBIT 8

# ArciTerra REIT I Member, LLC
# - 2024 -



**William A. Rack Jr.**

**Jonathan Larmore**

**Marcia M. Larmore**

Director → Director ← Director

**ArciTerra Real Estate Investment Trust, Inc. (a/k/a ArciTerra REIT, Inc)**

General Partner

**2006 Operating Partnership, L.P (f/k/a ArciTerra REIT, LP)**

**700 North Grand Avenue Mt. Pleasant IA, LLC**

**60 Colonial Promenade Parkway Alabaster AL, LLC**

**8001 Vaughn Road Montgomery AL, LLC**

**5450 US Highway 80 East Pearl MS, LLC**

Member / Member / Member / Member / Member / Member / Member / Member / Member / Member / Manager

**81 Jameson Lane Greenville AL, LLC**

**5338 Elvis Presley Boulevard Memphis TN, LLC**

**ArciTerra REIT I Member, LLC**

**601 Trenton Road McAllen TX, LLC**

**412 Cross Oaks Mall Plainwell MI, LLC**

**752 South Andy Griffith Parkway Mt Airy NC, LLC**

**2513 E North Street Kendallville**

**1921 Gallatin Pike Nashville TN, LLC**

**ArciTerra Michigan Road Indianapolis IN, LLC**

## LEGEND

**Receivership Entity**  **Non-Receivership Entity**  **Excluded Entity**

EXHIBIT 9

Summary of Change In Cash Balances - December 21, 2023 through July 31, 2024

| Asset Group | Balance as of 12/21/2023 | Net Change | Balance as of 7/31/2024 |
|---|---|---|---|
| *Operating Businesses* | | | |
| Village Brewhouse | $55,300 | $884,300 | $939,600 |
| Simply Sweet | $58,570 | $186,830 | $245,400 |
| | | | |
| *Commercial Properties* | | | |
| Glenrosa | $556,500 | $21,300 | $577,800 |
| REIT3650 | $186,400 | $551,300 | $737,700 |
| Rialto | $120,400 | $319,500 | $439,900 |
| KS State Bank | $0 | $0 | $0 |
| Single Properties | $66,200 | $568,900 | $635,100 |