1
2
3
4
5
6
7
8

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>     Plaintiff,<br><br>v.<br><br>Jonathan Larmore, et al.,<br><br>     Defendants. | No. CV-23-02470-PHX-DLR<br><br>**ORDER (A) APPOINTING AND APPROVING APPRAISERS FOR THE RECEIVER'S PROPOSED PRIVATE SALE OF REAL PROPERTY AT 1000 W. MARION AVENUE, PUNTA GORDA, FLORIDA; (B) APPROVING THE PRIVATE SALE OF THE REAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; AND (C) GRANTING RELATED RELIEF** |

The Court having reviewed the Receiver's Motion for an order (A) appointing and approving appraisers for the Receiver's proposed private sale of vacant real property located at 1000 W. Marion Avenue, Punta Gorda, Florida 33950 (the "Property"); (B) approving the private sale of the Property to 1000 West Marion, LLC (the "Lender") pursuant to the Asset Purchase Agreement dated May 24, 2024 (the "Asset Purchase Agreement"), free and clear of all liens, claims, encumbrances and interests; and (C) granting related relief (the "Motion") (Doc. 197); there being no opposition to the Motion; and upon finding that due and sufficient notice of the Motion has been given and no other or further notice need be given; and after due deliberation and it appearing that the relief sought in the Motion is in the best interest of the Receivership Estate, its creditors, and other parties in interest,

**IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT**:[1]

1.     This Court has jurisdiction over this matter, the above-captioned defendants and relief defendants, and over the property of each Receivership Estate.

2.     The approval of the sale of the Property is within the sound legal discretion of this Court.

3.     It is necessary and appropriate for this Court to retain jurisdiction to, among other things, (a) interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, and (b) to adjudicate, if necessary, any and all disputes concerning or relating in any way to the sale of the Property, and such jurisdiction is retained.

## PROPER NOTICE OF THE MOTION AND SALE

4.     The Receiver properly provided notice and no other or further notice is necessary or required.

5.     The Receiver has adequately disclosed all material terms and conditions regarding the sale of the Property.

6.     The notice provided by the Receiver was in substantial compliance with all applicable laws and satisfied all due process requirements.

7.     The notice provided was reasonably calculated to apprise all interested parties of the sale of the Property free and clear of all liens, claims, encumbrances, and other interests.

8.     As a result, notice of the Motion, Sale and Sale Hearing, and a reasonable opportunity to object or be heard with respect to the foregoing has been afforded to all interested persons and entities, and the notice provided is appropriate and sufficient for all purposes, including the sale of the Property free and clear of all liens, claims, encumbrances, and other interests.

/ / /

/ / /

---

[1]     Capitalized undefined terms shall have the meanings ascribed to them in the Motion.

**HIGHEST AND BEST OFFER**

9.      The Lender submitted the highest or otherwise best offer to purchase the Property.

10.     A true and correct copy of the Asset Purchase Agreement is attached to this Order as <u>Exhibit A</u> and incorporated in this paragraph by reference.

11.     The Asset Purchase Agreement and consideration provided by Lender constitutes the highest and best offer for the Property and will provide a greater recovery for the Receivership Estate's than would be provided by any other practical alternative.

12.     The Receiver's determination that the Purchase Price submitted by the Lender is the highest and best offer for the Property constitutes a valid and sound exercise of the Receiver's reasonable business judgment.

13.     The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Property under the circumstances of this receivership case.

14.     The Receiver's decision to sell the Property to the Lender pursuant to the Asset Purchase Agreement and this Order is supported by good business reasons and sound justification based upon the Receiver's experience and the circumstances presented in this case.

**GOOD FAITH OF THE LENDER**

15.     The Lender is an independent legal entity separate and distinct from the Receiver or any other party to this case. The Lender is not an affiliate, subsidiary, or other insider of any of the parties to this case or the Receiver and has no common equity holders, directors, managers, or officers with any of the parties to this case or the Receiver. The Lender is not a mere continuation of the Defendants and there is no continuity of enterprise among the parties to this case or the Receiver. The Lender is not holding itself out to the public as a continuation of the Defendants or the Receiver.

16.     The terms of the sale of the Property, as set forth more specifically in the Asset Purchase Agreement, are fair and reasonable under the circumstances.

17.     The purchase price for the Property of $2,500,000 (the "Purchase Price"), which consists of (a) the Lender's credit against its allowed secured claim in the amount of $2,253,468.51 (plus per diem interest in the amount of $270.30 for each day after July 15, 2024 that a final sale order is not entered) (the "Credit Bid Amount") and (b) cash payment by the Lender to the Receiver in the gross amount of $246,531.49 (the "Cash Portion"), is fair and reasonable.

18.     The sale of the Property to the Lender in all respects complies with applicable law.

19.     The Lender negotiated the terms and conditions of the sale of the Property in good faith and at arm's length.

20.     This Court has found that the Lender has acted in good faith in all respects in connection with this case and the sale of the Property.

21.     The Lender is a good faith purchaser for value and will be acting in good faith in closing the sale of the Property pursuant to the Asset Purchase Agreement after entry of this Order.

## NO FRAUDULENT TRANSFER

22.     The consideration of the Purchase Price provided for the Property under the Asset Purchase Agreement: (a) is fair and reasonable; (b) is the highest or otherwise best offer for the Property; and (c) constitutes reasonably equivalent value for the Property.

## VALIDITY OF TRANSFER

23.     The Receiver's transfer of the Property including fee title to the real property along with this Order will be a legal, valid, and effective transfer of the Property including fee title to the real property and will indefeasibly vest the Lender with good and valid title in and to the Property free and clear of any Liens (as defined below).

24.     The Receiver has full power and authority to execute and consummate the Asset Purchase Agreement and all related documents and is directed to do so, and no consents or approvals (other than those expressly provided for in the Asset Purchase

Agreement) are required to consummate the transactions contemplated by the Asset Purchase Agreement and this Order.

25.     The Receiver (i) has all rights and powers with respect to the Receivership Estate, including the Property, (ii) possesses good, valid, and marketable title to the Property, and (iii) has the ability and authority to convey the Property to the Purchaser on the terms and conditions set forth in the Asset Purchase Agreement and this Order.

26.     The Receiver and Lender proposed, negotiated, and entered into the Asset Purchase Agreement without collusion, in good faith, and from arm's length bargaining positions.

27.     Neither the Receiver nor the Lender have engaged in any conduct that would cause or permit the Asset Purchase Agreement or transactions contemplated by the Asset Purchase Agreement to be avoided or otherwise set aside.

**THE SALE IS IN THE BEST INTEREST OF**
**THE RECEIVERSHIP ESTATE AND ITS CREDITORS**

28.     The approval and consummation of the sale of the Property pursuant to and in accordance with the Asset Purchase Agreement and this Order is in the best interest of the Receivership Estate and its creditors.

**NOW, THEREFORE, BASED UPON THE FOREGOING FINDINGS AND THE RECORD BEFORE THIS COURT,**

**IT IS HEREBY ORDERED** that the Motion (Doc. 197) is **GRANTED** as set forth in this Order.

**IT IS FURTHER ORDERED** that all objections to the Motion concerning the Sale, the Asset Purchase Agreement, the Lender, the process otherwise relating to the sale of the Property and relief granted in this Order that have not been withdrawn, waived, resolved, sustained, or settled are expressly denied and overruled in their entirety; and

**IT IS FURTHER ORDERED** that the Appraisers are hereby approved and appointed for the purpose of establishing the fair market value of the Property; and

**IT IS FURTHER ORDERED** that the Asset Purchase Agreement is approved in its entirety; and

**IT IS FURTHER ORDERED** that the Property includes fee title to the real estate, free and clear of all Liens and Encumbrances in accordance with the Asset Purchase Agreement and this Order; and

**IT IS FURTHER ORDERED** that the Receiver is authorized to take all actions to consummate the sale of the Property pursuant to and in accordance with the Asset Purchase Agreement and this Order, including transferring and conveying the Property to the Lender by Receiver's Deed; and

**IT IS FURTHER ORDERED** that the Receiver is authorized, directed, and empowered to consummate and implement fully the Asset Purchase Agreement, together with all additional instruments and documents that may be necessary or desirable to implement and consummate the sale of the Property in accordance with the Asset Purchase Agreement and this Order; and

**IT IS FURTHER ORDERED** that the Receiver is authorized and directed to take all actions necessary or desirable for the purpose of assigning, transferring, granting, conveying, and conferring the Property to the Lender; and

**IT IS FURTHER ORDERED** that, time being of the essence, the Lender is directed to close the sale of the Property in accordance with the terms of the Asset Purchase Agreement and this Order; and

**IT IS FURTHER ORDERED** that, at closing on the sale of the Property, (a) Lender's Credit Bid Amount shall be deemed satisfied in full, and (b) Lender shall pay the Cash Portion, in an amount no less than $246,531.49, to the Receiver on behalf of the Seller's estate; and

**IT IS FURTHER ORDERED** that upon closing of the sale, the Receiver shall be authorized to pay from the Cash Portion certain closing costs of the sale, including: (a) one-half of the Florida documentary stamp tax due at closing, in an amount not to exceed $8,750, (b) one-half the cost of the title insurance policy purchased by Lender, in an

amount not to exceed $4,892, and (c) Seller's pro rata share of the unpaid 2024 real property taxes, in an amount not to exceed $13,714; and

**IT IS FURTHER ORDERED** that, in the Receiver's sole discretion, any agreements, documents, or other instruments executed in connection with the Asset Purchase Agreement may be modified, amended, or supplemented by the Receiver and Lender in accordance with the terms of the Asset Purchase Agreement, without further notice or order of this Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Receivership Estate; and

**IT IS FURTHER ORDERED** that the transfer of the Property to the Lender shall be free and clear of any and all liens, encumbrances, claims, charges, defenses, offsets, recoupments, and interests on the foregoing and against the foregoing of whatever type or description, including, without limitation, the Excluded Liabilities (as defined in the Asset Purchase Agreement), tax claims and tax liens (other than tax liens for real estate taxes which shall be paid at closing as more fully set forth in the Asset Purchase Agreement), and any restrictions on or conditions to transfer or assignment, liens, mortgages, security interests, pledges, hypothecations, control agreements, equities and other claims and interests having arisen, existed, or accrued prior to and through the Closing Date (as defined in the Asset Purchase Agreement), whether direct or indirect, monetary or non-monetary, arising at law or in equity, contract or tort, absolute or contingent, matured or unmatured, voluntary or involuntary, liquidated or unliquidated, of, by, or against the Property (collectively, the "Liens and Encumbrances"); and

**IT IS FURTHER ORDERED** that any and all Liens and Encumbrances will attach to the net proceeds of the sale of the Property with the same effect, validity, enforceability, and priority as such Liens and Encumbrances had against the Property prior to the sale authorized by this Order, subject to any rights, claims, defenses, and objections of the Receiver and all interested parties with respect to such Liens and Encumbrances; and

**IT IS FURTHER ORDERED** that no party shall have any rights of redemption with respect to the Property; and

**IT IS FURTHER ORDERED** that the transfer of the Property to the Lender may not be avoided under any applicable law, because the Lender is providing the Receivership Estates with reasonably equivalent value; and

**IT IS FURTHER ORDERED** that the provisions of this Order authorizing the sale of the Property free and clear of any and all Liens and Encumbrances shall be, and are, self-executing, and the Receiver and Lender shall not be required, but are permitted in their discretion, to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of the Asset Purchase Agreement and this Order; and

**IT IS FURTHER ORDERED** that the purchase of the Property shall not cause the Lender or its affiliates, successors, or assigns or their respective properties to be deemed a successor in any respect of the Receivership Entities' or the above-captioned defendants' business operations within the meaning of any laws, rules, or regulations relating to any tax, revenue, pension, benefit, ERISA, environmental, labor, employment, products liability, or other law, rule, or regulation of any federal, state, or local government; and

**IT IS FURTHER ORDERED** that, upon closing, this Order and the documents executed in connection with and pursuant to this Order, including the Receiver's Deed, shall constitute a full and complete general assignment, conveyance, and transfer of the Property or a deed or a bill of sale transferring good and marketable title in the Property to the Lender on the Closing Date free and clear of all Liens and Encumbrances, and each and every federal, state, and local governmental agency or department is directed to accept this Order as such an assignment, deed, or bill of sale or any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement and this Order; and

**IT IS FURTHER ORDERED** that, if necessary, this Order shall be accepted for recordation on or after the Closing Date as conclusive evidence of the free and clear, unencumbered transfer of title to the Property to the Lender; and

**IT IS FURTHER ORDERED** that this Order is effective as a determination that any and all Liens and Encumbrances, if any, will be, and are, without further action by any person or entity, unconditionally released, discharged, and terminated with respect to the Property; and

**IT IS FURTHER ORDERED** that this Court retains exclusive jurisdiction to (a) enforce and implement the Asset Purchase Agreement and any other agreements, documents, and instruments executed in connection with the Asset Purchase Agreement, (b) compel delivery of possession of the Property to the Lender, (c) resolve any disputes, controversies, or claims arising out of or relating to the Asset Purchase Agreement, this Order, or the sale of the Property, and (d) interpret, implement, and enforce the provisions of this Order; and

**IT IS FURTHER ORDERED** that the terms and conditions of the Asset Purchase Agreement and this Order will be binding in all respects upon, and will inure to the benefit of, the Receiver, the Receivership Estate, the Receivership Entities, the Seller, the Lender, and their respective affiliates, successors and assigns, and any affected third parties; and

**IT IS FURTHER ORDERED** that all persons who hold Liens and Encumbrances against the Property are forever estopped and permanently enjoined from asserting or prosecuting any claims or causes of action against the Property or Lender, or Lender's affiliates, successors or assigns, or any of their respective officers, directors, employees, attorneys or advisors, arising out of or in connection with the sale of the Property or any liabilities owed by the above-captioned defendants; and

**IT IS FURTHER ORDERED** that, the Receiver, and his representatives and professionals shall not be liable or bound to any person including the Lender, in any manner by expressed or implied warranties, guarantees, promises, statements,

representations or information pertaining to the Property, made or furnished by any of them or any other real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Receiver unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in writing within the Asset Purchase Agreement; and

**IT IS FURTHER ORDERED** that, to the extent of any inconsistency between the provisions of any agreements, documents, or other instruments executed in connection with the Asset Purchase Agreement and this Order, the provisions of this Order control; and

**IT IS FURTHER ORDERED** that there is no just delay for the implementation of this Order and, for all purposes, this Order shall be a final order upon its entry with respect to the sale of the Property and other relief granted in this Order.

Dated this 5th day of September, 2024.


_____
Douglas L. Rayes
Senior United States District Judge

<u>Exhibit A</u>

Asset Purchase Agreement

## ASSET PURCHASE AGREEMENT
### (1000 W MARION AVENUE, PUNTA GORDA, FLORIDA)

This Asset Purchase Agreement (this "**Agreement**") is entered into as of May 24, 2024 by and between 1000 West Marion, LLC, a Florida limited liability company, and its permitted assigns ("**Buyer**"), and Allen D. Applbaum (the "**Receiver**"), solely in his capacity as receiver for 1000 West Marion PG FL, LLC (the "**Seller**").

## WITNESSETH

WHEREAS, the Receiver has been appointed as receiver for Jonathan M. Larmore, ArciTerra Companies, LLC and related entities, including Seller (collectively, the "**Receivership Estates**") pursuant to that certain Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction dated December 21, 2023, as further supplemented by that certain Order Appointing Receiver, Freezing Assets, and Imposing Litigation Injunction dated May 6, 2024 (together, the "**Receivership Order**") issued by the United States District Court for the District of Arizona (the "**Court**"), Case No. 23-CV-02470-PHX-DLR; and

WHEREAS, pursuant to the Receivership Order, the Receiver is authorized to take and have complete and exclusive control, possession, and custody of all of Seller's rights, title, and interests in the Seller's property; and

WHEREAS, Seller is the owner of that certain real property located at 1000 W. Marion Avenue, Punta Gorda, Florida 33950 (the "**Real Property**"), together with any buildings and improvements thereon, more particularly described on **Schedule A** annexed hereto and made a part hereof; and

WHEREAS, Seller purchased the Real Property from Buyer on February 18, 2020 and, in connection therewith and pursuant to a loan agreement dated as of February 18, 2020 between Buyer and Seller, Buyer loaned Seller $2,520,000 (the "**Loan**");

WHEREAS, the Loan is evidenced by a Promissory Note from Seller to Buyer dated February 18, 2020 in the original principal amount of $2,520,000 and secured by a first mortgage lien against the Real Property pursuant to that certain Mortgage and Security Agreement recorded on February 21, 2020 in Official Records Book 4542, Page 1060, of the Public Records of Charlotte County, Florida (the "**Mortgage**");

WHEREAS, Buyer alleges that Seller defaulted on the Loan and stopped making required payments after March 18, 2023;

WHEREAS, as of the date of this Agreement, the amount necessary to satisfy the Mortgage as of the estimated payoff date of July 15, 2024 (the "**Payoff Date**") is $2,253,468.51 (the "**Payoff Amount**"), which amount includes: (i) principal due as of March 18, 2023 in the amount of $2,013,459.81; (ii) interest, calculated at the non-default rate, of $130,825.24 due from March 19, 2023 through the Payoff Date; (iii) estimated attorneys' fees due Buyer through the Payoff Date in the amount of $27,000; (iv) delinquent 2021 property taxes paid by the Buyer under the terms of the Mortgage and loan agreement in the amount of $29,083.85; and (v) delinquent 2022 and 2023 property taxes that are due, payable and delinquent as of the Payoff Date in the amount of $53,099.61;

1

WHEREAS, the Receiver has determined that it is in the best interests of the Receivership Estates and their beneficiaries to sell the Real Property and consummate the transactions provided for herein pursuant to an order of the Court and Buyer desires to purchase the Real Property pursuant to those terms and conditions and this Agreements.

NOW, THEREFORE, in consideration of the premises and the respective undertakings of Seller and Buyer hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which consideration are hereby acknowledged, it is hereby agreed as follows:

## I.
## DEFINITIONS

**1.1**    Definitions.

For purposes of this Agreement, the following terms have the meanings specified or referenced below.

"**Agreement**" has the meaning set forth in the introductory paragraph.

"**Buyer**" has the meaning set forth in the Preamble to the Agreement.

"**Closing**" has the meaning set forth in Section 5.1 of the Agreement.

"**Closing Date**" has the meaning set forth in Section 5.1 of the Agreement.

"**Court**" means the United States District Court for the District of Arizona.

"**Due Diligence Materials**" means any data, documents or other information supplied by the Receiver, the Receivership Estates and their representatives to Buyer in connection with Buyer's purchase and inspection of the Real Property.

"**Earnest Money**" has the meaning set forth in Section 3.2 of the Agreement.

"**Encumbrances**" means liens, mortgages, pledges, security interests, restrictions, judgments, prior assignments, liabilities, obligations, encumbrances, charges, tenancies, licenses, covenants, successor or transferee liabilities and claims of any and all nature and description whatsoever.

"**Excluded Assets**" means the Excluded Documents, Intangible Property, cash, cash equivalents, checks and other funds, including, without limitation, Seller's accounts receivable, notes, securities and other evidence of indebtedness held at the Property as of the Closing Date, and balances on deposit to the credit of Seller with banking institutions (all of which shall be retained by Seller).

"**Excluded Documents**" means all (a) the corporate minute books and stock registers of Seller, (b) internal memoranda, correspondence, analyses, documents or reports prepared by or for Seller or the Seller Affiliates in connection with the sale of the Real Property, including, without limitation, tax returns or financial statements of Seller (exclusive of operating statements and the general ledger of the Real Property and any supporting information which shall be available for

2

review by Buyer) for or in connection with its ownership or operation of the Real Property, and (c) communications between Seller or any Seller Affiliate and their respective attorneys.

"**Intangible Property**" means all intangible property used by Seller exclusively in connection with the ownership and operation of the Real Property, including Intellectual Property Rights.

"**Intellectual Property Rights**" means all patents, copyrights, trade secrets, trademarks, trade names, service marks, confidential information and other know-how owned by Seller or the Seller Affiliates or used by Seller or the Seller Affiliates, including but not limited to (a) marketing and management intangibles, (b) all proprietary computer software developed and owned by Seller or the Seller Affiliates, if any, (c) all proprietary manuals, instructions, policies, procedures and directives issued by Seller or the Seller Affiliates to their employees, and (d) Proprietary Marks.

"**Parties**" refers to the Buyer and Seller together.

"**Permitted Encumbrances**" means (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record and any other matters set forth as exceptions to title in any title commitment obtained Buyer (other than monetary liens to be discharged at Closing) none of which will render title to the Real Property unmarketable and none of which are otherwise unacceptable to Buyer in Buyer's commercially reasonable discretion; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; (f) governmental laws, regulations, statutes, codes, ordinances and restrictions now or hereafter in effect to the extent affecting or applicable to the Real Property, including, without limitation, zoning ordinances (and amendments and additions relating thereto), the Americans with Disabilities Act of 1990, as amended, and any other laws or regulations applicable to the operation of the Property; (h) liens for taxes not yet payable, and (i) any liens resulting from the actions or omissions of the Buyer.

"**Proprietary Marks**" means all trademarks, service marks, trade names, trade dress, symbols, logos, slogans, designs, insignia, emblems, devices, distinctive designs of signs, or any other source identifying feature, or combinations thereof, that relate to the Receivership Entities and their business or containing the name "ArciTerra" or a version thereof.

"**Real Property**" has the meaning set forth in in the Preamble to the Agreement.

"**Receivership Estates**" has the meaning set forth in the Preamble to the Agreement.

"**Sale Hearing**" means the hearing date scheduled by the Court to consider and approve the sale of the Property and entry of the Sale Order.

"**Sale Motion**" means that certain motion filed by the Receiver on behalf of the Receivership Estates and Seller seeking entry of the Sale Order.

"**Sale Order**" means a final Order of the Court (i) authorizing and approving, *inter alia*, the sale of the Property to Buyer on the terms and conditions set forth herein, free and clear of all Encumbrances (other than Permitted Encumbrances), and (ii) granting Seller and the Receiver all requisite power and authority to convey good, marketable and insurable title to the Real Property.

"**Seller**" has the meaning set forth in the introductory paragraph of the Agreement.

"**Seller Affiliates**" means any officer, director, employee, trustee, member, shareholder, partner, principal, parent, subsidiary or other affiliate of the Seller.

## II.
## PURCHASE AND SALE

**2.1**     Purchase and Sale of Real Property.   Subject to the terms and conditions hereof, Seller shall sell, assign, transfer and convey to Buyer, free and clear of all Encumbrances other than Permitted Encumbrances, Seller's right, title and interest in and to the Real Property, including:

**2.1.1**   The Real Property, together with all rights, easements, tenements, and appurtenances pertaining to or inuring to the benefit of Seller or the Real Property;

**2.1.2**   All improvements, structures and fixtures owned by Seller and placed, constructed on or installed on the Real Property, including buildings, structures, fixtures, and other permanent improvements located thereon or therein, including, without limitation, walkways, driveways, parking lots, and all rights, benefits and privileges appurtenant thereto ( collectively, the "**Improvements**"); and

**2.1.3**   All records, surveys, title notes, title policies, repair histories, equipment and other warranties, termite bonds and reports, environmental studies, leasing information, financial records, architectural and engineering plans, and other instruments and items which relate to the Real Property and the Improvements thereon, which are in the present possession or control of the Seller (the "**Records**").

**2.2**     Excluded Assets and Liabilities.   The sale pursuant to this Agreement shall not include (a) the Excluded Assets and (b) the assumption by Buyer of any liabilities of Seller, the Seller Affiliates and the Receivership Estates.

**2.3**     Exclusive Possession.   The Sale Order shall provide for conveyance of the Real Property to Buyer free and clear of the interests of any tenant in possession or other occupant.

## III.
## PURCHASE PRICE AND EARNEST MONEY

**3.1**     Purchase Price.   The purchase price (the "**Purchase Price**") for the Property shall be Two Million, Five Hundred Thousand Dollars ($2,500,000.00) payable as follows:   (a) through credit of the Payoff Amount (plus per diem interest in the amount of $270.30 for each day after July 15, 2024 that the final Sale Order is not entered) and full satisfaction of the Mortgage and all claims of Buyer as against the Receivership Estates, and (b) cash of Two Hundred Forty-Six Thousand Five Hundred Thirty-One Dollars and Forty-Nine Cents ($246,531.49) (the "**Cash Portion**"), subject to prorations, adjustments and credits as expressly provided for in section 3.3. The Cash Portion Price shall be payable by wire transfer in immediately available funds to the Title Company for disbursement to Seller or as Seller directs at Closing.

**3.2**     Earnest Money.   An initial earnest money deposit in the amount of Twenty-Five Thousand and 00/100 Dollars ($25,000.00) (the "**Earnest Money**") shall be deposited by wire transfer in escrow with Farr Law Firm, P.A. as agent for Old Republic National Title Insurance

Company, 99 Nesbit St., Punta Gorda, Florida 33950 (the "**Title Company**") upon execution of this Agreement by Buyer.

**3.3** <u>Buyer Credits at Closing</u>. From the Cash Portion of the Purchase Price, Seller shall pay or credit to Buyer (a) one-half of the Florida documentary stamp tax due at Closing, in an amount not to exceed Eight Thousand, Seven Hundred and Fifty Dollars ($8,750.00), (b) one-half the cost of title insurance polies purchased by Buyer, including any extended coverage title insurance policy or endorsements issued in connection with this Agreement or the transaction contemplated hereby (the "**Title Policy**"), in an amount not to exceed Four Thousand, Eight Hundred and Ninety-Two Dollars ($4,892.00), and (c) Seller's pro rata share of the unpaid 2024 real property taxes, in an amount not to exceed Thirteen Thousand Seven Hundred and Fourteen Dollars ($13,714.00).

## IV.
## SALE SUBJECT TO APPROVAL OF THE COURT

**4.1** <u>Sale Motion</u>. The Parties acknowledge it is a condition precedent to the Closing that Receiver obtain approval of the sale from the Court. Upon execution of this Agreement by each of the Parties, payment of the Earnest Deposit by Buyer, and receipt by the Receiver of three appraisals for the Property, which confirm the Purchase Price is at least two-thirds (2/3) of the appraised value, the Receiver, on behalf of the Receivership Estates and Seller, shall file with the Court, the Sale Motion seeking approval of this Agreement and entry of the Sale Order. The Receiver shall affix a true and complete copy of this Agreement and the three appraisals to the Sale Motion filed with the Court.

**4.2** <u>Court Filings</u>. The Receiver agrees to diligently prosecute the Sale Motion and seek entry of the Sale Order. The Receiver shall provide Buyer with a copy of the Sale Motion and Sale Order prior to filing same with the Court, and Buyer shall have a reasonable opportunity to provide comments. The parties shall cooperate with one another in the drafting of the Sale Order so as to meet all applicable Florida title requirements.

**4.3** <u>No Contingencies</u>. There is no contingency of any kind or nature that will permit the Buyer to withdraw its offer to Purchase the Property pursuant to the terms of this Agreement and receive a return of the Earnest Money other than (a) the Court's denial of the Sale Motion or (b) the Receiver's inability to deliver marketable and insurable title to the Real Property, subject only to Permitted Encumbrances (the "**Permitted Contingencies**"). The Receiver shall have the right in his sole and absolute option to adjourn the Closing in order to obtain approval of the Sale Motion and remedy any defect to title. The failure to Close for any reason whatsoever, except the Permitted Contingencies, will result in the Receiver retaining the Earnest Money and the right (in the Receiver's sole discretion) to sell Property to any other party. Buyer shall have no recourse to any other property or assets of the Receiver and the Receivership Estates, which shall be exempt from levy, execution or other enforcement procedure for the satisfaction of Buyer's remedies. The provisions of this section will survive the Closing or the earlier termination of this Agreement.

**4.4** <u>Sale Free and Clear of Encumbrances</u>. Except to the extent specifically provided for in this Agreement, the Sale Order shall provide that the Property shall be sold and conveyed to the Buyer at the Closing free and clear of any and all Encumbrances, except for Permitted Encumbrances.

**V.**
**CLOSING**

**5.1**     Time and Place of Closing.  The closing of the purchase and sale of the Property (the "**Closing**") pursuant to this Agreement shall take place within ten (10) days immediately following the entry of the Sale Order  (the "**Closing Date**"), it being expressly understood by the Parties that time is of the essence.  Failure to consummate the Closing shall not result in the termination of this Agreement or relieve Buyer of any obligation hereunder.  Notwithstanding the actual time of Closing on the Closing Date, the Closing shall be deemed, for accounting and financial reporting purposes, to have occurred as of 12:00:01 a.m. on the Closing Date.  The Closing shall be held by remote escrow through the office of the Title Company, or at such other location as may be acceptable to the Parties.  Notwithstanding any other provision above, in the event that the Sale Order is not entered by October 15, 2024, then, at any time thereafter, and prior to the entry of the Sale Order, Buyer may elect to terminate this Agreement by written notice to Seller, at which time, the Escrow Agent shall refund the Earnest Money to Buyer and the Parties shall be discharged from all further duties and obligations hereunder.

**5.2**     Seller's Deliveries at Closing.  At the Closing, the Seller shall cause to be delivered to the Title Company (unless otherwise noted herein) the items, documents and instruments in the form specified herein, each being duly executed and acknowledged, and in recordable form, where required:

**5.2.1.1.**     A receiver's deed (the "**Deed**") conveying marketable and insurable fee simple title to the Property to Buyer, free and clear of all Encumbrances excepting only the Permitted Encumbrances, in the form of **Exhibit A** attached to this Agreement and made a part hereof;

**5.2.1.2.**     The Title Company's standard form of owner's affidavit dated as of the Closing Date, provided that any representation made therein shall be to the Receiver's actual knowledge only (without investigation) and that such affidavit shall contain no surviving indemnity obligations (other than, if any, in connection with loss resulting from an inaccuracy in any representation in such affidavit resulting from a failure by the Receiver to disclose information of which it was actually aware) and shall disclose all known parties in possession other than Seller and the Receiver or state that, to the Receiver's actual knowledge, there are no such parties;

**5.2.1.3.**     An affidavit stating that Seller is not a "foreign person" within the meaning of Section 1445(0)(3) of the Internal Revenue Code of 1986, in the form of **Exhibit B** attached to this Agreement and made a part hereof;

**5.2.1.4.**     An IRS form W-9 setting forth the federal employer identification number of the Seller or Receiver to which the proceeds of sale will be reported by the Title Company on IRS form 1099;

**5.2.1.5.**     Customary documents sufficient to cause the Title Company to satisfy all requirements to issue its policy of title insurance without exception for any lien or claim for brokerage services as of the Closing Date, subject only to the Permitted Encumbrances, including customary waivers or, if necessary, recordable discharges of monetary liens to be satisfied out of Closing proceeds;

**5.2.1.6.** Counterparts of a closing statement (the "**Closing Statement**") summarizing all adjustments in respect of the Purchase Price made at the Closing;

**5.2.1.7.** The Sale Order;

**5.2.1.8.** Any and all other documents described in this Agreement, required by law, or otherwise customary, necessary or appropriate to consummate and evidence the transaction contemplated hereby and not inconsistent with the terms of this Agreement; and

**5.2.1.9.** All keys or alarm/access codes (if applicable) to the Property, if applicable, which are in the possession or control of the Receiver.

**5.3** <u>Buyer's Deliveries at Closing</u>. At the Closing, the Buyer shall cause to be delivered to Seller or the Title Company:

**5.3.1.1.** The Cash Portion of the Purchase Price, less the Earnest Money deposited;

**5.3.1.2.** A satisfaction and release of all liens (by or through Buyer) and the Mortgage, and waiver of all claims against the Receiver, the Receivership Estates and their respective representatives, agents and professionals;

**5.3.1.3.** A copy of resolutions, consents or other evidence satisfactory to Seller which authorize the transactions contemplated by this Agreement and the execution of this Agreement and the documents, instruments and agreements to be executed and delivered by Buyer pursuant hereto, together with, if necessary, proof as to the authority of the person(s) executing and delivering this Agreement and such documents, instruments and agreements on behalf of Buyer;

**5.3.1.4.** Executed counterpart of the Closing Statement; and

**5.3.1.5.** Any and all other documents described in this Agreement, required by law, or otherwise necessary or appropriate to consummate and evidence the transaction contemplated hereby.

## VI.
## PROPERTY CONVEYED "AS-IS"

**6.1** <u>No Representations or Warranties</u>. The Receiver, the Receivership Estates and their representatives, agents and professionals have not made and do not make any representations or warranties as to the physical (including without limitation environmental) condition, expenses, operations, value of the Real Property, or any other matter or thing affecting or related to the Real Property or this sale, which might be pertinent to the purchase of the Real Property. Buyer hereby expressly agrees and acknowledges that no such representations or warranties, express or implied, have been made. The Receiver, the Receivership Estates and their representatives, agents and professionals shall not be liable or bound in any manner by expressed or implied warranties, guarantees, promises, statements, representations or information pertaining to the Real Property, made or furnished by the Receiver, the Receivership Estates or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Receiver or the Receiver Estates unless such warranties, guaranties, promises, statements,

representations or information are expressly and specifically set forth in writing within this Agreement.

**6.2**     <u>"As Is", "Where Is", "With All Faults"</u>.  The Real Property is being sold "**AS IS", "WHERE IS"**, **"WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature, and free and clear of any Encumbrances (other than Permitted Encumbrances), with such Encumbrances, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the Closing, and the sale of the Real Property is subject to, among other things, Permitted Encumbrances.

**6.3**     <u>Due Diligence</u>.  By delivering its Earnest Money, Buyer acknowledges that it had the opportunity to review and inspect the Real Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on its own independent investigations and inspections of the Real Property in executing this Agreement.  Neither the Receiver, the Receivership Estates nor any of their representatives or professionals makes any representations or warranties with respect to the permissible uses of the Real Property including, but not limited to, the zoning of the Real Property.  The Real Property will be sold subject to any and all violations or conditions requiring corrective action.  The Receiver, the Receivership Estates, including the Seller and their representatives, agents and professionals, make no representations or warranties as to the truth, accuracy or completeness of the Due Diligence Materials (*e.g.*, that such materials are complete, accurate or the final version thereof, or that all such materials are in Seller's possession), and shall have no obligation to revise, update or augment such materials. It is the Parties' express understanding and agreement that the Due Diligence Materials are provided only for Buyer's convenience in making its own examination and determination as to whether it wishes to purchase the Real Property, and, in doing so, Buyer shall rely exclusively on its own independent investigation and evaluation of every aspect of the Real Property and not on any materials supplied by the Receiver, the Receivership Estates, the Seller and their representatives, agents and professionals. Buyer expressly disclaims any intent to rely on any such materials provided to it in connection with this Agreement and the purchase of the Real Property and agrees that it shall rely solely on its own independently developed or verified information.

**6.4**     The Receiver shall not be obligated to deliver at closing a Certificate of Occupancy, Certificate of Completion or any equivalent local document for the Real Property and/or any and all changes or additions thereto that would require a Certificate of Occupancy or Certificate of Completion.

**6.5**     If the Receiver is unable to deliver the Real Property in accordance with the terms and conditions of this Agreement for any reason whatsoever, the Receiver's only obligation will be to refund the Earnest Money, without interest, to the Buyer and, upon such refund, the Buyer shall have no claim or recourse against the Receiver, the Receivership Estates, or their representatives, agents and professionals and shall have no further rights under this Agreement.

**6.6**     Buyer agrees, except to the extent required by applicable law, not to submit any reports, studies or other documents or information to any governmental agency prior to the Closing unless first approved by Seller, such approval not to be unreasonably conditioned, withheld or delayed. Specifically, Seller may object to any disclosure of adverse information or documentation relating to the Real Property. To the extent Buyer claims any disclosure is required by applicable

law, Buyer shall afford Seller a reasonable opportunity to evaluate such claim and make any legal objection Seller is permitted by such law to make.

**6.7** From and after the Closing, Buyer shall protect, defend, indemnify and hold the Receiver, the Receivership Estates, including the Seller, its member(s), Seller Affiliates and subsidiaries, and their respective members, partners, directors, officers, participants, employees and agents, free and harmless from and against any and all claims, including, without limitation, investigatory expenses, clean-up costs and reasonable attorneys' fees and related court costs of whatever kind or nature arising from or in any way connected with the physical condition of the Real Property or any other aspect of the Real Property, but only to the extent first arising or accruingafter the Closing. Buyer's obligations of indemnity set forth herein shall expressly survive the Closing hereof.

**VII.**
**CONDITION; CASUALTY**

**7.1** Until the Closing, Seller or Seller's agent shall operate and maintain the Real Property in a businesslike manner. Notwithstanding the foregoing, prior to the Closing, (i) Seller shall not enter into any new lease or (ii) enter into any new service contract relating to the continued operation of the Real Property as vacant land that will be binding on the Buyer or the Real Property after the Closing, without the prior written consent of Buyer (such consent not to be unreasonably, withheld, delayed or conditioned).

**7.2** If, prior to the Closing, a material portion of the Real Property or Improvements is materially damaged or is destroyed, or is taken under power of eminent domain (or any entity having condemnation authority shall take any steps preliminary thereto), then Seller shall promptly deliver to Buyer written notice thereof and Buyer shall be entitled, as its sole remedy, to terminate this Agreement and receive a prompt refund of the Earnest Money upon written notice to Seller given prior to Closing. In the event that Buyer does not terminate this Agreement pursuant to the immediately preceding sentence, Buyer shall close this transaction on the date and at the Purchase Price herein agreed, and Seller will assign to Buyer Seller's right in and to any insurance proceeds payable in connection with the casualty or Seller's portion of any condemnation award, as the case may be, up to the amount of the Purchase Price. For purposes of this section**,** a **"material portion"** of the Real Property or Improvements shall mean that portion which, if damaged, destroyed, taken or condemned, would (i) eliminate access to any portion of the remainder to which access is available as of the date of this Agreement, (ii) cause any non-compliance with any applicable law, ordinance, rule or regulation of any federal, state or local authority or governmental agency having jurisdiction over the Real Property, (iii) materially breach any reciprocal easement agreement, covenant or similar agreement with or obligation to a third party or (iv) materially adversely reduce Buyer's expected economic return from its contemplated ownership, development or operation of the Real Property or materially reduce the market value of the Real Property or Improvements as a result thereof.

**VIII.**
**REPRESENTATIONS AND WARRANTIES**

**8.1** Buyer warrants and represents to Seller as follows:

9

**8.1.1**   Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida.

**8.1.2**   Buyer has full power and authority to enter into this Agreement and perform its obligations hereunder in accordance with the terms hereof. The execution, delivery and performance of this Agreement by Buyer and the documents to be executed by Buyer pursuant hereto have been duly and validly authorized by all necessary action on the part of Buyer, and this Agreement and any other such documents executed by Buyer document shall constitute the valid, binding obligation and agreement of Buyer, enforceable against Buyer in accordance with their respective terms. No bankruptcy, insolvency, reorganization, arrangement or moratorium proceeding or allegation of fraudulent conveyance is now pending or threatened against Buyer.

**8.2**   Such representations and warranties, shall survive the Closing hereof until six (6) months after the date of Closing. Any claim not asserted in writing by Seller or Buyer within such period shall lapse and be forever null and void.

**IX.**
**CONDITIONS TO CLOSING**

**9.1**   <u>Seller's Obligation to Close</u>.  The obligation of Seller to close under this Agreement is expressly conditioned upon the fulfillment by and as of the Closing Date of each of the conditions listed below, provided that Seller, at its election, may waive all or any of such conditions except the entry of the Sale Order.

**9.1.1**   Buyer shall have paid to Seller the Purchase Price required under this Agreement and all other amounts due to Seller hereunder.

**9.1.2**   All representations and warranties of Buyer set forth herein shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date.

**9.1.3**   Buyer shall have executed and/or delivered or caused to be delivered at Closing all documents and executed counterparts of documents and instruments required by this Agreement to be executed and/or delivered by Buyer and shall have taken all other actions and fulfilled all other covenants and conditions required of Buyer under this Agreement in all material respects.

**9.1.4**   The transaction contemplated by this Agreement shall be approved by the Court and the Sale Order shall have been entered.

**9.1.5**   Buyer shall have complied with all of Buyer's covenants and agreements hereunder.

**9.2**   <u>Buyer's Obligation to Close</u>.  The obligation of Buyer to close under this Agreement is expressly conditioned upon the fulfillment by and as of the Closing Date of each of the conditions listed below, provided that Buyer, at its election, may either (i) terminate this Agreement and receive a refund of its Earnest Money if any such condition is not satisfied as of the Closing Date or (ii) waive all or any of such conditions, except for entry of the Sale Order, which election shall be conclusively evidenced by Buyer's proceeding with and completing the Closing of the transaction provided for herein:

**9.2.1**   The transaction contemplated by this Agreement shall be approved by the Court as evidenced by entry of the Sale Order, a certified copy of which is delivered to the Title Company for recording.

**9.2.2**   Seller shall have executed and/or delivered or caused to be delivered at Closing all of the documents and executed counterparts of documents and instruments required by this Agreement to be executed and/or delivered by Seller.

**9.2.3**   Title Company shall be committed to issue to Buyer an owner's policy of title insurance for the Property in an amount equal to the Purchase Price with such coverages and exceptions to coverage as are acceptable to Buyer in Buyer's commercially reasonable discretion.

**9.2.4**   Seller shall have complied with all of Seller's covenants and agreements hereunder and shall deliver exclusive possession of the Real Property to the Buyer.

## X.
## COSTS

**10.1**   Buyer will pay the following costs of Closing this transaction:

**10.1.1**   the fees and disbursements of its counsel, inspecting architect and engineer, surveyor, environmental consultants and other consultants and agents, if any;

**10.1.2**   any fees incurred in connection with any Survey;

**10.1.3**   all expenses pertaining to any financing obtained by Buyer;

**10.1.4**   all recording fees, stamp and transfer taxes and intangible taxes, in excess of $8,750.00; and

**10.1.5**   the cost of the Title Policy in excess of $4,892.00.

**10.2**   With the proceeds received from the Cash Portion of Purchase Price, Seller will pay the following costs of Closing this transaction:

**10.2.1**   $4,892.00 towards the Buyer's purchase of the Title Policy;

**10.2.2**   $8,750.00 towards any recording fees, stamp and transfer taxes and intangible taxes; and

**10.2.3**   fees and disbursements of Seller's counsel and all of Seller's and the Receiver's other representatives, consultants and agents, if any.

## XI.
## PRORATIONS

**11.1**   The following provisions shall govern the apportionment of income and expenses with respect to the Property between Seller and Buyer:

**11.1.1**  Seller shall arrange for final meter readings on all utilities at the Property to be taken prior to the Closing Date. Seller shall be responsible for the payment of utilities used through the day preceding the Closing Date and Buyer shall be responsible for the payment of utilities used on or after the Closing Date. With respect to any utility for which there is no meter, the expenses for such utility shall be prorated between Seller and Buyer at Closing based upon the most current bill for such utility. Buyer shall use reasonable efforts to cause the transfer of utility company accounts from Seller to Buyer on the Closing Date, provided that the same shall be transferred within not later than thirty (30) days thereafter in any event. All deposits with utility companies will be returned to Seller upon Buyer's receipt of the same.

**11.1.2**  Real estate taxes (including ad valorem and equivalent taxes) and assessments assessed prior to the Closing Date shall be prorated between the Buyer and the Seller as of the Closing Date.  Buyer shall receive a credit against the Purchase Price in an amount not to exceed Thirteen Thousand Seven Hundred and Fourteen Dollars ($13,714.00) for all taxes and assessments assessed against the Real Property, regardless of the date of assessment.  At or prior to Closing, Buyer shall pay all taxes and assessments assessed and due as of the Closing Date. Thereafter, Seller shall have no further liability to pay taxes or assessments due after the Closing Date. If at the time of Closing the tax assessment for the Property for the succeeding year has been completed, taxes payable shall be computed based on the current tax assessment. If at the time of Closing the tax assessment for the Property for the succeeding year has not been completed, the taxes payable shall be assumed to be the same as the prior year for the purpose of such proration and credit for due but unpaid taxes, and this shall be a final settlement.

**11.1.3**  [Omitted]

**11.1.4**  [Omitted]

**11.1.5**  The pro-rations described in this Section shall be made as of 12:00 a.m. EST on the Closing Date, as if Buyer were vested with title to the Property during the entire day upon which Closing occurs. All pro-rations described in this Section shall be effectuated by increasing or decreasing, as the case may be, the amount of cash to be paid by Buyer to Seller at Closing. Seller and Buyer (and/or its property manager) agree to adjust between themselves after Closing, as promptly as practicable, any errors or omissions in the pro-rations made at Closing.

**11.1.6**  All of Seller's accounts receivable and accounts payable shall be and remain the sole property and liability of Seller subsequent to the Closing of the transaction contemplated hereby.

**11.1.7**  The provisions of this Section shall survive Closing.

## XII.
## PROPERTY MANAGEMENT

**12.1**  [Omitted]

## XIII.
## DEFAULT AND REMEDIES

**13.1**    If Buyer is not then in default hereunder, and Seller fails to close the transaction contemplated hereby, Buyer shall be entitled, as its sole and exclusive remedy, to terminate this Agreement by giving written notice of termination and receive a full and immediate refund of any and all Earnest Money previously deposited.

**13.2**    If Buyer fails to close the transaction contemplated hereby, Seller shall be entitled to receive the Earnest Money as liquidated damages; provided Seller does not waive and, in particular, reserves any rights against and indemnities from Buyer which are herein intended to survive the termination of this Agreement pursuant to the express provisions hereof.   Seller and Buyer recognize and agree that, under the circumstances existing as of the date of execution of this Agreement, the liquidated damages set forth above are a reasonable estimate of the damages which Seller would incur as a result of such a failure and are reasonable in the context of the transaction in which a complete measure of damages is not feasible.

**13.3**    The provisions of this Article XII shall survive the termination of this Agreement.

## XIV.
## NOTICES

**14.1**    Any notice, request, demand, instruction or other communication to be given to either party hereunder, except those required to be delivered at Closing, shall be in writing, and shall be given and received (a) upon receipt if hand delivered, (b) the following business day after being sent by recognized overnight courier service, or (c) the date sent by electronic mail (including, without limitation, by PDF) shall be deemed given when sent, provided any such notice by electronic mail is sent on a business day during regular business hours (otherwise it shall be deemed received on the following business day).  All notices shall be addressed as follows:

IF TO SELLER:          1000 West Marion PG FL, LLC
                       c/o Allen D. Applbaum, Receiver
                       StoneTurn
                       17 State Street, 2nd Floor
                       New York, New York 1004
                       Tel. (212) 430-3449
                       Email: aapplbaum@stoneturn.com

                       And

                       StoneTurn
                       6429 Wilshire Blvd, Suite 880
                       Los Angeles, California 90048
                       Attn: Randall Coxworth
                       Tel. (213) 459-1859
                       Email: rcoxworth@stoneturn.com

WITH A COPY TO:     Archer & Greiner, P.C.
1025 Laurel Oak Road
Voorhees, New Jersey 08043
Attn: Jawad H. Salah
Tel. (856) 673-7143
Email: jsalah@archerlaw.com

And

Archer & Greiner, P.C.
1211 Avenue of the Americas
New York, New York 10036
Attn:  Gerard DiConza
Tel. (212) 682-4940
Email: gdiconza@archerlaw.com


IF TO BUYER:     1000 WEST MARION, LLC
33241 Washington Loop Road
Punta Gorda, FL 33982
Attn: Thoms Gruber
Email: gruber@taginvest.com and rommer@taginvest.com


WITH A COPY TO:     FARR LAW FIRM, P.A.
99 Nesbit St.
Punta Gorda, FL 33950

Attn: David A. Holmes, Esq.
Email: dholmes@farr.com and jbauer@farr.com

**14.2**    The addresses and addressees for the purpose of this article may be changed by either party by giving notice of such change to the other party in the manner provided herein for giving notice. For the purpose of changing such addresses or addressees only, unless and until such written notice is received, the last address and addressee stated herein shall be deemed to continue in effect for all purposes.

## XV.
## ESCROW INSTRUCTIONS

**15.1**    Upon execution of this Agreement, the Parties shall deliver an executed counterpart of this Agreement to the Title Company to serve as the instructions to the Title Company as the escrow holder for consummation of the transaction contemplated herein. Seller and Buyer agree to execute such additional and supplementary escrow instructions as may be reasonably required by the Title Company to comply with the terms of this Agreement, provided, however, that in the event of any conflict between the provisions of this Agreement and any supplementary escrow instructions, the terms of this Agreement shall prevail as between Buyer and Seller.

## XVI.
## <u>MISCELLANEOUS</u>

**16.1**    This Agreement, together with the exhibits attached hereto, all of which are incorporated by reference, is the entire agreement between the Parties with respect to the subject matter hereof, and no alteration or modification hereof shall be binding unless in writing and signed by both Parties.

**16.2**    If any provision of this Agreement or application to any party or circumstances shall be determined by any court of competent jurisdiction to be invalid and unenforceable to any extent, the remainder of this Agreement or the application of such provision to such person or circumstances, other than those as to which it is so determined invalid or unenforceable, shall not be affected thereby, and each provision hereof shall be valid and shall be enforced to the fullest extent permitted by law.

**16.3**    This Agreement shall be construed and enforced in accordance with the laws of the State of Florida, without regard to the conflicts of laws principles of any jurisdiction.

**16.4**    Buyer may not assign this Agreement without first obtaining Seller's written consent, except that, to the extent permissible under (or not prohibited by) the Sale Order, Buyer may assign this Agreement to an entity controlled by, controlling or under common control with Buyer. Any assignment in contravention of this provision shall be void. No assignment shall release the Buyer herein named from any obligation or liability under this Agreement. Any permitted assignee shall be deemed to have made any and all representations and warranties made by Buyer hereunder, as if the assignee were the original signatory hereto.

**16.5**    Subject to the limitations of **Section 16.4,** this Agreement shall be binding upon and inure to the benefit of Buyer and Seller and their successors and permitted assigns.

**16.6**    Buyer shall make no public disclosure of the terms of this transaction without the prior written consent of Seller unless legally compelled to do so (by deposition, interrogatory, request for documents, subpoena, civil investigation, court order or demand or similar process or by law), except that Buyer may discuss the transaction in confidence with its members, attorneys, lenders, representatives, agents, contractors, proposed joint ventures or prospective mortgagees.

**16.7**    The captions in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Agreement or the scope or content of any of its provisions.

**16.8**    In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs. The term "prevailing party" as used in this Agreement shall include, but not be limited to, a party who obtains legal counsel or brings an action against the other by reason of the other's breach or default and obtains substantially the relief sought whether by compromise, mediation, settlement, judgment or otherwise (and regardless of whether formal litigation is commenced).

**16.9**    Nothing contained in this Agreement shall be construed to create a partnership or joint venture between the Parties or their successors in interest.

**16.10**   Time is of the essence in this Agreement.

**16.11**   This Agreement may be executed and delivered in any number of counterparts, and/or by email (.pdf format) or by facsimile each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same instrument.

**16.12**   Buyer and Seller agree not to record this Agreement or any memorandum hereof.

**16.13**   If as a result of any tax protest or otherwise any refund or reduction of any real property or other tax or assessment relating to the Property during the period for which, under the terms of this Agreement, Seller is responsible, Seller shall be entitled to receive or retain such refund or the benefit of such reduction, less equitable prorated costs of collection.

**16.14**   Buyer agrees that it does not have and will not have any claims or causes of action against the Seller, the Seller Affiliates, the Receiver, the Receivership Estates and their representatives arising out of or in connection with this Agreement or the transactions contemplated hereby.  Buyer agrees to look solely to Seller's assets directly attributable to the Real Property (including any consideration received by Seller from the sale of all or any part thereof) for the satisfaction of Seller's liability or obligation arising under this Agreement or the transaction contemplated hereby, or for the performance of any of the covenants, warranties or other agreements of Seller contained herein, and further agrees not to sue or otherwise seek to enforce any personal obligation against the Seller, any of the Seller Affiliates, the Receiver, the Receivership Estates and their representatives with respect to any matters arising out of or in connection with this Agreement or the transactions contemplated hereby.

**16.15**   The formal tender of an executed Deed by Seller is hereby waived, but nothing herein contained shall be construed as a waiver of Seller's obligation to deliver the Deed and/or of the concurrent obligation of Buyer to pay the portion of the Purchase Price payable at Closing, if any.

**16.16**   The parties each agree to do such other and further acts and things, and to execute and deliver such instruments and documents (not creating any obligations additional to those otherwise imposed by this Agreement) as either may reasonably request from time to time, whether at or after the Closing, in furtherance of the purposes of this Agreement. The provisions of this Section 16.16 shall survive the Closing.

**16.17** THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THAT EITHER PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE PROPERTY, THE CONVEYANCE INSTRUMENT OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR IN RESPECT OF ANY COURSE OF CONDUCT, STATEMENTS (WHETHER ORAL OR WRITTEN), OR ACTIONS OF EITHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR EACH OF THE PARTIES TO ENTER INTO THIS TRANSACTION AND SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS AGREEMENT.

*[ Signatures on following pages]*

*IN WITNESS WHEREOF, the undersigned parties have caused this Agreement to be executed as of the date first above written.*

**"SELLER"**

**ALLEN D. APPLBAUM, SOLELY IN HIS CAPACITY AS RECEIVER FOR 1000 WEST MARION PG FL, LLC,**

By: _____

Allen D. Applbaum, Receiver

**"BUYER"**

1000 WEST MARION, LLC

By: _____

Name: Alois Rommer

Title: Manager

17

EXECUTED by the Title Company the 24 day of May , 2024, for the purposes of acknowledging receipt of the Earnest Money and agreeing to the provisions relating to the rights and obligations of the Title Company, as set forth herein.

**Old Republic National Title Insurance Company**

By: _____

Name: _____

Title: _____

18

## **SCHEDULE A**

### **Legal Description of Real Property**

Lots 3, 4, 5 and 6, Block 14, Punta Gorda, according to the plat thereof, recorded in Plat Book 1, Page 23, of the Public Records of Charlotte County, Florida; LESS AND EXCEPT: Commencing at the Northwest corner of Lot 3, Block 14, City of Punta Gorda, according to the plat thereof recorded, in Plat Book 1 at Pages 1 and 23, of the Public Records of Charlotte County, Florida, run Southeasterly along the Westerly boundary of said Lot for 15 feet to the Point of Beginning; thence continue for 50 feet along the same line to a point; then run Northeasterly perpendicular to said Westerly boundary for 20 feet to a point; thence run Northwesterly parallel to the Westerly boundary of said Lot 3 for 50 feet to a point; then run Southwesterly for 20 feet perpendicular to said Westerly boundary to the Point of Beginning. Being a portion of said Lot 3

## EXHIBIT A

### FORM of Deed

#### RECEIVER'S DEED

**WHEREAS**, the United States District Court for the _____ District of _____, in a civil action titled <u>Securities and Exchange Commission</u> v. _____ <u>et al.</u>, Case No. _____, having on _____ ordered the appointment of _____ as Receiver to, *inter alia*, take possession, and arrange for the sale, of that certain property located at _____; and

**WHEREAS**, the Court having entered an order confirming the sale of the real property to _____ of _____, and approving this form of deed; and

**WHEREAS**, _____ whose address is _____was duly authorized and directed to convey the real property to the purchaser; and

**WHEREAS**, the real property has been sold pursuant to the Court's order, for the sum of $_____, and

**WHEREAS**, the real property is more particularly described as follows:

**NOW KNOW YE, THAT** _____**,** pursuant to the authority and direction given to it, does hereby bargain, sell, transfer and convey to _____ all the right, title, claims, and interest in the above-described real property, to have and to hold, with appurtenances thereto, by _____ and her heirs and assigns, forever, for their own use and disposition.

**AND ALSO,** _____ does hereby covenant with _____, and its assigns, that it has full power and authority to grant and convey the aforesaid premises in the manner and form aforesaid.

Said premises are conveyed to _____ in fee simple, free and clear of any of the rights, titles, claims or interests, subject to any sums which may be due for municipal property, water or sewer taxes for the year of conveyance, or any special use charges or assessments for the year of conveyance, and subject to all laws, ordinances and governmental regulations affecting said premises, and any easements and restrictions appearing of record, if any.

I have hereunto set my hand and seal, this _____ day of _____, 200_.

Receiver

STATE OF     _____
COUNTY OF _____

1

On this date_____, the signer and sealer of the foregoing instrument, personally appeared before me and acknowledged the same to be his free act and deed.

_____ day of _____, 200_.


(Name)
Notary Public


Return to:        _____

## EXHIBIT B

## FORM of FIRPTA

### FIRPTA AFFIDAVIT

Section 1445 of the Internal Revenue Code provides that a transferee (Buyer) of a U.S. real property interest must withhold tax if the transferor (Seller) is a foreign person.  To inform the transferee [_____], a [_____] ("**Buyer**"), that withholding of tax is not required upon the disposition of a U.S. real property interest[_____], a [_____] ("**Seller**"), hereby certifies to Purchaser the following:

1.  Seller is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations) for purposes of U.S. income taxation;

2.  Seller's U.S. taxpayer identifying number (EIN number) is [  ]; and

3.  Seller's address is [  ].

Seller understands that this certification may be disclosed to the Internal Revenue Service by Purchaser and that any false statement Seller has made here could be punished by fine, imprisonment or both.

Under penalties of perjury, Seller declares that it has examined this certification and to the best of Seller's knowledge and belief, it is true, correct, and complete.

**SELLER:**

[_____],
a [_____]

By: _____
Name: _____
Title: _____

Date: _____

228895794 v1

1