**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>    Plaintiff,<br><br>v.<br><br>Jonathan Larmore, et al.,<br><br>    Defendants. | No. CV-23-02470-PHX-DLR<br><br>**ORDER** |

The Court appointed Allen D. Applbaum as Receiver on December 21, 2023. (Doc. 77.) The Receivership Order directs the Receiver to file applications for compensation and expense reimbursement "within forty-five (45) days after the end of each calendar quarter." (*Id.* at 19.) Before the Court is the Receiver's First Application ("Application") for allowance and payment of professionals' fees and reimbursement of expenses for StoneTurn Group LLP ("StoneTurn") and Archer & Greiner, P.C. ("Archer," and together, the "Retained Personnel") for the period of December 21, 2023 through March 31, 2024. (Doc. 165.)

A court-appointed receiver is entitled to compensation for reasonable fees and expenses. *See S.E.C. v. J.T. Wallenbrock & Assocs.*, 584 Fed. App'x 424, 425 (9th Cir. 2014). In determining the reasonableness of fees, the Court uses the lodestar method, multiplying a reasonable hourly rate by the number of hours reasonably expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A fee award calculated using this method

is presumptively reasonable, shifting the burden to the party opposing the request to show that the amount requested is excessive. *See Garcia v. JPMorgan Chase Bank NA*, No. CV-16-01023-PHX-DLR, 2018 WL 1570249, at *7 (D. Ariz. Mar. 30, 2018).

As of August 13, 2024, the Receiver had approximately $13,500,000.00 in the Receivership fund from operations, completed sales, and other sources. (Doc. 201 at 3.) In its Application, the Receiver requests $3,159,135.00 in fees (with 30%, or $947,740.50 held back) and $154,121.26 in expenses for StoneTurn, and $661,764.15 in fees (with 30%, or $198.529.24, held back) and $10,563.31 in expenses for Archer. (Doc. 165 at 5; Doc. 201 at 3.) To help manage costs, the Retained Personnel agreed to cap all hourly rates at $750.00 and to provide an additional 10% discount on all fees. (Doc. 165 at 5.) The Receiver notes that this first Application covers "an extremely busy period" of this "complex Receivership including over 250 Receivership Entities and 60 properties." (*Id.* at 6.)

> The Receiver and his professionals are dealing with numerous operational issues with respect to real estate holdings affecting more than 200 active tenants. There are over 100 pending civil litigations against the Receivership Entities. Upon his appointment, the Receiver quickly needed to obtain access to books and records, no easy task in this particular situation, conduct discovery and assess the financial and operational situation of the Receivership Entities, to determine how to proceed with operations so as to maximize the value of the assets for the benefit of creditors and investors. The Receiver immediately engaged the services of StoneTurn and Archer. These professionals have experience in real estate, business operations, forensic accounting, investigative research, litigation, reorganization, tax and other specialty areas to address the variety of needs presented by this Receivership as they arise.

(*Id.*) The Application thoroughly itemizes the hours spent by Retained Personnel performing this work. (Docs. 165-2–4.)

At least thirty days prior to filing each quarterly fee application, the Receiver and Retained Personnel must serve counsel for Defendants and for the United States Securities and Exchange Commission ("SEC") with a draft of the application. (Doc. 77 at 19.) The Receiver served counsel for the SEC and counsel for Defendant Jonathan Larmore and

Relief Defendant Marcia Larmore with a draft of the Application on April 15, 2024. Thereafter, the Receiver and the SEC conferred over the draft Application, resulting in some reductions of StoneTurn's fees and an increase of the holdback for StoneTurn and Archer from 10% to 30%. (Doc. 201 at 2.) Defendants did not engage in a similar dialogue. Instead, Jonathan and Marcia Larmore attached the draft Application to a motion seeking to remove the Receiver (Doc. 161), which the Court recently denied (Doc. 225).

The Receiver filed the Application with the Court on May 15, 2024. (Doc. 165.) Pursuant to Local Rule of Civil Procedure 7.2(c), any responses in opposition to the Application were due by no later than May 29, 2024. No timely responses were filed. Jonathan and Marcia Larmore, however, filed a tardy objection on June 7, 2024, which merely incorporated by reference the arguments they made in their motion seeking removal of the Receiver. (Doc. 178.) They did so notwithstanding that on May 15, 2024, the Court issued an order directing all parties "to read Local Rule of Civil Procedure 7.2, which addresses the default deadlines for responding to motions, and to comply moving forward." (Doc. 164.)

Even considering this untimely objection on its merits, however, Jonathan and Marcia Larmore have not rebutted the presumptive reasonableness of the Receiver's lodestar calculations. As the Court noted in its order denying Jonathan and Marcia Larmore's motion to remove the Receiver:

> [Their] objections lack substance. They merely identify days on which StoneTurn recorded many time entries, but they do not articulate a factual basis for their belief that these entries are excessive, unreasonable, or otherwise concerning, especially in a case as complex as this. . . . Jonathan and Marcia [Larmore] have not substantiated their conclusory accusation of improper billing practices with evidence or with specific, concrete examples of objectionable billing entries.

(Doc. 225 at 8–9.)[1]

---

[1] What's more, the size of the Receiver's fee request should not come as a surprise. In their response to the SEC's motion for the appointment of a receiver, Defendants objected to the SEC's proposed receiver and counsel candidates and proposed alternative candidates, including StoneTurn. (Doc. 69.) After multiple conferrals, the parties filed a joint status report on December 20, 2023, in which all agreed that the Court should appoint StoneTurn as the temporary receiver and Archer as Receiver's Counsel. (Doc. 76.) They

Accordingly, because the Receiver has shown that, given the complexity of this Receivership, the fees and expenses documented in its Application are reasonable and in the best interest of the Receivership Estate, its creditors, and other parties in interest,

**IT IS ORDERED** that the Application (Doc. 165) is **GRANTED** as follows:

1. StoneTurn's fees in the amount of $3,159,135.00 for services rendered during the Application Period are approved. The sum of $947,740.50 (30%) of the approved fees shall be held back until further order of the Court. StoneTurn's fees in the amount of $2,211.394.50 shall be paid immediately after entry of this Order. This amount represents the sum of the total StoneTurn fee amount minus the 30% holdback.

2. StoneTurn's expenses in the amount of $154,121.26 are approved for reimbursement and shall be paid immediately after entry of this Order.

3. Archer's fees in the amount of $661,764.15 for services rendered during the Application Period are approved. The sum of $198,529.24 (30%) of the approved fees shall be held back until further order of the Court. Archer's fees in the amount of $463,234.91 shall be paid immediately after entry of this Order. This amount represents the sum of the total Archer fee amount minus the 30% holdback.

---

did so despite the fact that, during a December 14, 2023 hearing, counsel for Relief Defendant Michelle Larmore voiced concerns about the costs of hiring a national receiver like StoneTurn: "The fees for national counsel – national receivers, even if they cut their rates, are going to be extremely high as you've heard. I think if you have StoneTurn, it's going to far exceed 2.5 million. I mean, I think that's on the low side." (Doc. 81 at 16.) During that same hearing, counsel for Jonathan and Marcia Larmore (the only Defendants raising objections to the Application) rebuffed these concerns: "StoneTurn is brought in by the SEC in cases across the country. They've endorsed this entity numerous times. I don't want to say countless but numerous times. I don't hear any objection from the SEC substantively. They can raise their concern. Frankly, the main thing I heard was cost. And I explained to the SEC that they are -- they have -- I don't want to say slashed their rates but they have dramatically decreased their rates. I haven't been able to give the SEC, in all candor, a full schedule of those rates, but I think they're going to be maybe a bit above market for Phoenix, but given the national scope of this matter, I think it makes sense to have someone that has that national capacity and also the staff to handle a matter like this." (*Id.* at 11–12.) Jonathan and Marcia Larmore advocated for the appointment of StoneTurn in part because they believed it was worth paying a premium for StoneTurn's national experience, yet they now balk at those costs without offering any specific factual basis for believing that StoneTurn or Archer have billed unreasonably given the complexity of the Receivership.

4. Archer's expenses in the amount of $10,563.31 are approved for reimbursement and shall be paid immediately after entry of this Order.

Dated this 12th day of September, 2024.

_____
Douglas L. Rayes
Senior United States District Judge