Lee Stein (#012368)
lee@mscclaw.com
Anne Chapman (#025965)
anne@mscclaw.com
MITCHELL | STEIN | CAREY | CHAPMAN, PC
2600 North Central Avenue, Suite 1000
Phoenix, AZ 85004
Telephone: (602) 358-0292
Facsimile: (602) 358-0291

Attorneys for Relief Defendant
Michelle Larmore

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission, | No. 2:23-cv-02470 |
| Plaintiffs, | **RELIEF DEFENDANT MICHELLE LARMORE'S LIMITED OBJECTION TO RECEIVER'S SECOND APPLICATION FOR ALLOWANCE AND PAYMENT OF PROFESSIONAL FEES AND REIMBURSEMENT OF EXPENSES [DOCKET NO. 211] AND RESERVATION OF RIGHTS** |
| v. | |
| Michelle Larmore, | |
| Relief Defendant. | |

Relief Defendant Michelle Larmore ("Michelle"), through counsel, hereby submits this limited objection (the "Limited Objection") to the Receiver's Second Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses, dated September 3, 2024 [Docket No. 211] (the "Motion"),[1] and states as follows:

---

[1] Ms. Larmore did not object to the Receiver's First Application for Allowance and Payment of Professional Fees and Reimbursement of Expenses [Docket No. 165] (the "First Fee Application") as no Community Assets had been sold at the time. *See also* note 3 *infra*.

**<u>Limited Objection</u>**

1.    Over eighteen months ago, Michelle commenced a dissolution of marriage proceeding against defendant Jon Larmore ("<u>Jon</u>") in the Maricopa County Superior Court (the "<u>State Court</u>"). Jon is the ultimate equity holder in several entities and properties that are now presently under the Receiver's control. As a consequence, Michelle holds significant equity interests by operation of Arizona community property law in those assets.[2] Michelle has, through her counsel, worked very cooperatively and constructively with the Receiver team, and expects that this will continue as this case moves forward. This is, perhaps, because Michelle and the Receiver share the objective of preserving the assets of the receivership estate ("<u>Estate</u>") and liquidating them for the benefit of creditors and equity holders. So, Michelle supports the Receiver's work and wants to see the Receiver and his professionals be paid.

2.    That said, the Receiver cannot use any Larmore community property assets or their proceeds to pay their fees (or for any other purpose) because the State Court has prior exclusive jurisdiction over them. On March 14, 2023, Michelle commenced an action for legal separation from Jon in the State Court, styled *In re Marriage of Larmore*, No. FC2023-001520 (the "<u>Dissolution Case</u>"). In the Dissolution Case, the State Court determined that all assets and liabilities acquired by the Larmores after the date of the Larmores' marriage (November 25, 1998) and through March 14, 2023, are community assets and liabilities within the meaning of Title 25, Arizona Revised Statutes (the "<u>Community Assets</u>") and that it has continuously exercised *in rem* jurisdiction over the Community Assets and their proceeds since March 14, 2023. (Exhibit 1 at ¶ 18.) *See, e.g., Schickner v. Schickner*, 237 Ariz. 194, 199, 348 P.3d 890, 895 (Ct. App. 2015) ("[p]roperty takes its character as separate or community at the time of acquisition and retains that character throughout the marriage."). Michelle commenced the Dissolution Case approximately eight months before the SEC filed this civil action and over nine months before the Court appointed the Receiver and purported to take exclusive jurisdiction of the

---

[2] Ariz. Rev. Stat. § 25-211(A).

Community Assets.

3.    Because the State Court was the first court to assert *in rem*/quasi *in rem* jurisdiction over the Community Assets, those assets remain subject to the prior *exclusive* jurisdiction of the State Court. "The ancient and oft-repeated...doctrine of prior exclusive jurisdiction holds that when a court of competent jurisdiction has obtained possession, custody, or control of particular property, that possession may not be disturbed by any other court." *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 591 (9th Cir. 2022) (cleaned up) (quoting *State Eng'r v. S. Fork Band of Te-Moak Tribe of W. Shoshone Indians*, 339 F.3d 804, 809 (9th Cir. 2003)), *cert. denied*, 143 S. Ct. 748 (2023). Put another way, "where one court first takes proper *in rem* jurisdiction over a res, another court is precluded from exercising its jurisdiction over the same res." *Id.* (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922) and citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466-67 (1939)). In Arizona, marital dissolution cases are *in rem* proceedings. *See, e.g., Schilz v. Superior Court*, 144 Ariz. 65, 68, 695 P.2d 1103, 1106 (Ariz. 1985); *Anonymous Wife v. Anonymous Husband*, 153 Ariz. 570, 572, 739 P.2d 791, 793 (Ct. App. 1986), *aff'd in part, rev'd in part on other grounds*, 153 Ariz. 573, 739 P.2d 794 (1987); *see also Martin v. Martin*, 156 Ariz. 440, 446, 752 P.2d 1026, 1032 (Ct. App. 1986) (Arizona court may divide community property "even if that property is located in another state"), *modified on other grounds*, 156 Ariz. 452, 752 P.2d 1038 (1988).

4.    Because the State Court was the first court to assume jurisdiction over the Community Assets, the Court was without power[3] to have "take[n] exclusive jurisdiction and possession"[4] over the same assets. The Community Assets, consequently, remain subject to the exclusive jurisdiction of the State Court, and thus are not an asset of the

---

[3] While the Ninth Circuit has described the prior exclusive jurisdiction rule as, among other things, "a rule of subject-matter jurisdiction…the doctrine is now best understood as a prudential (although mandatory) common law rule of judicial abstention." *Sexton v. NDEX W., LLC*, 713 F.3d 533, 536 n.5 (9th Cir. 2013).

[4] Docket No. 77 at ¶ 1; Docket No. 154 at ¶ 1.

Estate that the Receiver may use or consume.[5] *Cf. L.I.G. Pet Goods Trading, LLC v. Goldfarb*, No. 08-CV-5345, 2009 WL 141845, at *5 (E.D. Pa. Jan. 16, 2009) (prior exclusive jurisdiction rule prevented federal court from appointing receiver over certain businesses because previously filed state court divorce proceeding was "also an *in rem* action in that the state court was asked to make binding dispositions of the marital assets— including the businesses—that will involve determining ownership and distributing to each spouse his or her equitable share"). While Michelle does not oppose the Motion to the extent it seeks allowance of the Receiver's fees and expenses, she is constrained to object to any use of her presumptive fifty percent[6] (50%) of the Community Assets and their proceeds to pay the Estate's administrative expenses or for any other purpose.[7]

5.     To be clear, Michelle supports the receivership and wants to see it accomplish its intended aims of recompensing allegedly harmed investors. But, ultimately, "the authority of a SEC receiver is defined by the entity or entities in the receivership," and the "receiver has no greater rights or powers than the corporation itself would have." *Sec. & Exch. Comm'n v. Horwitz*, No. 2:21-CV-2927-CAS-PDX, 2023 WL 11694914, at *5 (C.D. Cal. Aug. 11, 2023). Here, when the Court appointed the Receiver, the Larmores' equity in the various ArciTerra entities now in receivership was *already* subject to division and distribution by the State Court under Title 25 of the Arizona Revised Statutes. The prior exclusive jurisdiction doctrine—and the principles of comity it upholds (*Sexton*, 713 F.3d at 536)—prevents a unilateral divestiture of the State Court's power and authority

---

[5] For this reason, Michelle filed a limited objection [Docket No. 155] to the Receiver's then-pending sale motions [Docket Nos. 139 and 147], but the Receiver and Michelle thereafter stipulated that the issue presented by Michelle's limited objection was not then ripe, and that the Court should set a briefing schedule at a later time. [Docket Nos. 162 and 167 at p.4.] The Court approved that stipulation. [Docket No. 168 ¶ 3]

[6] Ms. Larmore also has waste claims against Jon that may, under applicable Arizona law, entitle her to a greater percentage interest in Community Assets.

[7] On September 16, 2024, the Receiver and Michelle entered into a stipulation that, in effect, cleared the way for the Receiver and his counsel to be paid the fees that the Court recently allowed in its order on the First Fee Application, and reserved Michelle's rights in connection with her original limited objection. [Docket No. 229]

1    over those assets, even if there is a broader federal remedial objective at work. *Cf.*

2    *Canatella v. Cal.*, 404 F.3d 1106, 1113 (9th Cir. 2005) (district courts have "no discretion"

3    to exercise jurisdiction when the requirements for mandatory abstention are met).

4    <u>**Conclusion and Reservation of Rights**</u>

5          6.      Michelle believes that she and the Receiver could reach a compromise that

6    would consensually resolve the defect in the Court's power over the Community Assets in

7    such a way that does not prejudice investors yet recognizes her property rights that exist as

8    a matter of law and the undisputed fact that ***Michelle is not subject to the asset freeze***.

9    After all, Arizona law is clear that "the community is generally entitled to the profits and

10   gains attributable to community assets." *Schickner*, 237 Ariz. at 199 (quoting *In re*

11   *Marriage of Fong*, 121 Ariz. 298, 305 (Ct. App. 1978)). Under ordinary circumstances, the

12   State Court would have divided the proceeds of the Community Assets, and Michelle could

13   use that cash to live her life and pay her usual expenses. But the intercession of the

14   receivership has prevented that from happening. The receivership presently has control

15   over *all* of the profits and gains of the Community Assets[8]—including Michelle's

16   presumptive fifty percent share—leaving her assets de facto frozen. The SEC evidently

17   never intended this result.

18         7.      Michelle must therefore respectfully reserve all rights with regard to the

19   Court's assertion of jurisdiction over, and any attempt by the Receiver to use, any

20   Community Assets or their proceeds. Should Michelle and the Receiver be unable to

21   resolve this Limited Objection, Michelle anticipates that the parties will so inform the

22   Court and they will proceed to briefing the issues as the Court may direct.

23   //

24   //

25

26

27

28

---

[8] This presently includes, for example, the proceeds from the Receiver's recent sales of the real property commonly described as 1000 W. Marion Avenue, Punta Gorda, Florida [Docket No. 197], as it consists—in whole or in part—of Community Assets, and is not an investor property. Michelle anticipates that the Receiver will ask the Court to approve the sale of other properties that contain Community Assets.

RESPECTFULLY SUBMITTED on September 17, 2024.

MITCHELL | STEIN | CAREY | CHAPMAN, PC

By: _/s/ Lee Stein_

Lee Stein
Anne Chapman
Attorneys for Michelle Larmore

**CERTIFICATE OF SERVICE**

I certify that on September 17, 2024, I electronically transmitted a PDF version of this document to the Clerk of Court, using the CM/ECF System for filing, and which will be sent electronically to all registered CM/ECF participants as identified on the Notice of Electronic Filing.

_/s/ B. Wolcott_