1   ARCHER & GREINER, P.C.
2   1211 Avenue of the Americas
    New York, New York 10036
3   Tel: (212) 682-4940
    Allen G. Kadish[1]
4   Harrison H.D. Breakstone[2]
    Email: akadish@archerlaw.com
5           hbreakstone@archerlaw.com
6
7   *Counsel for Allen D. Applbaum as Receiver*

8                **IN THE UNITED STATES DISTRICT COURT**
                    **FOR THE DISTRICT OF ARIZONA**
9
   United States Securities and Exchange      | Case No. 23-CV-02470-PHX-DLR
10  Commission,
                                               | **RECEIVER'S MOTION FOR ORDERS**
11              Plaintiff,                      | **(I) APPROVING (A) THE**
                                               | **ENGAGEMENT AND**
12                                             | **COMPENSATION OF MARCUS &**
        v.                                     | **MILLICHAP REAL ESTATE**
13                                             | **INVESTMENT SERVICES AS**
                                               | **BROKER TO SELL THE REAL**
14  Jonathan Larmore, et al.,                  | **PROPERTIES SUBJECT TO THE**
                                               | **CMBS LOAN SERVICED BY 3650**
15              Defendants, and                | **REIT LOAN SERVICING LLC AND (B)**
                                               | **THE SALE AND AUCTION**
16                                             | **PROCEDURES FOR THE SALE OF**
    Michelle Larmore, Marcia Larmore,          | **THE PROPERTIES; (II) APPROVING**
17  CSL Investments, LLC,                      | **(A) THE SALE OF THE PROPERTIES,**
    MML Investments, LLC,                      | **FREE AND CLEAR OF ALL LIENS,**
18  Spike Holdings, LLC,                       | **CLAIMS, ENCUMBRANCES AND**
    and JMMAL Investments, LLC,                | **INTERESTS, (B) THE ENGAGEMENT**
19                                             | **AND COMPENSATION OF THE**
                                               | **DEFEASANCE CONSULTANT, AND**
20              Relief Defendants.             | **(C) THE USE OF THE SALE**
                                               | **PROCEEDS TO DEFEASE AND**
21                                             | **SATISFY THE CMBS LOAN; AND (III)**
22                                             | **GRANTING RELATED RELIEF**
23
24
25
26
   _____
27  1    Admitted *pro hac vice.*
28  2    Admitted *pro hac vice.*

# **TABLE OF CONTENTS**

Page

Table of Authorities ...................................................................................................... ii

I.   Preliminary Statement ............................................................................................. 1

II.  Background ............................................................................................................... 5

   A.  The Receivership Order and Appointment of the Receiver ............................. 5

   B.  The Properties .................................................................................................... 6

   C.  Marcus & Millichap Marketing and Engagement Terms .................................. 7

   D.  The Secured CMBS Loan ................................................................................... 8

   E.  The Mezzanine Loan ........................................................................................ 10

III. Relief Requested ..................................................................................................... 10

IV. Basis for Relief Requested ..................................................................................... 11

   A.  Authorization to Sell the Property .................................................................. 11

   B.  Approval of the Engagement and Compensation of Marcus & Millichap ....... 12

   C.  Approval of the Sale Procedures ..................................................................... 14

   D.  Sale Free and Clear of Liens, Claims, Encumbrances and Interests ................ 15

   E.  Engagement of the Defeasance Consultant and Defeasance of the Loan ......... 15

   F.  Proposed Form and Manner of Notice of the Sale ........................................... 16

V.  Conclusion .............................................................................................................. 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Gockstetter v. Williams*,
   9 F.2d 354 (9th Cir. 1925)............................................................ 10

*S.E.C. v. Hardy*,
   803 F.2d 1034, 1037 (9th Cir. 1986) ......................................... 14

*S.E.C. v. Cap. Cove Bancorp LLC*,
   2015 WL 9701154 (C.D. Cal. Oct. 13, 2015)............................. 14

*S.E.C. v. American Capital Invest., Inc.*,
   98 F.3d 1133 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v.
   Citizens for a Better Env't*, 523 U.S. 83 (1998) ......................... 10

**Federal Statutes**

28 U.S.C. § 2001 ..................................................................... 11, 17

28 U.S.C. § 2002 ..................................................................... 11, 17

28 U.S.C. § 2004 ..................................................................... 11, 17

**Other Authorities**

2 Ralph E. Clark, *Treatise on Law & Practice of Receivers* § 482 (3d ed. 1992) ........... 10

ii

Allen D. Applbaum as receiver for ArciTerra Companies, LLC and related entities (the "Receiver"), by and through his counsel, hereby respectfully moves (the "Motion") this Court for the entry of two orders: *First*, approving (a) the Receiver's engagement of and compensation of Marcus & Millichap Real Estate Investment Services ("Marcus & Millichap") as broker for the sale of the twelve properties listed on **Exhibit 1** attached hereto (each referred to herein as a "Property", and collectively, the "Properties"), each of which is subject to a cross-collateralized Commercial Mortgage Backed Securities loan (the "CMBS Loan") serviced by 3650 REIT Loan Servicing LLC, as the special servicer ("3650") and (b) the proposed sale and auction procedures (the "Sale Procedures") for the sale of the Properties; and *Second*, approving (a) the sale of the Properties to a bidder or bidders who submit the highest and best offer for the Properties at an auction, free and clear of all liens, claims, encumbrances and interests, and upon closing of the sale, (b) the Receiver's engagement of a defeasance consultant to assist in the defeasance of the CMBS Loan, and (c) the use of the sale proceeds to defease and satisfy the CMBS Loan in accordance with the terms of, the CMBS Loan agreement.

## I.    Preliminary Statement[1]

1.    The Receiver seeks approval of his engagement of Marcus & Millichap and the proposed Sale Procedures for the sale of the Properties, which are owned by a Receivership Entity (collectively, the "Receivership Borrowers"). The Properties are all subject to the CMBS Loan

---

[1]    Capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction [ECF No. 77], as supplemented by the May 6, 2024 Order Appointing Receiver Freezing Assets, and Imposing Litigation Injunction [ECF No. 154] (the "Receivership Order").

in the original amount of $60 million made by Grass River Real Estate Credit Partners Loan Funding, LLC, to each of the Receivership Borrowers, which loan was assigned to Wells Fargo Bank, National Association, as Trustee, on behalf of the registered Holders of CSAIL 2020-C19 Commercial Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2020-C19 (the "Lender").  The CMBS Loan is currently serviced by 3650 and, according to 3650, the amount outstanding is approximately $69.2 million, which includes a prepayment premium or penalty of approximately $8.3 million, and default interest of approximately $6 million through July 1, 2025.

2.    The CMBS Loan was guaranteed by Defendant, Jonathan Larmore, and secured by mortgages on the Properties as well as two additional properties, one located at 160 Plainfield Village Drive Plainfield, IN 46168 (the "Plainfield Village Property") owned by AT Plainfield Village IN II, LLC ("Plainfield Village"), and the other located at 5173 W. Washington Street Indianapolis, IN 46241 (the "Westgate Plaza Property", and together with the Plainfield Village Property, the "Indiana Properties") owned by ArciTerra Westgate Indianapolis IN II, LLC ("Westgate Plaza" and together with Plainfield Village and the Receivership Borrowers, the "Borrowers").    The Indiana Properties are controlled by Martha R. Lehman (the "Indiana Receiver"), pursuant that certain Order dated August 18, 2023 of the Hamilton Superior Court of the State of Indiana (the "Indiana Court"), Case No. 29D02-2305-PL-004542.  The Receiver has obtained the consent of the Indiana Receiver to simultaneously market and sell the Indiana Properties through Marcus & Millichap with a portion of the sale proceeds used to defease and satisfy the CMBS Loan as set forth herein.  The Indiana Receiver is simultaneously seeking approval of the auction process and sale of the Indiana Properties from the Indiana Court.

3.    Throughout this Receivership, the Receiver and his professionals have engaged in

extended discussions with 3650's representatives, keeping them informed and apprised of the status of the Properties and discussing alternative disposition scenarios to obtain optimal value for the Properties and the Receivership Estates.  Along with the appropriate pro rata share of the proceeds from the sale of the Indiana Properties, the Receiver believes that the sale of the Properties will result in sufficient funds to satisfy the Lender as set forth herein.[2]

4.      Through the proposed Sale Procedures, Marcus & Millichap will extensively market the Properties and list them on the online RealINSIGHT Marketplace Auction Platform (the "Marketplace Auction Platform") previously approved by the Court to auction and sell other properties under the Receiver's control.  At the auction, the Receiver will select the highest and best offer for each of the Properties and enter into an asset purchase agreement for each Property (the "Purchase Agreement"), substantially in the form annexed as an exhibit to the accompanying Declaration of Randall Coxworth (the "Coxworth Declaration").  The Purchase Agreement provides for the sale of each of the Properties on an "as is, where is" basis, with no representations or warranties from the Receiver or the Receivership Entities.[3]

---

[2]      The Indiana Receiver has agreed that a portion of the sale proceeds from the sale of the Indiana Properties may be used to defease and satisfy the CMBS Loan.

[3]      Notwithstanding execution of a Purchase Agreement upon completion of the Auction, the Receiver retains the right to seek approval by the Court of a transaction pursuant to which the Receivership Borrowers sell, transfer, or otherwise dispose of all or substantially all the Properties, directly or indirectly, including through an asset sale, stock sale, credit bid or other similar transaction or series of transactions to a person or entity other than the highest bidder for any Property at the Auction (an "Alternate Transaction").  Upon approval by the Court of an Alternate Transaction, any Purchase Agreement with the highest bidder or back-up bidder shall be deemed terminated and the Receiver and Receivership Estates shall have no liability to any bidder for the Property, other than the return of any deposit made by a bidder.  3650 has informed the Receiver that it only consents to a sale and defeasance transaction as proposed by this Motion.

5.      After extensive and continuing negotiations with 3650 and subject to the terms of an agreement to continue using rents and waive default rate interest and other fees upon defeasance (the "3650 Waiver Agreement"), the Receiver intends to use a portion of the sale proceeds obtained through the auction to "defease" the CMBS Loan in accordance with the defeasance clause set forth in the Loan Agreement (as defined below).  The defeasance clause allows the Borrowers to sell the Properties without incurring a prepayment penalty by replacing the collateral (*i.e.,* the Properties) with a portfolio of U.S. treasury securities that generate sufficient cash flow to make all payments on the CMBS Loan through maturity.  The Receiver anticipates that the defeasance will require approximately $55 to $57 million in sale proceeds to satisfy the CMBS Loan.  Additional sale proceeds will be used to satisfy default interest and fees asserted by 3650 through July 1, 2025 in the approximate amount of $6 million.  Subject to the terms of the 3650 Waiver Agreement, 3650 has consented to the proposed defeasance and has agreed to conditionally waive any additional default interest and other fees incurred between July and December 15, 2025 of approximately $2 million, on the condition that the defeasance is consummated before December 15, 2025.  Through the sale process proposed herein and ultimate defeasance, the Receivership Estates will save approximately $10 to $11 million in penalties, default interest and fees, *vis a vis* a sale of the Properties and payment of the proceeds to 3650 to satisfy the CMBS Loan.

6.      In consultation with 3650, the Receiver intends to engage the services of Defease With Ease, or such other defeasance consultant acceptable to the Receiver and 3650 (the "Defeasance Consultant"), to facilitate and assist in the defeasance of the CMBS Loan.  The Defeasance Consultant will, among other things, form or cause the formation of "successor

borrowers," coordinate the purchase and structure of the "Defeasance Collateral" and coordinate all deliverables to the Lender, escrow agents and other third parties in accordance with the Loan Agreement. The Receiver anticipates that the Defeasance Consultant will charge approximately $200,000 for its services.

7. Through this Motion, the Receiver seeks approval of the sale of the Properties and concurrent defeasance of the Lender, through which the Receiver anticipates satisfying the Lender's claims against the Receivership Estates in full, with remaining sale proceeds to be held by the Receiver on behalf of the Borrowers.

## II. Background

### A. The Receivership Order and Appointment of the Receiver

8. On November 28, 2023, the Securities and Exchange Commission ("SEC") filed its Complaint [ECF No. 1] against Jonathan Larmore; ArciTerra Companies, LLC ("Arciterra"); ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; ArciTerra Strategic Retail Advisor, LLC; and Cole Capital Funds, LLC (collectively, the "Defendants"). Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC and JMMAL Investments, LLC were named as Relief Defendants.

9. On November 29, 2023, the SEC filed the *Plaintiff SEC's Ex Parte Motion for Temporary Restraining Order and Related Equitable Relief* [ECF No. 4] (the "TRO Motion"), seeking, *inter alia*, to enjoin certain actions by the Defendants, freezing assets of the Defendants, the Relief Defendants and their affiliates, and appointing the Receiver. After filing the TRO Motion, the Indiana Receiver and the SEC reached an agreement pursuant to which the ArciTerra entities under the control of the Indiana Receiver, including the Indiana Properties, were excluded

from the relief sought by the TRO Motion, and the Indiana Receiver would be permitted to continue her liquidation efforts commenced in Indiana. On December 21, 2023, the Court granted the relief requested by the TRO Motion, excluding the Indiana Properties, and appointed the Receiver in accordance with the terms of the Receivership Order.

10. Pursuant to the Receivership Order, the Receiver is authorized to, among other things, "conduct an orderly liquidation or disposition of the Receivership Entities and the Receivership Assets in a manner and over a period of time calculated to maximize their value for investors and the Receivership Estate" and "[s]ell, assign, transfer or otherwise dispose of any assets of the Receivership Entities either directly or through one or more Retained Personnel, subject to approval by this Court with respect to any material assets[.]"

B.    The Properties

11. The Properties consist mostly of retail shopping centers with one office property located throughout the United States at the addresses listed on **Exhibit 1**. Upon his appointment, the Receiver and his professionals expended significant time and effort in making necessary repairs and ensuring the payment of necessary operating expenses for the Properties. In addition, the Receiver and his professionals entered into immediate discussions with 3650 and its representatives, keeping them informed of all matters concerning operations and required expenditures and ultimately entered into a consensual stipulation with 3650 (the "3650 Stipulation"), agreeing to, *inter alia*, maintain the status quo and cash management arrangement agreed to by the Receivership Borrowers prior to appointment of the Receiver.

12. Under the 3650 Stipulation, tenants at the Properties remit their respective rent payments to a lockbox account controlled by 3650 and those funds are used to make interest

payments on the CMBS Loan and reimburse the Receivership Borrowers for necessary operating and other expenses incurred by the Receiver.  In addition, with the consent of 3650, the Receiver agreed to appoint Cushman & Wakefield U.S., Inc. ("C&W") to manage and operate each of the Properties.  As a result of C&W's efforts, the Properties are approximately 75% occupied, with continuing efforts by the Receiver and leasing brokers to market and lease the remaining vacant units.  The Receiver does not believe there were any payment defaults at the time of his appointment (although 3650 contends that Events of Default had occurred and were continuing at such time) and, based on the 3650 Stipulation, the Borrowers have remained current on their agreed obligations to the Lender during the Receivership.

C.    Marcus & Millichap Marketing of the Properties

13.    Since the Receiver's appointment, he and his professionals engaged in extensive diligence and discussions with Marcus & Millichap about marketing and selling the Properties. As a result of these discussions, the Receiver agreed to engage Marcus & Millichap and a marketing and sale strategy in accordance with the terms set forth in that certain Exclusive Representation Agreement (the "M&M Agreement"), a copy of which is annexed as Exhibit A to the Coxworth Declaration.

14.    Pursuant to the M&M Agreement, Marcus & Millichap will market the Properties through various channels up to the auction, including targeting of buyers through its top retail teams and auction database of multi-tenant retail investors.  As part of its engagement, Marcus & Millichap will purchase reports, including a Phase I Environmental Report, a Property Condition Report, and title reports for prospective bidders to conduct their necessary due diligence, which must be completed prior to the auction.  During the marketing and due diligence period, Marcus

& Millichap will respond to questions from prospective bidders about the auction process and terms of sale, and assist the Receiver in vetting prospective bidders' financial ability to consummate any proposed sale transaction.

15.     At the auction, bidders will bid on the Properties (or any of them) and the proposed Sale Procedures require all prevailing bidders to pay for all transfer taxes and closing costs, including the fee payable to the Marketplace Auction Platform, which is the greater of five percent (5%) of the winning bid or $25,000 (the "Platform Fee"). As part of the M&M Agreement, the Marketplace Auction Platform has agreed to rebate 40% of the Platform Fee to the Receivership Estates upon closing of the sales for those Properties sold for amounts in excess of $1 million.

D.     The CMBS Loan

16.     On or about February 10, 2020, Grass River Real Estate Credit Partners Loan Funding, LLC (the "Original Lender") made the CMBS Loan in the original principal amount of $60,000,000 to the Borrowers pursuant to a written agreement among the parties thereto (the "Loan Agreement"). Pursuant to the Loan Agreement, the Borrowers are jointly and severally liable for repayment of the CMBS Loan, which was scheduled to mature on March 5, 2030.

17.     In conjunction with the Loan, the Borrowers made and delivered to the Original Lender a Promissory Note dated as of February 10, 2020, in the principal sum of $60,000,000 (the "Note"). The Borrowers further executed and delivered to the Original Lender a Mortgage and Assignment of Leases and Rents securing payment of the Note dated as of February 10, 2020 (the "Mortgage"). The Mortgage was recorded by the Original Lender in the counties where the Borrowers are located. On or about March 1, 2020, the Loan was securitized into the CSAIL 2020-C19 Commercial Mortgage Trust pursuant to a pooling and servicing Agreement, and as a

result, Original Lender assigned all of its right, title and interests to the Lender.

18.     Pursuant to section 2.8 of the Loan Agreement, the Borrowers may defease the CMBS Loan upon the sale or transfer of the Properties, subject to certain conditions, including: (a) payment of all principal and interest due and payable on the CMBS Loan, (b) establishing a "Defeasance Collateral Account" at an eligible financial institution, (c) funding the Defeasance Collateral Account with government securities in an amount sufficient to pay principal and interest on the CMBS Loan through the maturity date (the "Defeasance Collateral"), (d) executing a security agreement for the Defeasance Collateral Account and Defeasance Collateral for the benefit of the Lender, (e) delivering an opinion of counsel that Lender has a legal and valid perfected first priority security interest in the Defeasance Collateral Account and Defeasance Collateral, and (f) delivering a certificate from a public accounting firm certifying that the Defeasance Collateral will generate monthly amounts sufficient to satisfy the defeasance payments.  The Loan Agreement and related documents do not permit the defeasance of the CMBS Loan during the continuation of an Event of Default and, accordingly, the Lender's consent is necessary to accomplish any defeasance.

19.     The sale proceeds will be used, with the assistance of the Defeasance Consultant, to establish and fund the Defeasance Collateral Account with the Defeasance Collateral in accordance with the Loan Agreement. Upon defeasance, a "Successor Borrower" will replace the Borrowers as obligors under the CMBS Loan, which entity shall be established by the Lender and shall not be subject to the Receiver's control.  Through the Sale Order, the Receiver requests that the Court approve and authorize the Receiver to take all steps necessary to proceed with the defeasance, including engaging and paying the Defeasance Consultant.

E.    The Mezzanine Loan

20.    In connection with the CMBS Loan, on February 10, 2020, the Borrowers entered into that certain Mezzanine Loan Agreement with QUADRANT MEZZ FUND, LP (the "Mezzanine Lender"), in the original principal amount of $10,000,000, purportedly secured by a pledge of 100% of the limited liability company interests in each of the Borrowers pursuant to that certain Mezzanine Pledge and Security Agreement dated as of February 10, 2020.  The Mezzanine Lender has a claim against the Borrowers and does not hold a mortgage on any of the Properties to be sold through this Motion.  The Mezzanine Lender has asserted it is owed $16,061,461.45, as of February 4, 2025, which includes default interest in the amount of $945,267.57, and a prepayment penalty of $3,193,283.79.  The Receiver disputes the Mezzanine Lender's claim to the extent it seeks default interest, prepayment penalties and excessive fees.[4]

**III.    Relief Requested**

21.    By this Motion, the Receiver seeks entry of two Orders that provide for:

a.    The approval of (i) the Receiver's engagement and compensation of Marcus & Millichap pursuant to the terms of the M&M Agreement, and (ii) the Sale Procedures, including approving the notice of auction and sale, scheduling an auction to be conducted by the Marketplace Auction Platform (the "Auction") and setting a sale hearing date after the Auction (the "Sale Hearing") to consider the final approval of the sale of each Property (the "Sale Procedures Order"), in the form attached hereto as **Exhibit 3**; and

b.    The approval of (i) the sale of each Property to the bidder offering the highest and

---

[4]    The Receiver anticipates that the sale of the Properties will generate sufficient proceeds to satisfy and defease the Lender. It is uncertain whether the Mezzanine Lender's claim will be satisfied. If any Receivership Borrower has excess funds after defeasance of the Lender, such funds shall be held by the Receiver in a segregated receivership account for the benefit of the respective Receivership Borrower. If the Receiver and Mezzanine Lender reach a resolution on the Mezzanine Lender's allowed claim, the Receiver will seek Court approval for payment of such claim.

best bid at the Auction, (ii) the Receiver's engagement and payment to the Defeasance Consultant, and (iii) the defeasance of the CMBS Loan in accordance with the Loan Agreement (the "Sale Order"), in the form attached hereto as **Exhibit 4.**

## IV.    Basis for Relief Requested

### A.    Authorization to Sell the Property

22.    It is well-settled that the Court has broad authority to approve the auction and Sale Procedures as set forth herein.    "The power of sale necessarily follows the power to take possession and control of and to preserve property." *S.E.C. v. American Capital Invest., Inc.*, 98 F.3d 1133, 1144 (9th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998) (quoting 2 Ralph E. Clark, *Treatise on Law & Practice of Receivers* § 482 (3d ed. 1992)).    In addition to the equitable powers vested in this Court, this Court is conferred with the statutory authority to authorize the sale of the Property.    Sales of assets by federal receivers are governed by sections 2001,[5] 2002,[6] and 2004 of Title 28 of the United States

---

5    Section 2001(a) sets forth the requirements for a receiver's sale of real estate pursuant to a public auction process as requested by this Motion:

Any realty or interest therein sold under any order or decree of any court of the United States shall be sold as a whole or in separate parcels at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs. Such sale shall be upon such terms and conditions as the court directs.

6    Section 2002 provides that notice of sales of real estate must be published:

A public sale of realty or interest therein under any order, judgment or decree of any court of the United States shall not be made without notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated.

Code.  Section 2001 governs sales of real property and section 2004 governs sales of personal property, while section 2002 sets forth the procedures for the noticing of sales.

23.    Here, the Receiver proposes to sell the Properties through the Marketplace Auction Platform and as prescribed by the Sale Procedures Order.  The Marketplace Auction Platform is a commercial online real estate auction site with one of the highest sale rates in the real estate industry, utilizing cutting-edge technology and a dedicated marketing team to bring the most diverse and competitive buyer pool to its listings.  The Court previously approved the Receiver's sale of real property under similar sale procedures using the Marketplace Auction Platform.[7]

24.    The Receiver believes, in his reasonable business judgment, that selling the Properties in accordance with the process set forth in this Motion and the public auction through the Marketplace Auction Platform will yield the highest and best offers for the Properties.

B.    Approval of the Engagement and Compensation of Marcus & Millichap

25.    The Receiver also seeks approval of his engagement of Marcus & Millichap to market and solicit offers for the Properties and broker the sale through the Marketplace Auction Platform.  Pursuant to paragraph 6(I) of the Receivership Order, the Receiver may engage and employ professionals, including brokers, as necessary to assist in carrying out his duties.  Marcus & Millichap is a nationally-recognized commercial brokerage firm with significant expertise brokering and selling properties comparable to the Properties.  For the Properties, Marcus & Millichap has created high quality marketing materials that showcase their physical structures and

---

[7]    *See Order (I) Approving (A) the Sale of the Real Property Subject to the "Rialto Portfolio" and Located at 412 Cross Oaks Mall, Plainwell, MI 49080 Owned By 412 Cross Oaks Mall Plainwell MI, LLC, Free and Clear of All Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief* [ECF No. 281].

profitability history of each location. Once prospective bidders sign a confidentiality agreement, they can receive access to a data room which will provide an in-depth review of all pertinent information on the Properties. Marcus & Millichap will market and solicit bids by advertising in industry journals and specifically targeting buyers reasonably believed to be interested in purchasing the Properties. In addition, as stated above, Marcus & Millichap will cause to be published the notice of the Auction and Sale Hearing in local publications in counties where the Properties are located. Through these efforts, the Properties will be exposed to a targeted marketing list of active bidders including owners and operators of similar shopping centers, private equity and other financial funds.

26.    Pursuant to the M&M Agreement, on account of its services, Marcus & Millichap is entitled to receive a commission of 3% to 4% for each Property, with its commission not to exceed 3.5% of the aggregate gross purchase price of the Properties (the "M&M Commission"). To the extent a successful purchaser's broker is entitled to a co-brokerage fee, Marcus & Millichap will be responsible for paying such fee. If the auction does not generate aggregate sale proceeds in excess of $70 million, the Receiver retains the right to withdraw the proposed sale and proceed with an alternative disposition upon consultation with 3650, subject to further order of this Court. In the event the auction and proposed sales do not generate sufficient funds to satisfy the Lender and no transaction is approved by the Court, no commission or fees will be due and owing to either Marcus & Millichap or the Marketplace Auction Platform.[8]

27.    The Receiver requests authority to pay the M&M Commission upon the closing of

---

[8]    3650 has informed the Receiver that it does not consent to any sale transaction whereby the proceeds are insufficient to consummate a defeasance of the CMBS Loan.

the sale of the Properties from the proceeds thereof. Marcus & Millichap has represented to the Receiver that it does not hold any interest materially adverse to any of the Receivership Entities.[9]

28.    The Receiver submits that Marcus & Millichap is best suited for marketing and brokering the sale of the Properties and that the engagement of Marcus & Millichap on the terms and conditions set forth herein, and in the M&M Agreement, is necessary and appropriate, in the best interests of the Receivership Estate, and should be granted.

C.    Approval of the Sale Procedures

29.    The Receiver proposes to sell each of the Properties for the highest and best price at a public auction in accordance with the Sale Procedures to be approved by the Sale Procedures Order.[10] Through the Sale Procedures, the Receiver, with the assistance of Marcus & Millichap, intends to market-test the value of the Properties to determine the highest and best offers for each of the Properties. The Receiver submits that approval of these Sale Procedures is appropriate as they will help to achieve the "primary purpose of [an] equity receivership;" that is, "to promote orderly and efficient administration of the estate . . . for the benefit of creditors." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).

---

9    A Declaration of Disinterestedness was filed by Marcus & Millichap in this case in connection with the Receiver's efforts to sell the Morningstar at Arcadia facility owned by Glenrosa 32, LLC [ECF No. 139], which is adopted herein by reference. The Court previously approved the engagement of Marcus & Millichap under similar terms to market and sell properties owned by other Receivership Entities. *See, e.g. Order (I) Approving (A) the Sale of the Real Property Subject to the "Rialto Portfolio" and Located at 412 Cross Oaks Mall, Plainwell, MI 49080 Owned By 412 Cross Oaks Mall Plainwell MI, LLC, Free and Clear of All Liens, Claims, Encumbrances and Interests, and (B) Granting Related Relief* [ECF No. 281].

10    The Sale Procedures are set forth on Exhibit A to the proposed Sale Procedures Order.

**D.    Sale Free and Clear of Liens, Claims, Encumbrances and Interests**

30.    While not expressly provided for statutorily, an order approving the sale of assets by a federal receiver may provide for the sale of property free and clear of liens, claims, encumbrances and other interests with all such interests attaching to the proceeds of the sale. *S.E.C. v. Cap. Cove Bancorp LLC*, 2015 WL 9701154, at *4 (C.D. Cal. Oct. 13, 2015).  The Receiver proposes to sell the Properties to a Successful Bidder (or bidders) in accordance with the Sale Procedures, free and clear of all liens, claims, encumbrances and other interests (collectively, "Liens and Encumbrances") with such Liens and Encumbrances being satisfied at closing or attaching to the proceeds of the sale in the same order of priority.  The Receiver anticipates that the sale proceeds from the sale of the Properties will, in aggregate, provide sufficient funds to defease and allow for the satisfaction of the Lender's undisputed secured claims, which are cross-collateralized across all fourteen Properties.  Upon sale of the Properties and defeasance in accordance with the terms set forth in this Motion, 3650 will release the Lender's mortgages on the Properties.[11]

**E.    Engagement of the Defeasance Consultant and Defeasance of the Loan**

31.    Through this Motion, the Receiver seeks approval to engage and pay the Defeasance Consultant upon entry of the Sale Order to facilitate and administer the defeasance of the CMBS Loan in accordance with the Loan Agreement.  Since its founding in 2000, Defease with Ease has

---

[11]    If other Liens and Encumbrances exist that are not provided for or satisfied at closing, the Receiver requests authority to close the sale of the Properties, free and clear of all such Liens and Encumbrances, and for those Liens and Encumbrances to attach to the sale proceeds relevant to that Property, which shall be placed in a segregated receivership account pending further order of the Court or written agreement among the parties.

been the market leader in the defeasance of commercial real estate loans in the United States and Canada. The company helps commercial real estate borrowers, brokers and attorneys make informed economic decisions about the defeasance component in sale or refinancing transactions, and then facilitates the defeasance process through its completion.

32.     For its services, Defease with Ease has informed the Receiver that it will accept a flat fee for its services upon consummation of the defeasance.  The Receiver estimates the fee payable to the Defeasance Consultant will be approximately $200,000.[12]  The Receiver submits that the Defeasance Consultant is best suited to act in this capacity pursuant to the terms and conditions set forth herein, and that the engagement of the Defeasance Consultant is necessary and appropriate, in the best interests of the Receivership Estate, and should be granted.[13]

F.     Proposed Form and Manner of Notice of the Sale

33.     To provide interested parties with notice of the Auction and Sale Hearing and an opportunity to object, the Receiver requests approval of notice and objection procedures as set forth in the Sale Procedures Order.  The Receiver proposes to serve, within five days of entry of the Sale Procedures Order, the form of notice of the sale, attached as Exhibit B to the Sale Procedures Order (the "Sale Notice") by first class mail on (a) all known creditors of the Receivership Borrowers; (b) 3650 and any party known or reasonably believed to have asserted any Lien and Encumbrance or other interest in the Properties; (c) all parties to pending litigation

---

[12]     The Receiver solicited cost estimates from several similarly qualified consultants who were all similarly priced and determined that Defease With Ease possessed the best combination of experience, reputation and cost.

[13]     The Receiver is not seeking to retain the Defeasance Consultant as "Retained Personnel" under the Receivership Order, but rather, for authority to pay the Defeasance Consultant under paragraph 6. G (iv) of the Receivership Order ("all other costs and expenses authorized by this Court").

against the Receivership Borrowers (as of the date of entry of the Sale Procedures Order); (d) any party known or reasonably believed to have expressed an interest in acquiring the Property; (e) the Securities and Exchange Commission, the United States Attorney for the Southern District of New York, the Internal Revenue Service and all local governmental units; (f) the Mezzanine Lender; and (g) such additional persons and entities deemed appropriate by the Receiver.

34.    The Sale Notice will also be made available, within five (5) days of entry of the Sale Procedures Order, on the Receiver's website at www.arciterrareceivership.com.  In addition, within five (5) days of entry of the Sale Procedures Order, the Receiver will cause Marcus & Millichap to publish notice of the Auction and his intent to sell the Properties for four weeks in accordance with 28 U.S.C. § 2002, in publications where each of the Properties is located.

35.    The Receiver submits that the notice to be provided and the method of service proposed herein constitutes good and adequate notice of the sale, and complies with sections 2001 and 2002 of Title 28.  Accordingly, the Receiver requests that this Court approve the notice procedures and that no other or further notice of the sale is required.

**V.    Conclusion**

36.    No prior motion for the relief sought herein has been made to any court.  Given the authorities set forth herein, request is made to waive any requirement to file a separate memorandum of law.  *See* LRCiv 7.2(b).

WHEREFORE, the Receiver respectfully requests that this Court (a) enter the Sale Procedures Order approving the M&M Agreement and the Sale Procedures; (b) enter the Sale Order approving the sale of the Properties to the bidder or bidders offering the highest and best bid at the Auction, approving the engagement of the Defeasance Consultant, and authorizing the

Receiver, with the assistance of the Defeasance Consultant, to defease and satisfy the CMBS

Loan; and (c) grant such other relief as is just and equitable.

Dated:  July 2, 2025                          ARCHER & GREINER, P.C.

By: _____
    Allen G. Kadish[14]
    Harrison H.D. Breakstone[15]
    1211 Avenue of the Americas
    New York, New York 10036
    Tel: (212) 682-4940
    Email: akadish@archerlaw.com
            hbreakstone@archerlaw.com

    *Counsel for Allen D. Applbaum as Receiver*

_____

[14]    Admitted *pro hac vice.*
[15]    Admitted *pro hac vice.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2025, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF systems, which will provide electronic mail notice to all counsel of record.

_____

Allen G. Kadish

## <u>INDEX TO EXHIBITS</u>

**Exhibit 1 – List of Properties to be Sold**

**Exhibit 2 – Coxworth Declaration**

**Exhibit A – M&M Agreement**

**Exhibit B – Purchase Agreement**

**Exhibit 3 – Sale Procedures Order**

**Exhibit A – Sale Procedures**

**Exhibit B – Notice of Auction and Sale**

**Exhibit 4 – Sale Order**

**Exhibit A – Successful Bidder Asset Purchase Agreement**