ARCHER & GREINER, P.C.
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Allen G. Kadish[1]
Brian M. Gargano[2]
Email:  akadish@archerlaw.com
          bgargano@archerlaw.com

*Counsel for Allen D. Applbaum as Receiver*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>  Plaintiff,<br><br> v.<br><br>Jonathan Larmore, et al.,<br><br>  Defendants, and<br><br>Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC,<br><br>  Relief Defendants. | Case No. CV-23-02470-PHX-DLR<br><br>**RECEIVER'S REPLY TO MICHELLE LARMORE'S LIMITED OBJECTION TO ARCITERRA RECEIVER'S SIXTH APPLICATION FOR ALLOWANCE AND RESERVATION OF RIGHTS [ECF NO. 426]** |

---

[1] Admitted *pro hac vice.*
[2] Admitted *pro hac vice.*

230415525 v7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Abood ex rel. Al-Abood v. El-Shamari*,
  217 F.3d 225 (4th Cir. 2000) ............................................................................................... 8

*Barbiero v. Kaufman*,
  No. 12-cv-6869, 2013 WL 3939526 (E.D. Pa. July 30, 2013), *aff'd*, 580 Fed.
  Appx. 107 (3d Cir. 2014) ..................................................................................................... 5

*Bell v. United Princeton Properties, Inc.*,
  884 F.2d 713 (3d Cir. 1989) ................................................................................................. 1

*Berger v. Heckler*,
  771 F.2d 1556 (2d Cir. 1985) ............................................................................................... 4

*Cadwell v. Cadwell*,
  126 Ariz. 460 (Ariz. Ct. App. 1980) .................................................................................... 9

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ............................................................................................................. 7

*Community Guardian Bank v. Hamlin*,
  182 Ariz. 627 (Ariz. Ct. App. 1995) .................................................................................... 9

*Cunningham v. City of McKeesport*,
  753 F.2d 262 (3d Cir. 1985) ................................................................................................. 1

*Empire Tr. Co. v. Brooks*,
  232 F. 641 (5th Cir. 1916) ................................................................................................... 7

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982) ............................................................................................................. 7

*L.I.G. Pet Goods Trading, LLC v. Goldfarb*,
  No. CIV.A.08-CV-5345, 2009 WL 141845 (E.D. Pa. Jan. 16, 2009) .................................. 7

*Lorenz-Auxier Fin. Group, Inc. v. Bidewell*,
  772 P.2d 41 (Ariz. Ct. App. 1989) ....................................................................................... 9

*In re Oliphant*,
  221 B.R. 506 (Bankr. D. Ariz. 1998) ................................................................................... 9

*Pac. Office Automation Inc. v. Pitney Bowes Inc.*,
  No. 3:20-CV-00651-AR, 2025 WL 1682847 (D. Or. June 16, 2025) .................................. 7

230415525 v7

Case 2:23-cv-02470-DLR   Document 430   Filed 09/04/25   Page 3 of 13

*Penn Gen. Cas. Co. v. Pennsylvania*,
  294 U.S. 189, 55 S. Ct. 386 (1935) ............................................................................. 5

*Princess Lida of Thurn and Taxis v. Thomson*,
  305 U.S. 456 (1939) ................................................................................................ 5, 8

*Schickner v. Schickner*,
  237 Ariz. 194 (Ariz. Ct. App. 2015) ........................................................................... 6

*U.S. Securities & Exch. Comm'n v. GPB Capital Holdings*,
  LLC, No. 23-8010-CV, 2024 WL 4945247 (2d Cir. Dec. 3, 2024) .......................... 4

*United States v. $3,000,000 Obligation of Qatar Nat. Bank to Nomikos*,
  810 F.Supp. 116 (S.D.N.Y. 1993) ............................................................................. 8

**Statutes**

Ariz. Rev. Stat. Ann. § 25-215(B) ................................................................................... 9

Ariz. Rev. Stat. Ann. § 29-3102(19) ............................................................................... 5

Ariz. Rev. Stat. Ann. § 29-3401(H) ................................................................................ 6

Ariz. Rev. Stat. § 29-732(A) ........................................................................................... 6

230415525 v7

Allen D. Applbaum, as Receiver for ArciTerra Companies, LLC, and related entities, by and through his counsel, Archer & Greiner, P.C., in support of the *Sixth Application of Receiver for Allowance and Payment of Professional Fees and Reimbursement of Expenses for the Period April 1, 2025 Through June 30, 2025* [ECF No. 420] (the "Sixth Fee Application")[3] and in reply to *Relief Defendant Michelle Larmore's Limited Objection to ArciTerra Receiver's Sixth Application for Allowance [Dkt 420] and Reservation of Rights* [ECF No. 426] (the "Limited Objection"), respectfully sets forth as follows:

**I.      Reply**

1.      As a preliminary matter, the Receiver notes that Michelle Larmore asserts no objection to the services rendered and the fees requested in the Sixth Fee Application.[4]

2.      Rather, she asserts the same legal argument in her limited objections to the Receiver's pending motions to sell property, holding up and effectively risking millions in value that the Receiver negotiated with lenders and other parties.[5] For the reasons set forth below, the Limited Objection should be overruled.

---

[3] Defined terms are as in the Sixth Fee Application.

[4] *See Cunningham v. City of McKeesport*, 753 F.2d 262, 267 (3d Cir. 1985) (opposing party to a fee application must raise an issue of material fact as to hours the attorney spent or the necessity for their expenditure); *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 719 (3d Cir. 1989) (same).

[5] A list of the Receiver's pending motions to which Michelle Larmore has filed limited objections on "prior exclusive jurisdiction" grounds is attached as **Exhibit A.**

1

230415525 v7

A. <u>Michelle Larmore Consented to the Receivership and is Estopped from Asserting the Prior Exclusive Jurisdiction Doctrine</u>

3. The Larmores, including relief defendant Michelle Larmore, consented to the Receivership and the Court's first Order appointing the Receiver [ECF No. 77] (the "<u>Receivership Order</u>"),[6] as stated in the Receivership Order itself:

> WHEREAS, Defendants and Relief Defendants have consented to entry of this Order pending the Court's determination of the SEC's motion for a preliminary injunction.

Receivership Order, p. 2.

4. The Receivership Order sets forth pertinent terms that, *inter alia*, speak directly to Michelle Larmore's argument:

> Until further Order of this Court, Allen Applbaum is hereby appointed to serve without bond as receiver (the "Receiver") for the receivership estate of the Receivership Entities (the "Receivership Estate"), including the Receivership Assets, to, among other duties and rights set forth in this Order and available under applicable law and without limiting any other provisions of this Order[:]…(c) oversee and manage, consistent with the relevant governing documents and applicable law, the Receivership Entities and Receivership Assets; (d) prevent the encumbrance or disposal of the Receivership Assets contrary to the Receiver's mandate; …(f) manage litigation by and against the Receivership, the Receivership Entities and the Receivership Assets; (g) propose for Court approval a fair and equitable distribution of the remaining Receivership Assets.

*Id.* at pp. 2-3.

> **The Receiver shall assume and control the operation of the Receivership Entities** and shall preserve all of their assets and claims for the benefit of the Receivership Estate. **No person holding or claiming any position of any type with any of the Receivership Entities shall have any authority to act by or on**

---

[6] A permanent receivership order was later entered at ECF No. 154.

>**behalf of any of the Receivership Entities, except as may be expressly authorized or delegated by the Receiver in writing**.

*Id.* at p. 4 (emphasis added).

>Take any action which, prior to the entry of this Order, could have been taken by the officers, directors, managers, managing members, and general and limited partners, and agents of the Receivership Entities, acting in their respective capacities.

*Id.* at p. 5.

>**Conduct an orderly liquidation or disposition of the Receivership Entities and the Receivership Assets in a manner and over a period of time calculated to maximize their value for investors and the Receivership Estate**.

*Id.* (emphasis added).

>Pay from the Receivership Assets necessary expenses required to preserve and administer the Receivership Assets and Receivership Estate, [any amount over $10,000]…(iv)… authorized by this Court pursuant to this Order or any other order of this Court.

*Id.* at pp. 5-6.

>**Engage and employ agents, claim and noticing agents, persons, firms and other persons and entities, including … attorneys, experts, liquidators, … (collectively, "Retained Personnel"), to assist in the carrying out of the Receiver's duties and responsibilities hereunder**.

*Id.* at pp. 5-6 (emphasis added).

>**Sell, assign, transfer or otherwise dispose of any assets of the Receivership Entities either directly or through one or more Retained Personnel, subject to approval by this Court with respect to any material assets**.

*Id.*

3

230415525 v7

5. The Receivership Order expressly enjoins all persons and entities receiving notice of the Receivership Order (which includes Michelle Larmore) from interfering with the Receiver's control, possession and management of the Receivership Entities and Receivership Assets and to hinder, obstruct or otherwise interfere with the Receiver's duties, or interfering with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities and the Receivership Assets. *See* ECF No. 77 at pp. 10-11.

6. Here, Michelle Larmore's invocation of the "prior exclusive jurisdiction" rule in her objections have had the effect of: 1) interfering with the Receiver's efforts to control, possess, or manage the Receivership Entities or Assets; 2) hindering, obstructing or otherwise interfering with the Receiver's duties; and 3) interfering with the exclusive jurisdiction of this Court over the Receiver, the Receivership Estate, the Receivership Entities, and the Receivership Assets.

7. Further, the Larmore divorce was already commenced at the time of this federal receivership and the issue Michelle Larmore raises now was settled at the outset by her consent. *See* ECF Nos. 77 and 154.

8. Where a party consents to a receivership and has previously "consented to the relief provided," that party cannot challenge the court's subsequent imposition of that relief. *See U.S. Securities & Exch. Comm'n v. GPB Capital Holdings*, LLC, No. 23-8010-CV, 2024 WL 4945247 (2d Cir. Dec. 3, 2024) (*citing Berger v. Heckler,* 771 F.2d 1556, 1567 (2d Cir. 1985)).

4

230415525 v7

9. As such, Michelle Larmore should be estopped from objecting to the Sixth Fee Application on the basis of "prior exclusive jurisdiction," as her objection appears precluded by her consent and aimed at interfering with the Receiver's ability to carry out his duties as set forth in the Receivership Order.

### B. The Prior Exclusive Jurisdiction Doctrine is Inapplicable and its Application Here Would Lead to An Absurd Result

10. As articulated in the *Receiver's Omnibus Reply to Objections to Receiver's Motion for an Order (I) Designating Additional Receivership Entities; and (II) Granting Related Relief* [ECF No. 375]*,* the "prior exclusive-jurisdiction" doctrine, sometimes called the *Princess Lida* doctrine,[7] is a rule fashioned by the courts "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system" (*Penn Gen. Cas. Co. v. Pennsylvania,* 294 U.S. 189, 198, 55 S. Ct. 386, 390 (1935)) "designed to prevent two courts from asserting overlapping and potentially conflicting authority over a single piece of property." *Barbiero v. Kaufman*, No. 12-cv-6869, 2013 U.S. Dist. LEXIS 106831, 2013 WL 3939526, at *6 (E.D. Pa. July 30, 2013), *aff'd*, 580 Fed. Appx. 107 (3d Cir. 2014).

11. Here, under Arizona law, an interest in a limited liability company held as community property "means the right, as initially owned by a person in the person's capacity as a member, to receive distributions from a limited liability company." *See* Ariz. Rev. Stat. Ann. § 29-3102(19).

---

[7] In *Princess Lida v. Thompson,* the Supreme Court held that the prior exclusive jurisdiction doctrine only applies when a state court and federal court claim concurrent jurisdiction over a specific piece of property (a "*res*")—the court that first takes possession or control of that property exercises its jurisdiction to the exclusion of the other. *See Princess Lida of Thurn and Taxis v. Thomson*, 305 U.S. 456 (1939).

5

230415525 v7

12. Moreover, "co-owners of a transferable interest held ... as community property ... shall have only the rights of a transferee with respect to the interest." *See id.* § 29-3401(H); *compare* Ariz. Rev. Stat. § 29-732(A) (effective to August 31, 2020); *see also Schickner v. Schickner*, 237 Ariz. 194, 199 ¶ 23 (Ariz. Ct. App. 2015) (community property consists only of limited liability company membership interests acquired during marriage, not underlying corporate assets).

13. Thus, the subject of the state divorce proceeding and the subject of this federal receivership concern different assets and rights to the same. The divorce proceedings concern the ultimate ownership interests of the alleged community property "*res*" that landed in the Receivership, while the Receivership itself concerns the operation, management, and liquidation of the Receivership Entities and the assets of the Receivership Entities. In short, the actual "*res*" and rights over which each court exercises jurisdiction are different in the two separate proceedings.

14. Were the Court to conclude otherwise and apply the "prior exclusive jurisdiction" doctrine here as Michelle Larmore has advocated, this would mean that the assets and operations of the over-250 Receivership entities themselves would be exclusively subject to the divorce court. Every foreclosure excepted from the Receivership, landlord-tenant dispute and other lawsuit (over 100 of which were stayed by the Receivership Order), contract, disbursement and operational decision of the Receiver would be channeled to the divorce court.

15. Such an application of the "prior exclusive jurisdiction" doctrine would effectively annul the Receivership Order, cripple the Receivership, and thus effectuate an

230415525 v7

absurd result. *See*, *e.g., Pac. Office Automation Inc. v. Pitney Bowes Inc.*, No. 3:20-CV-00651-AR, 2025 WL 1682847, at *2 (D. Or. June 16, 2025) ("An interpretation that produces an absurd result is properly rejected as a matter of law"); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

16. This is precisely why Michelle's Larmore's reliance upon the case law she cited in the objections, including *LIG Pet Goods*, is unavailing. *L.I.G. Pet Goods Trading, LLC v. Goldfarb*, No. CIV.A.08-CV-5345, 2009 WL 141845 (E.D. Pa. Jan. 16, 2009), is easily differentiated. In *L.I.G.*, one spouse in a divorce proceeding sought a receiver to assert rights over the other spouse's business. Unlike the circumstances in *L.I.G.* where the other spouse opposed the appointment of a receiver and a receiver was not appointed, here the Receiver was appointed with consent including Michelle Larmore's consent. Moreover, this receivership was initiated by Complaint of the Securities and Exchange Commission to protect ArciTerra's investors irrespective of the Larmore divorce presumably affecting rights between the spouses as to any remnant ownership interests after creditors and investors are repaid.

17. "[W]here the issues in the subsequent suit are different from those involved in the first suit, and the subject matter is not identical, there can be no infringement of the jurisdiction of the court in which the first suit is pending, by reason of the institution of the second suit in a court of concurrent jurisdiction." *Empire Tr. Co. v. Brooks*, 232 F. 641, 645 (5th Cir. 1916). *Cf. Colo. River Water Conservation Dist. v. United States*, 424 U.S.

7

800, 818-19 (1976); *United States v. $3,000,000 Obligation of Qatar Nat. Bank to Nomikos*, 810 F.Supp. 116, 118 (S.D.N.Y. 1993) (declining to apply *Princess Lida* where the "federal court need not actually exercise control over the *res* in order to adjudicate rights in it"); *see also Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000) (*Princess Lida* does not apply if the federal action "does not depend on or involve exercising jurisdiction over the '*res*'").

18. For these reasons, the "prior exclusive jurisdiction" doctrine is not applicable and, further, should not be applied here as it would lead to an unjust and absurd result.

C. <u>The Determination of Michelle Larmore's Interests in the Divorce Proceeding is Irrelevant to the Receivership and the Duties of the Receiver</u>

19. The entire premise of Michelle Larmore's objection based upon the "prior exclusive jurisdiction" doctrine is that how the divorce court rules on her claims to community property that may be in the Receivership (such as an ownership interest) actually matters to Receivership. In other words, she argues that her potential community property share would become her separate property which should be excluded from the Receivership because it was her husband who committed all the wrongdoing. However, this house of cards easily falls for two reasons.

20. First, according to the Receiver's analysis so far, Michelle Larmore used a company American Express account and other company assets including a private plane and watercraft for personal and non-business expenditures to furnish a lavish lifestyle. The Receiver continues to investigate these points. To the extent warranted upon completion

of his investigation, the Receiver would commence proceedings to recover the value stripped from the estates at the expense of creditors and investors.

21. Second, her share of the community assets that are in the Receivership are not exempt from the Receivership and the Receivership Order. Indeed, where there is a divorce in Arizona, each former spouse remains individually liable to creditors of the former community. *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 631 (Ariz. Ct. App. 1995); *In re Oliphant*, 221 B.R. 506, 509 (Bankr. D. Ariz. 1998). As such, an obligation of the former community may be collected from post-divorce separate property of each former spouse. *See* Arizona Revised Statutes Annotated § 25–215(B) (emphasis added).

22. So, to the extent the community benefited from wrongful acts of one community member, both community members' shares of the community estate are liable for the wrongdoing. *See Cadwell v. Cadwell*, 126 Ariz. 460, 463 (Ariz. Ct. App. 1980). This is because under Arizona law, "[d]ebt incurred by one spouse while acting for the benefit of the marital community is a community obligation," whether or not the other spouse approves it." *Lorenz-Auxier Fin. Group, Inc. v. Bidewell*, 772 P.2d 41, 43 (Ariz. Ct. App. 1989).

23. For these reasons, the divorce proceedings between the Larmores have no impact on the Receivership, regardless of what rights may be allocated between Michelle Larmore and Jonathan Larmore in those proceedings. In short, the divorce proceedings are a red herring here and the Court should overrule and deny Michelle Larmore's objections based on "prior exclusive jurisdiction."

## II. Conclusion

24. For all the above reasons, the Court should overrule Michelle Larmore's "prior exclusive jurisdiction" objections, including the Limited Objection, grant the Receiver's Sixth Fee Application and provide such other and further relief as is just and proper.

Dated: September 4, 2025

ARCHER & GREINER, P.C.

By: _____
Allen G. Kadish[8]
Brian M. Gargano[9]
1211 Avenue of the Americas
New York, New York 10036
Tel: (212) 682-4940
Email: akadish@archerlaw.com
         bgargano@archerlaw.com

*Counsel for Allen D. Applbaum as Receiver*

---

[8] Admitted *pro hac vice.*
[9] Admitted *pro hac vice.*

230415525 v7