**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States Securities and Exchange Commission, | Case No. CV-23-02470-PHX-DLR |
| Plaintiff, | |
| v. | **DECLARATION OF DAVID A. HOLLEY IN SUPPORT OF THE RECEIVER'S OBJECTION TO RELIEF DEFENDANT MARCIA LARMORE'S MOTION AND MEMORANDUM TO QUASH SUBPOENAS** |
| Jonathan Larmore, et al., | |
| Defendants, and | |
| Michelle Larmore; Marcia Larmore; CSL Investments, LLC; MML Investments, LLC; Spike Holdings, LLC; and JMMAL Investments, LLC, | |
| Relief Defendants. | |

DAVID A. HOLLEY hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, to the best of his knowledge, information and belief:

1.      I am a partner in the Boston office of StoneTurn Group, LLP ("StoneTurn") and as such, have personal knowledge of the facts set forth herein. I submit this declaration in support of the *Receiver's Objection to Relief Defendant Marcia Larmore's Motion and Memorandum to Quash Subpoenas* (the "Objection").[1] If called as a witness, I could and would testify competently thereto.

---

[1] Capitalized, undefined terms are as in the Objection.

2.      I have been employed by StoneTurn since June 2022. As a partner, I am responsible for the development and execution of client engagements, which includes overseeing investigations and other risk-related matters on behalf of corporations, financial institutions, law firms, individuals, and government entities. These investigations, while at StoneTurn and elsewhere, have included asset tracing, fraud, due diligence, internal investigations, and matters involving national security, Committee on Foreign Investment in the United States, sanctions and anti-bribery and anti-corruption regulations.

3.      I have been working in the investigations and risk-mitigation industry since 1995, including as Executive Vice President of K2 Integrity from June 2018 to June 2022, Senior Managing Director with Berkeley Research Group from June 2015 to June 2018, and as a Senior Managing Director at Kroll from March 2000 to June 2015. I am a graduate of the Roger Williams School of Law and received my Bachelor of Arts degree from Boston University. A true and accurate copy of my curriculum vitae is attached as **Exhibit 1.**

4.      On December 21, 2023 and May 6, 2024, the Court appointed the Receiver pursuant to the *Order Appointing Temporary Receiver and Temporarily Freezing Assets and Imposing Litigation Injunction* [ECF No. 77] and *Order Appointing Receiver, Freezing Assets, and Imposing Litigation Injunction* [ECF No. 154] (the "Receivership Order"), which among other things, appointed Allen D. Applbaum as Receiver (the "Receiver"), and approved StoneTurn and Archer & Greiner, P.C. as "Retained Personnel" in this case.

5.      Attached as Exhibit A to the Receivership Order was a non-exhaustive list of 285 Receivership Entities, that represent the known "Affiliates of the Receivership Defendants." *See* Receivership Order at 1.

6.      It is my understanding that the list of Receivership Entities attached to the Receivership Order was, at least partially, derived from a "List of Entities" attached to a consulting agreement (the "Consulting Agreement") dated July 10, 2023, between ArciTerra Group LLC and D2 Consulting Group, LLC, an entity organized in Ohio, owned and managed by Daniel DeCarlo. A true and accurate copy of the Consulting Agreement is attached hereto as **Exhibit 2.**

7.      The Consulting Agreement indicates that the entities listed represent the "affiliates" of ArciTerra Group LLC for purposes of the Consulting Agreement, and that ArciTerra, "and its affiliates … include, but are not limited to the entities listed." *See* Ex. 2 (Consulting Agreement) ¶ B.

**First Motion to Designate**

8.      Since January 2024, the Receiver and his professionals have been analyzing the Receivership Entities to understand their relationship to the estate, the assets they may hold, and in the case of operating entities, their operations and viability. In addition, extensive independent research and analysis has been undertaken by the Receiver to determine whether additional entities exist that potentially contain assets that may be used to repay investors and creditors of ArciTerra.

9.      Pursuant to the Receivership Order, the Receiver may provide, "[a] recommendation whether to modify the list of Receivership Entities … based on the

Receiver's investigation." *See* Receivership Order ¶¶ 39.G. and 41.

10.    On April 10, 2025, the Receiver filed *Receiver's Motion for an Order (I) Designating Additional Receivership Entities; and (II) Granting Related Relief* [ECF No. 332] (the "First Motion to Designate"), seeking to add 19 additional receivership entities.

11.    In support of the First Motion to Designate, I prepared and executed a declaration ("Holley Declaration I") attesting to certain facts derived from an examination and analysis of the books and records of the Receivership Entities.

12.    Among the entities the Receiver requested the Court to add to the Receivership Estate were: Moynahan Investments, LLC ("Moynahan"); Wawasee Family Investments Limited Partnership ("WFILP"); Morrison Island, LLC ("Morrison"); and HV Gardens, LLC ("HV").

13.    On April 24, 2025, Relief Defendant Marcia Larmore filed her *Limited Opposition to Receiver's Motion for an Order (I) Designating Additional Receivership Entities; and (II) Granting Related Relief* [ECF No. 335] (the "Limited Opposition").

14.    On May 15, 2025, Defendant Jonathan Larmore filed his *Response in Opposition to Receiver's Motion for an Order (I) Designating Additional Receivership Entities; and (II) Granting Related Relief* [ECF No. 354].

15.    On June 5, 2025, the Receiver filed his *Omnibus Reply to Objections to Receiver's Motion for an Order (I) Designating Additional Receivership Entities; and (II) Granting Related Relief* [ECF No. 375] (the "Reply").

16.    In support of the Receiver's Reply, I prepared and executed a declaration ("Holley Declaration II") attesting certain facts derived from an examination and analysis

of the books and records of the Receivership Entities. To date, the Court has yet to rule on the First Motion to Designate.

### Flow of Funds Analysis

17.    The Receiver continues his work to analyze the Receivership Entities; trace the flow of funds through the various Receivership Entities, as well as entities associated with the Defendants and Relief Defendants; identify and research the locations of potential assets held by Receivership Entities and the Defendants; and in some cases, follow the flow of funds to accounts outside of the Receivership Estate. This work includes extensive independent research and analysis undertaken by the Receiver and Retained Personnel to determine whether additional entities exist that potentially contain Receivership assets that may be used to repay investors and creditors of ArciTerra.

18.    As documented in the Receiver's Status Reports,[2] ArciTerra Strategic Retail Advisors, LLC ("ASRA") played a critical role in moving money around, receiving and transferring funds to the entities in the ArciTerra universe, in such a way that obfuscated the use of the funds and commingled funds from many sources including from Investor

---

[2]  *See Receiver's First Status Report* filed on June 7, 2024 [ECF No. 179] at Section II.F; *Receiver's Second Status Report* filed on August 20, 2024 [ECF No. 205] at Section II.F; *Receiver's Third Status Report* filed on November 20, 2024 [ECF No. 269] at Section II.E,; *Receiver's Fourth Status Report* filed on February 20, 2025 [ECF No. 311] at Section II.E, *Receiver's Fifth Status Report* filed on May 20, 2025 [ECF No. 363] at Section II.E; *Receiver's Sixth Status Report* filed on August 20, 2025 [ECF No. 424] at Section II.E and *Receiver's Seventh Status Report* filed on November 20, 2025 [ECF No. 441] at Section II.E.

Funds.[3]  ASRA is owned by JMMAL Investments LLC, MML Investments LLC, and Spike Holdings, LLC, which are all owned by Wawasee Family Investments LP.

19.    Marcia Larmore and Jonathan Larmore are the general partners of Wawasee Family Investments LP.

20.    ASRA did not simply facilitate transfers from source to use; it was a central hub through which, at times, more than 65% of ArciTerra's cash travelled.[4] Accordingly, available cash was used to pay expenses and other items, often regardless of the relationship between the source and ultimate recipient.

21.    Through discussions with former ArciTerra employees and a review of contemporaneous email communications and deposition testimony, the Receiver observed that it was common practice at ArciTerra to pay expenses based on their urgency, with cash from the bank account of an entity with sufficient funds at the time the payment was needed, without regard to which entity incurred the debt or whether the cash came from an account of one of the Investor Funds.

22.    For each funding need, rather than directly transferring the cash from the account of the entity with the surplus to the account of the entity with the deficit, ArciTerra employees would generally transfer the cash from one entity-level bank account to that entity's parent company's account and then transfer the cash to ASRA. From ASRA,

---

[3] The term "Investor Fund" is defined as ArciTerra private investment vehicles through which capital was raised from third-party investors.

[4]  This concept is reported and illustrated by the Receiver in his *Third Status Report* [ECF No. 269] at Section II.E.ii, which is incorporated herein by reference.

ArciTerra transferred the cash to the parent of the recipient entity, and then to the entity-level account, from where the expense was ultimately paid. ArciTerra recorded each of these cash transfers as "intercompany loans" and maintained a running balance of the amounts due between entities as it transferred cash back and forth between the entities, through ASRA.

23.     The Receiver confirmed this pattern through a review of ArciTerra financial records, bank statements, email review and other documents. The Receiver also reported his observations regarding how the transfer of available cash from one entity to another was facilitated through "intercompany loans" between the entities borrowing and lending the cash from and through ASRA as the counterparty.

24.     Beginning in approximately 2015, ASRA, by design, was used as a central conduit and pass-through entity to route most of ArciTerra's cash flows, irrespective of the source or the destination of the funds, in such a way which in most cases resulted in the obfuscation of the purpose of the transfers.

25.     ASRA acted as a lender to and borrower from related entities, of funds coming from properties, investors, and lenders, often without being part of the ownership structure of the Investor Funds.

**<u>Relief Defendant Marcia Larmore</u>**

26.     The Receiver and his professionals continue to assess the roles played by various entities, including those associated with the Relief Defendants, to understand the complete flow of investor funds outside of the Receivership Estate, and to determine whether any parties were unjustly enriched, and/or continue to be in possession of investor

7

funds.

27.    Relief Defendant Marcia Larmore was more than a bystander in the ArciTerra enterprise. She has held herself out to be an officer, and principal in ArciTerra Group, as well as holding officer roles in various investment vehicles.

28.    Marcia Larmore's active participation in the ArciTerra enterprise includes, without limitation:

    a.  In connection with the Private Offering Memorandum ("POM") of ArciTerra Real Estate Investment Trust, Inc., dated April 3, 2006, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group" and "Secretary and Director of ArciTerra Real Estate Investment Trust, Inc." A true and accurate copy of an excerpt from the POM for ArciTerra Real Estate Investment Trust, Inc. is attached hereto as **Exhibit 3**;

    b.  In connection with the POM of ArciTerra Note Fund II, LLC, dated November 17, 2006, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group, LLC" and "Secretary of Arciterra REIT." In addition, it states, "Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980." A true and accurate copy of an excerpt from the POM for ArciTerra Note Fund II LLC, is attached hereto as **Exhibit 4**.

    c.  In connection with the POM of ArciTerra Note Fund III, LLC, dated March 10, 2008, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group, LLC" and "Secretary of Arciterra REIT." In addition, the POM states, "Mrs. Larmore also currently holds the positions of Manager, President,

and Principal of Moynahan. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980." A true and accurate copy of an excerpt from the POM for ArciTerra Note Fund III, LLC, is attached hereto as **Exhibit 5**;

d.  In connection with the POM of ArciTerra National REIT, Inc. dated October 28, 2008, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group, LLC" and "Secretary of the Company" (Arciterra National REIT, Inc.). In addition, the POM states, "Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980." A true and accurate copy of an excerpt from the POM for ArciTerra National REIT, Inc. is attached hereto as **Exhibit 6**;

e.  In connection with the POM of ArciTerra Strategic Income Corporation – Belleville Crossing IL, dated September 16, 2011, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group, LLC," "Secretary of Arciterra REIT," and Secretary of ArciTerra Strategic Income Corporation – Belleville Crossing IL." In addition, the POM states, "Mrs. Larmore also currently holds the positions of manager, president, and principal of MML Investments, LLC. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980." A true and accurate copy of an excerpt from the POM for ArciTerra Strategic Income – Belleville Crossing IL is attached hereto as **Exhibit 7**.

f.  In connection with the POM of ArciTerra Strategic Retail – Briargate & Linden I, LLC dated June 16, 2014, Marcia Larmore is described in the Management section of the POM as "Senior Vice President and Principal of ArciTerra Group and Secretary of ArciTerra REIT. Mrs. Larmore also currently holds the positions of manager, president, and principal of

9

MML. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980." A true and accurate copy of an excerpt from the POM for Strategic Retail – Briargate & Linden I, LLC is attached hereto as **Exhibit 8**.

29.    Moreover, Marcia Larmore has used the ArciTerra email domain for company emails (marcia.larmore@arciterra.com) and used the title "Executive Vice President" in her email signature block on company emails:

> Marcia M. Larmore
> Exec V.P. and Principal Owner
> ArciTerra Group, LLC
> 2720 E. Camelback Road, #220
> Phoenix, Arizona 85016
> 602-840-6800-Phoenix Office

A true and accurate copy of an email from Marcia Larmore to Jonathan Larmore dated February 20, 2011, is attached hereto as **Exhibit 9**.

30.    Moynahan, WFILP, Morrison and HV are, in many aspects, indistinguishable from other Receivership Entities, including MML Investments, LLC, a Receivership Entity also controlled by Marcia Larmore.

### **Moynahan Investments, LLC**

31.    As I outlined in Holley Declarations I and II, Moynahan was formed in Indiana on July 12, 2004, and Marcia Larmore is the company's Manager.

32.    Moynahan is a member of several Receivership Entities, including the following advisor entities to Investor Funds: ArciTerra Note Advisors II, LLC; ArciTerra Note Advisors III, LLC; and ArciTerra Opportunity Fund Advisor I, LLC.

33.    Moynahan is also a Member of several ArciTerra entities that are not among

the Receivership Entities, including entities that the Receiver has sought the Court's permission to add to the Receivership Estate in the First Motion to Designate.

34. Moynahan is listed as the beneficial owner of the following Receivership Entities:

    a. ArciTerra Note Advisor II, LLC (37.5% interest) which owns ArciTerra Note Fund II, LLC; and

    b. ArciTerra Note Advisor III, LLC (37.5% interest) which owns ArciTerra Note Fund III, LLC.

35. Moynahan is listed as the beneficial owner of the following additional ArciTerra entities:

    a. ArciTerra REIT Advisors, LLC, (37.5% interest), an entity that the Receiver has requested the Court to add as a Receivership Entity, which owns ArciTerra Real Estate Investment Trust, Inc., a Receivership Entity; and

    b. ArciTerra National REIT Advisors, LLC, (37.5% interest), an entity that the Receiver has requested the Court to add as a Receivership Entity, which owns ArciTerra National REIT, Inc., a Receivership Entity.

36. Moynahan was treated like any other entity within the ArciTerra group of companies. For example, Moynahan had its own entry in the ArciTerra Companies general ledger, identified as "MOY000." The company's general ledger was maintained by ArciTerra company employees, in the same manner as Receivership Entities' general ledgers were maintained.

37. Like many of the ArciTerra entities, it maintained checking accounts at KS State Bank and JP Morgan Chase. Bank Statements for Moynahan's KS State Bank account were sent to an address known to be the headquarters of ArciTerra companies:

11

> Moynahan Investments, LLC
> c/o Arciterra
> 2701 E. Camelback Road, Suite 150
> Phoenix, Arizona 85016-4308

38.    Bills and invoices to be paid on behalf of Moynahan were entered into ArciTerra's Avid financial management system, and bank account reconciliations were done in ArciTerra's MRI system.

39.    ArciTerra employees were responsible for accounting, executed transfers, made deposits and wrote checks on behalf of Moynahan in connection with real estate taxes, maintenance, home equity and mortgage loans, and on occasion funds were drawn from or backfilled from ArciTerra Receivership Entities.

40.    Examples of such interrelatedness include the following email exchanges:

a.    On April 17, 2023, Katy Sharp, a controller for Fisherman's Village, the commercial property in Punta Gorda, Florida owned by Jonathan Larmore, emailed Kathleen Bouet, a senior accountant and then consultant working for ArciTerra Companies and stated, "I don't know if there is anything you can do, but Marcia Larmore called to say the electricity was shut off to the above location," referencing a property owned by Marcia Larmore at 4430 N. Camino in Allenada, Arizona. Bouet replied later that day, "Should get paid out of Moynahan Investments. We just have to pull funds from one of the properties, like we always do." Sharp replied to Bouet that evening, "We will go ahead and get it paid. I will try to figure out where to draw it from." Sharp responded, "We will go ahead and get it paid. I'll try and figure out where to draw it from." Bouet replied, "If you do the ACH out of Moynahan, I can fund tomorrow when it hits." Sharp replied, "Great, we will try to do

an ACH! Thank you again." A true and accurate copy of the email exchange is attached as **Exhibit 10**;

b. On July 23, 2022, Marcia Larmore emailed Jonathan Larmore at his ArciTerra email address, jon.larmore@arciterra.com, forwarding an email from J.P. Morgan Chase informing Marcia Larmore that her home equity payment for the account ending in 5712 is past due. On July 24, 2022, Jonathan Larmore forwarded the email without comment to ArciTerra employees Blaine Rice and Stephanie Wiegand, as well as to an "Accounts Payable" email at the ArciTerra domain, ap@arciterra.com, presumably requesting that the payment be taken care of. A true and accurate copy of the email exchange is attached hereto as **Exhibit 11**. The home equity account ending in 5712 refers to a home equity account listed in an Excel file with the title ArciTerra Mortgage Loans, associated with the general ledger designation "MOY," a reference to Moynahan. A true and accurate copy of the spreadsheet is attached hereto as **Exhibit 12**. The spreadsheet appears to have been used to keep track of property loan payments associated with various ArciTerra property loans; and

c. On November 22, 2021, Marcia Larmore forwarded an email from J.P. Morgan Chase to Jonathan Larmore at his ArciTerra email that reported that Marcia Lamore's home equity payment for the account ending in 5712 is past due. On November 23, 2021, Jonathan Larmore forwarded the email to ArciTerra employees Blaine Rice and Stephanie Wiegand, asking, "has this been paid and released." On the same day, Stephanie Wiegand, assistant controller for ArciTerra Companies replied, "It shows that is cleared KS on 11/15. Copy of cleared check attached." Jonathan Larmore forwarded the exchange with Wiegand, including a copy of the cleared check notice to Marcia Larmore on the same day. "Paid. The extra money will resume once we have money in the company. We are still thin

13

from Covid shutdowns." A true and accurate copy of the email exchange is attached hereto as **Exhibit 13**.

41.    As I stated in Holley Declaration II, part of the Receiver's Bank Statement Analysis, involved the analysis of the bank statements of Receivership Entity MML Investments, LLC and identified transfers totaling approximately $44.4 million from MML Investments, LLC to ASRA.

42.    ASRA's bank statements were also analyzed and there were transfers totaling approximately $45.2 million from ASRA to MML Investments, LLC (receipts from ASRA to MML Investments, LLC). These transactions occurred during a period in which ASRA engaged in significant commingling of funds between Jonathan Larmore's entities, Investor Fund entities, and other Receivership entities as described in paragraphs 2 to 7 above.

43.    The table below depicts the exchange of funds between MML Investments, LLC and ASRA on an annual basis during the stated periods:

| Period | Payment to ASRA | Receipt from ASRA | Net Total |
|--------|----------------|-------------------|-----------|
| 2019 | $ (10,214,937) | $ 10,649,655 | $ 434,718 |
| 2020 | (13,304,103) | 13,406,045 | 101,942 |
| 2021 | (3,562,496) | 3,621,396 | 58,900 |
| 2022 | (17,363,864) | 17,514,865 | 151,001 |
| 2023 | - | 9,100 | 9,100 |
| Total | $ (44,445,400) | $ 45,201,061 | $ 755,661 |

44.    The movement of these funds during these periods resulted in a net receipt of $755,661 from ASRA to MML Investments, LLC.

45.    The Receiver also analyzed the limited bank statements of Moynahan and identified transfers totaling approximately $631,400 from Moynahan to MML

14

Investments, LLC during these periods.

46.    As noted above, MML Investments, LLC's bank statements were also analyzed and there were 38 transfers totaling approximately $1.5 million from MML Investments, LLC to Moynahan (receipts from MML Investments, LLC to Moynahan).

47.    The table below depicts the exchange of funds between MML Investments, LLC and Moynahan on an annual basis during the stated periods:

| Period | Payment from MML to Moynahan | Receipt from Moynahan to MML | Net Total |
|---|---|---|---|
| 2019 | $ (431,740) | $ 23,500 | $ (408,240) |
| 2020 | (882,400) | 607,900 | (274,500) |
| 2021 | (49,900) | - | (49,900) |
| 2022 | (117,000) | - | (117,000) |
| 2023 | (9,100) | - | (9,100) |
| Total | $ (1,490,140) | $ 631,400 | $ (858,740) |

48.    The movement of funds between MML Investments, LLC and Moynahan during these periods resulted in a net receipt of approximately $859,000 from MML Investments, LLC to Moynahan.

49.    Therefore, a portion of the funds that flowed between MML Investments, LLC and Moynahan inevitably originated from ASRA and were inclusive of Investor Funds due to the extensive commingling of investor funds through the pervasive use of ASRA.

50.    The Receiver submits that an examination of the bank account statements of Moynahan as identified in the subpoenas, is necessary to assess the validity and appropriateness of these fund transfers.

**WFILP**

51.    As I affirmed in Holley Declarations I and II, WFILP was formed in Arizona on February 25, 2010, with Marcia Larmore and Robert Larmore as general partners.

52.    WFILP is the sole Member of MML Investments, LLC and JMMAL Investments, LLC, both Receivership Entities, and holds a 75% interest of ASRA.

53.    Contrary to Marcia Larmore's previous assertions[5] Jonathan Larmore has repeatedly held himself out to be a general partner of WFILP. Attached hereto as **Exhibit 14** are the relevant portions of Jonathan Larmore's Form K-1 with respect to WFILP for the years 2015, 2018, 2019, 2020, and 2021.[6]

54.    Jonathan Larmore's reported interest in WFILP as of 2021, prior to the passing of his father, Robert Larmore, was 7.0894% of the capital and 1% of the profits and losses of the partnership. *See* **Exhibit 14** (2021 K-1). It is thus far unclear whether Jonathan Larmore's ownership interest changed after the passing of his father on March 24, 2022.

55.    Jonathan Larmore has also held himself out to be the holder of 100% of the beneficial rights of WFILP in documents filed in this Court,[7] as well as the following organizational charts currently in the Receiver's possession:

---

[5] *See* Limited Opposition [ECF No. 335] at 4.

[6] The Receiver has not located the tax returns for the years 2016 and 2017.

[7] *See, e.g., Defendant Jonathan Larmore's and Relief Defendant Marcia Larmore's Reply to the SEC's and Receiver's Oppositions to the Defendants' Motion to Remove StoneTurn Group, LLP as Receiver* [ECF No. 177], Ex. C. The motion to remove was denied per the court's order dated September 11, 2024 [ECF No. 225].

      a.  ATA Plaza OK, LLC (attached as **Exhibit 15**);

      b.  AT Altus Echelon IN, LLC (attached as **Exhibit 16**); and

      c.  AT Plainfield IN, LLC (attached as **Exhibit 17**).

56.    Like many of the ArciTerra entities, WFILP maintained a checking account at KS State Bank. Bank statements for WFILP's KS State Bank account were sent to an address known to be the headquarters of ArciTerra companies:

    Wawasee Family Investments LP
    2701 E. Camelback Road, Suite 150
    Phoenix, Arizona 85016

57.    Similar to Moynahan, WFILP's back-office operations and financial management were handled by employees of ArciTerra. Bills and invoices to be paid on behalf of WFILP were entered into ArciTerra's Avid financial management system. Account reconciliations were done in ArciTerra's MRI system. WFILP's general ledger was coded as "WFI002" for purposes of the ArciTerra Companies general ledger.

58.    ArciTerra employees were responsible for accounting, made deposits and wrote checks on behalf of WFILP in connection with real estate taxes, maintenance, home equity and mortgage loans, and on occasion funds were drawn from or backfilled from ArciTerra Receivership Entities.

59.    Examples of such interrelatedness include the following email exchanges:

      a.  On February 24, 2023, Jonathan Larmore emailed Robert Crook forwarding unpaid tax invoices on Aboite Eye Care asking Crook to "pay out of Moynahan." Crook forwarded the email to Fed Abrams, a senior accountant with ArciTerra asking Abrams to "look into the invoices, and determine how they been paid in the past." Abrams replied to Crook later that day, "The last invoice we paid was out of Wawasee Family

Investments; the last payment was made in 04.22 according to AVID to the Indiana Dept of Revenue, there is nothing in AVID under Aboite Eye Care. Aboite Eye Care is not an individual entity, it is under Wawasee Family Investments as far as I can tell. I found the information below on the server." Crook replied, "Please pay under Moyhnan Investments." Abrams ultimately paid the bill by phone. A true and accurate copy of the email is exchange is attached hereto as **Exhibit 18**;

b. On January 2, 2020, Julie Senger, with the Illinois Department of Revenue emailed Jonathan Larmore at his ArciTerra email address to inform him that Wawasee Family Investments Limited Partnership had an amount due for Tax Year 2018. Larmore forwarded the email to Kevin Gulbranson at his ArciTerra email address, "Kevin??" Gulbranson replied to Larmore, copying Blaine Rice at his ArciTerra email address and reported, "Check was cut today, and Blaine is stamping. Thanks." A true and accurate copy of the email exchange is attached hereto as **Exhibit 19**.

60.     The Receiver's review of ASRA's bank statements shows transactions totaling approximately $3.9 million in payments from ASRA to WFILP and approximately $7,500 from WFILP to ASRA for the period March 2019 through September 2022. These transactions occurred during a period in which ASRA engaged in significant commingling of funds between Jonathan Larmore's entities, Investor Fund entities, and other Receivership Entities as described above.

61.     The table below depicts the exchange of funds between WFILP and ASRA on an annual basis during the stated periods:

18

| Period | Payment to ASRA | Receipt from ASRA | Net Total |
|--------|----------------|-------------------|-----------|
| 2019 | $ - | $ 1,097,406 | $ 1,097,406 |
| 2020 | 7,500 | 1,167,934 | 1,175,434 |
| 2021 | - | 302,766 | 302,766 |
| 2022 | - | 1,360,683 | 1,360,683 |
| 2023 | - | - | - |
| Total | $ 7,500 | $ 3,928,788 | $ 3,936,288 |

62.     In addition, the Receiver analyzed the general ledger of WFILP, and ASRA for the period from 2017 through 2018 and identified transactions totaling approximately $841,000 from WFILP to ASRA, and transactions totaling approximately $649,000 from ASRA to WFILP.  These transactions occurred during a period in which ASRA engaged in significant commingling of funds between Mr. Larmore's entities, Investor Fund entities, and other Receivership entities as described above.

63.     The table below depicts the transactions between WFILP and ASRA on an annual basis during these two fiscal years:

| Period | Receipt from ASRA | Payment to ASRA | Net Total |
|--------|-------------------|-----------------|-----------|
| 2017 | $ 107,074 | $ (294,500) | $ (187,426) |
| 2018 | 542,054 | (546,900) | (4,846) |
| Total | $ 649,128 | $ (841,400) | $ (192,272) |

64.     The Receiver submits that an examination of the bank account statements of WFILP, as identified in the subpoenas, is necessary to assess the validity and appropriateness of these fund transfers.

**Morrison**

65.     Morrison was organized in Indiana on April 6, 2010, and is listed on Exhibit B of the Receivership Order (Non-Exhaustive List of Jonathan Larmore's Assets and Entities Subject to Asset Freeze Order).

66.     WFILP is the sole member of Morrison. *See supra* ¶¶ 52-67.

67.     On May 10, 2010, Marcia Larmore conveyed the following three parcels of land located on Morrison Island in Syracuse, Indiana, to Morrison:

      a.  part of Lot Number 5 of Morrison Island;

      b.  part of Lot Number 71 of Morrison Island; and

      c.  Lots Numbered 6 and 70 in the Plat of Morrison Island.

68.     The conveyance was recorded on May 26, 2010. Upon information and belief, Morrison continues to own the Morrison Island property.

69.     On at least one occasion, funds from a Receivership Entity were used for the benefit of Morrison. Specifically, the KS State Bank account statements for ATG REIT RSC, LP indicate that on December 10, 2018, a transfer from ArciTerra Noble West Noblesville IN, LLC was made to MML Investments, LLC to pay the taxes on the Morrison Island property.

70.     ATG REIT RSC, LP is a direct investor entity owned by Note Fund II and Note Fund III and is a Receivership Entity.

71.     The Receiver submits that an examination of the bank account statements of Morrison, as identified in the subpoenas, is necessary to assess the validity and appropriateness of these fund transfers.

**HV**

72.     HV was organized on April 8, 2010, in Indiana, and is listed on Exhibit B of the Receivership Order (Non-Exhaustive List of Jonathan Larmore's Assets and Entities Subject to Asset Freeze Order).

73.     WFILP is the sole member of HV. *See supra* ¶¶ 52-67.

74.     On May 10, 2010, Robert Larmore conveyed to HV property described as "Lots numbered 14 and 14 ½ in Highland View Gardens, Lake Wawasee."

75.     Upon information and belief, HV continues to own the Lake Wawasee property.

76.     On at least one occasion, funds from a Receivership Entity were used for the benefit of HV. Specifically, the KS State Bank account statements for ATG REIT RSC, LP indicate that on December 10, 2018,[8] a transfer from ArciTerra Noble West Noblesville IN, LLC to HV was made to pay the taxes on the HV Gardens properties.

77.     ATG REIT RSC, LP is a direct investor entity owned by Note Fund II and Note Fund III and is a Receivership Entity.

78.     The Receiver submits that an examination of the bank account statements of HV, as identified in the subpoenas, is necessary to assess the validity and appropriateness of these fund transfers.

79.     Moreover, HV and Morrison were treated by ArciTerra Group as part of the ArciTerra Group of entities.

80.     Examples of such interrelatedness include the following:

---

[8] In Declaration 1, I transposed the date of the tax payment from the ATG REIT RSC, LP bank statement from December 10, 2018 to December 18, 2010, which is inconsequential to this analysis. A copy of the ATG REIT RSC, LP bank statement for December 2018, is attached hereto as Exhibit 11.

a. The financial activities of HV and Morrison were tracked by ArciTerra Group management in the general ledger of ArciTerra Companies, as "WFI004" and "WFI003," respectively;

b. HV and Morrison were regularly included within lists of properties under the ArciTerra Companies' umbrella. For example, both entities were included in the *Current List of Properties* lists maintained by ArciTerra, between 2011 and 2015. Attached hereto as **Exhibit 20** is a document located in the files of ArciTerra created on or about September 4, 2012, which lists the parent of both HV and Morrison as "ATG" entities (ArciTerra Group);

c. HV and Morrison are identified as affiliates of ArciTerra Group within Exhibit A to the D2 Consulting Agreement, **Exhibit 2**, by which D2 Consulting Group agreed to provide certain services to the affiliates;

d. HV and Morrison are identified as "ArciTerra Affiliates" and listed as such within Exhibit A to the Separation Agreement and General Release dated October 5, 2017, a copy of which is attached hereto as **Exhibit 21**, between William Rack, his company WMR Investments, LLC and those certain ArciTerra Affiliates listed within Exhibit A to that agreement;

e. On April 2, 2020, Jonathan Larmore submitted a Paycheck Protection Program application seeking a forgivable federal loan from the U.S. Small Business Administration ("SBA"). On the application he submitted on behalf of ArciTerra Companies, LLC, Larmore identified CSL Investments, LLC as the 100% owner of ArciTerra Companies, LLC (the applicant). The application required a list of "affiliated entities" and HV and Morrison were among the list of companies Jonathan Larmore provided to the SBA as "owner" of ArciTerra Companies, LLC. Where the application requested to identify the relationship between the affiliated entities and the applicant, Jonathan Larmore submitted as

22

"Principal Owner or Manager" for both companies. Excerpts of the ArciTerra PPP Loan Application are attached hereto as **Exhibit 22**; and

f.  HV and Morrison were among the list of the ArciTerra corporate entities maintained in the regular course by ArciTerra Group, and provided to their registered agent, National Registered Agents, Inc., for purposes of ensuring that their corporate status was current and maintained by their respective states. A document located in the files of ArciTerra listing the ArciTerra properties as of 2022 is attached hereto as **Exhibit 23**.

81.    As described above, the Receiver has identified the movement of funds during the Period between ASRA and MML Investments, LLC, resulted in a net receipt of $755,661 from ASRA to MML Investments, LLC, for the stated period, and that MML Investments, LLC paid Kosciusko County $40,595 for real estate taxes that benefited HV and Morrison.

82.    Moreover, Marcia Larmore and her entities are so intertwined with the ArciTerra companies and/or the Receivership Estate, that the Special Master appointed in the Larmore divorce proceeding has deemed Marcia Larmore an indispensable party that should be part of that litigation. Attached hereto as **Exhibit 24** is a true and accurate copy of the Special Master Report filed on October 3, 2025, in the Superior Court of Arizona, Maricopa County (No. FC2023-001520).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Boston, Massachusetts
        January 28, 2026

DAVID A. HOLLEY

23

# EXHIBIT 1

# Curriculum Vitae



# David A. Holley

**J.D.**

Partner

T: +1 617 570 3798
M: +1 646 358 6026
E: dholley@stoneturn.com

**Boston**
75 State Street
Suite 1710
Boston, MA 02109

David A. Holley, a Partner with StoneTurn, has more than 30 years of investigative and risk consulting experience and frequently serves as a trusted advisor to corporations, law firms, audit committees, special committees of boards of directors and their counsel.

David has excelled in the management of high-stakes internal and cross-border investigations and is an expert at navigating and mitigating the business and legal challenges posed by doing business in high-risk jurisdictions and industries. He draws on his decades of private-sector experience to provide pragmatic solutions which integrate his investigative background with technology and regulatory expertise to provide clients with seamless approaches to solve critical business and legal problems.

David's investigative expertise spans diverse areas including: the exfiltration of confidential business information; regulatory investigations, such as the Foreign Corrupt Practices Act (FCPA) and anti-corruption investigations; Office of Foreign Asset Control (OFAC) and sanctions compliance investigations and consulting; internal investigations involving fraud, insider threats and third-party malfeasance; proxy and corporate control investigations and advice; reputational due diligence; the identification of potentially responsible parties in environmental contamination matters; and corporate governance and integrity advisory. David has also served as an independent third-party auditor in connection with National Security Agreements issued under the Committee on Foreign Investment in the United States (CFIUS).

## Education

Roger Williams University
School of Law, J.D.

Boston University, B.A.
Political Science

## Practice Areas

Investigations

National Security and Foreign
Direct Investment

CFIUS Compliance

Anti-corruption

Business Intelligence

Due Diligence

Compliance & Monitoring

StoneTurn.com



## David A. Holley, J.D.                                    Partner

Prior to StoneTurn, David held leadership positions at two risk consultancies, and headed the Boston office of a global consulting and risk mitigation firm for fifteen years.  At the outset of his career, David worked with the Environmental Enforcement Section of the United States Department of Justice (DOJ) where he conducted investigations into some of the United States' most contaminated hazardous waste sites. In that capacity, he identified and built the liability case against potentially responsible parties at several Superfund sites. David's investigative work led to a Certificate of Commendation from the Assistant Attorney General of the Environment and Natural Resources Division of the DOJ.

David is a graduate of the Roger Williams University School of Law and Boston University, a member of the Foreign Investment Watch editorial board, a member of the International Association of Independent Compliance Monitors, a Senior Fellow with the Regulatory Compliance Association, and a Certified ISO 37001 Lead Auditor.



David A. Holley, J.D.                                                                        Partner

---

## SELECT PROFESSIONAL EXPERIENCE

### INTERNAL INVESTIGATIONS

- Since 2000 and ongoing, David regularly conducts and/or supports investigations on behalf of a Fortune 300 manufacturer into alleged violations of the company's business code of conduct, including: self-dealing and non-arm's length transactions; misuse of company assets; trade secret theft and misappropriation; drug and narcotic misuse; trade compliance and sanctions; expense report abuse; product theft and resale; bribery and corruption; and conflicts of interest. In addition, David provides consulting in the areas of security, trade compliance, insider risk, and trade secret protection.

- On behalf of counsel to a medical examinations company, David led the investigation into the exfiltration of confidential business information, including customer lists, vendor agreements and other confidential information. The investigation involved the collection, hosting and review of thousands of emails, the forensic examination of a half-dozen computer hard drives, surveillance, public record research and interviews. The efforts identified sufficient evidence to allow counsel to obtain a temporary restraining order and ultimately a court order preventing the defendants from engaging in competitive activities for one year.

- At the request of the General Counsel to a large state university system, David led an investigation into allegations raised by a university professor that she was targeted for harassment due to her race, gender and immigration status, by a university administrator who questioned her bias in connection with her appointment to a search committee to assist with the identification of a new Assistant Dean for Diversity and Equity. The harassment consisted of media articles and social media attacks claiming the professor was a "BDS supporter." The investigation was highly publicized with David's employer coming under fire by the administrator. The investigation determined that while the administrator's actions were offense and likely in violation of university policy, there was no finding that the administrator targeted the professor for harassment due to her race, gender or immigration status. The report recommended additional investigation by the university for other identified policy violations.

- On behalf of the company's investors, David led an investigation into the mysterious resignations of several senior executives of a trade financing business. After reviewing over one hundred thousand emails, the team was able to piece together the framework for a competitive business, the formation of which commenced months earlier while still employed by the company. Computer forensics was undertaken on six computer hard drives utilized by the former executives and additional evidence established that in addition to setting up a competing business, the executives utilized company resources to get their new business operating and then diverted corporate opportunities to the new business, allowing counsel to file a sixteen-count complaint.

- At the request of counsel to the board of directors of a major financial institution, David co-led an investigation into whether the company's involvement in the development and sale of tax shelters in conjunction with its' outside auditor violated auditor independence rules. Instituted partially due to hearings by the Senate's



**David A. Holley, J.D.**                                                                                       **Partner**

Permanent Subcommittee on Investigations, the investigation involved a detailed review of the financial institution's private wealth clients and the auditor-developed tax strategies sold to them. David and his team reviewed documents and emails, and conducted interviews of employees of the financial institution and the external auditor. The independent report was submitted to the United States Attorney's Office, the Securities and Exchange Commission (SEC) and the Internal Revenue Service (IRS), all of whom declined to conduct any further investigation.

- David conducted an internal inquiry on behalf of a major financial institution to understand the circumstances surrounding unfiled/unreported Suspicious Activity Filings (SARs). In addition to identifying the root cause of the failure to file the SARs, David's examination involved a reconciliation of thousands of potentially reportable incidents and recommendations on whether or not to file SARs in the questioned circumstances. He also assisted with restructuring the institution's anti-money laundering (AML) and corporate security departments to effectively monitor and investigate potential money laundering activity.

- On behalf of the board of directors of a utility company, David conducted an independent investigation to determine the circumstances surrounding the submission of inaccurate data to a U.S. regulatory commission. Working for outside counsel to the company's board, David and others reviewed tens of thousands of pages of documents and interviewed more than forty current and former employees and third parties, in order to establish the root causes for the faulty submission. As a result of the investigation, the regulatory authority declined to conduct its own investigation, instead relying on the independent inquiry.

- In another matter, on behalf of outside counsel for a U.S. corporation, David led an independent investigation into potential OFAC sanctions violations committed by the company's majority owned subsidiary in China. The investigation involved a multi-disciplinary, multi-lingual team of investigators and forensic accountants tasked with determining the ultimate destination and purchasers of hundreds of shipments of consumer goods. The investigation led to the identification of a number of collateral issues, including self-dealing, fraudulent shipping documentation and other improprieties. David prepared a report that quantified the shipments to sanctioned countries, which was submitted to OFAC. In addition, David worked with the client to develop policies and procedures to prevent the subsidiary from circumventing sanctions regulations in the future.

- On behalf of an international pharmaceutical company, David investigated the counterfeiting, distribution and sale of a controlled pharmaceutical. The three-month investigation located and identified the counterfeit drug manufacturing and distribution locations and methodologies, and resulted in a referral to the Federal Drug Administration's Office of Criminal Investigation. Ultimately, two participants pled guilty to the sale of counterfeit drugs and a third defendant was found guilty after a trial.

- David was part of a large investigative team retained by the target of a $3 billion hostile takeover bid. The team developed factual information to be used in its public relations effort to prevent the takeover by the aggressor. After an extensive investigation, the investigative team was able to detail improper behavior in the chairman of the aggressor's background, a history of layoffs after prior takeovers despite promises to the contrary, conflicts in



**David A. Holley, J.D.**                                             **Partner**

contractual agreements with sovereigns and other negative information about the aggressor, which once made public in strategic media releases, convinced the aggressor to cease its attempts at a takeover.

## COMPLIANCE MONITORING

- Oversaw an international financial institution under a consent order with a state banking regulator for violating sanctions regulations by allowing transactions with sanctioned parties in Iran and elsewhere. During the course of the independent consultancy, David and his team undertook a review of the financial institution's sanctions compliance program, including: an assessment of all relevant policies and procedures; an examination of the firm's technology to assist with sanctions screening and interdiction; an evaluation of staffing; and an assessment of the financial institution's internal reporting, governance and management oversight of the sanctions compliance program. The results of the review were converted into recommendations for the financial institution to improve its sanctions compliance program. The balance of the year-long assignment involved oversight of the implementation of the recommendations, including the establishment of an industry-leading, internal organization to provide forward-looking advice to the financial institution on sanctions-related matters.

- David served as the lead auditor in connection with a technology company's CFIUS National Security Agreement requiring the company's founder to divest and separate from the company.

## CONSUTLING

- On behalf of a private equity firm funding the purchase of a bolt-on acquisition for one of its holding companies, David conducted an assessment of the potential acquisition's FCPA, AML and trade compliance policies, procedures and capabilities. The review included interviews with key executives and those with responsibility for compliance oversight, an examination of the policies and procedures and testing of expenses and third-party payments. The report provided recommendations for improvement to be implemented post-closing.

- On behalf of a cryptocurrency company, David co-led an assessment of the company's senior management and Board of Directors pursuant to the New York State Department of Financial Services May 2023 Guidance Letter on Assessment of the Character and Fitness of Directors, Senior Officers, and Managers.

- David led an investigation into the leak of information from a Fortune 250 manufacturer in connection with the release of a new product. The investigation identified potential avenues by which the information loss may have occurred. Upon completion of the lengthy intellectual property loss investigation, developed a holistic strategy for minimizing the future loss of intellectual property and confidential information. David worked with the client to establish policies and procedures to manage its intellectual property and safeguard trade secret information, train all employees on the new policies, and provide recommendations to enhance the company's physical security at its largest facilities.

- Developed the anti-bribery and anti-corruption program for a Fortune 250 multinational company, including policies and procedures for third-party due diligence, travel and entertainment expenses, training, auditing, testing and continuous improvement.



**David A. Holley, J.D.**                                                                      **Partner**

---

## ENVIRONMENTAL INVESTIGATIONS

- On behalf of a Fortune 500 company, David conducted an investigation to determine the potential source of a 14-mile plume of trichloroethylene ("TCE") under his client's property. After dozens of interviews, the review of thousands of pages of documents and discussions with scientists and regulatory authorities, David was able to demonstrate that the plume originated years earlier from another manufacturing facility several miles up gradient from his client's property. The investigation spared David's client more than $100 million in response and clean-up costs.

- David co-led an investigation on behalf of a Fortune 500 company into the quantification of the company's licensed exit signs containing tritium ("TES"). David, working with outside counsel, in-house counsel and subject matter science experts, performed a nationwide inventory of all TES to provide a "cradle to grave" assessment for each and every TES that was unaccounted for and to provide a root cause analysis for those that, after investigation, were not located.

- On behalf of a Fortune 1000 integrated energy company, David conducted an investigation to determine whether the company was liable for response and clean-up costs as a former owner or operator of eight historic manufactured gas plants. David's investigation revealed that the client was not responsible for contamination at seven of the facilities, and only operated the eighth facility after it was converted to a natural gas facility thereby limiting the company's liability at the eighth site.

- David's client, a Fortune 250 manufacturer, received a potentially responsible party letter from a state environmental regulator alleging former operations contaminated a portion of a river with polychlorinated biphenyls (PCBs) and other persistent contaminants decades prior. David's investigation determined that the company's operations did not include the use of PCBs at the time the company operated the facility and therefore could not be liable for the PCB contamination. In addition, historic samplings of the river were located and compared to more recent samplings which demonstrated that there was no threat of release, as the contaminants were effectively "capped" beneath two feet of silt in the riverbed.

- On behalf of an international paper company facing liability for historic environmental contamination, David developed the corporate histories of several potentially responsible parties' predecessors-in-interest dating back to the early 1840s. The investigation determined that the client was not responsible for the contamination at the site, as it had divested itself of all interest in the business prior to the commencement of hazardous waste generating activities.

- While with the United States DOJ's Environmental Enforcement Section, David conducted an investigation which established the joint and several liability of the sole non-settling defendant in United States vs. William Davis, et al., in the United States District Court (D. of RI).



David A. Holley, J.D.                                                     Partner

---

## PROFESSIONAL AFFILIATIONS / OTHER

- International Association of Compliance Monitors, Certified Member, 2017 - present
- Regulatory Compliance Association, Senior Fellow, 2015 - present
- Professional Evaluation and Certification Board (PECD), ISO 37001 Certified Lead Auditor, 2017 - present

## PROFESIONAL EXPERIENCE

- StoneTurn Group, Partner (2022 - present)
- K2 Integrity, Executive Vice President (2018 - 2022)
- Berkeley Research Group, Senior Managing Director (2015 - 2018)
- Kroll, Senior Managing Director and Office Head (2000 - 2015)
- Investigative Group International, Senior Investigator (1995 - 2000)
- U.S. Department of Justice Environmental Enforcement Section, Litigation Support Specialist (1990 - 1995)



## **EXHIBIT 2**

## **Consulting Agreement**

## CONSULTING AGREEMENT

This Consulting Agreement (the "Agreement"), dated as of ___July 10___, 2023, is between ArciTerra Group LLC ("ArciTerra") and D2 Consulting Group LLC, an Ohio limited liability company (the "Consultant").

### Background



**Exhibit A**

**List of Entities**

ENTITY LIST

| ENTITIES |
| --- |
| 1000 West Marion PG FL, LLC |
| 1921 Gallatin Pike Nashville TN, LLC |
| 2006 OPERATING PARTNERSHIP, L.P. |
| 2513 E North Street Kendallville IN, LLC |
| 412 Cross Oaks Mall Plainwell MI, LLC |
| 5339 Elvis Presley Blvd. Memphis TN, LLC |
| 5450 US Highway 80 East Pearl MS, LLC |
| 60 Colonial Promenade Parkway Alabaster AL, LLC |
| 601 Retta FL, LLC |
| 601 Trenton Road McAllen TX, LLC |
| 613 Retta FL, LLC |
| 700 North Grand Avenue MT. Pleasant, IA, LLC |
| 751 W Retta Esplande FL, LLC |
| 752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC |
| 7525 PINE VALLEY LANE OWNER, LLC |
| 8001 Vaughn Road Montgomery AL, LLC |
| 81 Jameson lane Greenville AL, LLC |
| 880 W MARION AVE FL, LLC |
| 900 West Marion Avenue FL, LLC |
| ALOHA POP UP PRODUCTIONS, LLC |
| ARCITERRA AA BARBOURVILLE KY, LLC |
| ARCITERRA AA LINCOLN NE, LLC |
| ARCITERRA AA MANISTEE MI, LLC |
| ARCITERRA AA PAPILLION NE, LLC |
| ARCITERRA AA PEARL MS, LLC |
| ARCITERRA AA THEODORE AL, LLC |
| ARCITERRA AA WEST LIBERTY KY, LLC |
| ARCITERRA AZ SLIDELL LA, LLC |
| ARCITERRA AZ TEMPLE GA, LLC |
| ARCITERRA AZ WILLIS TX, LLC |
| ARCITERRA BELL YORK SC, LLC |
| ARCITERRA BP OLATHE KS, LLC |
| ARCITERRA CH NEW ORLEANS LA, LLC |
| Arciterra Commercial Property REIT, LP |
| Arciterra Commerical Property REIT, Inc. |
| Arciterra Companies, LLC |
| ARCITERRA CV LAFAYETTE LA, LLC |
| ARCITERRA CV TARPON SPRINGS FL, LLC |
| ARCITERRA DESIGN, LLC |
| ARCITERRA DG CAMPBELLSVILLE KY, LLC |
| ARCITERRA DG GREENVILLE KY, LLC |
| ARCITERRA DG JUNCTION CITY KY, LLC |
| ARCITERRA DG MEMPHIS TN, LLC |
| ARCITERRA DG NORTH BEND OH, LLC |
| ARCITERRA DG RAVENNA KY, LLC |
| ARCITERRA DG SHEPHERDSVILLE KY, LLC |

ENTITY LIST

| ENTITIES |
|---|
| ARCITERRA DG SOUTH CHARLESTON OH, LLC |
| ARCITERRA DG WISTER OK, LLC |
| ARCITERRA DKS GRAND CHUTE WI, LLC |
| ARCITERRA FD BOWMAN SC, LLC |
| ARCITERRA FD EHRHARDT SC, LLC |
| ARCITERRA FD GREELEYVILLE SC, LLC |
| ARCITERRA FD PAXVILLE SC, LLC |
| ARCITERRA FD TUBERVILLE SC, LLC |
| ARCITERRA FESTIVAL MONTGOMERY AL, LLC |
| ARCITERRA GC JOHNSON CITY NY, LLC |
| ARCITERRA GREYSTONE HOOVER AL, LLC |
| ARCITERRA GROUP, LLC |
| ARCITERRA HD HENDERSONVILLE TN, LLC |
| ARCITERRA HD MCALLEN TX, LLC |
| ARCITERRA KLS JENSEN BEACH FL, LLC |
| ARCITERRA KLS WARSAW IN, LLC |
| ARCITERRA KLS WAUSAU WI, LLC |
| ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC |
| ARCITERRA MOV GAL GODDARD KS, LLC |
| ARCITERRA MOV GAL PARK CITY KS, LLC |
| ARCITERRA MW NASHVILLE TN, LLC |
| ARCITERRA NATIONAL REIT, INC. |
| ARCITERRA NATIONAL REIT, LP |
| ARCITERRA NOBLE WEST NOBLESVILLE IN, LLC |
| ARCITERRA NOTE ADVISORS II, LLC |
| ARCITERRA OFF DEP PEARL MS, LLC |
| ARCITERRA OLATHE POINTE OLATHE KS LLC |
| ARCITERRA OPPORTUNITY FUND I, LLC |
| ARCITERRA OR BATTLE CREEK MI, LLC |
| ARCITERRA OS MT. PLEASANT IA, LLC |
| ARCITERRA REAL ESTATE INVESTMENT TRUST, INC. |
| ARCITERRA REGIONS LAMARQUE TX, LLC |
| ArciTerra REIT I Member, LLC |
| ARCITERRA REIT I MEMBER, LLC |
| ARCITERRA REIT I MEMBER, LLC |
| ARCITERRA REIT RSC, LP |
| ARCITERRA REIT, LP |
| ARCITERRA SHOPPES AT ALABASTER AL, LLC |
| ARCITERRA STAR LANCASTER OH, LLC |
| ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL |
| Arciterra Strategic Retail - Suffolk VA, LLC |
| ArciTerra Strategic Retail Advisor, LLC |
| ARCITERRA STRATEGIC RETAIL ADVISOR, LLC |
| ARCITERRA STRATEGIC RETAIL REIT, INC. |
| ArciTerra Strategic Retail-Elyria OH, LLC |
| ARCITERRA STRATEGIC RETAIL-PLAINFIELD VILLAGE IN, LLC |

ENTITY LIST

| ENTITIES |
|---|
| ARCITERRA STRATEGIC RETAIL-PLAINFILED VILLAGE IN, LLC |
| ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC |
| ARCITERRA S-W BURTON MI, LLC |
| ARCITERRA S-W KALAMAZOO MI, LLC |
| ARCITERRA S-W LORAIN OH, LLC |
| ARCITERRA USB BISMARK ND, LLC |
| ARCITERRA USB NEW ALBANY OH, LLC |
| ARCITERRA USB ROCHESTER MN, LLC |
| ARCITERRA VERMONT INDIANAPOLIS IN, LLC |
| ARCITERRA VN CLARKSVILLE TN, LLC |
| ARCITERRA VN COLUMBIA TN LLC |
| ARCITERRA VN DICKSON TN, LLC |
| ARCITERRA VZ HOME GA, LLC |
| ARCITERRA VZ ROME GA, LLC |
| ARCITERRA WALCENT GREENVILLE AL, LLC |
| ARCITERRA WALCENT KENDALLVILLE IN, LLC |
| ARCITERRA WALCENT PLAINWELL MI, LLC |
| Arciterra Westgage Indianapolis Member, LLC |
| Arciterra Westgate Indianapolis IN II, LLC |
| ARCITERRA WESTGATE INDIANAPOLIS IN, LLC |
| ARCITERRA WG HOMETOWN IL, LLC |
| ARCITERRA WG KILMARNOCK VA, LLC |
| ARCITERRA WG MILWAUKEE WI, LLC |
| ARCITERRA WHITEFISH ADVISORS, LLC |
| ARCITERRA WHITEFISH OPPORTUNITY FUND, LLC |
| ARCITERRA WM DOUGLASVILLE GA, LLC |
| ASR REIT LP |
| AT 18 Mile Central SC, LLC |
| AT ALTUS Cumberland GA II, LLC |
| AT ALTUS CUMBERLAND GA, LLC |
| AT ALTUS Cumberland Member, LLC |
| AT ALTUS ECHELON IN, LLC |
| AT ALTUS ROSWELL GA, LLC |
| AT Auburn Plaza IN II, LLC |
| AT Auburn Plaza IN, LLC |
| AT Auburn Plaza Member, LLC |
| AT BELLEVILLE CROSSING IL-INLINE, LLC |
| AT BELLEVILLE CROSSING IL-OUTLOTS LLC |
| AT Bloomington IL, LLC |
| AT BOUTTE LA, LLC |
| AT BRIARGATE IL, LLC |
| AT BUENA VISTA GA, LLC |
| AT Canal Winchester OH, LLC |
| AT CASTLETON IN ASSOCIATION MANAGER, LLC |
| AT Castleton IN Member II, LLC |
| AT Castleton IN Member, LLC |

ENTITY LIST

| ENTITIES |
|---|
| AT Castleton IN Member, LLC |
| AT Castleton IN Owner II, LLC |
| AT CASTLETON IN OWNER, LLC |
| AT CASTLETON IN OWNER, LLC |
| AT Castleton IN Owner, LLC |
| AT CEDARTOWN GA OUTLOT, LLC |
| AT CEDARTOWN GA, LLC |
| AT CENTERVILLE GA, LLC |
| AT COLONY FITZGERALD GA LLC |
| AT CONCORD, LLC |
| At Dillon SC Outlot, LLC |
| AT Eastman GA II, LLC |
| AT EASTMAN GA, LLC |
| AT EASTMAN GA, LLC |
| AT Eastman Member, LLC |
| AT Elyria OH Inline, LLC |
| AT Elyria OH Outlot, LLC |
| AT FL Construction, LLC |
| AT FORUM KY MEMBER II, LLC |
| AT FORUM KY MEMBER, LLC |
| AT Forum KY Member, LLC |
| AT FORUM LOUISVILLE KY II, LLC |
| AT HL Burlington IA II, LLC |
| AT HL BURLINGTON IA, LLC |
| AT HL Burlington Member, LLC |
| AT JEFFERSON CENTER FW IN OWNER, LLC |
| AT Jefferson Center FW IN, LLC |
| AT JPM LINDENHURST IL, LLC |
| AT LIMA PLAZA FW IN OWNER, LLC |
| AT Lima Plaza FW IN, LLC |
| AT LINDENHURST IL, LLC |
| AT Longview Member, LLC |
| AT LONGVIEW OUTLOT NORTHEAST, LLC |
| AT LONGVIEW OUTLOT WEST, LLC |
| AT Longview TX II, LLC |
| AT LONGVIEW TX, LLC |
| AT LUBBOCK TX, LLC |
| AT MAX FW IN OWNER, LLC |
| AT Max FW IN, LLC |
| AT Mayodan Member, LLC |
| AT Mayodan NC II, LLC |
| AT MAYODAN NC, LLC |
| AT MF VEGAS, LLC |
| AT MIDWAY ELYRIA OH, LLC |
| AT ML Leasehold HI, LLC |
| AT ML Management HI LLC |

ENTITY LIST

| ENTITIES |
|---|
| AT MMH HI LLC |
| AT Mt. Pleasant Lot 2, LLC |
| AT NEW LENOX IL - GL, LLC |
| AT NEW LENOX IL- INLINE, LLC |
| AT New Lenox IL-Inline II, LLC |
| AT NEW LENOX IL-OUTLOTS, LLC |
| AT New Lenox-IL Member, LLC |
| At New West Clifton CO, LLC |
| AT Olathe Manager, LLC |
| AT OLATHE MANAGER, LLC |
| AT PINE VALLEY FW IN OWNER, LLC |
| AT Pine Valley FW IN, LLC |
| AT Plainfield Village IN II, LLC |
| AT Plainfield Village IN, LLC |
| AT Plainfield Village Member, LLC |
| AT PORTLAND COMMONS IN OWNER, LLC |
| AT Portland Commons IN, LLC |
| AT PT Danville IL II, LLC |
| AT PT DANVILLE IL, LLC |
| AT PT Danville Member, LLC |
| AT Salem IL Outlot, LLC |
| AT SALISBURY NC OUTLOT, LLC |
| AT SANDERSVILLE GA, LLC |
| AT Seven Hills Aurora CO II, LLC |
| AT SEVEN HILLS AURORA CO, LLC |
| AT Seven Hills Aurora CO, LLC |
| AT Seven Hills Aurora Member, LLC |
| AT STATESBORO SQUARE GA, LLC |
| AT Suffolk VA 2B-2, LLC |
| AT Suffolk VA 2B-3, LLC |
| AT Suffolk VA 2B-5, LLC |
| AT Suffolk VA 2B-6, LLC |
| At Suffolk VA BWW, LLC |
| AT Suffolk VA SC, LLC |
| AT SUWANEE DEPOT GA, LLC |
| AT Sweden Member, LLC |
| AT Sweden NY II, LLC |
| AT SWEDEN NY, LLC |
| AT SWEEDEN NY OUTLOT, LLC |
| AT TIFFANY SQUARE ROCKY MOUNT NC, LLC |
| AT TOWNE SQUARE ROME GA, LLC |
| AT Villa Platte LA II, LLC |
| AT Villa Platte Member, LLC |
| AT VILLE PLATTE LA, LLC |
| AT WHEATLAND NAPERVILLE IL, LLC |
| AT Wildwood Plaza MO, LLC |

ENTITY LIST

| ENTITIES |
|---|
| ATA CHERRY CREEK IL, LLC |
| ATA CYPRESS TOWN CENTER TX, LLC |
| ATA FISHVILLE FL, LLC |
| ATA FISHVILLE MANAGEMENT, LLC |
| ATA FORUM LOUISVILLE KY, LLC |
| ATA FORUM LOUISVILLE,LLC |
| ATA HIRAM SQUARE GA, LLC |
| ATA Lanier Fayetteville GA II, LLC |
| ATA LANIER FAYETTEVILLE GA, LLC |
| ATA Lanier Fayetteville Member, LLC |
| ATA MERCADO ST. AUGUSTINE FL, LLC |
| ATA PALENCIA ST. AUGUSTINE FL, LLC |
| ATA PLAZA OK, LLC |
| ATA PRESTON PLAZA KY, LLC |
| ATA ROGERS BRIDGE GA, LLC |
| ATA STONE LITHONIA GA, LLC |
| ATA TRINITY PLACE TN, LLC |
| ATG REIT RSC, LP |
| BDS, L.L.C. |
| BDS, L.L.C. OF ALABAMA |
| Belleville IL Outlot 6, LLC |
| Black Point Rd, LLC |
| Brewhouse Center Court, LLC |
| CASTLETON SHOPPING CENTER MK DISPOSITION, LLC |
| Castleton Shopping Center MK Disposition, LLC |
| CHOVIA SHOPS MT AIRY NC, LLC |
| CSL INVESTMENTS, LLC |
| DB COMMERCIAL MANAGEMENT, LLC |
| Fishville Kiosk Member, LLC |
| FK TELLURIDE, LLC |
| FV Building 13, LLC |
| FV BUILDING 15, LLC |
| Glenrosa 32, LLC |
| HarbourView Marketplace, LLC |
| HarbourView Station West, LLC |
| HELENA STAR MT, LLC |
| HV GARDENS, LLC |
| JB Fishville Harbor Land LLC |
| JB Fishville Retail Land LLC |
| JB Forum Land, LLC |
| JB ML Land HI, LLC |
| JB OLATHE OUTLOT 2, LLC |
| JB RE Investments, LLC |
| JB Seven Hills, LLC |
| JB Seven Hills, LLC |
| JB Transportation, LLC |

ENTITY LIST

| ENTITIES |
|---|
| JBM ACQUISTIONS LLC |
| JJ Restaurant Holdings, LLC |
| JML BC G4, LLC |
| JML MANAGER, LLC |
| JML Trust Manager, LLC |
| LABALME TRAIL, LLC |
| LEGAL FLOAT LENDING, LLC |
| LOUISVILLE RESTAURANT PARTNERS, LLC |
| LOWER 5629 ROCKRIDGE ROAD, LLC |
| LUTHERAN EYE CARE, LLC |
| Montgomery Mattress, LLC |
| Montgomery Mattress, LLC |
| MORRISON ISLAND, LLC |
| NORTH EAST WAWASEE, LLC |
| PG Hospitality, LLC |
| PG Waterfront Hospitality, LLC |
| PT PLAZA, LLC |
| SAML BAR AND GRILL, LLC |
| Spike Holdings AZ, LLC |
| STAR MT, LLC |
| STAR OH, LLC |
| THE EXCHANGE PLAINWELL MI, LLC |
| UPPER 5629 ROCKRIDGE ROAD, LLC |
| WALCENT ARKADELPHIA AK, LLC |
| WALCENT ELK/IN, LLC |
| WALCENT KENDALLVILLE IN, LLC |
| WALCENT LAWTON OK, LLC |
| WALCENT MORRILTON AK, LLC |
| WALCENT NEWC/IN, LLC |
| WALCENT PLAINWELL MI, LLC |
| WALCENT SHELBY MI, LLC |
| WALCENT SHOPS SUWANEE GA, LLC |
| WALCENT WAYNESBORO MS, LLC |
| WAWASEE WATERCRAFTS, LLC |
| Wheatland Crossing Owners Association |
| Wheatland Marketplace Lot 7 Condominium Assn. |
| WHITEFISH OPPORTUNITY FUND, LLC |

**Exhibit B**

**Services**

➢ Power of Attorney for all Jon Larmore matters that pertain to entities in Exhibit A
➢ Consulting Services;
   o Property Sales
   o Property Acquisitions
   o Property Management
   o Marketing and Sales
   o Strategy and Planning
   o Organizational Structure
   o Organizational Development
   o Planned commercial developments
   o New business ventures
      ▪ Business Plans
      ▪ Capital Funding
            Business Operations

**Exhibit C**

**Payment for Services**

1. Flat Fee: $50,000/mo. beginning May 1, 2023, payable on the first day of each calendar month
2. Corporate Credit Card for business travel and expenses
3. Quarterly Attainment Bonus = $100,000/qtr.  Payable on the first day of each calendar quarter.

> Objectives;
>    i. Reduction of Corporate Debt
>    ii. Increase in Property Values
>    iii. Settlement of Lawsuits
>    iv. Launch of new business ventures
>    v. Development and Stabilization of Organization
>    vi. Driving Positive Cash Flow from Retained properties
>    vii. Settlement of insurance claims
>    viii. New Hires for open positions

Quarterly Bonus attainment will be at the discretion of Jonathan M Larmore

22776092v1

# EXHIBIT 3

## Excerpt from POM for ArciTerra Real Estate Investment Trust, Inc.

**ARCITERRA REAL ESTATE INVESTMENT TRUST, INC.**

**150,000 SHARES OF COMMON STOCK - MINIMUM OFFERING
1,500,000 SHARES OF COMMON STOCK - MAXIMUM OFFERING**

**CONFIDENTIAL PRIVATE OFFERING MEMORANDUM**

ARCITERRA REAL ESTATE INVESTMENT TRUST, INC. (the "Company") is a recently formed Maryland corporation that intends to qualify as a real estate investment trust. The Company has been formed primarily to acquire, operate, and hold for lease certain commercial real estate (each a "Property" and collectively the "Properties"). The Company owns substantially all of its assets and conducts its operations through an operating partnership called ArciTerra REIT, L.P. (the "Operating Partnership"), which is a Delaware limited partnership. The Company is the sole general partner of the Operating Partnership. The Company and the Operating Partnership maintain their principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016, their telephone number is (602) 840-6800, and their facsimile number is (602) 956-4494.

AN INVESTMENT IN THESE SECURITIES IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" BELOW.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ENTITY ISSUING THESE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(2) AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER BY THE SEC, AND STATE SECURITIES LAWS. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

| | Price to Investors | Sale Commissions[1] | Proceeds to the Company[2] |
|---|---|---|---|
| Per Share[3] ..................................................... | $10.00 | $0.70 | $9.30 |
| Minimum Offering Amount ........................... | $1,500,000 | $105,000 | $1,395,000 |
| Maximum Offering Amount[4][5] ................... | $15,000,000 | $1,050,000 | $13,950,000 |

(See footnotes next page)

The date of this Private Offering Memorandum is April 3, 2006, as amended through August 16, 2006

(1)    The shares of common stock will be offered and sold on a "best efforts" basis by broker-dealers, collectively called the "selling group," who are members of the National Association of Securities Dealers, Inc. ("NASD").  The broker-dealers will receive selling commissions of up to 7.0% of the gross proceeds of the Offering.  The broker-dealers may receive a marketing allowance of up to 1.0% of the gross proceeds of the Offering to defray marketing expenses.  Subject to certain conditions and in consideration of the selling group's services, the Company may also reimburse the selling group and Affiliates of the Company for accountable (i.e. out-of-pocket) due diligence and marketing expenses of up to 1.0% of the gross proceeds of the Offering sold by the selling group.   The total aggregate amount of commissions, allowances, and reimbursements paid by the Company will not exceed 9.0% of the gross proceeds of the Offering.  See "Estimated Use of Proceeds " and "Plan of Distribution" below.

(2)    Amounts shown are proceeds after deducting selling commissions but before deducting marketing, offering, and organization expenses.  The Company anticipates that offering and organization expenses will be $120,000 for the minimum offering amount and $300,000 for the maximum offering amount.  See "Estimated Use of Proceeds."

(3)    The minimum purchase of shares is 5,000 shares, or $50,000.  The Company may, in its sole and absolute discretion, waive or lower the minimum purchase requirement for certain investors.

(4)    The Company met the minimum offering threshold of $1.5 million, which was required to be met no later than June 1, 2006, and released funds from the escrow account at Wells Fargo Bank, N.A. on May 26, 2006 and accepted subscribers as stockholders.  The Offering will continue for up to one year from the escrow release date until the maximum offering amount has been sold or the Offering has terminated.

(5)    The Company has the option to sell up to 1,000,000 additional shares pursuant to the terms of this Memorandum and as part of this Offering.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE OPERATING PARTNERSHIP, OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION. EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT.  THE WRITTEN ADVICE CONTAINED IN THIS MEMORANDUM, TO THE EXTENT IT RELATES TO MATTERS OF FEDERAL INCOME TAXATION, WAS NOT INTENDED OR WRITTEN TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER. THE ADVICE WAS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTION OR MATTER ADDRESSED BY THE WRITTEN ADVICE. THE TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

NO DEALER, SALESMAN, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH AN OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL.  REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY.  BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF HE DOES NOT PURCHASE ANY SHARES OFFERED HEREBY.

THE SHARES WILL BE SOLD IN A PRIVATE OFFERING TO A LIMITED NUMBER OF INVESTORS MEETING CERTAIN SUITABILITY STANDARDS.  THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY WITHOUT NOTICE.  THE

i

COMPANY, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO REJECT ANY OFFER TO PURCHASE SHARES IN WHOLE OR IN PART.

The Company will not file any financial information with the Securities and Exchange Commission (the "SEC").  Neither potential investors nor the stockholders will be able to cause the Company to file any financial information with the SEC.

Each prospective investor will be afforded the opportunity to obtain additional information, if available, which such investor may reasonably request relating to this Offering, the Company, or any of the documents appended hereto as exhibits or otherwise a part of or related to this Offering.

## TABLE OF CONTENTS

| | Page |
|---|---|
| Who May Invest | iii |
| Summary of the Offering | 1 |
| Risk and Other Investment Factors | 4 |
| Estimated Use of Proceeds | 18 |
| The Company, the Operating Partnership, and the Advisor | 19 |
| Management | 20 |
| Compensation of Advisor and its Affiliates | 24 |
| Investment Objectives and Operating Policies | 26 |
| Completed Acquisitions | 29 |
| Probable Acquisitions | 41 |
| Conflicts of Interest | 46 |
| Description of Capital Stock | 48 |
| The Operating Partnership | 55 |
| The Advisory Agreement | 58 |
| Tax Aspects of the Offering | 60 |
| ERISA Aspects of the Offering | 72 |
| Plan of Distribution | 74 |
| Other Documents | 76 |
| | |
| Exhibit A – Form of Operating Partnership Agreement | A-1 |
| Exhibit B – Subscription Agreement | B-1 |
| Exhibit C – Balance Sheet | C-1 |
| Exhibit D – Articles of Incorporation | D-1 |
| Exhibit E – Bylaws | E-1 |
| Exhibit F – Advisory Agreement | F-1 |

*This Memorandum contains certain forward-looking statements that involve risks and uncertainties.  These statements relate to the Company's future plans, goals, expectations and intentions.  These statements may be identified by the use of words such as "expects," "anticipates," "intends," "plans," "will," "may," and similar expressions.  The Company's actual results could differ materially from the results anticipated in these forward-looking statements.  Factors that could contribute to such differences include, but are not limited to, those discussed below and elsewhere in this Memorandum.*

- Any employee benefit plan within the meaning of ERISA, if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if such employee benefit plan has total assets over $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors;

- Any private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended);

- Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity, or any insurance company as defined in Section 2(13) of the Securities Act;

- Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets of more than $5,000,000;

- Any executive officer of the Company; or

- Any entity in which all of the equity owners are accredited investors.

For purposes of calculating your net worth, "net worth" is defined as the difference between total assets and total liabilities, including home, home furnishings, and personal automobiles. In the case of fiduciary accounts, the net worth and/or income suitability requirements must be satisfied by the beneficiary of the account, or by the fiduciary, if the fiduciary directly or indirectly provides funds for the purchase of the shares.

(c)       You are acquiring the shares for your own account and for investment purposes only and have no present intention, agreement, or arrangement for the distribution, transfer, assignment, resale, or subdivision of the shares;

(d)       You have such knowledge and experience in financial and business matters that you are capable of evaluating the merits and risks of investing in the shares and have the ability to protect your own interests in connection with such investment;

(e)       You understand that an investment in the shares is highly speculative and involves substantial risks and you are fully cognizant of and understand all of the risks relating to an investment in the shares, including, but not limited to, those risks discussed in the "Risk and Other Investment Factors" section of this Memorandum;

(f)       Your overall commitment to investments that are not readily marketable is not disproportionate to your individual net worth, and your investment in the shares will not cause such overall commitment to become excessive;

(g)       You have adequate means of providing for your financial requirements, both current and anticipated, and have no need for liquidity in this investment; and

(h)       You can bear and are willing to accept the economic risk of losing your entire investment in the shares.

### THE COMPANY, THE OPERATING PARTNERSHIP, AND THE ADVISOR

ArciTerra Real Estate Investment Trust, Inc. (the "Company"), is a Maryland corporation formed to acquire, directly or indirectly, operate, and hold for lease certain commercial real estate (each a "Property" and collectively the "Properties"). The Company is the sole general partner of ArciTerra REIT, L.P., a Delaware limited partnership (the "Operating Partnership"). The Company is advised by ArciTerra REIT Advisors, LLC, an Arizona limited liability company (the "Advisor"). The sole manager of the Advisor is ArciTerra Group, LLC, an Arizona limited liability company (also known as "ArciTerra Group"). ArciTerra Group, formed in 2005, acts as an operation company to expand the combined business of CSL Investments, LLC ("CSL") and Moynahan Investments, LLC ("Moynahan"), each of whom own an equal share of ArciTerra Group. CSL was formed in 2002 and is owned and controlled by Jonathan M. Larmore. Moynahan is owned and controlled by Marcia M. Larmore. WMR Investments, LLC ("WMR") is owned and controlled by William A. Rack, Jr.

CSL and Moynahan, and their Affiliates, have been investing together in commercial real estate since 2003. Since that time these companies and their Affiliates have purchased and/or developed 27 properties having a value in excess of $70,000,000. Over that time period they have sold seven properties for a combined sales price of $23,000,000. As part of its expansion, ArciTerra Group has several wholly-owned subsidiary companies including ArciTerra Capital, LLC, ArciTerra Realty, LLC, and ArciTerra Management, LLC. William A. Rack, Jr. became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005.

ArciTerra Note Fund I, LLC, which is an Affiliate of ArciTerra Group, recently completed the successful offering of $10,000,000 in aggregate principal amount of secured notes. To date, this is the only program sponsored by the ArciTerra Group.

The directors and officers of the Company have the ultimate authority in all matters affecting the business and affairs of the Company, including the responsibility for determining when to acquire and dispose of the Properties. The Company and ArciTerra Investments have no direct employees. They contract with the Affiliates for support services and for professional expertise in connection with pursuing their investment objectives.



## MANAGEMENT

The following table sets forth certain information regarding the Company's directors and officers and key employees of ArciTerra Group and its Affiliates.  ArciTerra Group serves as the manager of the Advisor.

| Name | Position |
|------|----------|
| Jonathan M. Larmore | Chief Executive Officer and Director of the Company, and Chief Executive Officer and Manager of ArciTerra Group, LLC |
| William A. Rack, Jr. | President, Treasurer, and Director of the Company, Vice President of ArciTerra Group, LLC, and President of ArciTerra Capital, LLC |
| Marcia M. Larmore | Secretary and Director of the Company, and Senior Vice President and Principal of ArciTerra Group, LLC |

*Jonathan M. Larmore*, age 32, currently holds the positions of Chief Executive Officer and Manager of ArciTerra Group and CSL, and Chief Executive Officer of the Company.  During the last nine years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $200 million.  Mr. Larmore has personally invested in more than $60 million of real estate since 1998.  Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc.  Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

*William A. Rack, Jr.*, age 45, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005, and currently holds the positions of President and Treasurer of the Company. Prior to joining ArciTerra, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC.  During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including four note offerings, totaling over $335 million in equity.  Prior to joining Cole in July 2000, Mr. Rack worked for twelve years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division.  Mr. Rack has been in the real estate and finance industry for over seventeen years.  During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing.  Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

*Marcia M. Larmore*, age 58, currently holds the position of Senior Vice President and Principal of ArciTerra Group, and Secretary of the Company.  Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan, which is a member of the Advisor.  Mrs. Larmore has personally invested in more than $45 million of real estate since 1980.  Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching.  She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne.  Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education.   Mrs. Larmore is the mother of Jonathan M. Larmore.

### Fiduciary Responsibility of the Board of Directors

The Company's board of directors is responsible for the management and control of the Company's affairs; however, the board of directors has retained the Advisor to manage the Company's day-to-day affairs and the acquisition and disposition of investments, subject to the supervision of the board of directors.

The directors are not required to devote all of their time to the Company's business and are only required to devote the time to the Company's affairs as their duties require.  The directors will meet quarterly or more frequently if necessary.  The Company does not expect that the directors will be required to devote a substantial portion of their time to discharge their duties as directors.  Consequently, in the exercise of their fiduciary

20

# **EXHIBIT 4**

## **Excerpt from POM for ArciTerra Note Fund II, LLC**

## ARCITERRA NOTE FUND II, LLC

$12,500,000                                                                                   8.25% Secured Notes

### CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

ARCITERRA NOTE FUND II, LLC, an Arizona limited liability company (the "Company"), is offering for sale $12,500,000 in aggregate principal amount (the "Offering") of 8.25% secured notes (the "Notes"), a form of which is attached as Exhibit A hereto, upon the terms and conditions set forth in this Confidential Private Offering Memorandum (this "Memorandum"). The Company will issue the Notes pursuant to an indenture (the "Indenture"). The Notes will bear interest at the rate of 8.25% per annum, payable monthly in arrears on the fifteenth day of each month. The Notes will mature three years from the date of issuance of the first of the Notes to be issued, with the Company having the option to extend the term of the Notes for up to two additional years. The Notes will bear interest at the rate of 8.75% per annum during the first year of any such extension and 9.25% per annum during the second year of any such extension. The Company may redeem all or part of the Notes after December 31, 2007 at the principal amount plus all accrued and unpaid interest. The Company will assign, pledge, and grant a security interest in its ownership interest in ArciTerra Note Fund II Investment Company, LLC ("ArciTerra Investments"), which has been formed to acquire certain commercial real estate (each a "Property" and collectively the "Properties"), pursuant to the Indenture, to secure its obligations under the Notes. In addition, the payment of principal and interest on the Notes by the Company will be guaranteed by ArciTerra REIT Advisors, LLC ("ArciTerra Guarantor").

AN INVESTMENT IN THESE NOTES IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" BELOW.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ENTITY ISSUING THESE NOTES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE NOTES HAVE NOT BEEN APPROVED OR DISAPPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE NOTES ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(2) AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER BY THE SEC, AND STATE SECURITIES LAWS. THESE NOTES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

**ArciTerra Note Fund II, LLC**
**2720 East Camelback Road**
**Suite 220**
**Phoenix, Arizona 85016**
**(602) 840-6800**

|  | Price to Investors | Sales Commissions[1] | Proceeds to the Company[2] |
|---|---|---|---|
| Per Note [3]........................................... | $25,000 | $1,250 | $23,750 |
| Minimum Offering Amount ........................... | $1,500,000 | $75,000 | $1,425,000 |
| Maximum Offering Amount [4][5].................... | $12,500,000 | $625,000 | $11,875,000 |

(See footnotes next page)

The date of this Confidential Private Offering Memorandum is November 17, 2006.

(1)    The Notes will be offered and sold on a "best efforts" basis by broker-dealers, collectively called the "selling group," who are members of the National Association of Securities Dealers, Inc. ("NASD"). The broker-dealers will receive selling commissions of up to 5.0% of the gross proceeds of the Offering. The broker-dealers may receive a marketing allowance of up to 1.0% of the gross proceeds of the Offering to defray marketing expenses. Subject to certain conditions and in consideration of the selling group's services, the Company may also reimburse the selling group for accountable (i.e. out-of-pocket) due diligence expenses of up to 1.0% of the gross proceeds of the Offering sold by the selling group. The total aggregate amount of commissions, allowances, and reimbursements paid by the Company will not exceed 7.0% of the gross proceeds of the Offering. See "Estimated Use of Proceeds " and "Plan of Distribution" below.

(2)    Amounts shown are proceeds after deducting selling commissions but before deducting marketing, offering, and organization expenses. The Advisor anticipates that offering and organization expenses will be $75,000 for the minimum offering amount and $125,000 for the maximum offering amount. See "Estimated Use of Proceeds" below.

(3)    The minimum purchase of Notes is $25,000 in aggregate principal amount. The Advisor may, in its sole and absolute discretion, waive or lower the minimum purchase requirement for certain investors.

(4)    Payment for the Notes may be released to the Company from an escrow account at Bank of Arizona N.A. upon receipt and acceptance by the Advisor of payment for at least $1,500,000 in aggregate principal amount of Notes, which is the minimum offering amount, on or before December 31, 2006, which date may be extended for up to 120 days at the option of the Company. Upon the release of funds from escrow, the Offering will continue for up to one year thereafter until the maximum offering amount has been sold or the Offering has terminated.

(5)    The Company has the option to offer additional Notes in the aggregate principal amount of $7,500,000 pursuant to the terms of this Memorandum and as part of this Offering.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE ADVISOR, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION. EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT.

NO DEALER, SALESMAN, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL. REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF HE DOES NOT PURCHASE ANY NOTES OFFERED HEREBY.

THE NOTES WILL BE SOLD IN A PRIVATE OFFERING TO A LIMITED NUMBER OF INVESTORS MEETING CERTAIN SUITABILITY STANDARDS. THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY WITHOUT NOTICE. THE COMPANY, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO REJECT ANY OFFER TO PURCHASE NOTES IN WHOLE OR IN PART.

The Company will not file any financial information with the Securities and Exchange Commission (the "SEC"). Neither prospective investors nor the Noteholders will be able to cause the Company to file any financial information with the SEC.

Each prospective investor will be afforded the opportunity to obtain additional information, if available, which such investor may reasonably request relating to this Offering, the Company, or any of the documents appended hereto as exhibits or otherwise a part of or related to this Offering.

## TABLE OF CONTENTS

Page

Who May Invest ................................................................................................................................. iii
Summary of the Offering ..................................................................................................................... 1
Risk and Other Investment Factors .................................................................................................... 3
Estimated Use of Proceeds ................................................................................................................ 15
The Company and ArciTerra Group, LLC .......................................................................................... 16
Management ........................................................................................................................................ 17
The Guarantor ..................................................................................................................................... 18
Compensation of Advisor and its Affiliates ........................................................................................ 19
Investment Objectives and Operating Policies .................................................................................. 20
Conflicts of Interest ............................................................................................................................ 24
Tax Aspects of the Offering ................................................................................................................ 25
Tax Advice Disclosure ........................................................................................................................ 27
ERISA Aspects of the Offering ........................................................................................................... 28
Description of the Notes ..................................................................................................................... 31
Plan of Distribution ............................................................................................................................. 33
Legal Opinions .................................................................................................................................... 36
Other Documents ................................................................................................................................ 36

Exhibit A – Form of Note .................................................................................................................... A-1
Exhibit B – Form of Indenture ............................................................................................................ B-1
Exhibit C – Form of Guaranty ............................................................................................................ C-1
Exhibit D – Note Purchase Agreement ............................................................................................... D-1
Exhibit E – Balance Sheet .................................................................................................................. E-1

## WHO MAY INVEST

The Notes are being offered and sold in reliance on an exemption from the registration requirements of the Securities Act and state securities laws. Accordingly, distribution of this Memorandum has been strictly limited to persons who meet the requirements and make the representations set forth below. The Company reserves the right, in its sole and absolute discretion, to reject any note purchase agreement based on any information that may become known or available to the Company about the suitability of a prospective investor or for any other reason.

**Investor Suitability Requirements**

An investment in the Notes involves a high degree of risk and is suitable only for persons of substantial financial means who have no need for liquidity in this investment. Notes will be sold only to investors who (i) buy Notes in the aggregate principal amount of at least $25,000, subject to certain exceptions in the discretion of the Advisor, and (ii) represent in writing that they meet the investor suitability requirements established by the Advisor and as may be required under federal or state law.

The written representations you make will be reviewed to determine your suitability. The Company may, in its sole and absolute discretion, refuse an offer to purchase the Notes in whole or in part if it believes that an investor does not meet the applicable investor suitability requirements or the Notes are otherwise an unsuitable investment for the investor, or for any other reason.

You must represent in writing to the Company that you meet, among others, all of the following requirements:

(a)     You have received, read, and fully understand this Memorandum and are basing your decision to invest on the information contained in this Memorandum. You have relied only on the information contained in this Memorandum and have not relied on any representations made by any other person;

(b)     You are an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act. An "accredited investor" is:

- Any natural person that has (i) an individual net worth, or joint net worth with his or her spouse, of more than $1,000,000; or (ii) individual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, in each of the two most recent years and has a reasonable expectation of reaching the same income level in the current year;

- Any corporation, Massachusetts or similar business trust, partnership, or organization described in Section 501(c)(3) of the Internal Revenue Code, not formed for the specific purpose of acquiring the Notes, with total assets over $5,000,000;

- Any trust, with total assets over $5,000,000, not formed for the specific purpose of acquiring the Notes and whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the Notes as described in Rule 506(b)(2)(ii) under the Securities Act;

- Any broker-dealer registered under Section 15 of the Securities Exchange Act of 1934;

- Any investment company registered under the Investment Company Act of 1940 or a business development company (as defined in Section 2(a)(48) of the Investment Company Act);

- Any small business investment company licensed by the Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

iii

- Any employee benefit plan within the meaning of ERISA, if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if such employee benefit plan has total assets over $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors;

- Any private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940);

- Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity, or any insurance company as defined in Section 2(13) of the Securities Act;

- Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets of more than $5,000,000;

- Any executive officer of the Company or the Advisor; or

- Any entity in which all of the equity owners are accredited investors.

For purposes of calculating your net worth, "net worth" is defined as the difference between total assets and total liabilities, including home, home furnishings, and personal automobiles. In the case of fiduciary accounts, the net worth and/or income suitability requirements must be satisfied by the beneficiary of the account, or by the fiduciary if the fiduciary directly or indirectly provides funds for the purchase of the Notes.

(c) You are acquiring the Notes for your own account and for investment purposes only and have no present intention, agreement, or arrangement for the distribution, transfer, assignment, resale, or subdivision of the Notes;

(d) You have such knowledge and experience in financial and business matters that you are capable of evaluating the merits and risks of investing in the Notes and have the ability to protect your own interests in connection with such investment;

(e) You understand that an investment in the Notes is highly speculative and involves substantial risks and you are fully cognizant of and understand all of the risks relating to an investment in the Notes, including, but not limited to, those risks discussed in the "Risk and Other Investment Factors" section of this Memorandum;

(f) Your overall commitment to investments that are not readily marketable is not disproportionate to your individual net worth, and your investment in the Notes will not cause such overall commitment to become excessive;

(g) You have adequate means of providing for your financial requirements, both current and anticipated, and have no need for liquidity in this investment; and

(h) You can bear and are willing to accept the economic risk of losing your entire investment in the Notes.

# MANAGEMENT

The following table sets forth certain information regarding the officers and key employees of ArciTerra Group and its Affiliates.  ArciTerra Group serves as the manager of the Company.

| Name | Position |
| --- | --- |
| Jonathan M. Larmore | Chief Executive Officer and Manager of ArciTerra Group, LLC |
| William A. Rack, Jr. | Vice President of ArciTerra Group, LLC, and President of ArciTerra Capital, LLC |
| Marcia M. Larmore | Senior Vice President and Principal of ArciTerra Group, LLC |

*Jonathan M. Larmore*, age 33, currently holds the positions of Chief Executive Officer and Manager of ArciTerra Group and CSL, and Chief Executive Officer of the ArciTerra Real Estate Investment Trust, Inc. ("ArciTerra REIT").  During the last nine years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $200 million.  Mr. Larmore has personally invested in more than $60 million of real estate since 1998.  Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc.  Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

*William A. Rack, Jr.*, age 45, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005, and currently holds the positions of President and Treasurer of ArciTerra REIT.  Mr. Rack is also the manager and sole member of WMR.  Prior to joining ArciTerra, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC.  During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including four note offerings, totaling over $335 million in equity.  Prior to joining Cole in July 2000, Mr. Rack worked for twelve years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division.  Mr. Rack has been in the real estate and finance industry for over seventeen years.  During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing.  Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

*Marcia M. Larmore*, age 58, currently holds the position of Senior Vice President and Principal of ArciTerra Group, and Secretary of ArciTerra REIT.  Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan.  Mrs. Larmore has personally invested in more than $45 million of real estate since 1980.  Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching.  She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne.  Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education.  Mrs. Larmore is the mother of Jonathan M. Larmore.

# **EXHIBIT 5**

## **Excerpt from POM for ArciTerra Note Fund III, LLC**

## ARCITERRA NOTE FUND III, LLC

$15,000,000                                                             9.25% Secured Notes

### CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

ARCITERRA NOTE FUND III, LLC, an Arizona limited liability company (the "Company"), is offering for sale $15,000,000 in aggregate principal amount (the "Offering") of 9.25% secured notes (the "Notes"), a form of which is attached as Exhibit A hereto, upon the terms and conditions set forth in this Confidential Private Offering Memorandum (this "Memorandum"). The Company will issue the Notes pursuant to an indenture (the "Indenture"). The Notes will bear interest at the rate of 9.25% per annum, payable monthly in arrears on the fifteenth day of each month. The Notes will mature four years from the date of issuance of the first of the Notes to be issued, with the Company having the option to extend the term of the Notes for up to one additional year. The Notes will bear interest at the rate of 10.5% per annum during any such extension. The Company may redeem all or part of the Notes after December 31, 2008 at the principal amount plus all accrued and unpaid interest. The Company will assign, pledge, and grant a security interest in its ownership interest in ArciTerra Note Fund III Investment Company, LLC ("ArciTerra Investments"), which has been formed to acquire commercial real estate (each a "Property" and collectively the "Properties"), pursuant to the Indenture, to secure its obligations under the Notes. In addition, the payment of principal and interest on the Notes by the Company will be guaranteed by ArciTerra Note Advisors II, LLC and ArciTerra Whitefish Advisors, LLC. (collectively, the "ArciTerra Guarantors"). In addition, CSL Investments, LLC, which is owned and controlled by Jonathan M. Larmore, CEO and President of ArciTerra Group, will guarantee up to 20% of the aggregate principal balance of the Notes (applied pro rata among all the Notes).

AN INVESTMENT IN THESE NOTES IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" BELOW.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ENTITY ISSUING THESE NOTES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE NOTES HAVE NOT BEEN APPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE NOTES ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(2) AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER BY THE SEC, AND STATE SECURITIES LAWS. THESE NOTES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

**ArciTerra Note Fund III, LLC**
**2720 East Camelback Road**
**Suite 220**
**Phoenix, Arizona 85016**
**(602) 840-6800**

|  | Price to Investors | Sales Commissions[1] | Proceeds to the Company[2] |
|---|---|---|---|
| Per Note[3] | $25,000 | $1,500 | $23,500 |
| Minimum Offering Amount | $1,500,000 | $90,000 | $1,410,000 |
| Maximum Offering Amount[4][5] | $15,000,000 | $900,000 | $14,100,000 |

(See footnotes next page)

The date of this Confidential Private Offering Memorandum is March 10, 2008, as amended through March 21, 2008.

(1)    The Notes will be offered and sold on a "best efforts" basis by broker-dealers, collectively called the "selling group," who are members of the Financial Industry Regulatory Authority, Inc. ("FINRA").  The broker-dealers will receive selling commissions of up to 6.0% of the gross proceeds of the Offering.  The broker-dealers may receive a nonaccountable marketing allowance of up to 0.5% of the gross proceeds of the Offering to defray marketing expenses.  Subject to certain conditions and in consideration of services hereunder, the Company may also reimburse the selling group and affiliates of the Company for accountable (i.e. out-of-pocket) due diligence and marketing expenses of up to 1.0% of the gross proceeds of the Offering.  To the extent that organization and offering expenses are less than the greater of (a) 1% of the total Offering proceeds, or (b) $75,000, the Company may allocate the amount of any such shortfall to payment of additional accountable due diligence and marketing expenses.  The total aggregate amount of commissions, allowances, and reimbursements paid by the Company will not exceed 7.5% of the gross proceeds of the Offering except as set forth in the preceding sentence.  See "Estimated Use of Proceeds " and "Plan of Distribution" below.

(2)    Amounts shown are proceeds after deducting selling commissions but before deducting marketing, offering, and organization expenses.  The Advisor (as hereinafter defined) anticipates that offering and organization expenses will be $75,000 for the minimum offering amount and $150,000 for the maximum offering amount.  See "Estimated Use of Proceeds" below.

(3)    The minimum purchase of Notes is $25,000 in aggregate principal amount.  The Advisor may, in its sole and absolute discretion, waive or lower the minimum purchase requirement for certain investors.

(4)    Payment for the Notes may be released to the Company from an escrow account at Bank of Arizona N.A. upon receipt and acceptance by the Advisor of payment for at least $1,500,000 in aggregate principal amount of Notes, which is the minimum offering amount, on or before April 30, 2008, which date may be extended for up to 120 days at the option of the Company.  Upon the release of funds from escrow, the Offering will continue for up to one year thereafter until the maximum offering amount has been sold or the Offering has terminated.

(5)    The Company has the option to offer additional Notes in the aggregate principal amount of $10,000,000 pursuant to the terms of this Memorandum and as part of this Offering.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE ADVISOR, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION.  EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT.

NO DEALER, SALESMAN, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL.  REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY.   BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF HE DOES NOT PURCHASE ANY NOTES OFFERED HEREBY.

THE NOTES WILL BE SOLD IN A PRIVATE OFFERING TO A LIMITED NUMBER OF INVESTORS MEETING CERTAIN SUITABILITY STANDARDS.   THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY WITHOUT NOTICE.  THE

COMPANY, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO REJECT ANY OFFER TO PURCHASE NOTES IN WHOLE OR IN PART.

The Company will not file any financial information with the Securities and Exchange Commission (the "SEC").  Neither prospective investors nor the Noteholders will be able to cause the Company to file any financial information with the SEC.

Each prospective investor will be afforded the opportunity to obtain additional information, if available, which such investor may reasonably request relating to this Offering, the Company, or any of the documents appended hereto as exhibits or otherwise a part of or related to this Offering.

## TABLE OF CONTENTS

Page

Who May Invest ................................................................................................................................. iii
Summary of the Offering .................................................................................................................... 1
Risk and Other Investment Factors ................................................................................................... 3
Estimated Use of Proceeds ................................................................................................................ 16
The Company and ArciTerra Group, LLC ........................................................................................ 17
Management ....................................................................................................................................... 19
The Guarantors .................................................................................................................................. 20
Compensation of Advisor and its Affiliates ..................................................................................... 21
Investment Objectives and Operating Policies ................................................................................. 22
Conflicts of Interest ........................................................................................................................... 26
Tax Aspects of the Offering .............................................................................................................. 27
Tax Advice Disclosure ...................................................................................................................... 29
ERISA Aspects of the Offering ........................................................................................................ 30
Description of the Notes .................................................................................................................... 33
Plan of Distribution ........................................................................................................................... 35
Legal Opinions .................................................................................................................................. 38
Other Documents ............................................................................................................................... 38

Exhibit A – Form of Note ................................................................................................................. A-1
Exhibit B – Form of Indenture .......................................................................................................... B-1
Exhibit C – Form of LLC Guaranty .................................................................................................. C-1
Exhibit D – Form of Limited Guaranty ............................................................................................ D-1
Exhibit E – Note Purchase Agreement .............................................................................................. E-1
Exhibit F – Balance Sheet ................................................................................................................. F-1

## WHO MAY INVEST

The Notes are being offered and sold in reliance on an exemption from the registration requirements of the Securities Act and state securities laws. Accordingly, distribution of this Memorandum has been strictly limited to persons who meet the requirements and make the representations set forth below. The Company reserves the right, in its sole and absolute discretion, to reject any note purchase agreement based on any information that may become known or available to the Company about the suitability of a prospective investor or for any other reason.

### Investor Suitability Requirements

An investment in the Notes involves a high degree of risk and is suitable only for persons of substantial financial means who have no need for liquidity in this investment. Notes will be sold only to investors who (i) buy Notes in the aggregate principal amount of at least $25,000, subject to certain exceptions in the discretion of the Advisor, and (ii) represent in writing that they meet the investor suitability requirements established by the Advisor and as may be required under federal or state law.

The written representations you make will be reviewed to determine your suitability. The Company may, in its sole and absolute discretion, refuse an offer to purchase the Notes in whole or in part if it believes that an investor does not meet the applicable investor suitability requirements or the Notes are otherwise an unsuitable investment for the investor, or for any other reason.

You must represent in writing to the Company that you meet, among others, all of the following requirements:

(a)        You have received, read, and fully understand this Memorandum and are basing your decision to invest on the information contained in this Memorandum. You have relied only on the information contained in this Memorandum and have not relied on any representations made by any other person;

(b)        You are an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act. An "accredited investor" is:

- Any natural person that has (i) an individual net worth, or joint net worth with his or her spouse, of more than $1,000,000; or (ii) individual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, in each of the two most recent years and has a reasonable expectation of reaching the same income level in the current year;

- Any corporation, Massachusetts or similar business trust, partnership, or organization described in Section 501(c)(3) of the Internal Revenue Code, not formed for the specific purpose of acquiring the Notes, with total assets over $5,000,000;

- Any trust, with total assets over $5,000,000, not formed for the specific purpose of acquiring the Notes and whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the Notes as described in Rule 506(b)(2)(ii) under the Securities Act;

- Any broker-dealer registered under Section 15 of the Securities Exchange Act of 1934;

- Any investment company registered under the Investment Company Act of 1940 or a business development company (as defined in Section 2(a)(48) of the Investment Company Act);

- Any small business investment company licensed by the Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958;

- Any employee benefit plan within the meaning of ERISA, if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if such employee benefit plan has total assets over $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors;

- Any private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940);

- Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity, or any insurance company as defined in Section 2(13) of the Securities Act;

- Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets of more than $5,000,000;

- Any executive officer of the Company or the Advisor; or

- Any entity in which all of the equity owners are accredited investors.

For purposes of calculating your net worth, "net worth" is defined as the difference between total assets and total liabilities, including home, home furnishings, and personal automobiles. In the case of fiduciary accounts, the net worth and/or income suitability requirements must be satisfied by the beneficiary of the account, or by the fiduciary if the fiduciary directly or indirectly provides funds for the purchase of the Notes.

(c)    You are acquiring the Notes for your own account and for investment purposes only and have no present intention, agreement, or arrangement for the distribution, transfer, assignment, resale, or subdivision of the Notes;

(d)    You have such knowledge and experience in financial and business matters that you are capable of evaluating the merits and risks of investing in the Notes and have the ability to protect your own interests in connection with such investment;

(e)    You understand that an investment in the Notes is highly speculative and involves substantial risks and you are fully cognizant of and understand all of the risks relating to an investment in the Notes, including, but not limited to, those risks discussed in the "Risk and Other Investment Factors" section of this Memorandum;

(f)    Your overall commitment to investments that are not readily marketable is not disproportionate to your individual net worth, and your investment in the Notes will not cause such overall commitment to become excessive;

(g)    You have adequate means of providing for your financial requirements, both current and anticipated, and have no need for liquidity in this investment; and

(h)    You can bear and are willing to accept the economic risk of losing your entire investment in the Notes.

## MANAGEMENT

The following table sets forth certain information regarding the officers and key employees of ArciTerra Group and its Affiliates.  ArciTerra Group serves as the manager of the Company.

| Name | Position |
|---|---|
| Jonathan M. Larmore | Chief Executive Officer and Manager of ArciTerra Group, LLC |
| William A. Rack, Jr. | Vice President of ArciTerra Group, LLC, and President of ArciTerra Capital, LLC |
| Marcia M. Larmore | Senior Vice President of ArciTerra Group, LLC |

*Jonathan M. Larmore*, age 34, currently holds the positions of Chief Executive Officer and Manager of ArciTerra Group and CSL, and Chief Executive Officer of the ArciTerra Real Estate Investment Trust, Inc. ("ArciTerra REIT").  During the last nine years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $365 million.  Mr. Larmore has personally invested in more than $225 million of real estate since 1998.  Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc.  Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

*William A. Rack, Jr.*, age 47, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005, and currently holds the positions of President and Treasurer of ArciTerra REIT.  Mr. Rack is also the manager and sole member of WMR.  Prior to joining ArciTerra, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC.  During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including 4 note offerings, totaling over $335 million in equity.   Prior to joining Cole in July 2000, Mr. Rack worked for 12 years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division.  Mr. Rack has been in the real estate and finance industry for over 20 years.  During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing.  Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

*Marcia M. Larmore*, age 61, currently holds the position of Senior Vice President of ArciTerra Group, LLC and Secretary of ArciTerra REIT.  Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan.  Mrs. Larmore has personally invested in more than $45 million of real estate since 1980.  Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching.  She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne.  Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education.  Mrs. Larmore is the mother of Jonathan M. Larmore.

# EXHIBIT 6

## Excerpt from POM for ArciTerra National REIT, Inc.

# ARCITERRA NATIONAL REIT, INC.

## 150,000 SHARES OF COMMON STOCK - MINIMUM OFFERING
## 2,000,000 SHARES OF COMMON STOCK - MAXIMUM OFFERING

### CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

ARCITERRA NATIONAL REIT, INC. (the "Company") is a recently formed Maryland corporation that intends to qualify as a real estate investment trust. The Company has been formed primarily to acquire, operate, and hold for lease certain commercial real estate (each a "Property" and collectively the "Properties"). The initial focus of the Company is to acquire single-tenant Properties leased to value-oriented retailers, as well as single-tenant Properties leased to a variety of specialty retailers, including auto parts and repair businesses and pharmacies. The Company also may make or purchase, or participate in, mortgage loans, including bridge, mezzanine, and subordinated loans (each a "Mortgage Loan" and collectively the "Mortgage Loans"), and acquire other real-estate related assets, including real estate related securities (each a "Related Asset" and collectively the "Related Assets") (the Properties, the Mortgage Loans, and the Related Assets together, the "Investments"). The Company intends to own substantially all of its assets and conduct its operations through an operating partnership called ArciTerra National REIT LP (the "Operating Partnership"), which is a Delaware limited partnership. The Company is the sole general partner of the Operating Partnership. The Company and the Operating Partnership maintain their principal place of business at 2720 East Camelback Road, Suite 220, Phoenix, Arizona 85016, their telephone number is (602) 840-6800, and their facsimile number is (602) 956-4494.

AN INVESTMENT IN THESE SECURITIES IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" BELOW.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ENTITY ISSUING THESE SECURITIES AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(2) AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), AND APPLICABLE STATE SECURITIES LAWS. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

| | Price to Investors | Sale Commissions[1] | Proceeds to the Company[2] |
|---|---|---|---|
| Per Share[3] ................................................. | $10.00 | $0.70 | $9.30 |
| Minimum Offering Amount .......................... | $1,500,000 | $105,000 | $1,395,000 |
| Maximum Offering Amount[4][5] ................... | $20,000,000 | $1,400,000 | $18,600,000 |

(See footnotes next page)

The date of this Confidential Private Offering Memorandum is October 28, 2008.

(1)    The shares of Company's common stock will be offered and sold on a "best efforts" basis by broker-dealers, collectively called the "selling group," who are members of the Financial Industry Regulatory Authority, Inc. The broker-dealers will receive selling commissions of up to 7.0% of the gross proceeds of the Offering (as defined below). The broker-dealers may receive a non-accountable marketing allowance of up to 1.0% of the gross proceeds of the Offering to defray marketing expenses. Subject to certain conditions and in consideration of the selling group's services, the Company may also reimburse the selling group and Affiliates of the Company for accountable (i.e. out-of-pocket) due diligence and accountable marketing expenses of up to 1.0% of the gross proceeds of the Offering sold by the selling group. To the extent that organization and Offering expenses are less than the greater of (i) 1.0% of the gross Offering proceeds or (ii) $75,000, the Company may allocate the amount of any such shortfall to payment of additional accountable due diligence and marketing expenses. Except as set forth in the preceding sentence, the total aggregate amount of commissions, allowances, and reimbursements paid by the Company will not exceed 9.0% of the gross proceeds of the Offering. See "Estimated Use of Proceeds " and "Plan of Distribution."

(2)    Amounts shown are proceeds after deducting selling commissions but before deducting marketing, Offering, and organization expenses. The Company anticipates that Offering and organization expenses will be $75,000 for the minimum Offering amount and $200,000 for the maximum Offering amount. See "Estimated Use of Proceeds."

(3)    The minimum purchase of shares is 5,000 shares, or $50,000. The Company may, in its sole and absolute discretion, waive or lower the minimum purchase requirement for certain investors.

(4)    Payment for the shares will be released by the Company from an escrow account at Bank of Arizona, N.A. only upon receipt and acceptance by the Company of payment for at least $1,500,000 (or such higher amount as necessary to comply with REIT qualifications), which is the minimum Offering amount, on or before December 31, 2008, which date may be extended for up to 120 days at the option of the Company. The Offering will continue for up to one year from the escrow release date until the maximum Offering amount has been sold or the Offering has otherwise terminated.

(5)    The Company has the option to sell up to 2,000,000 additional shares pursuant to the terms of this Confidential Private Offering Memorandum, as amended and supplemented from time to time (the "Memorandum"), and as part of this Offering.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE OPERATING PARTNERSHIP, OR ANY OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION. EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT. THE WRITTEN ADVICE CONTAINED IN THIS MEMORANDUM, TO THE EXTENT IT RELATES TO MATTERS OF FEDERAL INCOME TAXATION, WAS NOT INTENDED OR WRITTEN TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER. THE ADVICE WAS WRITTEN TO SUPPORT THE PROMOTION OR MARKETING OF THE TRANSACTION OR MATTER ADDRESSED BY THE WRITTEN ADVICE. THE TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

NO DEALER, SALESMAN, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH AN OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL. REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT

THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF HE DOES NOT PURCHASE ANY SHARES OFFERED HEREBY, HIS SUBSCRIPTION FOR SHARES IS REJECTED BY THE COMPANY, OR THE OFFERING IS TERMINATED.

THE SHARES WILL BE SOLD IN A PRIVATE OFFERING TO A LIMITED NUMBER OF INVESTORS MEETING CERTAIN SUITABILITY STANDARDS. THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY WITHOUT NOTICE. THE COMPANY, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO REJECT ANY OFFER TO PURCHASE SHARES IN WHOLE OR IN PART.

The Company will not file any financial information with the SEC. Neither potential investors nor the stockholders will be able to cause the Company to file any financial information with the SEC.

Each prospective investor will be afforded the opportunity to obtain additional information, if available, which such investor may reasonably request relating to this Offering, the Company, or any of the documents appended hereto as exhibits or otherwise a part of or related to this Offering.

## TABLE OF CONTENTS

|  | Page |
|---|---|
| WHO MAY INVEST | iii |
| SUMMARY OF THE OFFERING | 1 |
| RISK AND OTHER INVESTMENT FACTORS | 4 |
| CONFLICTS OF INTEREST | 32 |
| ESTIMATED USE OF PROCEEDS | 34 |
| THE COMPANY, THE OPERATING PARTNERSHIP, AND THE ADVISOR | 35 |
| MANAGEMENT | 37 |
| COMPENSATION OF ADVISOR AND ITS AFFILIATES | 41 |
| INVESTMENT OBJECTIVES AND OPERATING POLICIES | 43 |
| COMPLETED ACQUISITIONS | 51 |
| DESCRIPTION OF CAPITAL STOCK | 76 |
| THE OPERATING PARTNERSHIP | 83 |
| THE ADVISORY AGREEMENT | 86 |
| MATERIAL U.S. FEDERAL INCOME TAX CONSIDERATIONS | 88 |
| ERISA ASPECTS OF THE OFFERING | 103 |
| PLAN OF DISTRIBUTION | 105 |
| OTHER DOCUMENTS | 107 |

| | |
|---|---|
| Exhibit A – Operating Partnership Agreement | A-1 |
| Exhibit B – Subscription Agreement | B-1 |
| Exhibit C – Balance Sheet | C-1 |
| Exhibit D – Articles of Incorporation | D-1 |
| Exhibit E – Bylaws | E-1 |
| Exhibit F – Advisory Agreement | F-1 |

*This Memorandum contains certain forward-looking statements that involve risks and uncertainties. These statements relate to the Company's future plans, goals, expectations, and intentions. These statements may be identified by the use of words such as "expects," "anticipates," "intends," "plans," "will," "may," and similar expressions. The Company's actual results could differ materially from the results anticipated in these forward-looking statements. Factors that could contribute to such differences include, but are not limited to, those discussed below and elsewhere in this Memorandum.*

## Who May Invest

The shares of common stock are being offered and sold in reliance on an exemption from the registration requirements of the Securities Act and applicable state securities laws. Accordingly, distribution of this Memorandum has been strictly limited to persons who meet the requirements and make the representations set forth below. The Company reserves the right, in its sole and absolute discretion, to reject any subscription agreement based on any information that may become known or available to the Company about the suitability of a prospective investor or for any other reason.

### Investor Suitability Requirements

An investment in the shares involves a high degree of risk and is suitable only for persons of substantial financial means who have no need for liquidity in this investment. Shares will be sold only to investors who (i) buy at least 5,000 shares, or $50,000, subject to certain exceptions in the discretion of the Company, and (ii) represent in writing that they meet the investor suitability requirements established by the Company and as may be required under federal or applicable state law.

The written representations you make will be reviewed to determine your suitability. The Company may, in its sole and absolute discretion, refuse an offer to purchase the shares in whole or in part if it believes that an investor does not meet the applicable investor suitability requirements or the shares are otherwise an unsuitable investment for the investor, or for any other reason.

You must represent in writing to the Company that you meet, among others, all of the following requirements:

(a)    You have received, read, and fully understand this Memorandum and are basing your decision to invest on the information contained in this Memorandum. You have relied only on the information contained in this Memorandum and have not relied on any representations made by any other person;

(b)    You are an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act. An "accredited investor" is:

- Any natural person who has (i) an individual net worth, or joint net worth with his or her spouse, of more than $1,000,000; or (ii) individual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, in each of the two most recent years and has a reasonable expectation of reaching the same income level in the current year;

- Any corporation, Massachusetts or similar business trust, partnership, or organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, not formed for the specific purpose of acquiring the shares, with total assets over $5,000,000;

- Any trust, with total assets over $5,000,000, not formed for the specific purpose of acquiring the shares and whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the shares as described in Rule 506(b)(2)(ii) under the Securities Act;

- Any broker-dealer registered under Section 15 of the Securities Exchange Act of 1934, as amended;

- Any investment company registered under the Investment Company Act of 1940 or a business development company (as defined in Section 2(a)(48) of the Investment Company Act);

- Any small business investment company licensed by the Small Business Administration under Section 301(c) or (d) or the Small Business Investment Act of 1958, as amended;

- Any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if such employee benefit plan has total assets over $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors;

- Any private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended);

- Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity, or any insurance company as defined in Section 2(13) of the Securities Act;

- Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets of more than $5,000,000;

- Any executive officer of the Company; or

- Any entity in which all of the equity owners are accredited investors.

For purposes of calculating your net worth, "net worth" is defined as the difference between total assets and total liabilities, including home, home furnishings, and personal automobiles. In the case of fiduciary accounts, the net worth and/or income suitability requirements must be satisfied by the beneficiary of the account, or by the fiduciary, if the fiduciary directly or indirectly provides funds for the purchase of the shares.

(c)    You are acquiring the shares for your own account and for investment purposes only and have no present intention, agreement, or arrangement for the distribution, transfer, assignment, resale, or subdivision of the shares;

(d)    You have such knowledge and experience in financial and business matters that you are capable of evaluating the merits and risks of investing in the shares and have the ability to protect your own interests in connection with such investment;

(e)    You understand that an investment in the shares is highly speculative and involves substantial risks and you are fully cognizant of and understand all of the risks relating to an investment in the shares, including, but not limited to, those risks discussed in the "Risk and Other Investment Factors" section of this Memorandum;

(f)    Your overall commitment to investments that are not readily marketable is not disproportionate to your individual net worth, and your investment in the shares will not cause such overall commitment to become excessive;

(g)    You have adequate means of providing for your financial requirements, both current and anticipated, and have no need for liquidity in this investment; and

(h)    You can bear and are willing to accept the economic risk of losing your entire investment in the shares.

$10,000,000 in aggregate principal amount of secured notes. Note Fund III has purchased an Auto Zone in Lincoln, Nebraska and has joint ventured with Note Fund II in the ownership and investment in five other properties. To date Note Fund III has not identified any additional properties as probable acquisitions.

ArciTerra Opportunity Fund I, LLC ("Opportunity Fund"), which is an Affiliate of the Advisor, was formed on June 16, 2008, and is offering up to $15,000,000 of limited liability company membership units at a cost of $50,000 per unit. The Purpose of the offering is to acquire and operate real estate and real estate-related assets on an opportunistic basis. As of the date of this Memorandum, the offering is ongoing but has not broken escrow. Opportunity Fund has identified its first property.

To date, these are the only programs sponsored and not terminated by ArciTerra Group.

The directors and officers of the Company have the ultimate authority in all matters affecting the business and affairs of the Company, including the responsibility for determining when to acquire and dispose of the Investments. The Company and the Advisor have no direct employees. They contract with the Affiliates for support services and for professional expertise in connection with pursuing their investment objectives.



## MANAGEMENT

The following table sets forth certain information regarding the Company's directors and officers and key employees of ArciTerra Group and its Affiliates. ArciTerra Group serves as the manager of the Advisor.

| Name | Position |
| --- | --- |
| Jonathan M. Larmore | Chief Executive Officer of the Company and Manager and Principal, ArciTerra Group, LLC |
| William A. Rack, Jr. | President and Treasurer of the Company and Vice President, ArciTerra Group, LLC and President, ArciTerra Capital, LLC |
| Marcia M. Larmore | Secretary of the Company and Senior Vice President and Principal, ArciTerra Group, LLC |

Jonathan M. Larmore, age 34, currently holds the positions of Manager and Principal of ArciTerra Group and CSL, and Chief Executive Officer of the Company. During the last 12 years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $365 million. Mr. Larmore has personally invested in more than $225 million of real estate since 1998. Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc. Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

William A. Rack, Jr., age 47, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005, and currently holds the position of President and Treasurer of the Company. Prior to joining ArciTerra Group, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC. During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including four note offerings, totaling over $335 million in equity. Prior to joining Cole in July 2000, Mr. Rack worked for 12 years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division. Mr. Rack has been in the real estate and finance industry for over 20 years. During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing. Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

Marcia M. Larmore, age 61, currently holds the position of Senior Vice President and Principal of ArciTerra Group, and Secretary of the Company. Mrs. Larmore also currently holds the positions of Manager, President, and Principal of Moynahan, which is a member of the Advisor. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980. Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching. She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne. Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education. Mrs. Larmore is the mother of Jonathan M. Larmore.

### Fiduciary Responsibility of the Board of Directors

The Company's board of directors is responsible for the management and control of the Company's affairs; however, the board of directors has retained the Advisor to manage the Company's day-to-day affairs and the acquisition and disposition of Investments, subject to the supervision of the board of directors.

The directors are not required to devote all of their time to the Company's business and are only required to devote the time to the Company's affairs as their duties require. The directors will meet quarterly or more frequently if necessary. The Company does not expect that the directors will be required to devote a substantial portion of their time to discharge their duties as directors. Consequently, in the exercise of their fiduciary responsibilities, the directors will be relying heavily on the Advisor. The Company will only pay directors for their

# **EXHIBIT 7**

## **Excerpt from POM for ArciTerra Strategic Income Corporation – Belleville Crossing IL**

## ARCITERRA STRATEGIC INCOME

This is <u>Part II</u> of a Confidential Private Offering Memorandum for a specific offering of shares of common stock as set forth in <u>Part I</u> that describes the specific Offering. <u>Part I</u> for a specific offering and this <u>Part II</u> together constitute the Confidential Private Offering Memorandum for such Offering, as it may be amended or supplemented from time to time (the "Memorandum"). The Offering is by the corporation named in <u>Part I</u> (the "Company"). Terms with initial capitalization used herein that are not defined have the meaning set forth in <u>Part I</u>.

AN INVESTMENT IN THESE SECURITIES IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" IN THIS <u>PART II</u>.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE SECURITIES ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER, OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(2) AND RULE 506 OF REGULATION D PROMULGATED THEREUNDER BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), AND UNDER APPLICABLE STATE SECURITIES LAWS. THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

THE SHARES ARE BEING OFFERED FOR SALE ONLY TO PERSONS THAT ARE "ACCREDITED INVESTORS," AS THAT TERM IS DEFINED UNDER THE SECURITIES ACT AND REGULATION D PROMULGATED THEREUNDER. SEE "WHO MAY INVEST" IN THIS <u>PART II</u>. THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY FOR ANY REASON AT ANY TIME WITHOUT NOTICE. THE COMPANY, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO REJECT ANY OFFER TO PURCHASE SHARES IN WHOLE OR IN PART.

**<u>THIS PART II OF THE MEMORANDUM MAY NOT BE USED TO CONSUMMATE SALES OF SHARES UNLESS ACCOMPANIED BY A PART I DESCRIBING A SPECIFIC COMPANY OFFERING.</u>**

**ArciTerra Strategic Income Advisor, LLC**
**2720 East Camelback Road**
**Suite 220**
**Phoenix, Arizona 85016**
**(602) 840-6800**

**This <u>Part II</u> is dated as of the date of the <u>Part I</u> accompanying this <u>Part II</u>**

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE ADVISOR, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION. EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, LEGAL COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT.

NO DEALER, REGISTERED REPRESENTATIVE, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH AN OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL. REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF HE DOES NOT PURCHASE ANY SHARES OFFERED HEREBY, HIS SUBSCRIPTION FOR SHARES IS REJECTED BY THE COMPANY, OR THE OFFERING IS TERMINATED.

THIS MEMORANDUM CONTAINS CERTAIN FORWARD-LOOKING STATEMENTS THAT INVOLVE RISKS AND UNCERTAINTIES. THESE STATEMENTS RELATE TO THE COMPANY'S FUTURE PLANS, GOALS, EXPECTATIONS, AND INTENTIONS. THESE STATEMENTS MAY BE IDENTIFIED BY THE USE OF WORDS SUCH AS "EXPECTS," "ANTICIPATES," "INTENDS," "PLANS," "WILL," "MAY," AND SIMILAR EXPRESSIONS. THE COMPANY'S ACTUAL RESULTS COULD DIFFER MATERIALLY FROM THE RESULTS ANTICIPATED IN THESE FORWARD-LOOKING STATEMENTS. FACTORS THAT COULD CONTRIBUTE TO SUCH DIFFERENCES INCLUDE, BUT ARE NOT LIMITED TO, THOSE DISCUSSED BELOW AND ELSEWHERE IN THIS MEMORANDUM.

THE WRITTEN TAX ADVICE SET FORTH IN "RISK AND OTHER INVESTMENT FACTORS – RISKS RELATED TO THE COMPANY'S TAXATION AS A REIT" AND "MATERIAL U.S. FEDERAL INCOME TAX CONSIDERATIONS" OF THIS <u>PART II</u> IS NOT INTENDED OR WRITTEN TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. THE ADVICE WAS WRITTEN TO SUPPORT THE PROMOTION AND MARKETING OF THE TRANSACTION OR MATTER ADDRESSED BY THE WRITTEN ADVICE. THE TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

**TABLE OF CONTENTS**

Page

WHO MAY INVEST ...................................................................................................................... ii
RISK AND OTHER INVESTMENT FACTORS ............................................................................1
CONFLICTS OF INTEREST........................................................................................................17
THE ADVISOR..............................................................................................................................19
MANAGEMENT ...........................................................................................................................22
DESCRIPTION OF CAPITAL STOCK .......................................................................................26
THE ADVISORY AGREEMENT .................................................................................................34
MATERIAL U.S. FEDERAL INCOME TAX CONSIDERATIONS ............................................36
ERISA ASPECTS OF THE OFFERING ......................................................................................58
PLAN OF DISTRIBUTION..........................................................................................................62
OTHER DOCUMENTS.................................................................................................................64

EXHIBIT A ─ Articles of Incorporation ....................................................................................  A-1
EXHIBIT B ─ Bylaws...................................................................................................................  B-1
EXHIBIT C ─ Advisory Agreement ............................................................................................  C-1

# WHO MAY INVEST

The shares of common stock are being offered and sold in reliance on an exemption from the registration requirements of the Securities Act and applicable state securities laws. Accordingly, distribution of this Memorandum has been strictly limited to persons who meet the requirements and make the representations set forth below. The Company reserves the right, in its sole and absolute discretion, to reject any subscription agreement based on any information that may become known or available to the Company about the suitability of a prospective investor or for any other reason.

## Investor Suitability Requirements

An investment in the shares involves a high degree of risk and is suitable only for persons of substantial financial means who have no need for liquidity in this investment. Shares will be sold only to investors who (i) buy at least 2,500 shares, or $25,000, subject to certain exceptions in the sole and absolute discretion of the Company, and (ii) represent in writing that they meet the investor suitability requirements established by the Company and as may be required under federal or applicable state law.

The written representations you make will be reviewed to determine your eligibility to purchase shares. The Company may, in its sole and absolute discretion, refuse an offer to purchase the shares in whole or in part if it believes that an investor does not meet the applicable investor suitability requirements or for any other reason.

You must represent in writing to the Company that you meet, among others, all of the following requirements:

(a)      You have received, read, and fully understand this Memorandum and are basing your decision to invest on the information contained in this Memorandum. You have relied only on the information contained in this Memorandum and have not relied on any representations made or information provided by any other person;

(b)      You are an "accredited investor" as defined in Rule 501(a) of Regulation D under the Securities Act. An "accredited investor" is:

- Any natural person who has (i) an individual net worth, or joint net worth with his or her spouse, of more than $1,000,000 (excluding the value of the primary residence and excluding any debt secured thereby up to the value of the residence), or (ii) individual annual income in excess of $200,000, or joint income with his or her spouse in excess of $300,000, in each of the two most recent years and has a reasonable expectation of reaching the same income level in the current year;

- Any corporation, Massachusetts or similar business trust, partnership, or organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, not formed for the specific purpose of acquiring the shares, with total assets over $5,000,000;

- Any trust, with total assets over $5,000,000, not formed for the specific purpose of acquiring the shares and whose purchase is directed by a person who has such knowledge and experience in financial and business matters that he or she is capable of evaluating the merits and risks of an investment in the shares as described in Rule 506(b)(2)(ii) under the Securities Act;

- Any broker-dealer registered under Section 15 of the Securities Exchange Act of 1934, as amended;

- Any investment company registered under the Investment Company Act of 1940 or a business development company (as defined in Section 2(a)(48) of the Investment Company Act of 1940);

- Any small business investment company licensed by the Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended;

- Any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), if the investment decision is made by a plan fiduciary (as defined in Section 3(21) of ERISA), which is either a bank, savings and loan association, insurance company, or registered investment advisor, or if such employee benefit plan has total assets over $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons who are accredited investors;

- Any private business development company (as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended);

- Any bank as defined in Section 3(a)(2) of the Securities Act, any savings and loan association or other institution as defined in Section 3(a)(5)(A) of the Securities Act whether acting in its individual or fiduciary capacity, or any insurance company as defined in Section 2(13) of the Securities Act;

- Any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets of more than $5,000,000;

- Any executive officer of the Company; or

- Any entity in which all of the equity owners are accredited investors.

For purposes of calculating your net worth, "net worth" is defined as the difference between total assets and total liabilities including your home furnishings and personal automobiles, but excluding the value of your primary residence and excluding the debt secured thereby up to the value of the residence. In the case of fiduciary accounts, the net worth and/or income suitability requirements must be satisfied by the beneficiary of the account, or by the fiduciary, if the fiduciary directly or indirectly provides funds for the purchase of the shares.

(c)    You are acquiring the shares for your own account and for investment purposes only and have no present intention, agreement, or arrangement for the distribution, transfer, assignment, resale, or subdivision of the shares;

(d)    You have such knowledge and experience in financial and business matters that you are capable of evaluating the merits and risks of investing in the shares and have the ability to protect your own interests in connection with such investment;

(e)    You understand that an investment in the shares is highly speculative and involves substantial risks and you are fully cognizant of and understand all of the risks relating to an investment in the shares, including, but not limited to, those risks discussed in the "Risk and Other Investment Factors" section of this Part II;

(f)    Your overall commitment to investments that are not readily marketable is not disproportionate to your individual net worth, and your investment in the shares will not cause such overall commitment to become excessive;

(g)    You have adequate means of providing for your financial requirements, both current and anticipated, and have no need for liquidity in this investment; and

(h)    You can bear and are willing to accept the economic risk of losing your entire investment in the shares.

The directors and officers of the Company have the ultimate authority in all matters affecting the business and affairs of the Company. The Company and the Advisor have no direct employees. They contract with the Affiliates for support services and for professional expertise in connection with pursuing their investment objectives.



## MANAGEMENT

The following table sets forth certain information regarding the Company's officers and directors and officers and directors of ArciTerra Group and its Affiliates.  ArciTerra Group serves as the manager of the Advisor.

| Name | Position |
| --- | --- |
| Jonathan M. Larmore | Chief Executive Officer, Director and Assistant Secretary of the Company and Manager and Principal, ArciTerra Group, LLC |
| William A. Rack, Jr. | President and Treasurer and Director of the Company and Vice President, ArciTerra Group, LLC and President, ArciTerra Capital, LLC |
| Marcia M. Larmore | Secretary of the Company and Senior Vice President and Principal, ArciTerra Group, LLC |

Jonathan M. Larmore, age 38, also currently holds the positions of Manager and Principal of ArciTerra Group, JMMAL, and CSL, and Chief Executive Officer and Director of ArciTerra REIT and ArciTerra National REIT.  Mr. Larmore also holds the positions of manager, president and principal of CSL Investments, LLC.  During the last 12 years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $365 million.  Mr. Larmore has personally invested in more than $225 million of real estate since 1998.  Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc.  Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

William A. Rack, Jr., age 50, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005, and also currently holds the position of President and Treasurer and Director of ArciTerra REIT and ArciTerra National REIT.  Mr. Rack is also the manager and sole member of WMR Investments, LLC.  Prior to joining ArciTerra Group, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC.  During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including four note offerings, totaling over $335 million in equity.  Prior to joining Cole in July 2000, Mr. Rack worked for 12 years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division.  Mr. Rack has been in the real estate and finance industry for over 20 years.  During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing.  Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

Marcia M. Larmore, age 64, also currently holds the position of Senior Vice President and Principal of ArciTerra Group, and Secretary of ArciTerra REIT.  Mrs. Larmore also currently holds the positions of manager, president, and principal of MML Investments, LLC.  Mrs. Larmore has personally invested in more than $45 million of real estate since 1980.  Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching.  She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne.  Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education.  Mrs. Larmore is the mother of Jonathan M. Larmore.

### Fiduciary Responsibility of the Board of Directors

The Company's board of directors is responsible for the management and control of the Company's affairs; however, the board of directors has retained the Advisor to manage the Company's day-to-day affairs, subject to the supervision of the board of directors.

**EXHIBIT 8**

**Excerpt from POM for Strategic Retail – Briargate & Linden I, LLC**

CONFIDENTIAL PRIVATE OFFERING MEMORANDUM

# ARCITERRA STRATEGIC RETAIL – BRIARGATE & LINDEN IL, LLC

Maximum Offering Amount - $5,800,000

Limited Liability Company Membership Units
$25,000 Per Unit

ARCITERRA STRATEGIC RETAIL – Briargate & Linden IL, LLC, an Arizona limited liability company (the "Company"), is offering for sale (the "Offering") up to $5,800,000 of limited liability company membership units in the Company (the "Units"). The Offering is made on the terms and conditions set forth in this Part I and the accompanying Part II, which together with this Part I constitute the Confidential Private Offering Memorandum, as it may be amended or supplemented from time to time (the "Memorandum"). **INVESTORS SHOULD REVIEW PART I AND PART II TOGETHER PRIOR TO MAKING AN INVESTMENT DECISION**. Each person who acquires a Unit shall become a member of the Company (each, a "Member") and shall become a party to the Operating Agreement of the Company, a copy of which is attached as Exhibit A hereto. The Company has formed AT Briargate IL, LLC (the "Briargate LLC") to acquire, own, operate, and hold for lease Crossroads at Briargate, a multi-tenant neighborhood center in South Elgin, Illinois (the "Briargate Property") and has formed AT Lindenhurst IL, LLC (the "Linden LLC," and together with the Briargate LLC, the "LLCs") to acquire, own, operate and hold for lease Linden Plaza, a multi-tenant neighborhood center in Lindenhurst, Illinois (the "Linden Property," and together with the Briargate Property, the "Properties"), as more fully described in this Memorandum. The Company shall be solely managed by ArciTerra Strategic Retail Advisor, LLC, an Arizona limited liability company (the "Manager"), which is managed by ArciTerra Group, LLC.

AN INVESTMENT IN THESE UNITS IS HIGHLY SPECULATIVE AND INVOLVES SUBSTANTIAL RISKS. SEE "RISK AND OTHER INVESTMENT FACTORS" IN PART II OF THE MEMORANDUM AND "PROPERTY RISKS" IN THIS PART I.

IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE COMPANY AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE UNITS HAVE NOT BEEN APPROVED OR DISAPPROVED OR RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THESE UNITS ARE BEING OFFERED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE RULES AND REGULATIONS PROMULGATED THEREUNDER (COLLECTIVELY, THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE AND ARE BEING OFFERED AND SOLD IN RELIANCE UPON EXEMPTION FROM REGISTRATION UNDER THE SECURITIES ACT, IN ACCORDANCE WITH THE PROVISIONS OF SECTION 4(a)(2) AND RULE 506(b) OF REGULATION D PROMULGATED THEREUNDER BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), AND UNDER APPLICABLE STATE SECURITIES LAWS. THESE UNITS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT AND APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM.

**Arciterra Strategic Retail – Briargate & Linden IL, LLC**
**c/o ArciTerra Strategic Retail Advisor, LLC**
**2720 East Camelback Road**
**Suite 220**
**Phoenix, Arizona 85016**
**(602) 840-6800**

|  | Price to Investors | Sales Commissions[1] | Proceeds to the Company[2] |
|---|---|---|---|
| Per Unit[3] ...................................... | $25,000 | $1,750 | $23,250 |
| Minimum Offering Amount[4] ..................... | $1,500,000 | $105,000 | $1,395,000 |
| Maximum Offering Amount[5] ..................... | $5,800,000 | $406,000 | $5,394,000 |

(See footnotes next page)

**The date of this Part I is June 16, 2014, which shall constitute the date of the**
**Confidential Private Offering Memorandum**

(1)     The Units will be offered and sold on a "best efforts" basis by broker-dealers, collectively called the "selling group," who are members of the Financial Industry Regulatory Authority, Inc. ("FINRA"). See "Plan of Distribution" in Part II of the Memorandum. The broker-dealers will receive sales commissions of up to 7.0% of the Gross Offering Proceeds (as defined below). The broker-dealers may receive a non-accountable marketing allowance of up to 1% of the Gross Offering Proceeds to defray marketing expenses. Subject to certain conditions and in consideration of the selling group's services, the Company may also reimburse the selling group for accountable (*i.e.*, out-of-pocket) due diligence and accountable marketing expenses of up to 1% of the Gross Offering Proceeds sold by the selling group. To the extent that organization and offering expenses are less than the greater of (i) 2.0% of the Gross Offering Proceeds or (ii) $116,000, the Company may allocate the amount of any such shortfall to payment of additional accountable due diligence and marketing expenses. The total aggregate amount of commissions, allowances, and reimbursements paid by the Company to the selling group will not exceed 9.0% of the Gross Offering Proceeds except as set forth in the preceding sentence. Broker-dealers shall also be entitled to participate in the Manager's and Class B-1 Members' (if any) share of capital proceeds based on Gross Offering Proceeds raised. See "Estimated Use of Proceeds" in this Part I and "Plan of Distribution" in Part II of the Memorandum. See also "Ownership Structure of the Company" in this Part I for the share of capital proceeds to be allocated to broker-dealers.

(2)     Amounts shown are proceeds after deducting sales commissions but before deducting marketing expenses discussed above, offering, and organization expenses. The Manager anticipates that offering and organization expenses will not exceed $116,000. See "Estimated Use of Proceeds" below.

(3)     The minimum purchase is one Unit, or $25,000. The Manager may, in its sole and absolute discretion, waive or lower the minimum purchase requirement for certain investors and permit the purchase of one-half Unit. The Manager may also, in its sole and absolute discretion, permit the purchase of fractional Units.

(4)     Payment for the Units will be released to the Company from an escrow account at Enterprise Bank & Trust (the "Escrow Account") only upon receipt and acceptance by the Manager of payment for at least $1,500,000 of Units, which is the minimum offering amount, on or before the date that is 120 days from the date of this Memorandum, which date may be extended for up to an additional 120 days in the Manager's sole discretion. Upon the release of funds from escrow, the Offering will continue until the maximum offering amount has been sold or the Offering has terminated.

(5)     The Company has the option to offer up to an additional $500,000 of Units pursuant to the terms of this Memorandum and as part of the Offering. The Company would only offer such Units if needed for tenant improvements.

PROSPECTIVE INVESTORS SHOULD NOT CONSTRUE THE CONTENTS OF THIS MEMORANDUM OR ANY PRIOR OR SUBSEQUENT COMMUNICATIONS FROM THE COMPANY, THE MANAGER, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, EMPLOYEES, OR REPRESENTATIVES AS LEGAL OR TAX ADVICE OR AS INFORMATION NECESSARILY APPLICABLE TO A PROSPECTIVE INVESTOR'S INDIVIDUAL FINANCIAL SITUATION. EACH INVESTOR SHOULD CONSULT HIS OWN FINANCIAL ADVISOR, LEGAL COUNSEL, AND ACCOUNTANT AS TO TAX AND RELATED MATTERS CONCERNING HIS INVESTMENT IN THE UNITS.

NO DEALER, SALESMAN, OR OTHER PERSON IS AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATION IN CONNECTION WITH THIS OFFERING OTHER THAN AS AUTHORIZED IN THIS MEMORANDUM OR IN THE EXHIBITS HERETO, AND IF GIVEN OR MADE, SUCH INFORMATION OR REPRESENTATION MUST NOT BE RELIED UPON AS BEING AUTHORIZED. THIS MEMORANDUM DOES NOT CONSTITUTE AN OFFER OR SOLICITATION IN ANY JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED, OR IN WHICH THE PERSON MAKING SUCH OFFER IS NOT QUALIFIED TO DO SO, OR TO ANY PERSON TO WHOM SUCH OFFER WOULD BE UNLAWFUL. REPRODUCTION OR DISTRIBUTION OF THIS MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS IS PROHIBITED WITHOUT THE PRIOR EXPRESS WRITTEN CONSENT OF THE COMPANY. BY ACCEPTING DELIVERY OF THIS MEMORANDUM, EACH OFFEREE AGREES TO RETURN THE MEMORANDUM TO THE COMPANY IF

HE DOES NOT PURCHASE ANY UNITS OFFERED HEREBY, THE OFFERING IS TERMINATED FOR ANY REASON, OR HIS SUBSCRIPTION FOR UNITS IS REJECTED.

STATEMENTS THAT CONSTITUTE "FORWARD-LOOKING STATEMENTS" CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "WILL," "SHOULD," "EXPECT," "ANTICIPATE," "ESTIMATE," "INTEND," "CONTINUE," OR "BELIEVE" OR THE NEGATIVES THEREOF OR OTHER VARIATIONS THEREON. IF THE ASSUMPTIONS WITH RESPECT TO DEMAND FOR THE PROPERTIES DO NOT PROVE CORRECT, THE COMPANY WILL HAVE DIFFICULTY IN ACHIEVING ITS ANTICIPATED RESULTS. THE FINANCIAL PROJECTIONS ASSUME CERTAIN DEMAND FOR THE PROPERTIES, AND CERTAIN RATES OF APPRECIATION. THERE CAN BE NO ASSURANCE THAT THE COMPANY CAN ACHIEVE OR MAINTAIN THE RATES ASSUMED BY THE FINANCIAL PROJECTIONS. SOME OF THE OTHER UNDERLYING ASSUMPTIONS IN THE FINANCIAL PROJECTIONS INEVITABLY MAY NOT MATERIALIZE AND UNANTICIPATED EVENTS AND CIRCUMSTANCES MAY OCCUR. THEREFORE, THE ACTUAL RESULTS ACHIEVED DURING THE PERIOD COVERED IS LIKELY TO VARY FROM THE FINANCIAL PROJECTION OR OTHER FORWARD-LOOKING STATEMENTS, AND THE VARIATION MAY BE MATERIAL.

CERTAIN OF THE ECONOMIC AND FINANCIAL MARKET INFORMATION CONTAINED HEREIN (INCLUDING CERTAIN FORWARD-LOOKING STATEMENTS) HAS BEEN OBTAINED FROM PUBLISHED SOURCES AND/OR PREPARED BY OTHER PARTIES. WHILE SUCH SOURCES ARE BELIEVED TO BE RELIABLE, NONE OF THE COMPANY, THE MANAGER, OR THEIR AFFILIATES ASSUMES ANY RESPONSIBILITY FOR THE ACCURACY OF SUCH INFORMATION.

THE UNITS WILL BE SOLD IN A PRIVATE OFFERING TO A LIMITED NUMBER OF INVESTORS MEETING CERTAIN SUITABILITY STANDARDS. SEE "WHO MAY INVEST" IN PART II OF THE MEMORANDUM. THIS OFFERING IS MADE SUBJECT TO WITHDRAWAL, CANCELLATION, OR MODIFICATION BY THE COMPANY FOR ANY REASON AT ANY TIME WITHOUT NOTICE. THE COMPANY RESERVES THE RIGHT TO REJECT, IN ITS SOLE AND ABSOLUTE DISCRETION, ANY OFFER TO PURCHASE UNITS IN WHOLE OR IN PART.

THE WRITTEN TAX ADVICE SET FORTH IN PART II OF THE MEMORANDUM IN "RISK AND OTHER INVESTMENT FACTORS – TAX RISKS" AND "TAX ASPECTS OF THE OFFERING" IS NOT INTENDED OR WRITTEN TO BE USED, AND IT CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THE TAXPAYER. THE ADVICE WAS WRITTEN TO SUPPORT THE PROMOTION AND MARKETING OF THE TRANSACTION OR MATTER ADDRESSED BY THE WRITTEN ADVICE. THE TAXPAYER SHOULD SEEK ADVICE BASED ON THE TAXPAYER'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

ANY MATERIAL CHANGES TO THIS MEMORANDUM DURING THE OFFERING PERIOD WILL BE PROMPTLY UPDATED VIA SUPPLEMENT.

The Company will not file any financial information with the SEC. Neither prospective investors nor the Members will be able to cause the Company to file any financial information with the SEC.

Each prospective investor will be afforded the opportunity to obtain additional information, if available, that such investor may reasonably request relating to this Offering, the Company, or any of the documents appended hereto as exhibits or otherwise a part of or related to this Offering.

**TABLE OF CONTENTS**

Page

SUMMARY OF THE OFFERING ................................................................................................ 1
PROPERTIES RISKS ................................................................................................................ 5
ESTIMATED USE OF PROCEEDS ............................................................................................ 10
OWNERSHIP STRUCTURE OF COMPANY ................................................................................ 12
MANAGEMENT ...................................................................................................................... 13
COMPENSATION OF MANAGER AND ITS AFFILIATES ............................................................ 14
THE PROPERTIES .................................................................................................................. 16

Exhibit A – Operating Agreement .......................................................................................... A-1
Exhibit B – Subscription Agreement ...................................................................................... B-1
Exhibit C – Financial Projections for the Properties ............................................................... C-1
Exhibit D – Sponsor Balance Sheet ....................................................................................... D-1

iv

## OWNERSHIP STRUCTURE OF COMPANY



Broker-dealers that are members of the selling group holding Class B-2 Units are allocated 2.5% and the Class B Units and Class B-1 Units are allocated 47.5% of profits as described above (the "Class B Sale Percentage") after 10% Preferred Return and return of capital to the Class A Members.

## MANAGEMENT

**ArciTerra Group**

The following table sets forth certain information regarding the officers and key employees of ArciTerra Group, which is the manager of the Manager and its Affiliates. The Manager serves as the manager of the Company and as the manager of the LLCs.

| Name | Position |
|------|----------|
| Jonathan M. Larmore | Manager and Principal of ArciTerra Group, LLC |
| William A. Rack, Jr. | Vice President of ArciTerra Group, LLC, and President of ArciTerra Capital, LLC |
| Marcia M. Larmore | Senior Vice President and Principal of ArciTerra Group, LLC |

*Jonathan M. Larmore*, age 40, currently holds the positions of Manager and Principal of ArciTerra Group and Chief Executive Officer of ArciTerra REIT and ArciTerra National REIT. Mr. Larmore also holds the positions of manager, president and principal of CSL and JMMAL. During the last 12 years, Mr. Larmore has been involved in various aspects of the real estate industry including the acquisition, leasing, financing, repositioning, and disposition of assets valued at over $365 million. Mr. Larmore has personally invested in more than $225 million of real estate since 1998. Mr. Larmore previously held the position of Executive Vice President and Managing Director of Real Estate for Cole Capital Partners, LLC and Cole Real Estate Services, Inc. Mr. Larmore received a Bachelor of Science Degree from the Kelley School of Business, Indiana University, with a major in Business Management.

*William A. Rack, Jr.*, age 53, became the Vice President of ArciTerra Group, LLC and the President of ArciTerra Capital, LLC in June 2005 and currently holds the positions of President and Treasurer and Director of ArciTerra REIT and ArciTerra National REIT. Mr. Rack is also the manager and sole member of WMR. Prior to joining ArciTerra Group, Mr. Rack was the Senior Vice President/Managing Director of Capital Markets for Cole Capital Advisors, Cole Capital Partners, Cole Partnerships, Inc., and Cole REIT Advisors, LLC. During his tenure at the Cole companies, Mr. Rack was involved in the creation and funding of more than 20 private placement offerings, including four note offerings, totaling over $335 million in equity. Prior to joining Cole in July 2000, Mr. Rack worked for 12 years with Laeroc Partners, Inc., a Los Angeles-based real estate syndicator, most recently as head of the Capital Markets Division. Mr. Rack has been in the real estate and finance industry for over 20 years. During this time, he has handled all aspects of the business from property dispositions, leasing, and asset management to refinancing and loan servicing. Mr. Rack received a Bachelor of Science Degree from the University of the Pacific with majors in Finance and Marketing.

*Marcia M. Larmore*, age 64, currently holds the position of Senior Vice President and Principal of ArciTerra Group and Secretary of ArciTerra REIT. Mrs. Larmore also currently holds the positions of manager, president, and principal of MML. Mrs. Larmore has personally invested in more than $45 million of real estate since 1980. Mrs. Larmore taught school in Indianapolis, Indiana and Oakland, California prior to her retirement from formal teaching. She has served as President and/or Chairman of many community boards in Indianapolis and Fort Wayne. Mrs. Larmore graduated with a Bachelor of Science Degree from Indiana University, Bloomington, with a major in Education with Special Graduate-School Endorsements in Early Childhood Education, Mentally Challenged Education, and Gifted and Talented Education. Mrs. Larmore is the mother of Jonathan M. Larmore.

# **EXHIBIT 9**

# **Email Exchange Dated February 20, 2011**

**From:** marcialarmore@aol.com
**Sent:** Sunday, February 20, 2011 5:42 AM
**To:** Jon Larmore
**Subject:** Joe bosch







Marcia M. Larmore
Exec. V.P. and Principal Owner
ArciTerra Group, LLC
2720 East Camelback Road, Suite 220
Phoenix, Arizona 85016
Marcia.Larmore@ArciTerra.com
602.840.6800-Phoenix Office

Marcia M. Larmore
President, Manager and Principal Owner
Moynahan Investments, LLC
3127 La Balme Trail
Fort Wayne, Indiana 46804

260.414.5554
Fax: 260.432.7900

The information contained in this e-mail (and/or attachments) is confidential (and/or copyrighted). It may also be legally privileged. It is intended only for the stated addressee(s) and access to it by any other person is unauthorized. If you are not an addressee, you must not disclose, copy, circulate or in any other way use or reply on the information contained in this e-mail. Such unauthorized use may be unlawful. If you have received this e-mail in error, please inform us immediately and delete it and all copies from your system

## **EXHIBIT 10**

## **Email Exchange Dated April 17, 2023**

**From:** Katy Sharp
**Sent:** Monday, April 17, 2023 9:18 PM
**To:** Kathleen Bouet
**Subject:** RE: 4430 N Camino Allenada Electricity shut off= (Moynahan)

Great, we will try to do an ACH!  Thank you again 😊



Katy Sharp
Controller=

W: 941- 621-6046

Ext 1014

ap@fishermensvillage.=
com

ww=
w.Fishermensvillage.com=

**From:** Kathleen Bouet
**Sent:** Monday, April 17, 2023 5:17 PM
**To:** Katy Sharp
Subject: RE: 4430 N Camino Allenada Electricity shut off (Moynahan)

If you do the ACH out of Moynahan I can fund tomorrow when it hits.


**Kathleen Bouet, CPA, CPM**|Consultant

ArciTerra Companies

2701 E. Camelback Rd., Ste 150

Phoenix, AZ 85016

(602) 424-7566|F: (602) 956-4494

kathleen.bouet@arciterra.com




**From:** Katy Sharp <ksharp@fishermensvillage.com>
**Sent:=** Monday, April 17, 2023 2:15 PM
**To:** Kathleen Bouet <Kathle= en.Bouet@arciterra.com>
**Subject:** RE: 4430 N Camino Allenada El= ectricity shut off (Moynahan)


We will go ahead and get it paid.  I'll try to figure out where to draw it from.


Thank you!



**From:** Kathleen Bouet
**Sent:** Monday, April 17, 2023 5:13 PM
**To:**  Katy Sharp
**Subject:** RE: 4430 N Camino Allenada Electricity shut off (Moynahan)


Should get paid out of Moynahan Investments.  We'll just have to pull funds from one of the properties, like we always do.


**Kathleen Bouet, CPA, CPM**|Consultant

ArciTerra Companies

2701 E. Camelback Rd., Ste 150

Phoenix, AZ 85016

O: (602) 42= 4-7566|F: (602) 956-4494

kathleen.bouet@arciterra.com


**From:** Katy Sharp <ksharp@fishermensvillage.com>
**Sent:** Monday, April 17, 2023 2:1= 1 PM
**To:** Kathleen Bouet <Kathleen.Bouet@arciterra.com>
**Subject:** 4430 N Camino Allenada Electricity shut off (Moynahan)


Kathleen,

I don't know if there's anything you can do, but Marcia Larmore called to say the electricity was shut off at the above location.

Any thoughts?

I'm not sure where the money would come from to pay it

Katy



# EXHIBIT 11

## Email Exchange Dated April 17, 2023

**From:** Jon Larmore
**Sent:** Sunday, July 24, 2022 12:05 AM
**To:** AP; Stephanie Wiegand; Blaine Rice
**Subject:** Fwd: Your home equity payment is past due


Jon Larmore
602-708-8818
iPhone
**From:** Marcia Larmore <marcialarmore@aol.com>
**Sent:** Saturday, July 23, 2022 7:44 PM
**To:** Jon Larmore <Jon.Larmore@arciterra.com>
**Cc:** Marcia Larmore <marcialarmore@aol.com>
**Subject:** Fwd: Your home equity payment is past due



-----Original Message-----
From: J.P. Morgan <alerts.no.reply@jpmorgan.com>
To: MarciaLarmore@aol.com
Sent: Fri, Jul 22, 2022 4:28 pm
Subject: Your home equity payment is past due

### Your home equity payment is past due

At your request, we are sending you this reminder that your home equity payment is past due. If we receive this payment before Jul 25, 2022, you will avoid any late fees. The details are as follows:

**Account ending in:** 5712
**Amount due:** $659.61
**Due date:** Jul 10, 2022

If you have already scheduled a payment, please disregard this message.



**For more information**
If you have any questions or believe you have received this message in error, please contact your J.P. Morgan team.



PRIVACY     |     SECURITY CENTER

Please do not reply directly to this message. You can log on to www.jpmorganonline.com anytime to reply to alerts via secure message, view all alerts available to you, update your settings and manage your account.

This is a service message with information related to your J.P. Morgan account(s). It may include specific details

about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Bank products and services, including certain discretionary investment management products and services, are offered through JPMorgan Chase Bank, N.A. and its affiliates. Securities are offered through J.P. Morgan Securities LLC, member **FINRA** and **SIPC**.



This email is sent by J.P. Morgan to: **MarciaLarmore@aol.com**

This email is confidential and subject to important disclaimers and conditions, including on offers for the purchase or sale of securities, accuracy and completeness of information, viruses, confidentiality, legal privilege, and legal entity disclaimers.

© 2022 JPMorgan Chase & Co. All rights reserved.

# **EXHIBIT 12**

## **ArciTerra Mortgage Loans Spreadsheet**

| | ArciTerra Mortgage Loans | Amount | Due |
|---|---|---|---|
| **AMERICAN COMMERCE BANK** | | | |
| ASR153 | AT Cedartown GA | $ 18,941.72 | 1st |
| | | | |
| **AMERICAN NATIONAL INSURANCE CO.** | | | |
| ASR167 | AT Suffolk VA | $ 156,782.27 | August 1st |
| | | | |
| **AT 2701 Phoenix LLC** | | | |
| ATCO | Arciterra Companies | $ 15,390.00 | 5th |
| | | | |
| **BAYVIEW LOAN SERVICING, LLC** | | | |
| CSL000 | CSL - Valencia Property | $ 5,622.25 | 1st |
| | | | |
| **C-III ASSET MANAGEMENT, LLC** | | | |
| R03004 | Olathe Pointe-Mail Dawn CIII | $ 203,098.76 | 9th |
| | | | |
| **CAPITAL FUND I** | | | |
| ASR165 | Upper 5629 Rockridge | $ 15,318.75 | 1st |
| | | | |
| **CHASE BANK** | | | |
| JML000 | Construction-54th Street | $ 2,977.87 | 1st |
| | | | |
| **CITIZENS BANK** | | | |
| R03006 | Star Lancaster | | 28th |
| | New Home Equity Line | $ 773.26 | 16th |
| | | | |
| **COHANO - Mick** | | | |
| ASR136 | Auburn Plaza -$10,833.33 | $ 10,833.33 | 14th |
| ASR146 | Wildwood - $6,500.00 | $ 6,500.00 | 27th |
| | | | |
| **COBIZ** | | | |
| Glen02 | Glenrosa 32 | | |
| | | | |
| **COHEN FINANCIAL SERVICES, LLC** | | | |
| ASR108 | ATA Forum | | 2nd |
| ASR148 | AT Castleton | $ 41,692.75 | 2nd |
| ASR144 | Castleton Square - $5,187.58 | $ 5,187.58 | 2nd |
| | | | |
| **COMPASS BANK** Mail to Windtberg | | | |
| JML000 | JML | $ 3,000.00 | 1st |
| | | | |
| **COREFIRST BANK** | | | |
| JBOlath | JB Olathe Outlot 2 | $ 3,120.50 | 1st |
| | | | |
| **DOUGHERTY FUNDING LLC** | | | |
| R01014 | Walcent Arkadelphia | $ 20,584.40 | 1st |
| ASR115 | AT Burlington | $ 13,504.67 | 1st |
| R01017 | Walcent Lawton | $ 16,511.42 | 1st |
| ASR156 | AT Sweden | $ 10,053.43 | 1st |
| ASR157 | AT Mayodan | $ 19,575.90 | 1st |

**FIRST GUARANTY BANK**

| ASI003 | AT Belleville Outlots | $ | 14,576.67 | 27th |
|---|---|---|---|---|

**GPB IT Holdings II**

| ASR116 | ASR Fayetteville - $20,000 | $ | 22,093.91 | 27th |
|---|---|---|---|---|
| ASR117 | ATA Fayetteville | $ | 17,489.89 | 27th |

**INGRID & ECKARD BRANDES**

| ASR153 | AT Cedartown | accrues | | |
|---|---|---|---|---|

**JP MORGAN**

| MOY | Robert/Maria #5712 | $ | 659.61 | 10th |
|---|---|---|---|---|
| MOY | Moynahan #2004 | $ | 5,000.00 | 1st |

**KANSAS BANK**

| R02002 | National Reit LP | $ | 44,623.55 | 30th |
|---|---|---|---|---|
| ASR146 | AT Wildwood Plaza | $ | 17,791.82 | 28th |

**KELBEC - Mick**

| ASR134 | AT 18 Mile Central - $5,416.67 | $ | 5,416.67 | 28th |
|---|---|---|---|---|

**KEYSTONE NATIONAL**

| NS002 | AT Canal Winchester OH, LLC | $ | 14,250.00 | 1st |
|---|---|---|---|---|
| ASR117 | ATA Lanier Fayetteville | August 1st paymer | | |
| ASR142 | AT Midway Elyria | $ | 16,625.00 | 1st |
| TESLA | AT TSA Castleton | $ | 11,333.33 | 1st |

**L2JL Capital LLC**

| | Larry B. Long | | | |
|---|---|---|---|---|
| ASR124 | AT Sandersville - $6,000 | $ | 6,000.00 | 25th |

**LEADERS BANK**

| N03008 | AT Concord | $ | 2,757.69 | 3rd |
|---|---|---|---|---|
| R03003 | Noble West | $ | 58,169.87 | 10th |
| R03002 | ATG Reit RSC | $ | 19,140.02 | 10th |

**MEADOWS BANK**

| ASR135 | AT New West Clifton | $ | 7,478.73 | 1st |
|---|---|---|---|---|

**MIDFIRST BANK**

| S01001 | USB Rochester | $ | 23,323.54 | 1st |
|---|---|---|---|---|

**MIDLAND LOAN SERV**

| ASR602 | ATA Trinity Place - no insuranc | $ | 31,299.18 | 6th |
|---|---|---|---|---|
| ASR802 | ATA Hiram Square | $ | 19,158.44 | 6th |

**OSPREY CAPITAL FUND, LLC**

| ASR136 | AT Auburn Plaza | $ | 132,229.16 | 10th |
|---|---|---|---|---|

**Q10/TRIAD CAPITAL ADVISORS, INC.**

| R01015 | Elkhart | $ | 12,638.31 | 1st |
|---|---|---|---|---|
| ASR112 | New Lenox Inline | $ | 14,280.41 | 1st |
| ASR103 | ATA Palencia | August 1st | | 1st |
| ASR102 | ATA Mercado | August 1st | | 1st |

| | | | | |
|---|---|---|---|---|
| ASR119 | AT Briargate | $ | 10,003.21 | 1st |
| ASR130 | AT Centerville | $ | 11,549.23 | 1st |
| ASR120 | AT Lindenhurst | $ | 29,698.01 | 1st |

**SITUS ASSET MANAGEMENT LLC**

| | | | | |
|---|---|---|---|---|
| ASR175 | AT ML Leasehold HI LLC | $ | 94,762.75 | 7th |
| ASR176 | JB ML Land HI LLC | $ | 45,000.00 | 1st |
| ML Leasehold Paying JB ML Leasehold | Ground Lease | $ | 39,583.33 | 1st |

**WELLS FARGO WHOLESALE LOCKBOX**

| | | | | |
|---|---|---|---|---|
| ASI004 | AT Belleville Crossing Inline | $ | 85,680.14 | 1st |
| ASR003 | AT Altus Roswell | $ | 27,581.81 | 1st |
| ASR004 | AT Altus Cumberland | $ | 26,448.34 | 1st |
| R01023 | Reit 1 Member, LLC | $ | 152,479.64 | 6th |
| ASR902 | ATA Stone Lithonia | $ | 33,721.00 | 6th |
| ASR302 | AT Altus Echelon | $ | 5,000.00 | 6th |
| ASR137 | AT Jefferson Center Et Al | $ | 78,783.32 | 6th |
| N03007 | Westgate Indianapolis | $ | 35,015.00 | 6th |
| ASR154 | At Boutte LA, LLC | $ | 28,346.99 | 6th |
| ASR150 | AT Lubbock TX, LLC | $ | 31,496.77 | 6th |
| ASR175 | AT ML Leasehold | July first payment | | 6th |

**YAM CAPITAL, LLC**

| | | | | |
|---|---|---|---|---|
| ASR134 | 18 Mile Shopping Center | $ | 22,687.50 | 1st |
| ASR149 | AT Pueblo West | $ | 13,777.78 | 1st |
| ASR133 | AT Seven Hills | $ | 157,945.00 | 1st |
| WFV | Fishville | $ | 111,641.84 | 1st |
| Fishville | Boca Norte Impact | Lisa | | |

*********************************************************************************************

**AVID**

| | | | | |
|---|---|---|---|---|
| ATCO | Arciterra Companies | $ | 1,846.20 | 1st |

**FIRST GUARANTY BANK**

| | | | | |
|---|---|---|---|---|
| ASR151 | AT Ville Platte | $ | 12,154.87 | 5th |
| ASR152 | AT Longview Coupon | $ | 13,944.40 | 25th |

**KS BANK**

| | | | | |
|---|---|---|---|---|
| JML000 | Mariposa | $ | 13,090.37 | 1st |
| ASR000 | Danville, Eastman, Sanderville | $ | 29,396.60 | 23rd |
| S01001 | USB Rochester | $ | 5,174.42 | 7th |
| JMLBUS | JML Business Consulting | $ | 28,858.12 | 8th |
| JMLBUS | Shell Aviation Processing | $ | 1,217.72 | 11th |

**MEADOWS BANK**

| | | | | |
|---|---|---|---|---|
| 2701 | AT 2701 Phoenix, LLC | $ | 9,184.68 | 18th |

**THRIVENT/TRIAD**

| | | | | |
|---|---|---|---|---|
| R02048 | BP Olathe | $ | 69,568.24 | 3rd |

**A10 CAPITAL, LLC**

| ASR110 | ATA Plaza | | $31,544.78 | 1st |
| ASR145 | AT Plainfield Village | | $23,119.63 | 1st |

**ALLIANT CREDIT**

| ASR127 | AT Wheatland | $ | 64,591.49 | 8th |

**Robert Schwab**

| | | $ | 100,000.00 | 20th |

| Late After | Delivery Schedule |
|---|---|
| 4 days | 7/3/2017 hit |
| None | 7/10/2017 hit |
| 15 days | 7/10/2017 hit |
| None | 7/8/2017 hit |
| 5 days Per Capital | 7/3/2017 hit |
| None | 7/5/2017 hit |
| None | |
| None | 7/14/2017 |
| WIRE-61190 | 7/12/2017 hit |
| WIRE-61190 | 7/24/2017 |
| Lockbox | Account OK |
| Lockbox | Wire sent          hit |
| Wire-61500 | 7/12/2017 hit |
| None | 7/3/2017 |
| 10 days | 7/10/2017 hit |
| None | 7/3/2017 hit |
| None | 7/3/2017 hit |
| None | 7/3/2017 hit |
| None | 7/3/2017 hit |
| None | 7/3/2017 hit |

10 Days

Wire-61190                 7/21/2017
                           7/21/2017

Paid off.  Check Wires

        None               7/10/2017 hit
        5 days              7/5/2017 hit

        6 days              7/6/2017 hit
        6 days      7/3/17 Prior month    hit

Wire-61190                 7/24/2017

        4 days              7/5/2017 hit

        4 days              7/5/2017 hit
        4 days              7/5/2017 hit

        Wire               7/24/2017

        10 days            7/10/2017 hit
        10 days            7/14/2017
        10 days            7/14/2017

         1st                7/3/2017 hit

        10 days            7/10/2017 hit

        None                7/6/2017 hit
        None                7/6/2017 hit

        None               7/10/2017 hit

        10 days            7/11/2017 hit
        10 days            7/11/2017 hit
        10 days
        10 days

| | | |
|---|---|---|
| 10 days | 7/11/2017 hit | |
| 10 days | 7/11/2017 hit | |
| 10 days | 7/11/2017 hit | |
| | | |
| LOCKBOX | Account OK | |
| WIRE | Account OK | |
| None | Start August 1st | |
| | | |
| None | 7/3/2017 hit | |
| None | 7/3/2017 hit | |
| None | 7/3/2017 hit | |
| None | 7/6/2017 hit | |
| None | 7/6/2017 hit | |
| LOCKBOX | wire | |
| None | 7/6/2017 hit | |
| None | 7/6/2017 hit | |
| None | 7/6/2017 hit | |
| None | 7/6/2017 hit | |
| LOCKBOX | | |
| | | |
| 1st | 7/3/2017 hit | |
| 1st | 7/3/2017 hit | |
| 1st | 7/3/2017 hit | |
| 1st | 7/3/2017 hit | |
| | | |
| * | | |
| | | |
| ACH | | |
| | | |
| ACH | hit | |
| ACH | | |
| | | |
| ACH | hit | |
| ACH | | |
| ACH | hit | |
| ACH | hit | |
| ACH | hit | |
| | | |
| ACH | Funded 7/12/17 DO NOT TOUCH | |
| | | |
| ACH | $ 19,356.00 | hit |
| | $ 50,212.24 | hit |

| ACH | hit |
| ACH | hit |

| ACH | hit |

Should be done by September

# **EXHIBIT 13**

## **Email Exchange Dated November 22, 2021**

**From:** Jon Larmore
**Sent:** Tuesday, November 23, 2021 10:36 PM
**To:** Marcia Larmore
**Subject:** FW: Marcia home equity payment is past due
**Attachments:** Check 923 - Chase Payment.pdf

Paid.  The extra money will resume once we have money in the company.  We are still thin from Covid shutdowns.

Jonathan M. Larmore
CEO and President
Arciterra Companies, LLC

2701 East Camelback Road
Suite 150
Phoenix AZ, 85016

Office 602-840-4446
Mobile 602-708-8818

---

**From:** Stephanie Wiegand <stephanie.wiegand@arciterra.com>
**Sent:** Tuesday, November 23, 2021 3:26 PM
**To:** Jon Larmore <Jon.Larmore@arciterra.com>; Blaine Rice <blaine.rice@arciterra.com>
**Subject:** RE: Marcia home equity payment is past due

*It shows that it cleared KS on 11/15.  Copy of cleared check attached.*

Sincerely,

**Stephanie Wiegand** – Assistant Controller
Arciterra Companies
2701 E. Camelback Rd., Suite 150
Phoenix, AZ 85016
O: 602.424.0875
F: 602.956.4494

---

**From:** Jon Larmore <Jon.Larmore@arciterra.com>
**Sent:** Tuesday, November 23, 2021 3:19 PM
**To:** Blaine Rice <blaine.rice@arciterra.com>; Stephanie Wiegand <stephanie.wiegand@arciterra.com>
**Subject:** Marcia home equity payment is past due

Has this been paid and released?  I think it comes out of US Bank.

Jonathan M. Larmore
CEO and President

Arciterra Companies, LLC

2701 East Camelback Road
Suite 150
Phoenix AZ, 85016

Office 602-840-4446
Mobile 602-708-8818

---

**From:** Marcia Larmore <marcialarmore@aol.com>
**Sent:** Monday, November 22, 2021 11:27 PM
**To:** Jon Larmore <Jon.Larmore@arciterra.com>
**Subject:** Fwd: Your home equity payment is past due

---

From: alerts.no.reply@jpmorgan.com
To: MarciaLarmore@aol.com
Sent: 11/22/2021 5:48:09 AM US Mountain Standard Time
Subject: Your home equity payment is past due

| **Your home equity payment is past due** |
|---|

At your request, we are sending you this reminder that your home equity payment is past due. If we receive this payment before Nov 25, 2021, you will avoid any late fees. The details are as follows:

**Account ending in:** 5712
**Amount due:** $659.61
**Due date:** Nov 10, 2021

If you have already scheduled a payment, please disregard this message.



**For more information**
If you have any questions or believe you have received this message in error, please contact your J.P. Morgan team.



PRIVACY    |    SECURITY CENTER

Please do not reply directly to this message. You can log on to www.jpmorganonline.com anytime to reply to alerts via secure message, view all alerts available to you, update your settings and manage your account.

This is a service message with information related to your J.P. Morgan account(s). It may include specific details about transactions, products or online services. If you recently cancelled your account, please disregard this message.

Bank products and services, including certain discretionary investment management products and services, are offered through JPMorgan Chase Bank, N.A. and its affiliates. Securities are offered through J.P. Morgan Securities LLC, member **FINRA** and **SIPC**.



This email is sent by J.P. Morgan to: **MarciaLarmore@aol.com**

This email is confidential and subject to **important disclaimers and conditions,** including on offers for the purchase or sale of securities, accuracy and completeness of information, viruses, confidentiality, legal privilege, and legal entity disclaimers.

© 2021 JPMorgan Chase & Co. All rights reserved.

## **EXHIBIT 14**

## **Form K-1's**

# 2015 TAX RETURN FILING INSTRUCTIONS

U.S. RETURN OF PARTNERSHIP INCOME

### FOR THE YEAR ENDING

December 31, 2015

| | |
|---|---|
| **Prepared for** | Wawasee Family Investments Limited Partnership<br>2701 East Camelback Road, Suite 150<br>Phoenix, AZ  85016 |
| **Prepared by** | CliftonLarsonAllen LLP<br>5255 East Williams Circle, Suite 5000<br>Tucson, AZ 85711<br>(520) 790-3500 |
| **To be signed and dated by** | A general partner |
| **Amount of tax** | Not applicable |
| **Mail tax return to** | This return has qualified for electronic filing.  After you have reviewed your return for completeness and accuracy, please sign, date and return Form 8879-PE to our office.  We will then submit your electronic return to the IRS. |
| **Forms to be distributed to partners** | Enclosed are copies of Schedule K-1 to be distributed to the partners. |
| **Return must be mailed on or before** | Return federal Form 8879-PE to us as soon as possible. |
| **Special Instructions** | Do not mail the paper copy of the return to the IRS.<br><br>You should provide a paper copy of these Schedules K-1 to each of the partners immediately. If you choose to distribute these schedules electronically, you must distribute them in accordance with the specific requirements contained in IRS Revenue Procedure 2012-17. Please contact us if you need assistance regarding these requirements. |

510145
04-01-15

651113

**Schedule K-1**
**(Form 1065)**

**2015**

Department of the Treasury
Internal Revenue Service

For calendar year 2015, or tax
year beginning _____
ending _____

**Partner's Share of Income, Deductions,**
**Credits, etc.**    ▶ **See separate instructions.**

☐ Final K-1    ☐ Amended K-1    OMB No. 1545-0123

**Part III    Partner's Share of Current Year Income,**
**Deductions, Credits, and Other Items**

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
█████ 5966

**B** Partnership's name, address, city, state, and ZIP code
WAWASEE FAMILY INVESTMENTS LIMITED
PARTNERSHIP
2701 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ  85016

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's identifying number
████████

**F** Partner's name, address, city, state, and ZIP code

JONATHAN M LARMORE
2701 E CAMELBACK ROAD STE 150
PHOENIX, AZ  85016

**G** ☒ General partner or LLC      ☐ Limited partner or other LLC
member-manager                          member

**H** ☒ Domestic partner      ☐ Foreign partner

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ......... ☐

**J** Partner's share of profit, loss, and capital:

|  | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000% | 1.0000000% |
| Loss | 1.0000000% | 1.0000000% |
| Capital | 1.0000000% | 1.0000000% |

**K** Partner's share of liabilities at year end:

*See attached statement for additional information.

For IRS Use Only

# 2018 TAX RETURN FILING INSTRUCTIONS

U.S. RETURN OF PARTNERSHIP INCOME

### FOR THE YEAR ENDING

December 31, 2018

| | |
|---|---|
| **Prepared for** | Wawasee Family Investments Limited Partnership<br>2701 East Camelback Road, Suite 150<br>Phoenix, AZ  85016 |
| **Prepared by** | CliftonLarsonAllen LLP<br>5255 East Williams Circle, Suite 5000<br>Tucson, AZ 85711<br>(520) 790-3500 |
| **To be signed and dated by** | A general partner |
| **Amount of tax** | Not applicable |
| **Mail tax return to** | This return has qualified for electronic filing.  After you have reviewed your return for completeness and accuracy, please sign, date and return Form 8879-PE to our office.  We will then submit your electronic return to the IRS. |
| **Forms to be distributed to partners** | Enclosed are copies of Schedule K-1 to be distributed to the partners. |
| **Return must be mailed on or before** | Return federal Form 8879-PE to us as soon as possible. |
| **Special Instructions** | Do not mail the paper copy of the return to the IRS.<br><br>You should provide a paper copy of these Schedules K-1 to each of the partners immediately. If you choose to distribute these schedules electronically, you must distribute them in accordance with the specific requirements contained in IRS Revenue Procedure 2012-17. Please contact us if you need assistance regarding these requirements. |

651118

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2018**

For calendar year 2018, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.**

▶ See separate instructions.

| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

**Part III**   **Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

---

| **Part I** | **Information About the Partnership** |

**A** Partnership's employer identification number
████ 5966

**B** Partnership's name, address, city, state, and ZIP code
WAWASEE FAMILY INVESTMENTS LIMITED
PARTNERSHIP
2701 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ 85016

**C** IRS Center where partnership filed return
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

---

| **Part II** | **Information About the Partner** |

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code

JONATHAN M LARMORE
2701 E CAMELBACK ROAD STE 150
PHOENIX, AZ 85016

**G** ☒ General partner or LLC member-manager    ☐ Limited partner or other LLC member

**H** ☒ Domestic partner    ☐ Foreign partner

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ............ ☐

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000% | 1.0000000% |
| Loss | 1.0000000% | 1.0000000% |
| Capital | 0.0000000% | 0.0000000% |

**K** Partner's share of liabilities:

For IRS Use Only

811261 12-11-18 LHA   **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**    www.irs.gov/Form1065    **Schedule K-1 (Form 1065) 2018**

4



CLA (CliftonLarsonAllen LLP)
CLAconnect.com

# WAWASEE FAMILY INVESTMENTS LIMITED PARTNERSHIP

## 1065 INCOME TAX RETURN

## FOR YEAR ENDED DECEMBER 31, 2019

651119

| **Schedule K-1**<br>**(Form 1065)**<br>Department of the Treasury<br>Internal Revenue Service | **2019**<br>For calendar year 2019, or tax year<br>beginning _____ ending _____ | Final K-1 ☐   Amended K-1 ☐   OMB No. 1545-0123 |
|---|---|---|

**Part III** **Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

**Partner's Share of Income, Deductions, Credits, etc.**   ▶ See separate instructions.

| **Part I** | **Information About the Partnership** |
|---|---|

**A** Partnership's employer identification number
███████ 5966

**B** Partnership's name, address, city, state, and ZIP code
WAWASEE FAMILY INVESTMENTS LIMITED
PARTNERSHIP
2701 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ  85016

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| **Part II** | **Information About the Partner** |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See inst.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

JONATHAN M LARMORE
2701 E CAMELBACK ROAD STE 150
PHOENIX, AZ  85016

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner   ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner?   INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐ ...........

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000 % | 1.0000000 % |
| Loss | 1.0000000 % | 1.0000000 % |
| Capital | 0.0000000 % | 7.0894000 % |

Check if decrease is due to sale or exchange of partnership interest ...........

**K** Partner's share of liabilities:

| 21 | More than one activity for at-risk purposes* |
|---|---|
| 22 | More than one activity for passive activity purposes* |

*See attached statement for additional information.

For IRS Use Only

911261 12-30-19   LHA   For Paperwork Reduction Act Notice, see Instructions for Form 1065.   www.irs.gov/Form1065   Schedule K-1 (Form 1065) 2019

4

# 2020 TAX RETURN FILING INSTRUCTIONS
U.S. RETURN OF PARTNERSHIP INCOME

**FOR THE YEAR ENDING**
December 31, 2020

---

**Prepared For:**

Wawasee Family Investments Limited
Partnership
2701 East Camelback Road, Suite 150
Phoenix, AZ  85016

---

**Prepared By:**

CliftonLarsonAllen LLP
5255 East Williams Circle, Suite 5000
Tucson, AZ 85711

---

**To Be Signed and Dated By:**

A general partner

---

**Amount of Tax:**

Not applicable

---

**Mail Tax Return To:**

This return has qualified for electronic filing.  After you have reviewed your return for
completeness and accuracy, please sign, date and return Form 8879-PE to our office.
We will then submit your electronic return to the IRS.

---

**Forms to be Distributed to Partners:**

Enclosed are copies of Schedule K-1 to be distributed to the partners.

---

**Return Must be Mailed On or Before:**

Return federal Form 8879-PE to us as soon as possible.

---

**Special Instructions:**

Do not mail the paper copy of the return to the IRS.

You should provide a paper copy of these Schedules K-1 to each of the partners
immediately. If you choose to distribute these schedules electronically, you must
distribute them in accordance with the specific requirements contained in IRS Revenue
Procedure 2012-17. Please contact us if you need assistance regarding these
requirements.

651119

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2020**
For calendar year 2020, or tax year

beginning _____ ending _____

**Partner's Share of Income, Deductions, Credits, etc.**    ▶ **See separate instructions.**

| Part I | Information About the Partnership |
|---|---|

**A** Partnership's employer identification number
█████ 5966

**B** Partnership's name, address, city, state, and ZIP code
WAWASEE FAMILY INVESTMENTS LIMITED
PARTNERSHIP
2701 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ  85016

**C** IRS Center where partnership filed return ▶
E-FILE

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |
|---|---|

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)
████████

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

JONATHAN M LARMORE
2701 E CAMELBACK ROAD STE 150
PHOENIX, AZ  85016

**G** ☒ General partner or LLC member-manager     ☐ Limited partner or other LLC member

**H1** ☒ Domestic partner     ☐ Foreign partner

**H2** ☐ If the partner is a disregarded entity (DE), enter the partner's:
TIN _____ Name _____

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

**J** Partner's share of profit, loss, and capital:

|  | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000 % | 1.0000000 % |
| Loss | 1.0000000 % | 1.0000000 % |
| Capital | 7.0894000 % | 7.0894000 % |

☐ Check if decrease is due to sale or exchange of partnership interest

**K** Partner's share of liabilities:

| Part III | Partner's Share of Current Year Income, Deductions, Credits, and Other Items |
|---|---|

**Final K-1**   **Amended K-1**   OMB No. 1545-0123

| 21 | More than one activity for at-risk purposes* |
|---|---|
| 22 | More than one activity for passive activity purposes* |

*See attached statement for additional information.

For IRS Use Only

011261 01-05-21   LHA  **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**   www.irs.gov/Form1065   **Schedule K-1 (Form 1065) 2020**

4



CliftonLarsonAllen LLP
CLAconnect.com

# WAWASEE FAMILY INVESTMENTS LIMITED PARTNERSHIP

## 1065 INCOME TAX RETURN

## FOR YEAR ENDED DECEMBER 31, 2021

651121

**Schedule K-1**
**(Form 1065)**
Department of the Treasury
Internal Revenue Service

**2021**
For calendar year 2021, or tax year

beginning _____   ending _____

**Partner's Share of Income, Deductions, Credits, etc.**   ▶ See separate instructions.

| Final K-1 | Amended K-1 | OMB No. 1545-0123 |

**Part III   Partner's Share of Current Year Income, Deductions, Credits, and Other Items**

| Part I | Information About the Partnership |

**A** Partnership's employer identification number
█████ 5966

**B** Partnership's name, address, city, state, and ZIP code
WAWASEE FAMILY INVESTMENTS LIMITED
PARTNERSHIP
2701 EAST CAMELBACK ROAD, SUITE 150
PHOENIX, AZ  85016

**C** IRS center where partnership filed return ▶
E-FILE

**D** Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |

**E** Partner's SSN or TIN (Do not use TIN of a disregarded entity. See instructions.)

**F** Name, address, city, state, and ZIP code for partner entered in E. See instructions.

JONATHAN M LARMORE
2701 E CAMELBACK ROAD STE 150
PHOENIX, AZ  85016

**G** [X] General partner or LLC member-manager        [ ] Limited partner or other LLC member

**H1** [X] Domestic partner        [ ] Foreign partner

**H2** If the partner is a disregarded entity (DE), enter the partner's:
TIN _____   Name _____

**I1** What type of entity is this partner?  INDIVIDUAL

**I2** If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here  ...... ▶

**J** Partner's share of profit, loss, and capital:

| | Beginning | Ending |
|---|---|---|
| Profit | 1.0000000 % | 1.0000000 % |
| Loss | 1.0000000 % | 1.0000000 % |
| Capital | 7.0894000 % | 7.0894000 % |

Check if decrease is due to sale or exchange of partnership interest  ...... ▶

**K** Partner's share of liabilities:

| 22 | More than one activity for at-risk purposes* |
| 23 | More than one activity for passive activity purposes* |

*See attached statement for additional information.

For IRS Use Only

111261  11-18-21   LHA   **For Paperwork Reduction Act Notice, see the Instructions for Form 1065.**   www.irs.gov/Form1065   **Schedule K-1 (Form 1065) 2021**

4

## **EXHIBIT 15**

## **ATA Plaza OK, LLC Organizational Chart**



# EXHIBIT 16

## AT Altus Echelon IN, LLC Organizational Chart

Jonathan M. Larmore
100%

Spike Holdings, LLC, an Arizona limited liability company
25%

Wawasee Family Investments Limited Partnership
100%
Marcia and Robert Larmore, (General Partners)
Jonathan M. Larmore holder of 100% of the beneficial rights, and interest

MML Investments, LLC, an Arizona limited liability company
37.5%

Arciterra Companies, LLC
Manager
0%

ArciTerra Strategic Retail Advisor, LLC,
an Arizona limited liability company

ArciTerra Strategic Retail- Echelon, LLC
(the Company)

AT Altus Echelon IN, LLC
(the LLC)

Wawasee Family Investments Limited Partnership
100%
Marcia and Robert Larmore, (General Partners)
Jonathan M. Larmore holder of 100% of the beneficial rights, and interest

JMMAL Investments, LLC, an Arizona limited liability company
37.5%

Spike Holdings, LLC
12.5%

RAB Ventures, LLC
12.5% interest subordinate

I certify that the enclosed Organizational Chart for AT Altus Echelon IN, LLC as of 7/18/18 is true and accurate to the best of my knowledge.

Jonathan M. Larmore

# **EXHIBIT 17**

## **AT Plainfield IN, LLC Organizational Chart**



**EXHIBIT 18**

**Email Exchange Dated February 24, 2023**

**From:** Fred Abrams
**Sent:** Monday, February 27, 2023 4:18 PM
**To:** rcrook@fishermensvillage.com
**Subject:** RE: Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.

Hi Robert,

I am going to use the Pay by phone payment method to issue payment on this bill, can you please fund the account below for $100 and tell me after it is complete ?

Thank you !

| Transactions from 01/28/2023 to 02/27/2023 | ❓ | | |
|---|---|---|---|
| Display Transactions for: | MOYNAHAN INV 2 | | ▼ |
| Date ▽ | Ref/Check No | Description | |

**Fred Abrams|**Senior Accountant
ArciTerra Companies
2701 E. Camelback Rd., Ste 150
Phoenix, AZ 85016
O: (602) 840-6800|F: (602) 956-4494
fred.abrams@arciterra.com

---

**From:** rcrook@fishermensvillage.com <rcrook@fishermensvillage.com>
**Sent:** Monday, February 27, 2023 9:56 AM
**To:** Fred Abrams <Fred.Abrams@arciterra.com>
**Subject:** RE: Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.

Please pay under Moynahan Investments

---

**From:** Fred Abrams <Fred.Abrams@arciterra.com>
**Sent:** Friday, February 24, 2023 3:06 PM
**To:** rcrook@fishermensvillage.com
**Subject:** RE: Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.

Hi Robert,

The last invoice we paid was out of Wawasee Family Investments; the last payment was made in 04.22 according to AVID to the Indiana Dept of Revenue , there is nothing in AVID under Aboite Eye Care.

Aboite Eye Care is not an individual entity, it is under Wawasee Family Investments as far as I can tell. I found the information below on the server.

See attached.



**Fred Abrams | Senior Accountant**
ArciTerra Companies
2701 E. Camelback Rd., Ste 150
Phoenix, AZ 85016
O: (602) 840-6800 | F: (602) 956-4494
fred.abrams@arciterra.com

---

**From:** rcrook@fishermensvillage.com <rcrook@fishermensvillage.com>
**Sent:** Friday, February 24, 2023 1:37 PM
**To:** Fred Abrams <Fred.Abrams@arciterra.com>
**Subject:** FW: Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.

Fred

Can you please look into these.  How were these paid in the past?

Can you find in either MRI or AVID?

Robert

---

**From:** Jon Larmore <Jon.Larmore@arciterra.com>
**Sent:** Friday, February 24, 2023 2:24 AM
**To:** rcrook@fishermensvillage.com
**Subject:** FW: Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.

Pay out of Moynahan please.

**Jon Larmore**|CEO
ArciTerra Companies
2701 E. Camelback Rd., Ste 150
Phoenix, AZ 85016
O: (602) 840-6800|C: (602) 708-8818
Jon.Larmore@arciterra.com

**From:** MARCIA LARMORE <marcialarmore@aol.com>
**Sent:** Thursday, February 23, 2023 9:52 PM
**To:** Jon Larmore <Jon.Larmore@arciterra.com>
**Subject:** Taxes unpaid on Aboite Eye Care- thx for taking care of this. In taxes on 4 MML larmore's properties due in Apr and Nov.



Sent from my iPhone

# **EXHIBIT 19**

## **Email Exchange Dated January 2, 2020**

**From:** Kevin Gulbranson
**Sent:** Thursday, January 2, 2020 6:59 PM
**To:** Senger, Julie
**Subject:** RE: WAWASEE FAMILY INVESTMENTS LIMITED

Thanks.

**Kevin Gulbranson, CPA**|Controller
ArciTerra Companies
2701 E. Camelback Rd., Ste 150
Phoenix, AZ 85016
O: (602) 424-7566|F: (602) 956-4494
kevin.gulbranson@arciterra.com

---

**From:** Senger, Julie <Julie.Senger@illinois.gov>
**Sent:** Thursday, January 02, 2020 11:59 AM
**To:** Kevin Gulbranson <kevin.gulbranson@arciterra.com>
**Subject:** RE: WAWASEE FAMILY INVESTMENTS LIMITED

Yes, Willard Ice Building, 101 West Jefferson, Springfield, IL 62702

Thanks!

Julie Senger
Illinois Department of Revenue
Field Compliance Division
Revenue Tax Specialist
101 West Jefferson
Springfield, Il 62794
217-524-2549
Julie.senger@illinois.gov
**Power of Attorney Submissions** (IL-2848)  -----  **Email to:**  REV.POA@ILLINOIS.GOV
**Pay by Phone**—866-490-2061
**Taxpayer Assistance**—217-782-3336   or   800-732-8866
**City License Hotline** –312-814-1578

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**From:** Kevin Gulbranson <kevin.gulbranson@arciterra.com>
**Sent:** Thursday, January 2, 2020 12:47 PM
**To:** Jon Larmore <Jon.Larmore@arciterra.com>; Senger, Julie <Julie.Senger@illinois.gov>
**Cc:** Blaine Rice <blaine.rice@arciterra.com>
**Subject:** [External] RE: WAWASEE FAMILY INVESTMENTS LIMITED

Check was cut today and Blaine is stamping.  Thanks.

Julie,

What is the fedex address?  Thanks.

**Kevin Gulbranson, CPA**|Controller
ArciTerra Companies
2701 E. Camelback Rd., Ste 150
Phoenix, AZ 85016
O: (602) 424-7566|F: (602) 956-4494
kevin.gulbranson@arciterra.com

**From:** Jon Larmore <Jon.Larmore@arciterra.com>
**Sent:** Thursday, January 02, 2020 11:41 AM
**To:** Senger, Julie <Julie.Senger@illinois.gov>; Kevin Gulbranson <kevin.gulbranson@arciterra.com>
**Subject:** Re: WAWASEE FAMILY INVESTMENTS LIMITED

Kevin??

Jon Larmore
602-708-8818
Sent from my iPhone

On Jan 2, 2020, at 10:52 AM, Senger, Julie <Julie.Senger@illinois.gov> wrote:

Mr. Larmore,
- Please contact me concerning an Illinois 2018 Business Income balance due for WAWASEE FAMILY INVESTMENTS LIMITED .  You can contact me by responding to this email or at my number below.
- You can electronically file tax returns, make payments, and manage your account using My Tax Illinois, available at:  https://mytax.illinois.gov/_/#1 If you have not yet registered for My Tax Illinois, you will need to click the "Sign Up Now" link to create an account.  You will then be able to file and submit payments electronically.

Payment can also be submitted electronically by using the Illinois
Department of Revenue automated phone system by calling 1-866-490-
2061.  Please have your taxpayer identification number (FEIN or SSN) and
your bank routing and account number available when you call.

You can submit payment by mail using a check or money order to the
address below.  Please include your taxpayer identification number (FEIN or
SSN) on the memo of your payment.

> Collection Bureau
> Illinois Department of Revenue
> PO Box 19035
> Springfield, IL 62794-9035

Thank you,

Julie Senger
Illinois Department of Revenue
Field Compliance Division
Revenue Tax Specialist
101 West Jefferson
Springfield, Il 62794
217-524-2549
Julie.senger@illinois.gov
**Power of Attorney Submissions (IL-2848)  -----  Email to:**  REV.POA@ILLINOIS.GOV
**Pay by Phone**—866-490-2061
**Taxpayer Assistance**—217-782-3336    or    800-732-8866
**City License Hotline** —312-814-1578

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this
communication is confidential, may be attorney-client privileged or attorney work product,
may constitute inside information or internal deliberative staff communication, and is
intended only for the use of the addressee. Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited and may be unlawful. If you have
received this communication in error, please notify the sender immediately by return e-
mail and destroy this communication and all copies thereof, including all attachments.
Receipt by an unintended recipient does not waive attorney-client privilege, attorney work
product privilege, or any other exemption from disclosure.

# **EXHIBIT 20**

## **List of ArciTerra Properties**

| OWNER | ADDRESS | CITY | STATE | CENTER NAME | Current Vesting Deed | Initial Purchase | Subsequent Deeds (1) | Subsequent Deeds (2) | Parent Co |
|---|---|---|---|---|---|---|---|---|---|
| CSL Investments, LLC | 5324 East Mariposa Street | Phoenix | AZ | | Deed recorded 7/29/08 | Thomas and Sue Hoecker to Jon and Michelle Larmore recorded 1/6/05 | Jon and Michelle Larmore to CSL Investments LLC recorded 7/29/08 | | |
| 3355 N. Valencia, LLC | 3355 North Valencia Lane | Phoenix | AZ | | 12/31/2008 | Mayer Family Trust to Jon and Michelle Larmore recorded 5/2/07 | Jon and Michelle Larmore to CSL Investments LLC recorded 7/29/08 | CSL Investments LLC to 3355 N. Valencia LLC recorded 12/31/08 | |
| Marcia M. Larmore | 3127 LaBalme Trail | Fort Wayne | IN | | 3/16/1991 | | | | |
| ROBERT H. LARMORE, M.D. & MARCIA M. LARMORE | 7900 West Jefferson Blvd | Fort Wayne | IN | | 8/29/1991 | | | | |
| Morrison Island, LLC | | | | | 5/26/2010 | Do not have a copy of the original deed | Marcia Larmore to Morrison Island recorded 5/26/10 | | ATG |
| HV Gardens, LLC | | | | | 5/26/2010 | Do not have a copy of the original deed | Robert Larmore to HV Gardens recorded 5/26/10 | | ATG |
| 32nd Street Residence at the Grove LLC | 3200 Glenrosa | Phoenix | AZ | 170-28-147 | 10/15/2007 | Yuval Caine and Mirit Caine to ArciTerra 32nd Street LLC recorded 10/24/05 | ArciTerra 32nd Street, LLC to 32nd Street Residence at the Grove, LLC recorded 10/15/07 | CSL Investments is a Member of 32nd St Residence at the Grove | ArciTerra 32nd St, LLC member is ArciTerra 32nd Street Advisors, LLC |
| ArciTerra Montecito I, LLC | 3217 East Montecito Avenue | Phoenix | AZ | | 9/21/2007 | John and Keesha Teneyck to ArciTerra Montecito I, LLC recorded 9/21/07 | | | |
| North East Wawasee, LLC | Lots 15 and 16 Waveland Beach | Turkey Creek | IN | Wawasee | 4/6/2010 | | CSL Investments to North East Wawasee, LLC recorded 4/6/10 | North East Wawasee, LLC Member is CSL Investments, LLC and Manager is Jonathan Larmore | |

| | | | | | | | | ArciTerra DPF Letourneau LLC Manager is ArciTerra Group, LLC Member is ArciTerra Note Fund II Investment Company, LLC | ArciTerra Realty, LLC member is JMMAL Investments, LLC, Manager is ArciTerra Group, LLC |
|---|---|---|---|---|---|---|---|---|---|
| ArciTerra DPF Letourneau, LLC | 8351 East Tailfeather Dr | Scottsdale | AZ | 6/26/2008 | Michael and Amy Letourneau to ArciTerra Realty recorded 4/1/08 | ArciTerra Realty to ArciTerra DPF Letourneau, LLC recorded 6/26/08 | | | |
| 5410 East Oak, LLC | 5410 East Oak | | | 12/29/2010 | | Bryan C. Barnes to 5410 East Oak, LLC recorded 12/29/10 | | 5410 East Oak, LLC member and manager is Jonathan M. Larmore | |
| Jeffrey S. Geyser Trust | 3107 East San Miguel | Phoenix | AZ | 5/29/2007 | Lora Huntzicker to Jon and Michelle Larmore recorded 3/15/2004 | Jon and Michelle to Jon and Michelle and CSL Investments, LLC recorded 1/2005 | Jon and Michelle and CSI Investments to Jeffrey Geyser Trust recorded 5/29/07 | | |

# CURRENT PROPERTY LIST
## September 4, 2012



| CITY | STATE | CENTER NAME | # OF STES | SQ. FT. |
|------|-------|-------------|-----------|---------|
| BARBOURVILLE | KY | Advance Auto | 1 | 7,000 |
| BOGALUSA | LA | CVS | 1 | 11,945 |
| BOWMAN | SC | Family Dollar | 1 | 8,000 |
| BURTON | MI | Sherwin Williams | 1 | 6,000 |
| CAMPBELLSVILLE | KY | Dollar General | 1 | 9,014 |
| CLARKSVILLE | TN | Verizon | 1 | 3,100 |
| COLUMBIA | TN | Verizon | 1 | 3,969 |
| DICKSON | TN | Verizon | 1 | 4,000 |
| EHRHARDT | SC | Family Dollar | 1 | 8,000 |
| GREELEYVILLE | SC | Family Dollar | 1 | 8,000 |
| GREENVILLE | KY | Dollar General | 1 | 9,014 |
| INDIANAPOLIS - Vermont | IN | Vermont Street Ind | 1 | 8,950 |
| JOHNSON CITY | NY | Guitar Center | 1 | 14,400 |
| JUNCTION CITY | KY | Dollar General | 1 | 9,014 |
| KALAMAZOO | MI | Sherwin Williams | 1 | 6,000 |
| MANISTEE | MI | Advance Auto | 1 | 7,000 |
| MILWAUKEE | WI | Walgreens | 1 | 14,935 |
| NORTH BEND | OH | Dollar General | 1 | 9,014 |
| OLATHE | KS | Bass Pro | 1 | 128,962 |
| PAXVILLE | SC | Family Dollar | 1 | 9,180 |
| RAVENNA | KY | Dollar General | 1 | 9,014 |
| ROME | GA | Verizon | 1 | 4,000 |
| SHEPHERDSVILLE | KY | Dollar General | 1 | 9,014 |
| SOUTH CHARLESTON | OH | Dollar General | 1 | 9,014 |
| TEMPLE | GA | AutoZone | 1 | 7,370 |
| TURBEVILLE | SC | Family Dollar | 1 | 9,180 |
| WEST LIBERTY | KY | Advance Auto | 1 | 7,000 |
| WILLIS | TX | AutoZone | 1 | 7,370 |
| WISTER | OK | Dollar General | 1 | 9,014 |
| YORK | SC | BellSouth | 1 | 3,232 |
|  |  |  |  |  |
| ALABASTER | AL | Shoppes at Alabaster | 4 | 11,998 |
| ARKADELPHIA | AR | Arkadelphia Plaza | 11 | 32,163 |
| CANAL WINCHESTER | OH | Canal Street | 4 | 7,455 |
| BELLEVILLE INLINE | IL | Belleville Crossing Inline | 15 | 86,392 |
| BELLEVILLE OUTLOTS | IL | Belleville Crossing Outlots | 10 | 21,724 |
| COLUMBUS | OH | Chestnut Hills | 6 | 16,797 |
| COLUMBUS | OH | New Albany Market | 14 | 43,478 |
| CUMBERLAND | GA | Cumberland Place | 11 | 33,200 |
| DUBLIN | OH | Park Center Circle | 6 | 22,140 |
| ELKHART | IN | Northfield Plaza | 11 | 18,550 |
| GREENVILLE | AL | Greenville Plaza | 4 | 9,652 |
| HIRAM | GA | Hiram Square | 11 | 27,740 |
| INDIANAPOLIS - Echelon Building | IN | Echelon Building | 7 | 38,000 |
| INDIANAPOLIS - Michigan Rd. | IN | Michigan Road Shops | 10 | 28,639 |
| INDIANAPOLIS - Westgate | IN | Westgate Plaza | 8 | 66,469 |
| JEFFERSONVILLE | OH | Jake's Corner | 3 | 5,793 |
| JOHNS CREEK (Suwanee) | GA | The Shops at Johns Creek | 9 | 18,200 |
| KENDALLVILLE | IN | Kendallville Plaza | 5 | 14,490 |
| LANCASTER | OH | Shops at North Memorial | 6 | 9,725 |

# CURRENT PROPERTY LIST
## September 4, 2012



| CITY | STATE | CENTER NAME | # OF STES | SQ. FT. |
|---|---|---|---|---|
| LAWTON | OK | Lawton Plaza | 7 | 13,600 |
| LITHONIA | GA | Stone Lithonia | 13 | 37,730 |
| LEBANON | OH | Lebanon Center | 12 | 39,641 |
| LOUISVILLE | KY | Preston Plaza | 12 | 28,750 |
| MCALLEN | TX | McAllen Plaza | 6 | 12,012 |
| MEMPHIS | TN | Belvedere Commons | 5 | 19,200 |
| MEMPHIS (Cordova) | TN | Trinity Place | 21 | 47,923 |
| MESA | AZ | Kiowa Village | 16 | 46,595 |
| MONTGOMERY | AL | Festival Plaza | 5 | 11,994 |
| MORRILTON | AR | Morrilton Plaza | 6 | 13,345 |
| MOUNT AIRY | NC | Wachovia Shops Plaza | 5 | 6,000 |
| MT. PLEASANT | IA | Orscheln's Center | 3 | 51,450 |
| NASHVILLE | TN | Men's Wearhouse | 3 | 7,281 |
| NEW CASTLE | IN | South Point Plaza | 5 | 9,600 |
| NOBLESVILLE | IN | Noble West Shoppes | 24 | 59,085 |
| OLATHE POINT | KS | Olathe Point | 29 | 142,635 |
| PEARL (Office Depot) | MS | Office Depot Plaza | 4 | 30,060 |
| PHOENIX | AZ | Park Lee | 13 | 76,326 |
| PLAINWELL | MI | Plainwell Plaza | 2 | 7,003 |
| PUNTA GORDA | FL | Fishermen's Village | 40 | 68,619 |
| ST AUGUSTINE (MERCADO) | FL | Mercado | 14 | 22,705 |
| ST AUGUSTINE (PALENCIA) | FL | Palencia | 7 | 12,860 |
| ROCHESTER | MN | US Bank Center | 5 | 14,413 |
| ROSWELL | GA | The Crossings at Roswell | 12 | 38,937 |
| WAYNESBORO | MS | Waynesboro Plaza | 6 | 20,500 |
| | | | | |
| Number of Multi-Tenant Properties: | 44 | Total Square Footage: | | 1,710,574 |
| | | | | |
| Number of Single-Tenant Properties: | 30 | | | |
| Total Number of Properties: | 74 | | | |
| Total Number of States: | 22 | | | |

# EXHIBIT 21

## Separation Agreement and General Release

**Separation Agreement and General Release**

This Separation Agreement and General Release ("Agreement") is entered into as of October 5, 2017 ("Effective Date") between William A. Rack, Jr. and WMR Investments, LLC (collectively "Rack") and the entities listed on Exhibit A attached hereto (the "Arciterra Affiliates").



<u>Exhibit A</u>
Arciterra Affiliates

| | Dom Juris | Name |
|---|---|---|
| 1 | AZ | 1921 Gallatin Pike Nashville TN, LLC |
| 2 | DE | 2006 OPERATING PARTNERSHIP, L.P. |
| 3 | AZ | 2513 E North Street Kendallville IN, LLC |
| 4 | AZ | 412 Cross Oaks Mall Plainwell MI, LLC |
| 5 | AZ | 5339 Elvis Presley Blvd. Memphis TN, LLC |
| 6 | AZ | 5450 US Highway 80 East Pearl MS, LLC |
| 7 | AZ | 601 Trenton Road McAllen TX, LLC |
| 8 | AZ | 60 Colonial Promenade Parkway Alabaster AL, LLC |
| 9 | AZ | 700 North Grand Avenue MT. Pleasant, IA, LLC |
| 10 | NC | 752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC |
| 11 | AZ | 8001 Vaughn Road Montgomery AL, LLC |
| 12 | AZ | 81 Jameson lane Greenville AL, LLC |
| 13 | DE | 900 West Marion Avenue FL, LLC |
| 14 | DE | 900 West Marion Avenue FL, LLC |
| 15 | AZ | ARCITERRA BELL YORK SC, LLC |
| 16 | AZ | ARCITERRA BP OLATHE KS, LLC |
| 17 | AZ | ARCITERRA COMPANIES, LLC |
| 18 | AZ | ARCITERRA FD BOWMAN SC, LLC |
| 19 | AZ | ARCITERRA FD EHRHARDT SC, LLC |
| 20 | AZ | ARCITERRA FD GREELEYVILLE SC, LLC |
| 21 | AZ | ARCITERRA FD TUBERVILLE SC, LLC |
| 22 | AZ | ARCITERRA GROUP, LLC |
| 23 | DE | ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC |
| 24 | MD | ARCITERRA NATIONAL REIT, INC. |
| 25 | DE | ARCITERRA NATIONAL REIT LP |
| 26 | AZ | ARCITERRA NOBLE WEST NOBLESVILLE IN, LLC |
| 27 | AZ | ARCITERRA NOTE ADVIORS, LLC |
| 28 | AZ | ACITERRA NOTE FUND I, LLC |
| 29 | AZ | ARCITERA NOTE FUND I INVESTMENT COMPANY, LLC |
| 30 | AZ | ARCITERRA NOTE ADVISORS II, LLC |
| 31 | AZ | ARCITERRA NOTE ADVISORS III, LLC |
| 32 | AZ | ARCITERRA NOTE FUND II, LLC |
| 33 | AZ | ARCITERRA NOTE FUND II INVESTMENT COMPANY, LLC |
| 34 | AZ | ARCITERRA NOTE FUND III, LLC |
| 35 | AZ | ARCITERRA NOTE FUND III INVESTMENT COMPANY, LLC |
| 36 | AZ | ARCITERRA OLATHE POINTE OLATHE KS LLC |
| 37 | DE | ARCITERRA OPPORTUNITY FUND I, LLC |
| 38 | MD | ARCITERRA REAL ESTATE INVESTMENT TRUST, INC. |
| 39 | AZ | ARCITERRA REIT ADVISORS, LLC |
| 40 | DE | ArciTerra REIT I Member, LLC |

| 41 | AZ | ARCITERRA REIT I MEMBER, LLC |
| 42 | AZ | ARCITERRA NATIONAL REIT ADVISOR, LLC |
| 43 | AZ | ARCITERRA REIT RSC, LP |
| 44 | AZ | ARCITERRA STAR LANCASTER OH, LLC |
| 45 | AZ | ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL |
| 46 | AZ | ARCITERRA STRATEGIC RETAIL ADVISOR, LLC |
| 47 | AZ | ArciTerra Strategic Retail Advisor, LLC |
| 48 | DE | ArciTerra Strategic Retail-Elyria OH, LLC |
| 49 | AZ | ASR REIT ADVISOR, LLC |
| 50 | DE | ARCITERRA STRATEGIC RETAIL-PLAINFIELD VILLAGE IN, LLC |
| 51 | MD | ARCITERRA STRATEGIC RETAIL REIT, INC. |
| 52 | DE | ARCITERRA STRATEGIC RETAIL REIT, LP |
| 53 | AZ | Arciterra Strategic Retail - Suffolk VA, LLC |
| 54 | AZ | ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC |
| 55 | AZ | ARCITERRA USB NEW ALBANY OH, LLC |
| 56 | AZ | ARCITERRA USB ROCHESTER MN, LLC |
| 57 | AZ | ARCITERRA VERMONT INDIANAPOLIS IN, LLC |
| 58 | AZ | ARCITERRA VN CLARKSVILLE TN, LLC |
| 59 | AZ | ARCITERRA VN DICKSON TN, LLC |
| 60 | DE | ARCITERRA WESTGATE INDIANAPOLIS IN, LLC |
| 61 | AZ | ARCITERRA WG MILWAUKEE WI, LLC |
| 62 | AZ | AT 18 Mile Central SC, LLC |
| 63 | AZ | ATA FISHVILLE FL, LLC |
| 64 | AZ | ATA FISHVILLE MANAGEMENT, LLC |
| 65 | AZ | ATA FORUM LOUISVILLE,LLC |
| 66 | AZ | ATA HIRAM SQUARE GA, LLC |
| 67 | AZ | ATA LANIER FAYETTEVILLE GA, LLC |
| 68 | AZ | AT ALTUS CUMBERLAND GA, LLC |
| 69 | AZ | AT ALTUS ECHELON IN, LLC |
| 70 | AZ | AT ALTUS ROSWELL GA, LLC |
| 71 | AZ | ATA MERCADO ST. AUGUSTINE FL, LLC |
| 72 | AZ | ATA PALENCIA ST. AUGUSTINE FL, LLC |
| 73 | AZ | ATA PLAZA OK, LLC |
| 74 | AZ | ATA PRESTON PLAZA KY, LLC |
| 75 | AZ | ATA STONE LITHONIA GA, LLC |
| 76 | AZ | ATA TRINITY PLACE TN, LLC |
| 77 | IN | AT Auburn Plaza IN, LLC |
| 78 | AZ | AT BELLEVILLE CROSSING IL-INLINE, LLC |
| 79 | AZ | AT BELLEVILLE CROSSING IL-OUTLOTS LLC |
| 80 | AZ | AT Bloomington IL, LLC |
| 81 | AZ | AT BOUTTE LA, LLC |
| 82 | AZ | AT BRIARGATE IL, LLC |
| 83 | AZ | AT Canal Winchester OH, LLC |

| 84 | DE | AT CASTLETON IN ASSOCIATION MANAGER, LLC |
| 85 | DE | AT Castleton IN Member, LLC |
| 86 | DE | AT Castleton IN Owner, LLC |
| 87 | DE | AT CASTLETON IN OWNER, LLC |
| 88 | AZ | AT CEDARTOWN GA, LLC |
| 89 | AZ | AT CEDARTOWN GA OUTLOT, LLC |
| 90 | AZ | AT CENTERVILLE GA, LLC |
| 91 | AZ | AT COLONY FITZGERALD GA LLC |
| 92 | AZ | AT CONCORD, LLC |
| 93 | AZ | At Dillon SC Outlot, LLC |
| 94 | AZ | AT EASTMAN GA, LLC |
| 95 | DE | AT FORUM KY MEMBER, LLC |
| 96 | DE | AT Forum KY Member, LLC |
| 97 | DE | ATG REIT RSC, LP |
| 98 | AZ | AT HL BURLINGTON IA, LLC |
| 99 | AZ | AT Jefferson Center FW IN, LLC |
| 100 | DE | AT JEFFERSON CENTER FW IN OWNER, LLC |
| 101 | AZ | AT JPM LINDENHURST IL, LLC |
| 102 | AZ | AT Lima Plaza FW IN, LLC |
| 103 | DE | AT LIMA PLAZA FW IN OWNER, LLC |
| 104 | AZ | AT LINDENHURST IL, LLC |
| 105 | AZ | AT LONGVIEW OUTLOT NORTHEAST, LLC |
| 106 | AZ | AT LONGVIEW OUTLOT WEST, LLC |
| 107 | AZ | AT LONGVIEW TX, LLC |
| 108 | AZ | AT LUBBOCK TX, LLC |
| 109 | AZ | AT Max FW IN, LLC |
| 110 | DE | AT MAX FW IN OWNER, LLC |
| 111 | AZ | AT MAYODAN NC, LLC |
| 112 | AZ | AT MF VEGAS, LLC |
| 113 | AZ | AT MIDWAY ELYRIA OH, LLC |
| 114 | DE | AT ML Leasehold HI, LLC |
| 115 | DE | AT ML Management HI LLC |
| 116 | DE | AT MMH HI LLC |
| 117 | AZ | AT NEW LENOX IL - GL, LLC |
| 118 | AZ | AT NEW LENOX IL- INLINE, LLC |
| 119 | AZ | AT NEW LENOX-OUTLOTS, LLC |
| 120 | AZ | At New West Clifton CO, LLC |
| 121 | DE | AT Olathe Manager, LLC |
| 122 | AZ | AT OLATHE MANAGER, LLC |
| 123 | AZ | AT Pine Valley FW IN, LLC |
| 124 | DE | AT PINE VALLEY FW IN OWNER, LLC |
| 125 | AZ | AT Plainfield Village IN, LLC |
| 126 | AZ | AT Portland Commons IN, LLC |

| 127 | DE | AT PORTLAND COMMONS IN OWNER, LLC |
| 128 | AZ | AT PT DANVILLE IL, LLC |
| 129 | AZ | AT Salem IL Outlot, LLC |
| 130 | AZ | AT SALISBURY NC OUTLOT, LLC |
| 131 | AZ | AT SANDERSVILLE GA, LLC |
| 132 | AZ | AT Seven Hills Aurora CO, LLC |
| 133 | AZ | AT SEVEN HILLS AURORA CO, LLC |
| 134 | AZ | AT Suffolk VA 2B-2, LLC |
| 135 | AZ | AT Suffolk VA 2B-3, LLC |
| 136 | AZ | AT Suffolk VA 2B-5, LLC |
| 137 | AZ | AT Suffolk VA 2B-6, LLC |
| 138 | AZ | At Suffolk VA BWW, LLC |
| 139 | AZ | At Suffolk VA SC, LLC |
| 140 | AZ | AT SWEDEN NY, LLC |
| 141 | AZ | AT SWEEDEN NY OUTLOT, LLC |
| 142 | AZ | AT VILLE PLATTE LA, LLC |
| 143 | AZ | AT WHEATLAND NAPERVILLE IL, LLC |
| 144 | AZ | AT Wildwood Plaza MO, LLC |
| 145 | AL | BDS, L.L.C. |
| 146 | AZ | CASTLETON SHOPPING CENTER MK DISPOSITION, LLC |
| 147 | IN | CSL INVESTMENTS, LLC |
| 148 | AZ | THE EXCHANGE PLAINWELL MI, LLC |
| 149 | DE | Fishville Kiosk Member, LLC |
| 150 | DE | FK TELLURIDE, LLC |
| 151 | AZ | HarbourView Marketplace, LLC |
| 152 | AZ | HarbourView Station West, LLC |
| 153 | IN | HV GARDENS, LLC |
| 154 | AZ | JB Fishville Harbor Land LLC |
| 155 | AZ | JB Fishville Retail Land LLC |
| 156 | IN | JBM ACQUISTIONS LLC |
| 157 | DE | JB ML Land HI, LLC |
| 158 | DE | JB OLATHE OUTLOT 2, LLC |
| 159 | DE | JB RE Investments, LLC |
| 160 | DE | JB Seven Hills, LLC |
| 161 | AZ | JML MANAGER, LLC |
| 162 | DE | JML Trust Manager, LLC |
| 163 | AZ | LABALME TRAIL, LLC |
| 164 | AZ | LEGAL FLOAT LENDING, LLC |
| 165 | AZ | LOWER 5629 ROCKRIDGE ROAD, LLC |
| 166 | IN | LUTHERAN EYE CARE, LLC |
| 167 | AL | Montgomery Mattress, LLC |
| 168 | AZ | MORRISON ISLAND, LLC |
| 169 | AZ | NORTH EAST WAWASEE, LLC |

| 170 | AZ | UPPER 5629 ROCKRIDGE ROAD, LLC |
| 171 | AZ | SPIKE INVESTMENTS, LLC |
| 172 | AZ | WALCENT ARKADELPHIA AK, LLC |
| 173 | IN | WALCENT ELK/IN, LLC |
| 174 | AZ | WALCENT LAWTON OK, LLC |
| 175 | AZ | WALCENT WAYNESBORO MS, LLC |

# **EXHIBIT 22**

## **ArciTerra PPP Loan Application**



**Paycheck Protection Program**
**Application Form**

OMB Control No.: 3245-
Expiration Date: 06/30/2020

| Non-Profit ☐  Vet Org ☐  Tribal ☐  Ind. Cont. ☐  Self Employed ☐ | | DBA or Tradename if applicable | |
| --- | --- | --- | --- |
| **Business Legal Name** | | | |
| Arciterra Companies, LLC | | | |
| **Business Primary Address** | | **Business TIN (EIN,SSN)** | **Business Phone** |
| 2701 E. Camelback Rd. Ste 150 | | ███4877 | 602 840-6800 |
| | | **Primary Contact** | **Email Address** |
| Phoenix AZ 85016 | | Kevin Gulbranson | kevin.gulbranson@arciterra.com |

| Average Monthly Payroll: | ███████ | X 2.5 equals Loan Amount: | ███████ | Number of Jobs: | 16 |
| --- | --- | --- | --- | --- | --- |
| Purpose of the loan (select more than one): | | ☑ Payroll  ☑ Rent / Mortgage Interest  ☑ Utilities  ☐ Other (explain): | | | |

### Applicant Ownership

List all owners of Applicant with greater than 20% ownership stakes. Attach a separate sheet if necessary.

| Owner Name | Title | Ownership % | TIN (EIN,SSN) | Address |
| --- | --- | --- | --- | --- |
| CSL Investments, LLC | Member | 100 | ███2902 | 2701 E. Camelback Rd. Ste 150 Phoenix, AZ 85016 |
| | | | | |

*If questions (1) or (2) below are answered "Yes," the loan will not be approved.*

| | Question | Yes | No |
| --- | --- | --- | --- |
| 1. | Is the Business or any owner presently suspended, debarred, proposed for debarment, declared ineligible, voluntarily excluded from participation in this transaction by any Federal department or agency, or presently involved in any bankruptcy? | ☐ | ☑ |
| 2. | Has the Business, any of its owners, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government? | ☐ | ☑ |
| 3. | Is the Business or any owner an owner of any other business or have common management with any other business? If yes, attach a listing of all Affiliates and describe the relationship as addendum A. | ☑ | ☐ |
| 4. | Has the Business received an SBA Economic Injury Disaster Loan between January 31, 2020 and April 3, 2020? If yes, provide details on a separate sheet identified as addendum B. | ☐ | ☑ |

*Applicants who are individuals and all 20% or greater owners of the business must answer the following questions. If questions (5) or (6) are answered "Yes" or question (7) is answered "No", the loan will not be approved.*

| | Question | Yes | No |
| --- | --- | --- | --- |
| 5. | Are you presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, on probation or parole? | ☐ | ☑ |
| | Initial here to confirm your response to question 5 → | | *(initials)* |
| 6. | Within the last 7 years, for any felony or misdemeanor for a crime against a minor, have you: 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before judgment)? | ☐ | ☑ |
| | Initial here to confirm your response to question 6 → | | *(initials)* |
| 7. | ☑ I am a U.S. Citizen  OR  ☐ I have Lawful Permanent Resident status  ☐ No | | |
| | Initial here to confirm your response to question 7 → | | *(initials)* |

SBA Form 2483 (03/20)



**Paycheck Protection Program**
**Application Form**

OMB Control No. 3245-
Expiration Date: 06/30/2020

## By Signing Below, You Make the Following Representations, Authorizations, and Certifications

### REPRESENTATIONS AND AUTHORIZATIONS

I represent that:

- I have read the Statements Required by Law and Executive Order included in this form, and I understand them.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business related purposes as specified in the loan application.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.

For Applicants who are individuals and all Associates: I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

### CERTIFICATIONS

The Business and each 20% or greater owner must certify in good faith to all of the below by **initialing** next to each one:

 Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

 The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges.

 Documentation verifying the number of full-time equivalent employees on payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight week period following this loan will be provided to the lender.

 Loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities. Due to likely high subscription, it is anticipated that not more than twenty-five percent (25%) of the forgiven amount may be for non-payroll costs.

 During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under this program.

 I further certify that the information provided in this application and the information that I have provided in all supporting documents and forms is true and accurate. I realize that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a Federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

 I acknowledge that the lender will calculate the eligible loan amount using tax documents I have submitted. I affirm that these tax documents are identical to those I submitted to the IRS. I also understand, acknowledge and agree that the Lender can share the tax information with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____
Signature of Authorized Representative of Business

Print Name: *Blane Rice*

Date: *04/2/20*

Title: *COO*

_____
Signature of Owner of Applicant Business

Print Name: *Jonathan M. Larmore*

Date: *4/2/2020*

Title: *Manager/CEO*

SBA Form 2483 (03/20)

Form **944 for 2019:** **Employer's ANNUAL Federal Tax Return**

Department of the Treasury — Internal Revenue Service

OMB No. 1545-2007

Employer identification number (EIN) █████████   4  8  7  7

Name *(not your trade name)*  ARCITERRA COMPANIES LLC

Trade name *(if any)*  ARCITERRA COMPANIES LLC

Address  2701 E CAMELBACK RD STE 150

| Number | Street | | Suite or room number |

PHOENIX   AZ   85016

| City | State | ZIP code |

| Foreign country name | Foreign province/county | Foreign postal code |

**Who Must File Form 944**

You must file annual Form 944 instead of filing quarterly Forms 941 only if the IRS notified you in writing.

Go to *www.irs.gov/Form944* for instructions and the latest information.

Read the separate instructions before you complete Form 944. Type or print within the boxes.

**Part 1:** Answer these questions for this year. Employers in American Samoa, Guam, the Commonwealth of the Northern Mariana Islands, the U.S. Virgin Islands, and Puerto Rico can skip lines 1 and 2, unless you have employees who are subject to U.S. income tax withholding.

1  Wages, tips, and other compensation . . . . . . . . . . . . . . . . . **1** ████████

2  Federal income tax withheld from wages, tips, and other compensation . . . . . **2** ████████

3  If no wages, tips, and other compensation are subject to social security or Medicare tax  **3** ☐ Check and go to line 5.

4  Taxable social security and Medicare wages and tips:

|  | Column 1 | | Column 2 |
|---|---|---|---|
| 4a Taxable social security wages | | × 0.124 = | |
| 4b Taxable social security tips | | × 0.124 = | |
| 4c Taxable Medicare wages & tips | | × 0.029 = | |
| 4d Taxable wages & tips subject to Additional Medicare Tax withholding | | × 0.009 = | |

4e  Add Column 2 from lines 4a, 4b, 4c, and 4d . . . . . . . . . . . . . . **4e** ████

5  Total taxes before adjustments. Add lines 2 and 4e . . . . . . . . . . . **5** ████

6  Current year's adjustments (see instructions) . . . . . . . . . . . . . **6**

7  Total taxes after adjustments. Combine lines 5 and 6 . . . . . . . . . . . **7** ████

8  Qualified small business payroll tax credit for increasing research activities. Attach Form 8974  **8**

9  Total taxes after adjustments and credits. Subtract line 8 from line 7 . . . . . . . **9** ████

10  Total deposits for this year, including overpayment applied from a prior year and overpayments applied from Form 944-X, 944-X (SP), 941-X, or 941-X (PR) . . . . . . **10** ████

11  Balance due. If line 9 is more than line 10, enter the difference and see instructions . . . . **11** ████

12  Overpayment. If line 10 is more than line 9, enter the difference [          ]  Check one: ☐ Apply to next return. ☐ Send a refund.

▶ **You MUST complete both pages of Form 944 and SIGN it.**   Next ▶

For Privacy Act and Paperwork Reduction Act Notice, see the back of the Payment Voucher.   BIA   Form **944** (2019)

Do Not Staple        6969

**Form 1096**

Department of the Treasury
Internal Revenue Service

**Annual Summary and Transmittal of
U.S. Information Returns**

OMB No. 1545-0108

**2019**

FILER'S name

Arciterra Companies, LLC

Street address (including room or suite number)

2701 E Camelback Rd Suite 150

City or town, state or province, country, and ZIP or foreign postal code

Phoenix, AZ        85016

| Name of person to contact | Telephone number |
|---|---|
| Kevin Gulbranson | 608 424-7566 |
| Email address | Fax number |
| Kevin.gulbranson@arciterra.com | 602 956-4494 |

**For Official Use Only**

| 1 Employer identification number | 2 Social security number | 3 Total number of forms | 4 Federal income tax withheld | 5 Total amount reported with this Form 1096 |
|---|---|---|---|---|
| 81-4764877 | | 8 | $ | $ 107082.77 |

6 Enter an "X" in only one box below to indicate the type of form being filed.

7 Form 1099-MISC with NEC in box 7, check ▶ ☐

| W-2G 32 | 1097-BTC 50 | 1098 81 | 1098-C 78 | 1098-E 84 | 1098-F 03 | 1098-Q 74 | 1098-T 83 | 1099-A 80 | 1099-B 79 | 1099-C 85 | 1099-CAP 73 | 1099-DIV 91 | 1099-G 86 | 1099-INT 92 | 1099-K 10 | 1099-LS 16 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| 1099-LTC 93 | 1099-MISC 95 | 1099-OID 96 | 1099-PATR 97 | 1099-Q 31 | 1099-QA 1A | 1099-R 98 | 1099-S 75 | 1099-SA 94 | 1099-SB 43 | 3921 25 | 3922 26 | 5498 28 | 5498-ESA 72 | 5498-QA 2A | 5498-SA 27 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | X | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |

**Return this entire page to the Internal Revenue Service. Photocopies are not acceptable.**

Under penalties of perjury, I declare that I have examined this return and accompanying documents and, to the best of my knowledge and belief, they are true, correct, and complete.

Signature ▶        Title ▶        Controller        Date ▶  2/29/2020

## Instructions

**Future developments.** For the latest information about developments related to Form 1096, such as legislation enacted after it was published, go to *www.irs.gov/Form1096*.

**Reminder.** The only acceptable method of electronically filing information returns listed on this form in box 6 with the IRS is through the FIRE System. See Pub. 1220.

**Purpose of form.** Use this form to transmit paper Forms 1097, 1098, 1099, 3921, 3922, 5498, and W-2G to the IRS.

**Caution:** If you are required to file 250 or more information returns of any one type, you must file electronically. If you are required to file electronically but fail to do so, and you do not have an approved waiver, you may be subject to a penalty. For more information, see part F in the 2019 General Instructions for Certain Information Returns.

Forms 1099-QA and 5498-QA can be filed on paper only, regardless of the number of returns.

**Who must file.** Any person or entity who files any of the forms shown in line 6 above must file Form 1096 to transmit those forms to the IRS.

Enter the filer's name, address (including room, suite, or other unit number), and taxpayer identification number (TIN) in the spaces provided on the form. The name, address, and TIN of the filer on this form must be the same as those you enter in the upper left area of Forms 1097, 1098, 1099, 3921, 3922, 5498, or W-2G.

**When to file.** File Form 1096 as follows.

• With Forms 1097, 1098, 1099, 3921, 3922, or W-2G, file by February 28, 2020.

**Caution:** We recommend you file Form 1099-MISC, as a **stand-alone** shipment, by January 31, 2020, if you are reporting **nonemployee compensation (NEC)** in box 7. Also, check box 7 above.

• With Forms 5498, file by June 1, 2020.

## Where To File

Send all information returns filed on paper with Form 1096 to the following.

| If your principal business, office or agency, or legal residence in the case of an individual, is located in | Use the following address |
|---|---|
| Alabama, Arizona, Arkansas, Delaware, Florida, Georgia, Kentucky, Maine, Massachusetts, Mississippi, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, Texas, Vermont, Virginia | Department of the Treasury Internal Revenue Service Center Austin, TX 73301 |

For more information and the Privacy Act and Paperwork Reduction Act Notice, see the 2019 General Instructions for Certain Information Returns.

L1096        41-0852411        5100        Form **1096** (2019)

DETACH BEFORE MAILING
MANUFACTURED ON OCR LASER BOND PAPER USING HEAT RESISTANT INKS

□ CORRECTED (if checked)  CO BQD TOTALS

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|---|
| ███████ **GROSS** | | 2 Royalties $ | **2019** Form **1099-MISC** | |
| | | 3 Other income $ | 4 Federal income tax withheld $ | **Copy 2** |
| PAYER'S TIN | RECIPIENT'S TIN | 5 Fishing boat proceeds | 6 Medical and health care payments | **To be filed with recipient's state income tax return, when required.** |
| ███████ 4877 | | $ | $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | |
| ********* T O T A L S ********* FOR: BATCH NO.         2019/4/94971 | | ██████████ | $ | |
| Street address (including apt. no.) FOR: COMPANY         K2/BQD | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ □ | 10 Crop insurance proceeds $ | |
| City or town, state or province, country, and ZIP or foreign postal code | | 11 | 12 | |
| Account number (see instructions) | FATCA filing requirement □ | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| K2/BQD | | | | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ ████████ $ |

Form **1099-MISC**                         www.irs.gov/Form1099MISC                         Department of the Treasury - Internal Revenue Service

✂----------------------------- Detach Here -----------------------------✂

□ CORRECTED (if checked)

| PAYER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | | 1 Rents $ | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|---|
| TOTAL PAYEES              11 TOTAL FORMS COUNT        12 TOTAL eFORMS            0 TOTAL FORMS PROCESSED    12 | | 2 Royalties $ | **2019** Form **1099-MISC** | |
| K2/BQD/2019/4/94971 | | 3 Other income $ | 4 Federal income tax withheld $ | **Copy B For Recipient** |
| PAYER'S TIN | RECIPIENT'S TIN | 5 Fishing boat proceeds | 6 Medical and health care payments | |
| | | $ | $ | |
| RECIPIENT'S name | | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the IRS. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| Street address (including apt. no.) | | $ | $ | |
| City or town, state or province, country, and ZIP or foreign postal code | | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ▶ □ | 10 Crop insurance proceeds $ | |
| | | 11 | 12 | |
| Account number (see instructions) | FATCA filing requirement □ | 13 Excess golden parachute payments $ | 14 Gross proceeds paid to an attorney $ | |
| K2/BQD | | | | |
| 15a Section 409A deferrals $ | 15b Section 409A income $ | 16 State tax withheld $ $ | 17 State/Payer's state no. | 18 State income $ $ |

Form **1099-MISC**        (keep for your records)        www.irs.gov/Form1099MISC        Department of the Treasury - Internal Revenue Service

| Database: | ARCITERRA | **Income Statement** | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | ATCO | **Property Profit & Loss** | Date: | 4/2/2020 |
| | | **ArciTerra Companies** | Time: | 12:49 PM |
| | | **Arciterra Companies, LLC** | | |

Cash

Report includes an open period.  Entries are not final.

**Year-To-Date**
**12 Months**
**Dec 2019**

| | |
|---|---|
| Income | |
| Rental Income | |
| Total Rental Income | 0.00 |
| CAM Income | |
| Total CAM Income | 0.00 |
| Other Income | |
| Lease Coordination Fee | 15,379.00 |
| Lease Commission Income | 33,452.00 |
| Consulting Fees/Inc/Reimb | 1,849,799.34 |
| Consulting Fees 3rd Party | 145,000.00 |
| Interest Income | 9,425.77 |
| Total Other Income | 2,053,056.11 |
| | |
| Total Income | 2,053,056.11 |
| | |
| Expenses | |
| CAM Expenses - Reimbursable | |
| Janitorial | 0.00 |
| HVAC Repairs | 0.00 |
| Plumbing | 0.00 |
| Supplies/Materials/Misc | 0.00 |
| Real Estate Taxes | 0.00 |
| Insurance | 0.00 |
| Total CAM Expenses - Reimbursable | 0.00 |
| CAM Expenses - Non-Reimbursable | |
| NR Electric | 0.00 |
| NR Misc | 0.00 |
| Total CAM Expenses - Non-Reimbursable | 0.00 |
| | |
| General & Administrative Expenses | |
| Accounting | 0.00 |
| Advertising/Promotions | 5,050.00 |
| Automobile Expense | 2,020.73 |
| Bank Fees | 11,686.68 |
| Computer Expense | 10,886.56 |
| Contract Labor | 2,917.10 |
| Donations | 20,250.00 |
| Dues/Subsc/Memberships | 6,434.54 |
| Fire & Life Safety | 0.00 |
| Filing Fees | 818.40 |
| Gifts | 11,234.55 |
| Insurance | (22,312.05) |
| Insurance-Health | 144,759.49 |
| Legal Fees | (245,458.41) |
| Licenses/Fees/Permits | 300.00 |
| Marketing Expense | 240.00 |
| Meals & Entertainment | 960.00 |
| Office Expense | 148,235.58 |
| Payroll Bonus | 98,030.74 |
| Payroll Expenses | 1,504,613.75 |
| Payroll Service Fees | 3,422.82 |
| Payroll Tax Expense | 111,401.54 |
| Penalty Fees | 258.84 |

| Database: | ARCITERRA | **Income Statement** | Page: | 2 |
| ENTITY: | ATCO | **Property Profit & Loss** | Date: | 4/2/2020 |
| | | **ArciTerra Companies** | Time: | 12:49 PM |
| | | **Arciterra Companies, LLC** | | |

Cash

Report includes an open period. Entries are not final.

**Year-To-Date**
12 Months
Dec 2019

| | |
|---|---|
| Postage & Delivery | 48,059.46 |
| Printing and Reproduction | 5,715.50 |
| Professional Fees - Acctg | 94,402.66 |
| Rent Expense | 228,800.57 |
| Repairs/Maintenance | 0.00 |
| Security Expenses | 0.00 |
| Telephone | 0.00 |
| Travel | 1,338.66 |
| Website Expenses | 627.40 |
| Miscellaneous Expense | 1,232.00 |
| | |
| Total G & A Expenses | 2,195,927.11 |
| | |
| Total Expenses | 2,195,927.11 |
| | |
| Total Net Income or Loss | (142,871.00) |

| Database: | ARCITERRA | **Property Balance Sheet** | Page: | 1 |
|---|---|---|---|---|
| ENTITY: | ATCO | **ArciTerra Companies** | Date: | 4/2/2020 |
| | | **Arciterra Companies, LLC** | Time: | 12:50 PM |

Cash

Report includes an open period. Entries are not final.

Dec 2019

ASSETS

Current Assets
Checking/Savings
| Leaders checking | 939.43 |
|---|---|
| Kansas State Bank | 3,824.52 |

| Total Checking/Savings | 4,763.95 |
|---|---|

Other Current Assets
| Employee Advances | 8,500.00 |
|---|---|
| Payroll Clearing Acct | 6,093.75 |
| Deposits - Utilities | 2,680.00 |

| Total Other Current Assets | 17,273.75 |
|---|---|
| Total Current Assets | 22,037.70 |

Fixed Assets
| Office Equipment (FFE) | 9,989.47 |
|---|---|
| Web Site Design | 3,382.50 |
| Furniture & Fixtures | 68,591.70 |
| Total Fixed Assets | 81,963.67 |

Other Assets
| Total Other Assets | 0.00 |
|---|---|

| TOTAL ASSETS | 104,001.37 |
|---|---|

Equity
| Owner Contribution | (304,414.00) |
|---|---|
| Retained Earnings | 551,286.37 |
| Current Year Net Income | (142,871.00) |

| Total Equity | 104,001.37 |
|---|---|

| TOTAL LIABILITIES & EQUITY | 104,001.37 |
|---|---|

**AFFILIATED ENTITIES**

| COMPANY NAME | DOM STATE | Owner Relationship |
|---|---|---|
| 1921 Gallatin Pike Nashville TN, LLC | Arizona | Principal Owner or Manager |
| 2006 OPERATING PARTNERSHIP, L.P. | Delaware | Principal Owner or Manager |
| 2513 E North Street Kendallville IN, LLC | Arizona | Principal Owner or Manager |
| 412 Cross Oaks Mall Plainwell MI, LLC | Arizona | Principal Owner or Manager |
| 5339 Elvis Presley Blvd. Memphis TN, LLC | Arizona | Principal Owner or Manager |
| 5450 US Highway 80 East Pearl MS, LLC | Arizona | Principal Owner or Manager |
| 601 Retta FL, LLC | Arizona | Principal Owner or Manager |
| 601 Trenton Road McAllen TX, LLC | Arizona | Principal Owner or Manager |
| 60 Colonial Promenade Parkway Alabaster AL, LLC | Arizona | Principal Owner or Manager |
| 613 Retta FL, LLC | Arizona | Principal Owner or Manager |
| 700 N Grand Avenue MT. Pleasant, IA, LLC | Arizona | Principal Owner or Manager |
| 700 North Grand Avenue MT. Pleasant, IA, LLC | Arizona | Principal Owner or Manager |
| 751 W Retta Esplande FL, LLC | Delaware | Principal Owner or Manager |
| 7525 PINE VALLEY LANE OWNER, LLC | Delaware | Principal Owner or Manager |
| 752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC | North Carolina | Principal Owner or Manager |
| 8001 Vaughn Road Montgomery AL, LLC | Arizona | Principal Owner or Manager |
| 81 Jameson lane Greenville AL, LLC | Arizona | Principal Owner or Manager |
| 880 W MARION AVE FL, LLC | Delaware | Principal Owner or Manager |
| 900 West Marion Avenue FL, LLC | Delaware | Principal Owner or Manager |
| ALOHA POP UP PRODUCTIONS, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA AA BARBOURVILLE KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA LINCOLN NE, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA MANISTEE MI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA PAPILLION NE, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA PEARL MS, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA THEODORE AL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AA WEST LIBERTY KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AZ SLIDELL LA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AZ TEMPLE GA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA AZ WILLIS TX, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA BELL YORK SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA BP OLATHE KS, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA CH NEW ORLEANS LA, LLC | Arizona | Principal Owner or Manager |
| Arciterra Commercial Property REIT, LP | Delaware | Principal Owner or Manager |
| Arciterra Commerical Property REIT, Inc. | Maryland | Principal Owner or Manager |
| Arciterra Companies, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA CV LAFAYETTE LA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA CV TARPON SPRINGS FL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DESIGN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG CAMPBELLSVILLE KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG GREENVILLE KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG JUNCTION CITY KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG MEMPHIS TN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG NORTH BEND OH, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG RAVENNA KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG SHEPHERDSVILLE KY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG SOUTH CHARLESTON OH, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DG WISTER OK, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA DKS GRAND CHUTE WI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FD BOWMAN SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FD EHRHARDT SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FD GREELEYVILLE SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FD PAXVILLE SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FD TUBERVILLE SC, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA FESTIVAL MONTGOMERY AL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA GC JOHNSON CITY NY, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA GREYSTONE HOOVER AL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA GROUP, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA HD HENDERSONVILLE TN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA HD MCALLEN TX, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA KLS JENSEN BEACH FL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA KLS WARSAW IN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA KLS WAUSAU WI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA MOV GAL GODDARD KS, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA MOV GAL PARK CITY KS, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA MW NASHVILLE TN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA NATIONAL REIT, INC. | Maryland | Principal Owner or Manager |
| ARCITERRA NATIONAL REIT LP | Delaware | Principal Owner or Manager |
| ARCITERRA NATIONAL REIT, LP | Delaware | Principal Owner or Manager |
| ARCITERRA NOBLE WEST NOBLESVILLE IN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA NOTE ADVISORS II, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA OFF DEP PEARL MS, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA OLATHE POINTE OLATHE KS LLC | Arizona | Principal Owner or Manager |
| ARCITERRA OPPORTUNITY FUND I, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA OR BATTLE CREEK MI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA OS MT. PLEASANT IA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA REAL ESTATE INVESTMENT TRUST, INC. | Maryland | Principal Owner or Manager |
| ARCITERRA REGIONS LAMARQUE TX, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA REIT I MEMBER, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA REIT I MEMBER, LLC | Delaware | Principal Owner or Manager |
| ArciTerra REIT I Member, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA REIT, L.P. | Delaware | Principal Owner or Manager |
| ARCITERRA REIT, LP | Delaware | Principal Owner or Manager |
| ARCITERRA REIT RSC, LP | Arizona | Principal Owner or Manager |

**AFFILIATED ENTITIES**

| COMPANY NAME | DOM STATE | Owner Relationship |
|---|---|---|
| ARCITERRA SHOPPES AT ALABASTER AL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA STAR LANCASTER OH, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL | Arizona | Principal Owner or Manager |
| ARCITERRA STRATEGIC RETAIL ADVISOR, LLC | Arizona | Principal Owner or Manager |
| ArciTerra Strategic Retail Advisor, LLC | Arizona | Principal Owner or Manager |
| ArciTerra Strategic Retail-Elyria OH, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA STRATEGIC RETAIL-PLAINFIELD VILLAGE IN, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA STRATEGIC RETAIL-PLAINFIELD VILLAGE IN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA STRATEGIC RETAIL REIT, INC. | Maryland | Principal Owner or Manager |
| Arciterra Strategic Retail - Suffolk VA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA S-W BURTON MI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA S-W KALAMAZOO MI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA S-W LORAIN OH, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA USB BISMARK ND, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA USB NEW ALBANY OH, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA USB ROCHESTER MN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VERMONT INDIANAPOLIS IN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VN CLARKSVILLE TN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VN COLUMBIA TN LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VN DICKSON TN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VZ HOME GA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA VZ ROME GA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WALCENT GREENVILLE AL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WALCENT KENDALLVILLE IN, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WALCENT PLAINWELL MI, LLC | Arizona | Principal Owner or Manager |
| Arciterra Westgate Indianapolis Member, LLC | Delaware | Principal Owner or Manager |
| Arciterra Westgate Indianapolis IN II, LLC | Delaware | Principal Owner or Manager |
| Arciterra Westgate Indianapolis IN II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| ARCITERRA WESTGATE INDIANAPOLIS IN, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA WG HOMETOWN IL, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WG KILMARNOCK VA, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WG MILWAUKEE WI, LLC | Arizona | Principal Owner or Manager |
| ARCITERRA WHITEFISH ADVISORS, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA WHITEFISH OPPORTUNITY FUND, LLC | Delaware | Principal Owner or Manager |
| ARCITERRA WM DOUGLASVILLE GA, LLC | Arizona | Principal Owner or Manager |
| ASR REIT LP | Delaware | Principal Owner or Manager |
| AT 18 Mile Central SC, LLC | Arizona | Principal Owner or Manager |
| ATA CHERRY CREEK IL, LLC | Arizona | Principal Owner or Manager |
| ATA CYPRESS TOWN CENTER TX, LLC | Arizona | Principal Owner or Manager |
| ATA FISHVILLE FL, LLC | Arizona | Principal Owner or Manager |
| ATA FISHVILLE MANAGEMENT, LLC | Arizona | Principal Owner or Manager |
| ATA FORUM LOUISVILLE KY, LLC | Arizona | Principal Owner or Manager |
| ATA FORUM LOUISVILLE,LLC | Arizona | Principal Owner or Manager |
| ATA HIRAM SQUARE GA, LLC | Arizona | Principal Owner or Manager |
| ATA Lanier Fayetteville GA II, LLC | Delaware | Principal Owner or Manager |
| ATA Lanier Fayetteville GA II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| ATA LANIER FAYETTEVILLE GA, LLC | Arizona | Principal Owner or Manager |
| ATA Lanier Fayetteville Member, LLC | Delaware | Principal Owner or Manager |
| AT ALTUS Cumberland GA II, LLC | Delaware | Principal Owner or Manager |
| AT ALTUS Cumberland GA II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT ALTUS CUMBERLAND GA, LLC | Arizona | Principal Owner or Manager |
| AT ALTUS Cumberland Member, LLC | Delaware | Principal Owner or Manager |
| AT ALTUS ECHELON IN, LLC | Arizona | Principal Owner or Manager |
| AT ALTUS ROSWELL GA, LLC | Arizona | Principal Owner or Manager |
| ATA MERCADO ST. AUGUSTINE FL, LLC | Arizona | Principal Owner or Manager |
| ATA PALENCIA ST. AUGUSTINE FL, LLC | Arizona | Principal Owner or Manager |
| ATA PLAZA OK, LLC | Arizona | Principal Owner or Manager |
| ATA PRESTON PLAZA KY, LLC | Arizona | Principal Owner or Manager |
| ATA ROGERS BRIDGE GA, LLC | Arizona | Principal Owner or Manager |
| ATA STONE LITHONIA GA, LLC | Arizona | Principal Owner or Manager |
| ATA TRINITY PLACE TN, LLC | Arizona | Principal Owner or Manager |
| AT Auburn Plaza IN II, LLC | Delaware | Principal Owner or Manager |
| AT Auburn Plaza IN II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT Auburn Plaza IN, LLC | Indiana | Principal Owner or Manager |
| AT Auburn Plaza Member, LLC | Delaware | Principal Owner or Manager |
| AT BELLEVILLE CROSSING IL-INLINE, LLC | Arizona | Principal Owner or Manager |
| AT BELLEVILLE CROSSING IL-OUTLOTS LLC | Arizona | Principal Owner or Manager |
| AT Bloomington IL, LLC | Arizona | Principal Owner or Manager |
| AT BOUTTE LA, LLC | Arizona | Principal Owner or Manager |
| AT BRIARGATE IL, LLC | Arizona | Principal Owner or Manager |
| AT BUENA VISTA GA, LLC | Arizona | Principal Owner or Manager |
| AT Canal Winchester OH, LLC | Arizona | Principal Owner or Manager |
| AT CASTLETON IN ASSOCIATION MANAGER, LLC | Delaware | Principal Owner or Manager |
| AT Castleton IN Member II, LLC | Delaware | Principal Owner or Manager |
| AT Castleton IN Member, LLC | Delaware | Principal Owner or Manager |
| AT Castleton IN Member, LLC | Delaware | Principal Owner or Manager |
| AT Castleton IN Owner II, LLC | Arizona | Principal Owner or Manager |
| AT CASTLETON IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT Castleton IN Owner, LLC | Delaware | Principal Owner or Manager |
| AT CASTLETON IN OWNER, LLC | Arizona | Principal Owner or Manager |
| AT CEDARTOWN GA, LLC | Arizona | Principal Owner or Manager |
| AT CEDARTOWN GA OUTLOT, LLC | Arizona | Principal Owner or Manager |
| AT CENTERVILLE GA, LLC | Arizona | Principal Owner or Manager |
| AT COLONY FITZGERALD GA LLC | Arizona | Principal Owner or Manager |

**AFFILIATED ENTITIES**

| COMPANY NAME | DOM STATE | Owner Relationship |
|---|---|---|
| AT CONCORD, LLC | Arizona | Principal Owner or Manager |
| At Dillon SC Outlot, LLC | Arizona | Principal Owner or Manager |
| AT Eastman GA II, LLC | Arizona | Principal Owner or Manager |
| AT Eastman GA II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT EASTMAN GA, LLC | Georgia | Principal Owner or Manager |
| AT EASTMAN GA, LLC | Arizona | Principal Owner or Manager |
| AT Eastman Member, LLC | Delaware | Principal Owner or Manager |
| AT Elyria OH Inline, LLC | Arizona | Principal Owner or Manager |
| AT Elyria OH Outlot, LLC | Arizona | Principal Owner or Manager |
| AT FL Construction, LLC | Florida | Principal Owner or Manager |
| AT FORUM KY MEMBER II, LLC | Delaware | Principal Owner or Manager |
| AT FORUM KY MEMBER, LLC | Delaware | Principal Owner or Manager |
| AT Forum KY Member, LLC | Delaware | Principal Owner or Manager |
| AT FORUM LOUISVILLE KY II, LLC | Delaware | Principal Owner or Manager |
| ATG REIT RSC, LP | Delaware | Principal Owner or Manager |
| AT HL Burlington IA II, LLC | Delaware | Principal Owner or Manager |
| AT HL Burlington IA II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT HL BURLINGTON IA, LLC | Arizona | Principal Owner or Manager |
| AT HL Burlington Member, LLC | Delaware | Principal Owner or Manager |
| AT Jefferson Center FW IN, LLC | Arizona | Principal Owner or Manager |
| AT JEFFERSON CENTER FW IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT JPM LINDENHURST IL, LLC | Arizona | Principal Owner or Manager |
| AT Lima Plaza FW IN, LLC | Arizona | Principal Owner or Manager |
| AT LIMA PLAZA FW IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT LINDENHURST IL, LLC | Arizona | Principal Owner or Manager |
| AT Longview Member, LLC | Delaware | Principal Owner or Manager |
| AT LONGVIEW OUTLOT NORTHEAST, LLC | Arizona | Principal Owner or Manager |
| AT LONGVIEW OUTLOT WEST, LLC | Arizona | Principal Owner or Manager |
| AT Longview TX II, LLC | Delaware | Principal Owner or Manager |
| AT Longview TX II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT LONGVIEW TX, LLC | Arizona | Principal Owner or Manager |
| AT LUBBOCK TX, LLC | Arizona | Principal Owner or Manager |
| AT Max FW IN, LLC | Arizona | Principal Owner or Manager |
| AT MAX FW IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT Mayodan Member, LLC | Delaware | Principal Owner or Manager |
| AT Mayodan NC II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT MAYODAN NC, LLC | Arizona | Principal Owner or Manager |
| AT Mayoden NC II, LLC | Delaware | Principal Owner or Manager |
| AT MF VEGAS, LLC | Arizona | Principal Owner or Manager |
| AT MIDWAY ELYRIA OH, LLC | Arizona | Principal Owner or Manager |
| AT ML Leasehold HI, LLC | Delaware | Principal Owner or Manager |
| AT ML Management HI LLC | Delaware | Principal Owner or Manager |
| AT MMH HI LLC | Delaware | Principal Owner or Manager |
| AT NEW LENOX IL - GL, LLC | Arizona | Principal Owner or Manager |
| AT New Lenox IL-Inline II, LLC | Delaware | Principal Owner or Manager |
| AT New Lenox IL-Inline II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT NEW LENOX IL- INLINE, LLC | Arizona | Principal Owner or Manager |
| AT New Lenox-IL Member, LLC | Delaware | Principal Owner or Manager |
| AT NEW LENOX IL-OUTLOTS, LLC | Arizona | Principal Owner or Manager |
| At New West Clifton CO, LLC | Arizona | Principal Owner or Manager |
| AT OLATHE MANAGER, LLC | Arizona | Principal Owner or Manager |
| AT Olathe Manager, LLC | Delaware | Principal Owner or Manager |
| AT Pine Valley FW IN, LLC | Arizona | Principal Owner or Manager |
| AT PINE VALLEY FW IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT Plainfield Village IN II, LLC | Delaware | Principal Owner or Manager |
| AT Plainfield Village IN II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT Plainfield Village IN, LLC | Arizona | Principal Owner or Manager |
| AT Plainfield Village Member, LLC | Delaware | Principal Owner or Manager |
| AT Portland Commons IN, LLC | Arizona | Principal Owner or Manager |
| AT PORTLAND COMMONS IN OWNER, LLC | Delaware | Principal Owner or Manager |
| AT PT Danville IL II, LLC | Delaware | Principal Owner or Manager |
| AT PT Danville IL II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT PT DANVILLE IL, LLC | Arizona | Principal Owner or Manager |
| AT PT Danville Member, LLC | Delaware | Principal Owner or Manager |
| AT Salem IL Outlot, LLC | Arizona | Principal Owner or Manager |
| AT SALISBURY NC OUTLOT, LLC | Arizona | Principal Owner or Manager |
| AT SANDERSVILLE GA, LLC | Arizona | Principal Owner or Manager |
| AT Seven Hills Aurora CO II, LLC | Delaware | Principal Owner or Manager |
| AT Seven Hills Aurora CO II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT SEVEN HILLS AURORA CO, LLC | Arizona | Principal Owner or Manager |
| AT Seven Hills Aurora CO, LLC | Arizona | Principal Owner or Manager |
| AT Seven Hills Aurora Member, LLC | Delaware | Principal Owner or Manager |
| AT STATESBORO SQUARE GA, LLC | Arizona | Principal Owner or Manager |
| AT Suffolk VA 2B-2, LLC | Arizona | Principal Owner or Manager |
| AT Suffolk VA 2B-3, LLC | Arizona | Principal Owner or Manager |
| AT Suffolk VA 2B-5, LLC | Arizona | Principal Owner or Manager |
| AT Suffolk VA 2B-6, LLC | Arizona | Principal Owner or Manager |
| At Suffolk VA BWW, LLC | Arizona | Principal Owner or Manager |
| AT Suffolk VA SC, LLC | Arizona | Principal Owner or Manager |
| AT SUWANEE DEPOT GA, LLC | Arizona | Principal Owner or Manager |
| AT Sweden Member, LLC | Delaware | Principal Owner or Manager |
| AT Sweden NY II, LLC | Delaware | Principal Owner or Manager |
| AT Sweden NY II, LLC   (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT SWEDEN NY, LLC | Arizona | Principal Owner or Manager |
| AT SWEDEN NY OUTLOT, LLC | Arizona | Principal Owner or Manager |

**AFFILIATED ENTITIES**

| COMPANY NAME | DOM STATE | Owner Relationship |
|---|---|---|
| AT TIFFANY SQUARE ROCKY MOUNT NC, LLC | Arizona | Principal Owner or Manager |
| AT TOWNE SQUARE ROME GA, LLC | Arizona | Principal Owner or Manager |
| AT Villa Platte LA II, LLC | Delaware | Principal Owner or Manager |
| AT Villa Platte Member, LLC | Delaware | Principal Owner or Manager |
| AT Ville Platte LA II, LLC (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| AT VILLE PLATTE LA, LLC | Arizona | Principal Owner or Manager |
| AT WHEATLAND NAPERVILLE IL, LLC | Arizona | Principal Owner or Manager |
| AT Wildwood Plaza MO, LLC | Arizona | Principal Owner or Manager |
| BDS, L.L.C. | Alabama | Principal Owner or Manager |
| BDS, L.L.C. OF ALABAMA | Arizona | Principal Owner or Manager |
| Belleville IL Outlot 6, LLC | Delaware | Principal Owner or Manager |
| Black Point Rd, LLC | Kansas | Principal Owner or Manager |
| Brewhouse Center Court, LLC | Indiana | Principal Owner or Manager |
| Castleton Shopping Center MK Disposition, LLC | Delaware | Principal Owner or Manager |
| CASTLETON SHOPPING CENTER MK DISPOSITION, LLC | Arizona | Principal Owner or Manager |
| CHOVIA SHOPS MT AIRY NC, LLC | North Carolina | Principal Owner or Manager |
| CSL INVESTMENTS, LLC | Indiana | Principal Owner or Manager |
| DB COMMERCIAL MANAGEMENT, LLC | Arizona | Principal Owner or Manager |
| THE EXCHANGE PLAINWELL MI, LLC | Arizona | Principal Owner or Manager |
| Fishville Kiosk Member, LLC | Delaware | Principal Owner or Manager |
| FK TELLURIDE, LLC | Delaware | Principal Owner or Manager |
| FV Building 13, LLC | Delaware | Principal Owner or Manager |
| FV BUILDING 15, LLC | Delaware | Principal Owner or Manager |
| HarbourView Marketplace, LLC | Arizona | Principal Owner or Manager |
| HarbourView Station West, LLC | Arizona | Principal Owner or Manager |
| HELENA STAR MT, LLC | Arizona | Principal Owner or Manager |
| HV GARDENS, LLC | Indiana | Principal Owner or Manager |
| JB Fishville Harbor Land LLC | Arizona | Principal Owner or Manager |
| JB Fishville Retail Land LLC | Arizona | Principal Owner or Manager |
| JB Forum Land, LLC | Arizona | Principal Owner or Manager |
| JBM ACQUISITIONS LLC | Arizona | Principal Owner or Manager |
| JBM ACQUISTIONS LLC | Indiana | Principal Owner or Manager |
| JB ML Land HI, LLC | Delaware | Principal Owner or Manager |
| JB OLATHE OUTLOT 2, LLC | Delaware | Principal Owner or Manager |
| JB RE Investments, LLC | Delaware | Principal Owner or Manager |
| JB Seven Hills, LLC | Delaware | Principal Owner or Manager |
| JB Seven Hills, LLC | Arizona | Principal Owner or Manager |
| JB Transportation, LLC | Delaware | Principal Owner or Manager |
| JJ Restaurant Holdings, LLC | Delaware | Principal Owner or Manager |
| JML BC G4, LLC | Arizona | Principal Owner or Manager |
| JML MANAGER, LLC | Arizona | Principal Owner or Manager |
| JML Trust Manager, LLC | Delaware | Principal Owner or Manager |
| Jonathan M. Larmore (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| LABALME TRAIL, LLC | Arizona | Principal Owner or Manager |
| LEGAL FLOAT LENDING, LLC | Arizona | Principal Owner or Manager |
| LOUISVILLE RESTAURANT PARTNERS, LLC | Delaware | Principal Owner or Manager |
| LOWER 5629 ROCKRIDGE ROAD, LLC | Arizona | Principal Owner or Manager |
| LUTHERAN EYE CARE, LLC | Indiana | Principal Owner or Manager |
| Michelle A. Larmore (agmt dated 2/5/2020) | New York | Principal Owner or Manager |
| Montgomery Mattress, LLC | Arizona | Principal Owner or Manager |
| Montgomery Mattress, LLC | Alabama | Principal Owner or Manager |
| MORRISON ISLAND, LLC | Arizona | Principal Owner or Manager |
| NORTH EAST WAWASEE, LLC | Arizona | Principal Owner or Manager |
| PG Hospitality, LLC | Delaware | Principal Owner or Manager |
| PG Waterfront Hospitality, LLC | Delaware | Principal Owner or Manager |
| PT PLAZA, LLC | Arizona | Principal Owner or Manager |
| SAML BAR AND GRILL, LLC | Delaware | Principal Owner or Manager |
| Spike Holdings AZ, LLC | Arizona | Principal Owner or Manager |
| STAR MT, LLC | Arizona | Principal Owner or Manager |
| STAR OH, LLC | Arizona | Principal Owner or Manager |
| UPPER 5629 ROCKRIDGE ROAD, LLC | Arizona | Principal Owner or Manager |
| WALCENT ARKADELPHIA AK, LLC | Arizona | Principal Owner or Manager |
| WALCENT ELK/IN, LLC | Indiana | Principal Owner or Manager |
| WALCENT KENDALLVILLE IN, LLC | Arizona | Principal Owner or Manager |
| WALCENT LAWTON OK, LLC | Arizona | Principal Owner or Manager |
| WALCENT MORRILTON AK, LLC | Arizona | Principal Owner or Manager |
| WALCENT NEWC/IN, LLC | Indiana | Principal Owner or Manager |
| WALCENT PLAINWELL MI, LLC | Arizona | Principal Owner or Manager |
| WALCENT SHELBY MI, LLC | Arizona | Principal Owner or Manager |
| WALCENT SHOPS SUWANEE GA, LLC | Georgia | Principal Owner or Manager |
| WALCENT WAYNESBORO MS, LLC | Arizona | Principal Owner or Manager |
| WAWASEE WATERCRAFTS, LLC | Arizona | Principal Owner or Manager |
| Wheatland Crossing Owners Association | Illinois | Principal Owner or Manager |
| Wheatland Marketplace Lot 7 Condominium Assn. | Illinois | Principal Owner or Manager |
| WHITEFISH OPPORTUNITY FUND, LLC | Delaware | Principal Owner or Manager |

# **EXHIBIT 23**

## **List of ArciTerra Properties**

| Dom Juris | Entity Id | Name | Date | Last Renew | Juris | Service Type | Rep Type | NRAI Invoices 2022 |
|---|---|---|---|---|---|---|---|---|
| DE | 9402089427 | 1000 West Marion PG FL, LLC | 02/11/2020 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9402301609 | 1001 W MARION AVE UNIT 21 FL, LLC | 12/12/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9402150472 | 11827 N. OGDEN POINT ROAD, LLC | 07/07/2020 | 06/01/2021 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000389766 | 1921 Gallatin Pike Nashville TN, LLC | 11/27/2006 | 01/01/2022 | TN | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 10000360393 | 2006 OPERATING PARTNERSHIP, L.P. | 03/31/2006 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Partnership) | |
| DE | 10000360393 | 2006 OPERATING PARTNERSHIP, L.P. | 09/22/2008 | 01/01/2022 | AL | Foreign | Foreign Representation (Limited Partnership) | |
| DE | 10000360393 | 2006 OPERATING PARTNERSHIP, L.P. | 08/18/2011 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Partnership) | |
| AZ | 10000344884 | 2513 E North Street Kendallville IN, LLC | 11/08/2005 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000344881 | 412 Cross Oaks Mall Plainwell MI, LLC | 11/10/2005 | 01/01/2022 | MI | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000414833 | 5339 Elvis Presley Blvd. Memphis TN, LLC | 05/21/2007 | 01/01/2022 | TN | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000352107 | 5450 US Highway 80 East Pearl MS, LLC | 01/20/2006 | 01/01/2022 | MS | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000433160 | 60 Colonial Promenade Parkway Alabaster AL, LLC | 09/24/2007 | 01/01/2022 | AL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 9401972904 | 601 Retta FL, LLC | 05/15/2019 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000405753 | 601 Trenton Road McAllen TX, LLC | 03/20/2007 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 9401972879 | 613 Retta FL, LLC | 05/15/2019 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000456284 | 700 North Grand Avenue MT. Pleasant, IA, LLC | 02/07/2008 | 01/01/2022 | IA | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 9401897999 | 751 W Retta Esplanade FL, LLC | 10/09/2018 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| NC | 10000320585 | 752 SOUTH ANDY GRIFFITH PARKWAY MT AIRY NC, LLC | 11/20/2005 | 01/01/2022 | NC | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9401973505 | 7525 PINE VALLEY LANE OWNER, LLC | 05/03/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000401397 | 8001 Vaughn Road Montgomery AL, LLC | 02/23/2007 | 01/01/2022 | AL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000358261 | 81 Jameson lane Greenville AL, LLC | 03/21/2006 | 01/01/2022 | AL | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 9401937693 | 880 W MARION AVE FL, LLC | 01/29/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9401688807 | 900 West Marion Avenue FL, LLC | 04/03/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9401688807 | 900 West Marion Avenue FL, LLC | 05/17/2017 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 9401937285 | ALOHA POP UP PRODUCTIONS, LLC | 01/29/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000443415 | ARCITERRA BELL YORK SC, LLC | 11/16/2007 | 01/01/2022 | SC | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000480294 | ARCITERRA BP OLATHE KS, LLC | 06/11/2008 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 9401783418 | Arciterra Commercial Property REIT, LP | 12/15/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Partnership) | |
| MD | 9401797090 | Arciterra Commerical Property REIT, Inc. | 12/15/2017 | 01/01/2022 | MD | Domestic | Domestic Representation (Business Corporation) | |
| AZ | 9401903620 | Arciterra Companies, LLC | 10/25/2018 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 9402105412 | Arciterra Design & Landscaping, LLC | 06/23/2020 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 9401933354 | ARCITERRA DESIGN, LLC | 01/07/2019 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 10000414338 | ARCITERRA FD BOWMAN SC, LLC | 05/18/2007 | 01/01/2022 | SC | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000414337 | ARCITERRA FD EHRHARDT SC, LLC | 05/18/2007 | 01/01/2022 | SC | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000414336 | ARCITERRA FD GREELEYVILLE SC, LLC | 05/18/2007 | 01/01/2022 | SC | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000414334 | ARCITERRA FD TUBERVILLE SC, LLC | 03/10/2016 | 01/01/2022 | SC | Foreign | Foreign Representation (Limited Liability Company) | |
| *AZ* | *Not with NRAI* | *ARCITERRA GROUP, LLC* | *3/30/2005* | *1/1/2022* | *AZ* | *Domestic* | *Domestic Representation (Jonathan Larmore is registered Agent)* | |
| AZ | 10000302019 | ARCITERRA GROUP, LLC | 07/06/2012 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000302019 | ARCITERRA GROUP, LLC | 06/15/2015 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000302019 | ARCITERRA GROUP, LLC | 04/09/2007 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000302019 | ARCITERRA GROUP, LLC | 03/27/2007 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 10000393124 | ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC | 12/20/2006 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 10000393124 | ARCITERRA MICHIGAN ROAD INDIANAPOLIS IN, LLC | 08/21/2007 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 10000487949 | ARCITERRA NATIONAL REIT LP | 07/21/2008 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Partnership) | |
| DE | 10000487949 | ARCITERRA NATIONAL REIT LP | 08/18/2011 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Partnership) | |
| MD | 10000487950 | ARCITERRA NATIONAL REIT, INC. | 07/21/2008 | 01/01/2022 | MD | Domestic | Domestic Representation (Business Corporation) | |
| AZ | 10000475615 | ARCITERRA NOBLE WEST NOBLESVILLE IN, LLC | 05/20/2008 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000498095 | ARCITERRA NOTE ADVISORS II, LLC | 09/22/2008 | 01/01/2022 | AL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000482963 | ARCITERRA OLATHE POINTE OLATHE KS LLC | 06/25/2008 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Liability Company) | |
| DE | 10000481769 | ARCITERRA OPPORTUNITY FUND I, LLC | 06/16/2008 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| MD | 10000361349 | ARCITERRA REAL ESTATE INVESTMENT TRUST, INC. | 03/31/2006 | 01/01/2022 | MD | Domestic | Domestic Representation (Business Corporation) | |
| DE | 9401861618 | ARCITERRA REIT I MEMBER, LLC | 11/21/2013 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9401239614 | ArciTerra REIT I Member, LLC | 12/16/2013 | 01/01/2022 | DE | Domestic | Independent Director / Manager Services | |
| AZ | 10000683550 | ARCITERRA REIT RSC, LP | 08/18/2011 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Partnership) | |
| AZ | 10000464741 | ARCITERRA STAR LANCASTER OH, LLC | 03/25/2008 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 10000654738 | ARCITERRA STRATEGIC INCOME CORPORATION-BELLEVILLE CROSSING IL | 06/24/2011 | 01/01/2022 | MD | Foreign | Foreign Representation (Business Corporation) | |
| AZ | 9401712572 | Arciterra Strategic Retail - Suffolk VA, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 9401361833 | ARCITERRA STRATEGIC RETAIL ADVISOR, LLC | 10/01/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) | |
| AZ | 9401448486 | ArciTerra Strategic Retail Advisor, LLC | 06/24/2015 | | TN | Foreign | Foreign Representation (Limited Liability Company) | |
| MD | 9401559068 | ARCITERRA STRATEGIC RETAIL REIT, INC. | 05/10/2016 | 01/01/2022 | MD | Domestic | Domestic Representation (Business Corporation) | |
| DE | 9401491577 | ArciTerra Strategic Retail-Elyria OH, LLC | 10/26/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| DE | 9401550111 | ARCITERRA STRATEGIC RETAIL-PLAINFIELD VILLAGE IN, LLC | 09/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) | |
| AZ | 9401338077 | ARCITERRA STRATEGIC RETAIL-WHEATLAND IL, LLC | 09/24/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| AZ | 10000420878 | ARCITERRA USB NEW ALBANY OH, LLC | 06/26/2007 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000420559 | ARCITERRA USB ROCHESTER MN, LLC | 06/26/2007 | 01/01/2022 | MN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000423583 | ARCITERRA VERMONT INDIANAPOLIS IN, LLC | 07/19/2007 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000351155 | ARCITERRA VN CLARKSVILLE TN, LLC | 01/20/2006 | 01/01/2022 | TN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000351159 | ARCITERRA VN DICKSON TN, LLC | 01/20/2006 | 01/01/2022 | TN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042531 | Arciterra Westgage Indianapolis Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042292 | Arciterra Westgate Indianapolis IN II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042292 | Arciterra Westgate Indianapolis IN II, LLC | 11/27/2019 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063117 | Arciterra Westgate Indianapolis IN II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| DE | 10000393127 | ARCITERRA WESTGATE INDIANAPOLIS IN, LLC | 12/20/2006 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 10000393127 | ARCITERRA WESTGATE INDIANAPOLIS IN, LLC | 04/12/2007 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000417462 | ARCITERRA WG MILWAUKEE WI, LLC | 06/01/2007 | 01/01/2022 | WI | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402036326 | ASR REIT LP | 10/07/2016 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Partnership) |
| DE | 9402042413 | AT ALTUS Cumberland GA II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042413 | AT ALTUS Cumberland GA II, LLC | 11/27/2019 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063136 | AT ALTUS Cumberland GA II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 10000596186 | AT ALTUS CUMBERLAND GA, LLC | 05/28/2010 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042335 | AT ALTUS Cumberland Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000636308 | AT ALTUS ECHELON IN, LLC | 03/16/2011 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000596185 | AT ALTUS ROSWELL GA, LLC | 05/28/2010 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042303 | AT Auburn Plaza IN II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042303 | AT Auburn Plaza IN II, LLC | 11/27/2019 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063141 | AT Auburn Plaza IN II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| IN | 9401454388 | AT Auburn Plaza IN, LLC | 07/09/2015 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042070 | AT Auburn Plaza Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000659904 | AT BELLEVILLE CROSSING IL-INLINE, LLC | 08/04/2011 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000659905 | AT BELLEVILLE CROSSING IL-OUTLOTS, LLC | 08/04/2011 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401500309 | AT Bloomington IL, LLC | 11/19/2015 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401501910 | AT BOUTTE LA, LLC | 11/20/2015 | 01/01/2022 | LA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401283760 | AT BRIARGATE IL, LLC | 04/28/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401613931 | AT Canal Winchester OH, LLC | 11/01/2016 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401567309 | AT CASTLETON IN ASSOCIATION MANAGER, LLC | 04/05/2016 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401882194 | AT Castleton IN Member II, LLC | 08/08/2018 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401499763 | AT Castleton IN Member, LLC | 11/17/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401881448 | AT Castleton IN Owner II, LLC | 08/08/2018 | 01/01/2022 | DE | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401881448 | AT Castleton IN Owner II, LLC | 08/21/2018 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401483621 | AT CASTLETON IN OWNER, LLC | 10/01/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401501866 | AT CASTLETON IN OWNER, LLC | 11/19/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401500959 | AT CEDARTOWN GA, LLC | 11/19/2015 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401354849 | AT CENTERVILLE GA, LLC | 10/30/2014 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042351 | AT Eastman GA II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042351 | AT Eastman GA II, LLC | 11/27/2019 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063137 | AT Eastman GA II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401320010 | AT EASTMAN GA, LLC | 08/07/2014 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042567 | AT Eastman Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401900364 | AT Elyria OH Inline, LLC | 10/15/2018 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401900364 | AT Elyria OH Inline, LLC | 11/06/2018 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401900272 | AT Elyria OH Outlot, LLC | 10/15/2018 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401900272 | AT Elyria OH Outlot, LLC | 11/06/2018 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) |
| FL | 9401778748 | AT FL Construction, LLC | 12/06/2017 | 01/01/2022 | FL | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401937286 | AT FORUM KY MEMBER II, LLC | 01/29/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401367857 | AT FORUM KY MEMBER, LLC | 12/09/2014 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401937672 | AT FORUM LOUISVILLE KY II, LLC | 01/29/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401937672 | AT FORUM LOUISVILLE KY II, LLC | 02/12/2019 | 01/01/2022 | KY | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042061 | AT HL Burlington IA II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042061 | AT HL Burlington IA II, LLC | 11/27/2019 | 01/01/2022 | IA | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063118 | AT HL Burlington IA II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401230308 | AT HL BURLINGTON IA, LLC | 11/14/2013 | 01/01/2022 | IA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042552 | AT HL Burlington Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469327 | AT JEFFERSON CENTER FW IN OWNER, LLC | 08/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469327 | AT JEFFERSON CENTER FW IN OWNER, LLC | 09/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401454387 | AT Jefferson Center FW IN, LLC | 07/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401283759 | AT JPM LINDENHURST IL, LLC | 04/28/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401469310 | AT LIMA PLAZA FW IN OWNER, LLC | 08/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DE | 9401469310 | AT LIMA PLAZA FW IN OWNER, LLC | 09/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401454383 | AT Lima Plaza FW IN, LLC | 07/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401281632 | AT LINDENHURST IL, LLC | 04/18/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042341 | AT Longview Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401501875 | AT LONGVIEW OUTLOT NORTHEAST, LLC | 11/18/2015 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401501868 | AT LONGVIEW OUTLOT WEST, LLC | 11/18/2015 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042328 | AT Longview TX II, LLC | 11/26/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042328 | AT Longview TX II, LLC | 10/23/2019 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063142 | AT Longview TX II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401501884 | AT LONGVIEW TX, LLC | 11/23/2015 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401501871 | AT LUBBOCK TX, LLC | 11/18/2015 | 01/01/2022 | TX | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401469304 | AT MAX FW IN OWNER, LLC | 08/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469304 | AT MAX FW IN OWNER, LLC | 09/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401454378 | AT Max FW IN, LLC | 07/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042344 | AT Mayodan Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402129088 | AT Mayodan NC II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402129088 | AT Mayodan NC II, LLC | 11/27/2019 | 01/01/2022 | NC | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063121 | AT Mayodan NC II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401501899 | AT MAYODAN NC, LLC | 11/20/2015 | 01/01/2022 | NC | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042522 | AT Mayoden NC II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042522 | AT Mayoden NC II, LLC | 11/27/2019 | 01/01/2022 | NC | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401464401 | AT MIDWAY ELYRIA OH, LLC | 08/04/2015 | 01/01/2022 | OH | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401687577 | AT ML Leasehold HI, LLC | 04/03/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401687577 | AT ML Leasehold HI, LLC | 05/08/2017 | 01/01/2022 | HI | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401703206 | AT ML Management HI LLC | 05/08/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401703206 | AT ML Management HI LLC | 05/10/2017 | 01/01/2022 | HI | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401703184 | AT MMH HI LLC | 05/08/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401703184 | AT MMH HI LLC | 05/10/2017 | 01/01/2022 | HI | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9402083430 | AT Mt. Pleasant Lot 2, LLC | 03/04/2020 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401205049 | AT NEW LENOX IL - GL, LLC | 09/10/2013 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401205901 | AT NEW LENOX IL- INLINE, LLC | 09/10/2013 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042339 | AT New Lenox IL-Inline II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042339 | AT New Lenox IL-Inline II, LLC | 11/26/2019 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063140 | AT New Lenox IL-Inline II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401205900 | AT NEW LENOX IL-OUTLOTS, LLC | 09/10/2013 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042110 | AT New Lenox-IL Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401747945 | AT New West Clifton CO, LLC | 06/08/2015 | 05/01/2021 | CO | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401334339 | AT OLATHE MANAGER, LLC | 09/11/2014 | 01/01/2022 | DE | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401339984 | AT Olathe Manager, LLC | 09/25/2014 | 01/01/2022 | DE | Domestic | Independent Director / Manager Services |
| AZ | 9402271160 | AT OLATHE OUTLOT 5, LLC | 10/13/2021 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9402271160 | AT OLATHE OUTLOT 5, LLC | 10/25/2021 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401469303 | AT PINE VALLEY FW IN OWNER, LLC | 08/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469303 | AT PINE VALLEY FW IN OWNER, LLC | 09/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401454374 | AT Pine Valley FW IN, LLC | 07/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042319 | AT Plainfield Village IN II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042319 | AT Plainfield Village IN II, LLC | 11/27/2019 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063116 | AT Plainfield Village IN II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401469302 | AT Plainfield Village IN, LLC | 08/24/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042576 | AT Plainfield Village Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469329 | AT PORTLAND COMMONS IN OWNER, LLC | 08/24/2015 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401469329 | AT PORTLAND COMMONS IN OWNER, LLC | 09/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401454220 | AT Portland Commons IN, LLC | 07/09/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042053 | AT PT Danville IL II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042053 | AT PT Danville IL II, LLC | 11/26/2019 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063139 | AT PT Danville IL II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401383748 | AT PT DANVILLE IL, LLC | 01/27/2015 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042111 | AT PT Danville Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401500305 | AT Salem IL Outlot, LLC | 11/19/2015 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401501902 | AT SALISBURY NC OUTLOT, LLC | 11/24/2015 | 01/01/2022 | NC | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401319562 | AT SANDERSVILLE GA, LLC | 08/06/2014 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042019 | AT Seven Hills Aurora CO II, LLC | 11/26/2019 | 01/01/2022 | CO | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042019 | AT Seven Hills Aurora CO II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| NY | 9402063135 | AT Seven Hills Aurora CO II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401436826 | AT SEVEN HILLS AURORA CO, LLC | 05/27/2015 | 01/01/2022 | CO | Foreign | Foreign Representation (Limited Liability Company) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DE | 9402042349 | AT Seven Hills Aurora Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401712559 | AT Suffolk VA 2B-2, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401712575 | AT Suffolk VA 2B-3, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401712574 | AT Suffolk VA 2B-5, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401712554 | AT Suffolk VA 2B-6, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401712573 | At Suffolk VA BWW, LLC | 06/06/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401707323 | AT Suffolk VA SC, LLC | 05/19/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042579 | AT Sweden Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042043 | AT Sweden NY II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042043 | AT Sweden NY II, LLC | 11/27/2019 | 01/01/2022 | NY | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063120 | AT Sweden NY II, LLC   (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401507075 | AT SWEDEN NY, LLC | 12/09/2015 | 01/01/2022 | NY | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401735156 | AT SWEEDEN NY OUTLOT, LLC | 08/02/2017 | 01/01/2022 | NY | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042509 | AT Villa Platte LA II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042509 | AT Villa Platte LA II, LLC | 11/27/2019 | 01/01/2022 | LA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042877 | AT Villa Platte Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| NY | 9402063119 | AT Ville Platte LA II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| AZ | 9401501907 | AT VILLE PLATTE LA, LLC | 11/20/2015 | 01/01/2022 | LA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401289861 | AT WHEATLAND NAPERVILLE IL, LLC | 05/14/2014 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401470955 | AT Wildwood Plaza MO, LLC | 08/21/2015 | 01/01/2022 | MO | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000712029 | ATA FISHVILLE FL, LLC | 07/02/2012 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401213762 | ATA FISHVILLE MANAGEMENT, LLC | 07/06/2012 | | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000718896 | ATA FORUM LOUISVILLE,LLC | 11/02/2012 | 01/01/2022 | KY | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000681119 | ATA HIRAM SQUARE GA, LLC | 01/31/2012 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402042268 | ATA Lanier Fayetteville GA II, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402042268 | ATA Lanier Fayetteville GA II, LLC | 11/27/2019 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| NY | 9402063138 | ATA Lanier Fayetteville GA II, LLC (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| DE | 9402042350 | ATA Lanier Fayetteville Member, LLC | 10/23/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000700964 | ATA MERCADO ST. AUGUSTINE FL, LLC | 06/05/2012 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000700967 | ATA PALENCIA ST. AUGUSTINE FL, LLC | 06/05/2012 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401153878 | ATA PLAZA OK, LLC | 04/03/2013 | 01/01/2022 | OK | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000709231 | ATA PRESTON PLAZA KY, LLC | 08/14/2012 | 01/01/2022 | KY | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000684574 | ATA STONE LITHONIA GA, LLC | 02/27/2012 | 01/01/2022 | GA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000651342 | ATA TRINITY PLACE TN, LLC | 06/08/2011 | 01/01/2022 | TN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 10000574094 | ATG REIT RSC, LP | 12/31/2009 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Partnership) |
| DE | 10000574094 | ATG REIT RSC, LP | 02/04/2021 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Partnership) |
| AL | 10000536600 | BDS, L.L.C. | 03/06/2007 | 01/01/2022 | AL | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401995753 | Belleville IL Outlot 6, LLC | 06/19/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401995753 | Belleville IL Outlot 6, LLC | 07/31/2019 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| KS | 9401866287 | Black Point Rd, LLC | 07/06/2018 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| KS | 9401866287 | Black Point Rd, LLC | 07/06/2018 | 01/01/2022 | KS | Domestic | Domestic Representation (Limited Liability Company) |
| IN | 9401801232 | Brewhouse Center Court, LLC | 01/17/2018 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| IN | 9402119797 | CASTLETON CORNER OWNERS ASSOCIATION, INC. | 05/06/1987 | 01/01/2022 | IN | Domestic | Domestic Representation (Business Corporation) |
| AZ | 9401501890 | CASTLETON SHOPPING CENTER MK DISPOSITION, LLC | 11/20/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402314450 | Consolidated Restaurant Holdings, LLC | 12/30/2021 | | DE | Domestic | Domestic Representation (Limited Liability Company) |
| IN | 10000323317 | CSL INVESTMENTS, LLC | 01/06/2005 | 01/01/2022 | AZ | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 10000323317 | CSL INVESTMENTS, LLC | 08/24/2011 | 01/01/2022 | IL | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 10000323317 | CSL INVESTMENTS, LLC | 04/05/2002 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| FL | 9402195627 | FISHVILLE CONTENDER 35, LLC | 03/16/2021 | 01/01/2022 | FL | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401679394 | Fishville Kiosk Member, LLC | 03/16/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402282507 | FISHVILLE MARINA, LLC | 05/24/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401555939 | FK TELLURIDE, LLC | 05/04/2016 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401999585 | FV Building 13, LLC | 07/30/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401963422 | FV BUILDING 15, LLC | 04/11/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401963422 | FV BUILDING 15, LLC | 05/06/2019 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401750928 | HarbourView Marketplace, LLC | 09/13/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401750946 | HarbourView Station West, LLC | 09/13/2017 | 01/01/2022 | VA | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 10000589493 | HV GARDENS, LLC | 04/08/2010 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401663094 | JB Fishville Harbor Land LLC | 11/21/2016 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401663071 | JB Fishville Retail Land LLC | 11/21/2016 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401984138 | JB Forum Land, LLC | 04/23/2019 | 01/01/2022 | DE | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401984138 | JB Forum Land, LLC | 05/30/2019 | 01/01/2022 | KY | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401686852 | JB ML Land HI, LLC | 04/03/2017 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401686852 | JB ML Land HI, LLC | 05/08/2017 | 01/01/2022 | HI | Foreign | Foreign Representation (Limited Liability Company) |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| DE | 9401563234 | JB OLATHE OUTLOT 2, LLC | 05/31/2016 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401563234 | JB OLATHE OUTLOT 2, LLC | 03/15/2017 | 01/01/2022 | KS | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401610925 | JB RE Investments, LLC | 10/26/2016 | | CO | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401610925 | JB RE Investments, LLC | 10/21/2016 | | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401610931 | JB Seven Hills, LLC | 10/26/2016 | | CO | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401610931 | JB Seven Hills, LLC | 10/21/2016 | | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401987632 | JB Transportation, LLC | 06/25/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401560783 | JBM ACQUISTIONS LLC | 04/23/2015 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 9401424318 | JBM ACQUISTIONS LLC | 04/23/2015 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401999590 | JJ Restaurant Holdings, LLC | 07/30/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401973522 | JML BC G4, LLC | 05/09/2019 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9402234435 | JML BC G400, LLC | 07/14/2021 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401573686 | JML MANAGER, LLC | 06/28/2016 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401610929 | JML Trust Manager, LLC | 10/26/2016 | | CO | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401610929 | JML Trust Manager, LLC | 10/21/2016 | | DE | Domestic | Domestic Representation (Limited Liability Company) |
| NY | 9402063134 | Jonathan M. Larmore (agmt dated 2/5/2020) | 02/05/2020 | | NY | Domestic | Contract Agency |
| AZ | 10000589311 | LABALME TRAIL, LLC | 04/06/2010 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401747921 | LEGAL FLOAT LENDING, LLC | 09/05/2017 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9401937230 | LOUISVILLE RESTAURANT PARTNERS, LLC | 01/30/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000701229 | LOWER 5629 ROCKRIDGE ROAD, LLC | 06/07/2012 | 01/01/2022 | CO | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 10000590227 | LUTHERAN EYE CARE, LLC | 04/08/2010 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| NY | 9402063115 | Michelle A. Larmore (agmt dated 2/5/2020) | 02/05/2020 | 01/01/2022 | NY | Domestic | Contract Agency |
| DE | 9402249610 | ML Opening Payroll, LLC | 08/23/2021 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402249610 | ML Opening Payroll, LLC | 09/07/2021 | 01/01/2022 | HI | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9402298847 | ML STEAK & SEAFOOD, LLC | 11/23/2021 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AL | 9401163899 | Montgomery Mattress, LLC | 05/02/2013 | 01/01/2022 | AL | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000589305 | MORRISON ISLAND, LLC | 04/06/2010 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000585290 | NORTH EAST WAWASEE, LLC | 03/08/2010 | 01/01/2022 | IN | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402068502 | PG Hospitality, LLC | 01/29/2020 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402068502 | PG Hospitality, LLC | 02/13/2020 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9401937697 | SAML BAR AND GRILL, LLC | 01/29/2019 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401950386 | Spike Holdings AZ, LLC | 03/08/2019 | 01/01/2022 | FL | Foreign | Foreign Representation (Limited Liability Company) |
| DE | 9402314453 | Sunset Beach Club PG, LLC | 01/06/2022 | | DE | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 9401160412 | THE EXCHANGE PLAINWELL MI, LLC | 04/25/2013 | 01/01/2022 | MI | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000701231 | UPPER 5629 ROCKRIDGE ROAD, LLC | 06/07/2012 | 01/01/2022 | DE | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000318337 | WALCENT ARKADELPHIA AK, LLC | 12/06/2004 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000318337 | WALCENT ARKADELPHIA AK, LLC | 12/28/2004 | 01/01/2022 | AR | Foreign | Foreign Representation (Limited Liability Company) |
| IN | 10000313159 | WALCENT ELK/IN, LLC | 10/25/2004 | 01/01/2022 | IN | Domestic | Domestic Representation (Limited Liability Company) |
| AZ | 10000318335 | WALCENT LAWTON OK, LLC | 12/23/2004 | 01/01/2022 | OK | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 10000329084 | WALCENT WAYNESBORO MS, LLC | 04/26/2005 | 01/01/2022 | MS | Foreign | Foreign Representation (Limited Liability Company) |
| AZ | 9401987905 | WAWASEE WATERCRAFTS, LLC | 06/25/2019 | 01/01/2022 | AZ | Domestic | Domestic Representation (Limited Liability Company) |
| DE | 9402084081 | White Hawk Consulting, LLC | 03/27/2020 | 01/01/2022 | DE | Domestic | Domestic Representation (Limited Liability Company) |

# EXHIBIT 24

# Special Master Report

Clerk of the Superior Court
*** Electronically Filed ***
C. Cruz, Deputy
10/3/2025 12:20:44 PM
Filing ID 20695572

1 | **BARRY L. BRODY, P.C.**
**005227**
2 | Attorney at Law
10446 North 74th Street
3 | Suite 230
Scottsdale, Arizona 85258
4 | (602) 381-0111
5 | grh@divorceaz.com

6 |

7 | Court-Appointed Special Master

8 |

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

9 |

## IN AND FOR THE COUNTY OF MARICOPA

10 |

11 |

12 | **In Re the Marriage of** )
)                NO. FC 2023-001520
13 | MICHELLE LARMORE,            )
)
14 |            **Petitioner,** )                **SPECIAL MASTER REPORT**
)                **(09-24-2025)**
15 | **and**                       )
)
16 | JONATHAN LARMORE,            )
)
17 |            **Respondent.** )                **(Assigned to The Hon. Melissa Zabor)**
)
18 | _____ )

19 |

20 |      Below signed was appointed Special Master ("Master") in this matter on February

21 | 16, 2024.  Within this capacity, Master was tasked to resolve various issues concerning

22 | discovery and disclosure.  Those issues were addressed and consolidated by

23 | respective counsel, and unresolved issues were presented to Master at a hearing on

24 | September 24, 2025.

25 |      Most of the information sought by Petitioner ("Wife") is appropriately discoverable

26 | and probably relevant to the instant proceedings.  While the ultimate value of such

27 | discovery is unclear, that does not diminish the need for Wife to be able to review such.

28 |

It is clear that a great number of the documents sought by Wife are somehow interrelated with Respondent's ("Husband") Mother ("Marcia"). While some of the requested documents could possibly be obtained by Wife from other sources, the cost, length of time to do so, and probability of accomplishment greatly outweighs the simplicity that Marcia's cooperation could bring to this action.

Master believes that Marcia has relevant information and documentation. Marcia may or may not have assets in her possession belonging to the marital community. Master believes that Marcia needs to be a part of the instant litigation as an indispensable party so that an immediate disclosure of documents and information can be obtained. In short, Master believes and recommends that this Court should have direct jurisdiction over Marcia to mandate her compliance with certain discovery directives.

It is unclear whether joinder in the instant action, or consolidation with a new action, would be more appropriate here. In either case, Master firmly believes that Marcia must be under this Court's jurisdiction so that specific directives and orders can be given to her to comply with certain appropriate aspects of Wife's discovery and disclosure requests.

**DATED** this 3rd day of October, 2025.

*Barry L. Brody*
Barry L. Brody
Special Master

**ORIGINAL** of the foregoing e-filed this
3rd day of October, 2025, with:

Clerk of the Court
MARICOPA COUNTY SUPERIOR COURT

2

**AND**

**COPY** of the foregoing sent via e-file
through the Court to:

The Honorable Melissa Zabor
MARICOPA COUNTY SUPERIOR COURT

**AND**

**COPY** of the foregoing sent via e-mail this
_3rd_ day of _October_, 2025, to:

Gregg Woodnick
*Attorney for Petitioner*

Mitchell Reichman
*Attorney for Respondent*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 28, 2026, I electronically transmitted the foregoing document with the Clerk of the Court using the CM/ECF systems, which will provide electronic mail notice to all counsel of record.

_____
Allen G. Kadish