**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States Securities and Exchange Commission,<br><br>Plaintiff,<br><br>v.<br><br>Jonathan Larmore, et al.,<br><br>Defendants. | No. CV-23-02470-PHX-DLR<br><br>**ORDER** |

At issue is RH Fund 37, LLC's ("Secured Creditor") Motion for Relief from Stay, or, Alternatively, Instructions to Compel Administration or Abandonment of Property Located at 11751 N. Black Point Road, Syracuse, IN 46567 ("Black Point Property"). (Doc. 479.) The motion is fully briefed (Docs. 522[1], 523, 524, 530) and, for reasons stated below, will be granted in modified form.

**I. Background**

On November 18, 2021, Defendant Jonathan Larmore ("Jonathan"), executed a $2,633,800.00 note in favor of Secured Creditor's predecessor in interest Wintrust

[1] The Receiver styles its response as a "preliminary objection," and purports to "reserve[] the right to file a more fulsome objection should a consensual resolution not be reached." (Doc. 522 at 4.) This is not how motion practice works. Local Rule of Civil Procedure 7.2 governs motion practice in this District, and nothing in that rule authorizes "preliminary responses," nor does it afford any party a "right" to "a more fulsome" response after the close of briefing. Though parties may request permission to supplement their filings, they cannot unilaterally reserve a right to file multiple response briefs. To date, the Receiver has not requested leave to supplement its preliminary objection. To the contrary, as of July 10, 2026, the Receiver stands by its existing objections to Secured Creditor's motion. (*See* Doc. 548).

Mortgage, A Division of Barrington Bank and Trust Co., N.A. ("Wintrust"). (Doc. 530-1 at 5.) To secure payment, Jonathan executed a mortgage in favor of Wintrust. (*Id.* at 10.) The mortgage has since been assigned to Secured Creditor. (*Id.* at 28; Doc. 546-1.)

This action was initiated on November 28, 2023. (Doc. 1.) As part of the litigation, all of Jonathan's assets fell under an asset freeze and litigation injunction ("stay"). (Docs. 77, 154.) The Black Point Property did not become part of the Receivership estate.

Jonathan has been in default on his mortgage on the Black Point Property since just after the litigation began. (Doc. 530-1 at 36.) Because of the stay, Secured Creditor has been unable to exercise its contractual and legal remedies. As of May 1, 2026, the loan balance, not inclusive of attorney fees and costs, is $2,951,506.43, and the reinstatement amount is $553,672.04. (*Id.* at 36-37.) Based on estimates from online sources like Zillow and Redfin, the Black Point Property appears to have an estimated value greater than $6 million, suggesting potential equity. (*Id.* at 39-40.) However, that equity currently remains unrealized, while Secured Creditor's carrying costs and interest continue to accrue.

For this reason, Secured Creditor asks the Court to either (1) grant it relief from the stay so that it may enforce its security with respect to the Black Point Property or, alternatively, (2) impose a structured process to prevent infinite delay in the disposition of the Black Point Property by ordering that the stay will be lifted as to Secured Creditor unless, within 30 days, the Receiver states a formal position regarding the Black Point Property's disposition and commences a sale process. (Docs. 479, 530.)

The Receiver opposes Secured Creditor's motion. (Doc. 522.) The Receiver does not dispute that Jonathan is in default on the Black Point Property mortgage. The Receiver also acknowledges that the Black Point Property is not part of the Receivership estate, having been "transferred out of a receivership entity pre-Receivership[.]" (*Id.* at 4.) But he contends that he may yet "conduct further diligence and potentially bring an action to repatriate the Black Point [P]roperty," and therefore requests that the Court maintain the stay to preserve the possibility that the Receiver may dispose of the Black Point Property in a manner that benefits the entire Receivership estate and not just one creditor. (*Id.* a 3-

4.) Relief Defendant Michelle Larmore ("Michelle") joins the Receiver's objection. (Doc. 524.)

Jonthan opposes Secured Creditor's motion. (Doc. 523.) He argues that Secured Creditor is not harmed by the stay because the considerable equity in the Black Point Property is more than enough to adequately protect and preserve Secured Creditor's position pending resolution of this case and Jonathan's pending divorce proceeding, in which Michelle claims an interest in the Black Point Property. (*Id.* at 4.) Jonathan also argues that the Court cannot order the Receiver to administer or abandon the Black Point Property because the Black Point Property is not part of the Receivership estate. (*Id.*)

**II. Legal Standard**

When analyzing whether to lift or modify a litigation stay imposed in a receivership case, the court balances the interests of the receiver against those of the moving party. *SEC v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985). The court considers "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim." *SEC v. Wencke*, 742 F.2d 1230, 1231 (9th Cir. 1984).

**III. Analysis**

No one disputes that Jonathan is in default on the Black Point Property mortgage and, consequently, that Secured Creditor has a meritorious claim. The parties disagree over whether Secured Creditor is being harmed by the stay and over how to balance the competing interests in this case. The Receiver, Jonathan, and Michelle contend that Secured Creditor is not harmed by the stay because the substantial equity in the Black Point Property adequately protects Secured Creditor's interest, and maintaining the stay merely preserves the status quo. In contrast, they contend lifting the stay will impede the disposition of the Black Point Property in a manner that benefits the entire Receivership estate. Secured Creditor responds that the only status quo the stay maintains is inaction—to date, the Receiver has taken no action to repatriate the Black Point Property or to realize

the potential equity that all parties agree exists. In the meantime, Secured Creditor argues that "interest, escrow costs, and market exposure continue to accrue, steadily diminishing the value of the collateral and any purported equity cushion." (Doc. 530 at 5.)

On balance, the Court finds Secured Creditor's arguments persuasive. Weighing heavily into the Court's balancing of the competing interests is the apparent delay by the Receiver in taking action to repatriate the Black Point Property. Indeed, Secured Creditor represents that it has been in discussions with the Receiver since September 2024 to resolve this issue, to no avail. (Doc. 479 at 3.) The Court is sensitive to the Receiver's interest in maximizing value for the Receivership estate. What's more, "the interests of the Receiver are very broad and include not only protection of the receivership res, but also protection of defrauded investors and considerations of judicial economy" *Universal Fin.*, 760 F.2d at 1038. But the Receiver evidently has taken no action to repatriate the Black Point Property, nor has he articulated any concrete plans for realizing the equity therein. As a result, the Receiver's interest in preserving the stay and the purported harm in lifting it seem hypothetical.

The Court does not find it appropriate to immediately lift the stay, but it agrees with Secured Creditor that something needs to be done to instigate action. The Court tentatively agrees with Jonathan that the Court cannot order the Receiver to commence a sale process because the Black Point Property is not presently part of the Receivership estate. Secured Creditor fails to explain how the Court could authorize the Receiver to administer, abandon, or otherwise dispose of property not within the Receivership estate, and the Receiver's arguments indicate it must first take action to repatriate the Black Point Property before it may sell it. However, the Court can direct the Receiver to take concrete actions to repatriate the Black Point Property, if the Receiver believes such action is warranted. Accordingly,

**IT IS ORDERED** that Secured Creditor's motion (Doc. 479) is **granted in part** as follows: within **<u>30 days</u>** of this order, the Receiver must either (1) take action to bring the Black Point Property within the Receivership estate and file a status report with the Court

regarding the same or (2) show cause why the stay should not be lifted solely as to Secured Creditor's ability to enforce its rights vis-à-vis the Black Point Property.

Dated this 24th day of September, 2026.

Douglas L. Rayes
Senior United States District Judge